

# IN THE DISTRICT COURT OF DELAWARE

**WINFRED O. BROWN Sr.**
    Plaintiff

    V.

**THOMAS CARROLL**
**Warden, Delaware Correctional Center.**



### ON APPEAL FROM THE DELAWARE SUPREME COURT

---

### APPELLANT'S OPENING BRIEF

---

Winfred O. Brown Sr.
SBI: 019174  Unit: V-B-1
DCC

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**................................................................II

**NATURE OF THE PROCEEDINGS**..........................................IV

**SUMMARY OF THE ARGUMENTS**........................................V

**STATEMENT OF FACTS**.......................................................VI

**STANDARD AND SCOPE OF REVIEW**.................................VII

**ARGUMENTS:**

    **I.**      Lower Court erred and abused its discretion when it denied appellant's Ineffective assistance claim as raised as cumulative errors as related to The miscarriage of justice standards.............................................1

    **II.**     The Lower Court erred, the appellant was deprived of effective assistance of counsel, when counsel failed to challenge the material defects of the State's affidavit of probable cause for a search warrant......8

    **III.**    The Lower Court erred, the appellant was denied effective assistance of counsel, when counsel failed to inform appellant of the State's suppression of exculpatory evidence prior to plea.............................19

    **IV.**    The Lower Court erred when it refused the appellant's request for continuance to retain private counsel after ineffective counsel had informed the Court of untimely discovery.....................................25

    **V.**     The Lower Court erred when it failed to grant an evidentiary hearing on the claim that the affiant provided perjured testimony during Preliminary hearing................................................................30

**VI. &VII.**    Lower Court erred and the appellant was deprived of effective assistance when counsel gave erroneous advice on the elements of 11Del. C. 1447A in order to force and coerce appellant to plea..............................32

    **VIII.**   The appellant is being held illegally.............................................37

    **IX.**    Conclusion......................................................................... 39

I

# TABLE OF AUTHORITIES

Bender v U.S., 387 F.2d 628 (1st Cir 1967)……………………………………38
Berryman v Morton, 100 F.3d 1089 (3rd Cir 1996)…………………………………11
Bland v California, 20 F.3d 1469 (9th Cir 1994)………………………………26
Brady v Maryland, 373 U.S. 83 (1963)………………………………………...19
Caldwell v State, 58 GA. App 408, 198 S.E. 793 (1938)………………………34
Chapman v California, 87 S.CT. 827 (1967)……………………………………11
Chatom v White, 858 F.2d 1479 (11th Cir 1988)………………………………….
Colman v Thompson, 501 U.S. 722 (1991)……………………………………11
Coss v Lackawanna, 204 F.3d 453 (3rd Cir 2002)…………………………23, 28
Cuyler v Sullivan, 100 S. CT. 1708 (1980)……………………………………..4
DeFoo v U.S., 223 F.3d 919 (8th Cir 2000)………………………………………12
Demarest v Price, 950 F. Supp. 1432 (D. Col. 1995)…………………………..5
Ellerby v U.S. 187 F.3d 257 (2d Cir 1998)………………………………………23
Franks v Delaware, 98 S.CT. 2674 (1978)……………………………………15
Hart v Gomez, 174 F.3d 1432 (9th Cir 1998)……………………………………28
Harris v Towers, 405 F. Supp. 497 (Del 1974)…………………………………..6
Harris v Wood, 64 F.3d 1432 (9th Cir 1995)…………………………………….5
Henderson v Morgan, 426 U.S. at 647……………………………………………33
Henry v Scully, 78 F.3d 51 (2d Cir 1996)……………………………………….5
Herring v Estelle, 491 F.2d 125 (5th Cir 1974)………………………………13
Hill v Lockhart, 106 S. CT. 366 (1984)…………………………6,17,19,23,34,36
Hintz v Beto, 379 F.2d 937 (5th Cir 1967)………………………………………27
James v Cain, 56 F.3d 662 (5th Cir 1995)……………………………………….6
Jones v U.S. 167 F.3d 1142 (7th Cir 1999)……………………………………12
Kennedy v Maggio, 735 F.2d 269 (5th Cir 1984)………………………………..13
Leka v Portuondo, 257 F.3d 89 (2d Cir 2001)………………………………21
Marchibroda v U.S., 82 S. CT. 510 (1962)…………………………………………
Moore v U.S., 950 F.2d 656 (10th Cir 1991)……………………………………
Murray v Carrier, 106 S. CT. 2639 (1986)……………………………………11
Naro v Blackburn, 597 F.2d 991 (5th Cir 1979)…………………………………
Nevarez-Diaz v U.S. 870 F.2d 417 (7th Cir 1984)……………………………35
Rosenwald v U.S. 898 F.2d 585…………………………………………Appendix R
Rummel v Estelle, 590 F.2d 103 (5th Cir 1979)………………………………22
Sanders v Ratelle, 21 F.3d 1446 (9th Cir 1994)………………………………23
Scott v Wainwright, 698 F.2d 427 (11th Cir 1988)……………………………13
Sober v Crist, 644 F.2d 807 (1987)……………………………………………36
Strickland v Washington, 104 S. CT. 2052 (1984)…………………………15,21,35
Tollett v Henderson, 93 S. CT. 1602 (1973)……………………………………..6, 33
U.S. v Bigman, 906 F.2d 395………………………………………………………33
U.S. v Blum, 65 F.3d 1436 (8th Cir 1995)………………………………………26
U.S. v Brown, 739 F.3d 1136 (7th Cir 1984)……………………………………
U.S. v Butt, 731 F.2d 80…………………………………………………………….
U.S. v Garrett, 149 F.3d 1019 (9th Cir 1998)…………………………………26
U.S. v Giardino, 797 F.2d 30 (1st Cir 1986)…………………………………37

U.S. v Goodheim, 686 F.2d 776………………………………………………………33
U.S. v Grieg, 967 F.2d 967 F.2d 1018………………………………………Appendix R
U.S. v Hammonds, 425 F.2d 597 (D.C. 1970)……………………………………….1
U.S. v Johnson, 995 F. Supp. 1259 (D. Kan 1998)………………………………...28
U.S. v Koubriti, 297 F. Supp 955 (E.D. Mich. 2004)……………………………….19
U.S. v Mason, 233 F.3d 619………………………………………………………34
U.S. v McLaughlin, 89 F. Supp. 617 (E.D. PA. 2000)…………………………...7, 30
U.S. v Merritt, 528 F.2d 650 (7th Cir 1976)………………………………………...1
U.S. v Perdomo, 929 F.2d 967 (3rd Cir 1991)……………………………………..19
U.S. v Sanchez-Barreto, 93 F.3d 17 (1st Cir 1996)………………………………..16
U.S. v Sanderson, 595 F.2d 1021 (1979)………………………………………..27, 37
U.S. v Scott, 625 F.2d 623 (5th Cir 1987)………………………………………...12
U.S. v Streater, 70 F.3d 1314 (D.C. Cir 1995)…………………………………….33
U.S. v Welty, 674 F.2d 185………………………………………………………..26
Wade v Armontrout, 798 F.2d 304 (8th Cir 1986)……………………………...26, 27
Washington v Smith, 48 F. Supp. 1149 (E.D. Wis. 1999)……………………………2
Wilson v Minitzes, 761 F.2d 275 (6th Cir 1985)…………………………………...26
Wong Sun v U.S. 83 S. CT. 407 (1963)……………………………………………14
Wood v Georgia, 101 S.CT 1097 (1981)……………………………………………4

## RULES, CONSTITUTIONAL PROVISIONS, ETC…

Superior CT. Crim. R. 14…………………………………………………………….3
Superior CT. Crim. R. 16…………………………………………………………...33
Superior CT. Crim. R. 32(b)……………………………………………………
Superior CT. Crim. R. 33…………………………………………………………..30
Superior CT. Crim. R. 52(b)……………………………………………………….
Superior CT. Crim. R. 61…………………………………………………………..37
Superior CT. Crim. R. 61(i)(5)………………………………………………….16, 30
Superior CT. Crim. R. 8…………………………………………………………..
D.R.E. 608, 609……………………………………………………………….....1, 38
11Del. C. 301(b)…………………………………………………………………...10
11 Del C. 303………………………………………………………………….…..20
11 Del. C. 1447A……………………………………………………….16, 32, 34, 36
18 U.S.C.A. 922 (q)(1)……………………………………………………………..34
Delaware Rules for Code of Professional Responsibility 1.7…………………………
ABA Standards (Defense Functions, Rule 1.1 – 1.3)………………………………
ABA Standards (Prosecution Function, Rule 3-3.11(a)……………………………..19
Delaware Constitutional ART. I & 6-7…………………………………………..25, 39
U.S. 4th Amendment……………………………………………………………….14
U.S. 6th Amendment…………………………………………………..15, 23, 25, 26
U.S. 14th Amendment……………………………………………………………
Criminal Law 549………………………………………………………………….35
Weapons 17(4)……………………………………………………………………..35

## NATURE AND STAGE OF THE PROCEEDINGS

The appellant argues that he was arrested illegally and has been held illegally as an inmate at the Delaware Correctional Center since May 2, 2003. From that time through December 5, 2003, during the pre-trial process, the appellant was provided five (5) different attorney's by the Court. Three subsequently sought and were allowed to withdraw due to the complexity of the case. The fourth attorney, Gregory Morris, withdrew due to a "conflict of interest." Mr. David Anderson became the Movant's fifth (5) attorney on December 5, 2003. The defendant submitted a list of alibi witnesses to initial counsel (Kevin Howard) in June 2003 and subsequently updated that list with Mr. Anderson in December 2003, stating what each witness was prepared to testify to. On December 23, 2003, at the Initial Case Review, defense counsel informed the Movant that he had not received "Discovery" and was not prepared to discuss the case. On January 28, 2004 (three business days before trial), defense counsel informed the appellant that he had just received "Discovery" and was again not prepared to discuss the case. The appellant requested defense counsel seek a continuance from the Court in order to review "Discovery," and prepare a defense strategy. Before the Honorable James Vaughn Jr., defense counsel informed the Court that he had just received "Discovery" and had not had the opportunity to review it with the appellant or discuss his case with him. Defense Counsel fell short however of requesting a continuance. This was ineffective assistance of counsel, which denied the appellant his **Sixth Amendment right to competent counsel.** The appellant then requested a continuance in order to review "Discovery" and prepare a proper defense with new counsel. The Court denied this motion stating, "You are going to trial on Tuesday because your case has been on the docket too long. In its haste the Court failed to open a two-prong line of questioning as to the specific reasons why the request was warranted. The Movant was prepared to cover 15 areas of ineffective assistance if allowed to do so; see transcripts at **exhibit X.** Also see appellant's letter to defense counsel dated December 26, 2003, expressing his displeasure at counsel's failure to present "Discovery" to appellant for review, **exhibit O.** It was not until January 21, 2004, that defense counsel requested "Discovery" from the state, **exhibit E;** four weeks after the appellant filed his December 26, 2003 letter with counsel, but more importantly only 7 days before the Final Case Review. On February 3, 2004, the morning of trial, defense counsel threatened and coerced the Movant into accepting a last minute plea offer after failing to interview any witnesses and filing proper and timely pre-trial motions. This plea was for Trafficking in Cocaine; 20 years suspended after three and Possession of a Firearm During the Commission of a Felony, 20 years, suspended after three. All remaining charges were Nolle Prosequi. On April 29, 2005, appellant filed a Motion for Post Conviction Relief pursuant to Delaware superior Court Criminal Rule 61. This motion was denied on January 31, 2006. A timely motion of appeal was made to the Delaware Supreme Court and that appeal was denied on September 21, 2006, when the Court affirmed the lower Court's ruling, finding that the appellant had received effective assistance of counsel and barring other issues due to the appellant having accepted a plea. The appellant argues anew in this opening brief that all his issues are in fact arguable and presented under a **"Colorable Claim of a Miscarriage of Justice"** under Delaware Superior Court Rule 61(i)(5), due to numerous constitutional violations and as such are reviewable by this Court. This then is the appellant's opening brief.

IV

## <u>SUMMARY OF THE ARGUMENTS</u>

I.      The Lower Court erred and abused its discretion when it denied appellant's ineffective assistance claim as raised as a cumulative of errors as related to the miscarriage of justice standards……………………………………………………………………1

II.     The Lower Court erred and the appellant was deprived of effective assistance of counsel when counsel failed to challenge the material defects of the State's affidavit of probable cause for a search warrant………………………………8

III.    The Lower Court erred and the appellant was denied effective assistance of counsel when counsel failed to inform the appellant of the State's suppression of exculpatory evidence prior to the forced plea………………………………………………………………………...19

IV.     The Lower Court erred when it refused the appellant's request for a continuance to retain private counsel after ineffective counsel had informed the court of untimely "discovery" but failed to request a continuance in order to review "discovery" and plan a defense with appellant…………………25

V.      The lower Court erred when it failed to grant an evidentiary hearing on the claim that the affiant provided perjured testimony during preliminary hearing……………………………………………………………………30

VI&VII The Lower Court erred and the appellant was deprived of effective assistance when counsel gave erroneous advice on the elements of 11 Del C. 1447A in order to force and coerce appellant to plea…………………………….………………32

VIII.   The appellant is being held illegally………………………………………...39

## STATEMENT OF FACTS

The appellant argues that he was arrested outside the home of his son's residence at 535 Nimitz Road, Dover, Delaware, during a warrant less raid on May 2, 2003 and that he was never allowed to review the search warrant or the affidavit of probable cause that brought about his arrest and charges at a residence that he did not live at and had no available access to. Throughout the pre-trial process the appellant was led to believe by defense counsel that he was being charged as an accomplice of his son and was told on the morning of trial again by defense counsel that he in fact was guilty and should accept a plea to Possession of a Firearm During the Commission of a Felony (PFDCF) **only** because two (2) ammunition clips found in a motel room two miles away from his son's residence and registered in the appellant's name, fit the unloaded handgun found in the ceiling of his son's home. The Movant argues that he is factually innocent of this charge (PFDCF) and that **the court's have ruled that where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default, <u>Murray v Carrier 477 U.S. 478, 106 S.CT 2639 (1985)</u>**. After accepting a plea the appellant was able to attain a copy of the Affidavit of Probable Cause accompanying the Search Warrant for 535 Nimitz Road and was able to determine that the police in fact had presented a defective search warrant to the magistrate in order to secure a warrant (see enclosed argument). Further that the entire Affidavit argued that the appellant lived at 535 Nimitz Road and processed cocaine for sale from that residence as early as November 2002. The appellant's son Winfred Brown Jr., is never mentioned in the affidavit. Appellant notified defense counsel of these circumstances in February 2004, but counsel never responded to appellant's letter. Defense Counsel failed to investigate, prepare, interview or subpoena witnesses, file for Suppression of Evidence base on an illegal search and seizure, prepare alibi defense based on misidentification, submit an accurate and timely motion to suppress a defective search warrant, forward or review "Discovery" with the appellant, file a motion for Jury Voir Dire, etc…prior to the appellant's plea. This renders the plea unknowing, unintelligently and involuntarily made; amounting to manifest injustice. The appellant has a due process right to be adequately informed of the evidence against him and to be represented by competent counsel guaranteed under the **Sixth Amendment.** On February 3, 2004 defense counsel knowingly concealed and deprived the appellant of his "Discovery" material then induced a plea through threats, coercion, and deceit in order to cover his ineffective assistance. This Court has the ability and duty to correct the manifest injustice done in this case, and set aside the judgment of conviction and permit the appellant to withdraw his plea under the standards of ineffective assistance of counsel and the constitutional violations which make up a **"colorable claim for a miscarriage of justice."**

These errors raised by the appellant on counsel's deficient performance were not merely procedural, but substantially infringes upon appellant's constitutional right to Due Process of Law, rendering appellant's plea involuntary. It is the appellant's position that the denial of appellant's Rule 61 petition was in error and abuse of discretion. This is appellant's opening brief.

## STANDARD AND SCOPE OF REVIEW

The Lower Court erred of law and facts in its analysis of the second prong of Strickland; that the appellant had to establish that the results of a trial would have to have been his acquittal. The appellant challenged the guilty plea as not    knowing, voluntary, or intelligently made and therefore only needed to show that **but** for counsel's errors, he would have not have taken the plea, but insisted on going to trial **where the outcome of the proceedings would have been different.** The appellant has established concrete claims which clearly show his attorney withheld "Discovery," failed to interview alibi witnesses, failed to file numerous pre-trial motions, failed to inform the court of a "conflict of interest," with an alibi witness for the appellant; and then misadvised the appellant on his factual innocence as to **11 Del.C. 1447A (PFDCF)** and then coerced and threatened the appellant into taking a plea without allowing the appellant to review "Discovery."

The appellant has demonstrated "**prejudice amounting to a manifest injustice**" and constitutional violations amounting to a "**colorable claim of a miscarriage of justice**" both resulting in an exception to "Cause" for procedural default. This Court has the authority to correct both injustices done in this case and set-aside the judgment of conviction and permit the appellant to withdraw his plea, alleging ineffective assistance of counsel. Defendant must establish that his counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability, that, but for counsel's errors, he would not have pled guilty but would have insisted on going to trial where the outcome of the proceedings would have been different; **Hill v Lockhart, 106 S.CT 366 (1985).**

A defendant is bound by his signed statement on the guilty plea form **absent clear and convincing evidence to the contrary,** see and compare **Chatom v White, 858 F.2d 1479 (11ᵗʰ Cir 1988) Naro v Blackburn, 597 F.2d 991 (5ᵗʰ Cir 1979).**

The standard and scope of review is a mixed question of law and fact to the extent it is legal. This Court must review the lower court's determinations for errors in formulating or applying legal precepts. To the extent the court's legal decision to deny Post-Conviction Relief, is based on its own factual findings, it is reviewable to determine whether there was sufficient evidence to support the findings, and to determine whether those findings were the result of a logical and orderly deductive process, **Marchibroda v United States, 82 S.CT. 510 (1962).** (A plea of guilty, if induced by "promises" or "threats", which deprive it of the character of a voluntary act "is void and open to collateral attack") The Movant argues that defense counsel admitted in his reply brief that the Movant was informed that the even proceeded to a "suppression motion" that the State's Attorney would file charges against him with the U.S. Attorney on weapons charges but attempted to inform the court that the State's Attorney personally informed the Movant of this action. The Movant asked the Court to investigate this further, but his request was denied. The lower court's separate review of appellant's Post-Conviction Relief (Argument 1), ineffective assistance of counsel is the initial cause for relief against procedural bars or Delaware Superior Court Rule 61, and the prejudice suffered as a result of counsel's deficient performance were also raised in nexus with the appellant's claims in grounds II-VI. All of these grounds were raised under ineffective assistance of counsel as relating to a manifest injustice and a "colorable claim for a miscarriage of

justice" as an **exception to "cause" for procedural default.** Therefore Delaware Superior Court Criminal Rule 61(i)(3) should not have been used to bar relief to grounds II-VI.

It is a miscarriage of justice to substantiate a plea of guilty as knowingly, voluntarily, and intelligently made when defense counsel himself has notified the court of untimely "Discovery" and that he has not reviewed or discussed its findings with the appellant before a guilty plea, see transcripts, **exhibit X;** and further after the Court itself has notified the defendant that he has just three days before trial regardless if he has seen "Discovery" or not. The Movant argues that he had no choice but to accept a plea in this case. He had been told to either accept a plea or go to trial; a trial his defense counsel was not prepared for. The transcripts from this hearing clearly show that the defendant had not seen his "Discovery" and was unaware of the true nature of the charges against him or of any evidence that would acquit him in order to make a knowing, intelligent or voluntary plea. This violates the appellant's **Sixth Amendment and Due Process Rights** and thus questions the validity of the acceptance of his initial plea offer as to whether it was knowingly, voluntarily and intelligently made. Since defendant has a right to effective assistance of counsel at every stage of the proceedings, to the extent that defendant contends that the thrust of his claims are based primarily on errors of counsel failing to provide "Discovery" materials, misadvising on the applicable elements of the offenses, and a lack of, and untimely and inaccurate Pre-trial motions while applying threat and coercion to get the applicant to plea clearly signals constitutional deficiency.

The appellant is entitled to competent counsel, **Del. Const. Art. I & 7** and the actions and legal omissions of counsel before or during the initial plea agreement was a miscarriage of justice and violated appellant's Due Process of Law, see **U.S. v Butt, 731 F.2d at 80** (statements made at plea hearing are presumed truthful, **but presumption can be overcome by credible reasons for departing from those earlier statements**). The Movant argues that in view of the circumstances, he had know choice but to inform the presiding judge at his plea offer that he was satisfied with defense counsel's efforts given that he had been led to believe that he failed to do so would have meant going to trial right then and there without having reviewed "Discovery" without the alibi witnesses requested, and without the pre-trial motions he had requested.

The Movant cites the following ABA Standards of Defense Functions:

Rule 1.1(d) it is unprofessional conduct for a lawyer to misrepresent matters of fact or law to the court.

Rule 1.1 Competence, representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

Rule 1.3 Diligence, a lawyer shall act with reasonable diligence and promptness in representing a client.

The appellant raises all claims of constitutional violations that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction pursuant to subdivision (i)(5) of Delaware Superior Court Rule 61.



I.    THE LOWER COURT ERRED AND ABUSED ITS DISCRETION
WHEN IT DENIED APPELLANT'S INEFFECTIVE ASSISTANCE
OF COUNSEL CLAIMS AS RAISED AS CUMULATIVE ERRORS
AS RELATED TO THE MISCARRIAGE OF JUSTICE STANDARDS.

The appellant has argued in both Superior and Supreme Court in his Post-

Conviction Relief, that defense counsel committed multiple acts and omissions which

taken as a whole amounted to ineffective assistance.  The lower court's failed to

examine each error individually and consider their cumulative effects in light of the

"Totality of Circumstances;" see **U.S. v Merrit, 528 F.2d 650, 651 (7th Cir 1976)**

**(per curiam), <u>U.S. v Hammonds</u>, 425 F.2d 597, 604 (D.C. 1970).**


Looking at the alleged errors as a whole, the appellant has overcome the

presumption that his counsel provided reasonable professional assistance, **Strickland,**

**104 S.CT. 2065;** and has established that counsel was in fact incompetent.  Looking

at the pre-trial proceedings, counsel failed to:


1. interview or subpoena alibi witnesses (see sworn affidavits, **appendix P**)

2. review "Discovery" with appellant

3. interview appellant to ascertain his side of story

4. investigate and depose state witnesses or motion for **DRE 608 or 609**

    **Hearings**

5. investigate alibi/misidentification defense

6. file a timely motion to "Compel Discovery"

7. file a motion to suppress police interviews of intoxicated interviewees

8. notify the Court of a "Conflict of Interest"

9.  file an accurate and timely motion to Suppress and "Flower's Hearing"

10. file a motion to Sever

11. file a motion for "jury voir dire"

12. file a motion "in Limine"

13. properly advise on the elements of **11 Del. C. 1447A**

The appellant argues that this lack of assistance so undermined the proper function of the adversarial process that the plea of guilty cannot be relied upon as having produced a just result; see **Washington v Smith, 48 F. Supp 2d 1149 (E.D. Wis 1999).**  Counsel's cumulative errors and omissions deprived the defendant of his Due Process Rights.

Looking at the alleged errors as a whole, the appellant overcame the presumption that his counsel provided reasonable assistance, **Strickland, 104 S.CT 2065**; and had established that counsel was in fact incompetent.  However, looking at the pre-trial proceedings in relation to all the errors and omissions listed above, defense counsel has undermined the proper function of the adversarial process that the plea of guilty cannot be relied upon as having produced a just result.  This required an evidentiary hearing to resolve the ineffective assistance of counsel claims, see **Washington v Smith, 48 F. Supp. 2d 1149 (E.D. Wis 1999).**  (Counsel's cumulative errors and omissions by failing to interview alibi witnesses, see **appendix A, exhibit P,** subpoena alibi witnesses deprived the defendant of his Due Process Rights).

2

Defense Counsel refused to file a '**MOTION FOR SEVERANCE'** after it became factually established that the appellant was not the tenant, did not have access to, and was only visiting 535 Nimitz Road on the day of the police raid. This was prejudicial and placed the appellant at a disadvantage of defending against 14 charges rather than 7 charges stemming from the Kent Budget Motel (KBM) room registered in the appellant's name.  **Superior Court Criminal Rule 14** provides relief from prejudicial joinder of offenses or defendants.  It is extremely likely that a Motion for Severance would have been granted given the exculpatory statements provided by Jennifer Haass and Winfred Brown Jr. (who lived at the residence).  Both stated that the appellant did not live at the residence, was not involved in the on-going drug operation there, and did not own or know the location of the gun found in the residence. Further, if counsel had interviewed Lori Stewart or attained a copy of her last statements in which she recanted her allegations that she received cocaine from the  appellant while at 535 Nimitz Road on May 2, 2003 and further informed police that Detective Mailey, the affiant, had lied at the preliminary Hearings when he testified that Lori Stewart had informed police she observed the appellant with the 52 grams of cocaine found in the ceiling of that residence; the Court would surely have granted a Motion for Severance.  Had counsel filed that motion, the Movant would have proceeded to trial.  See **exhibit Q** for enhanced argument.

Defense Counsel also failed to report the **"Conflict of Interest"** with a key alibi witness for the appellant, where he represented Lisa Moore (on separate unrelated criminal charges).  Counsel informed the appellant on the morning of

2

trial of this conflict and when asked by the appellant to inform the Court, counsel responded, "**don't worry about it, you need to take the plea, they got you.**" Counsel failed to meet any of the rules of conflict resolution as required under the Professional Conduct of DRA; see **Wood v Georgia, 101 S.CT. 1097 (1981); Cuyler v Sullivan, 100 S. CT. 1708 (1980)** (Conflict of Interest), see also **appendix A, exhibit R.**

Appellant requested counsel to motion the Court for Jury voir dire on "racial prejudice," see opening brief at **exhibit L.** The appellant is African American and was intimately involved with at least five (5) white women asked to be subpoenaed as witnesses. The appellant also raised significant concerns about:

a) jury members who may have had family members addicted to or suffer a drug overdose

b) victims of violent or drug related crimes

The appellant raised valid concerns and presented **Article I & 7 Del. Const. law** on "Essential Demands of Fairness," where counsel must request Voire Dire questions. On February 3, 2004, Defense counsel filed "motion for Special Jury Voire Dire" questions and states at the end of the motion, "Respectfully request that the jury panel be asked **NO** special Voire Dire questions," see **appendix A, exhibit M.** This is just another example of the systematic process counsel used to force and coerce the appellant into accepting a

plea. This was not a tactical or strategic decision in support of the appellant's

defense; see enhance argument at **appendix S.**

Defense Counsel then failed to file a "Motion in Limine" to exclude a

police officer's "expert" testimony on "**intent," see page 57**, **appendix A,**

**opening brief to the lower Court's.**

Counsel then failed to file a "Motion to suppress" the police interviews of

Lori Stewart and Lawrence Jeff after being informed that both were interrogated

while under the influence of crack cocaine and in the case of Stewart, she had

also been drinking heavily over the past four days; see **page 47, appendix A,**

**opening brief.**

Defense Counsel then failed to file (upon the Movant's request) a "Motion

to Suppress" for an "**Illegal Search and Seizure**" after it became abundantly

clear that police conducted a warrantless search of 535 Nimitz Road for over 4 ½

hours with no exigent circumstances; see **full argument in opening brief at**

**appendix A, pages 38-49, as well as the defendant's letter to counsel dated**

**December 26, 2003, where he submitted a 15-page suppression briefing**

**detailing the warrantless raid, appendix A, exhibit O.**

The appellant moves this Court to review **Argument I** in his opening brief

for Post-Conviction Relief and cites **DeMarest v Price, 905 F. Supp. 1432 (D.**

**Col. 1995)** (Cumulative Errors); **Henry v Scully, F.3d 51 (2d Cir 1996)**

(Cumulative Errors); **Harris By and through Ramseyer, v Wood, 64 F. 3d 1432**

**(9th Cir 1995)** (Cumulative Errors and Omissions in violation of the precepts of

**Strickland**); **Harris v Towers, 405 F. Supp. 497 (D. Del. 1974)** (Cumulative

Errors and Omissions deprived the defendant of Due Process).

The appellant has submitted to the lower Court a preponderance of

evidence that altered the outcome of a knowing, voluntary, and intelligently made

plea; see **James v Cain, 56 F. 3d 662 (5th Cir 1995)** (Preponderance of

Evidence). Based upon the facts known to counsel and the rules of law and

procedures prior to his ill advised information as to guilt on the "PFDCF" and

withholding of exculpatory "Discovery" material, counsel failed to invoke the

procedural and substantial safeguards that distinguish the state's system of justice.

A serious risk of injustice infects the plea agreement itself. Had counsel properly

advised appellant on the elements of **11 Del C. 1447A;** provided "discovery"

prior to the plea for the appellant's review, interviewed and subpoenaed alibi

witnesses, raided misidentification Defense, interviewed or attained exculpatory

statements from state witnesses, suppressed evidence seized illegally, filed for

severance, motion in Limine, jury voir dire, and investigated the prosecution file,

etc…; the appellant would have insisted on going to trial where the outcome of

the proceedings would have been different; see **Hill v Lockhart, 877 F. 2d 698**

**(8th Cir 1989)** (Result of plea process would have been different), **Tollet v**

**Henderson, 93 S.CT 1602 (1973).**

The appellant has shown that counsel's actions, inactions and omissions

cumulatively fell below an objective standard of reasonableness and but for

counsel's withholding exculpatory material (Discovery) and other coerced errors,

appellant would have proceeded to trial based upon the elements of the offenses.

Based upon appellant's abundant and clear showing of cumulative errors shown in his Post-Conviction Relief, Rule 61, at argument I and subsequent exhibits, an evidentiary hearing should have been held to the extent that the appellant was prejudiced, see **U.S. v McLaughlin, 89 F. Supp. 2d 617 (E.D. PA 2000)** ((Evidentiary Hearing).  The lower Court erred of law and misapplied the standard of **Hill Supra.,** given the facts and evidence that substantiated the ineffective assistance of counsel claims.

II.    **THE LOWER COURT'S ERRED AND THE APPELLANT WAS  DEPRIVED EFFECTIVE ASSISTANCE OF COUNSEL, WHEN COUNSEL FAILED TO CHALLENGE THE MATERIAL DEFECT'S OF THE STATE'S AFFIDAVIT OF PROBABLE CAUSE FOR A SEARCH WARRANT.**

The appellant argues that defense counsel fell below reasonable and competent representation as required by the **Sixth Amendment** when counsel failed to adversarily test the state's case based upon the false material allegations in the Search Warrant's Affidavit of Probable Cause, which states the appellant was the primary tenant at 535 Nimitz Road and property owner of two vehicles parked at that residence, see appellant's post-conviction relief, **appendix A argument II, pages 61-70, and exhibit D.**  Defense Counsel's untimely and inaccurate "Motion to Suppress" evidence and hold a "Flower's Hearing," in part **was** **not** the meritorious issue presented to counsel by appellant during the pre-trial stages.   After filing of defense motion to suppress evidence, on the day of trial, defense counsel backed out of applicable issues raised and supported the request for suppression by stating, "the defense has no case, the state got you and you should take this plea because there are no defects in the Search Warrant, that the motion was filed untimely and if you persist on going to trial, the state is going to forward you case to the U.S. Attorney's office for weapons violations. (Defense Counsel admitted to this conversation in his affidavit response but attempted to inform the Court that the State's Attorney personally informed the appellant of this information, see **appendix a, exhibit Y.**  In his response, the Movant informed the Court that he had **never** spoken with the State's Attorney throughout the entire pre-trial process and attempted to show that counsel's affidavit was merely an attempt to deflect criticism of his ineffectiveness.  The appellant further asked the Court to require defense counsel to reply to all of the Movant's claims and with specificity, but the Court refused.)  Based upon

misadvice from counsel and because the appellant had never received or been allowed to review "Discovery;" along with all the other pre-trial errors and constitutional violations cited, the appellant was forced to accept a plea on the morning of trial, see post-conviction relief **appendix a, exhibit A.**

The facts contained in the "Discovery" material were received from defense counsel on February 28, 2004; **after** appellant's coerced and uniformed plea on February 3, 2004. Had counsel continued his obligation to test the reasonable doubt of the state's case through an affirmative defense established from the affidavit of probable cause to search for 535 Nimitz road and statements of witnesses that Winfred Brown Sr., DOB 6-21-57, was innocent of selling drugs at 535 Nimitz Road and of possessing a handgun at same address, and contrary to the Search Warrant's affidavit, was not a tenant of 535 Nimitz road, had no available access to the residence and was only visiting this residence.

In September 2002, evidence clearly establishes that Winfred Brown Sr. was home in Hopewell, Virginia, under medical care form a severe car accident which left him bedridden through December 2002, **exhibit I, clinic therapy documentation from Fort lee, Virginia;** contrary to the search warrant affidavit placing Brown Sr., in Delaware living at 535 Nimitz Road and processing cocaine for sale. See affidavit's from other alibi witnesses the appellant had asked counsel to interview and subpoena at **exhibit P.**

It was objectively unreasonable for counsel to fail to investigate and interview the witnesses for the defense and who gave police statements during arrest; see post-conviction relief, **appendix A, exhibit C,** which states:

**At No. 28**    "That also found inside of 535 Nimitz Road was business documents and paperwork belonging to "Winfred Brown **Jr.**"" No belongings of the appellant were found inside that residence.

(An affirmative defense should have been used by competent counsel to substantiate the misidentification between Winfred Brown Sr. and Winfred Brown Jr., to identify Brown Jr. as the person living at 535 Nimitz road, contradicting the Search Warrant's probable cause. Reasonable counsel should have ascertained that if Brown Sr. did not live at the residence, he could not be charged for the illegal substance found therein; thus the need for pre-trial motions to dismiss or sever charges at 535 Nimitz road. The record clearly reflects that Brown Sr. was arrested outside the residence and that **no** personal belongings of his were found in the residence.)

**At No 30**    Statements by Jennifer Haass who resided at the residence, "that Brown Sr. (the appellant) resided with them for a few months (actual timeframe was January 16 – February 16, 2003) then **moved out** and he would return occasionally to visit with them. The Movant informed the Court that when he left in February, he never returned to that residence until April 24, 2003; one week before the police raid. Haass also informed police that it was Brown Jr. who she lived with at 535 Nimitz road since July 2002. Even today the state remains confused in their identification and the cases of Brown Sr. and Jr. as evidenced by their letter to the Court dated 10-04-05, **exhibit T.**

Defense counsel possessed this information prior to introducing appellant to a plea even though there was evidence of reasonable doubt, **11 Del. C. 301 (b).** Had counsel pressed forward with this information contesting the state's case during a sufficient suppression hearing through an adversarial process it is highly probable that the case would have been

*10*

dismissed, see ~~Chatom~~ CHAPMAN v. California, 87 S.CT 827-28 (1967) (right to counsel is so

fundamental to the adversarial system that its deprivation can never be deemed harmless), see

also **11 Del. C. 303** (Credible evidence to support defense).

A further investigation by defense counsel would have revealed that Winfred Brown Sr.,

the appellant was the only suspect named as the owner of two vehicles and the sole tenant of

535 Nimitz Road, where Brown Sr. possessed **no** keys to the residence and no other evidence

connected him as living therein.  The appellant requested an affirmative defense through

misidentification between father and son and defense counsel passed over this impeachable

and favorable evidence.  This was not a tactical or strategic decision which benefited in the

best interest of the appellant.  Through misadvice and the failure to inform appellant by

submitting and reviewing "Discovery" prior to trial or plea in order for appellant to properly

evaluate the evidence against him renders the plea as unknowing and involuntarily made and

constitutes ineffective assistance of counsel, see **Berryman v Morton, 100 F.3d 1089, 1096**

**(3rd Cir 1996)** (Strategy Unreasonable), see also post-conviction relief, **appendix A, exhibit**

**F, "affidavit from Winfred Brown Jr.**

The appellant suffered an adversarial breakdown through the deficient performance of

counsel.  The direct consequence of counsel's misadvice and withholding of "discovery"

until after the plea, prejudiced appellant's ability to review all evidence against him, which

allowed the state prosecution to obtain a conviction on factual, defective, and inadmissible

evidence as the probable cause for search relied upon misidentification, moves this Court to

vacate the guilty plea, see **Murray v Carrier, 106 S. CT. 2639, 2649 (1986); Colman v**

**Thompson, 501 U.S. 722, 750 (1991).**  The appellant was not given the opportunity to

examine or discuss the "Discovery" evidence against him.  This violated Due Process of law,

see **DeFoo v U.S.,** 223 F.3d 919, 923-24 (8th Cir 2000) Quoting, **Jones v U.S.,** 167 F.3d

1142, 1145 (7th Cir 1999).  The warrant requirements misidentifying the appellant as the

tenant were false and unsupported allegations making the search of this residence illegal

under the assumption that the individual Winfred Brown Sr., resided at 535 Nimitz road.  The

appellant notified defense counsel by letter of all the defects contained in the affidavit of

probable cause in July 2004, but never heard from counsel again, see **appendix A, exhibit K.**

The appellant now makes a colorable claim that undermines the fundamental legality,

integrity, reliability, and fairness in submitting an affidavit or probable cause that was

defective, the resulting warrrantless search of a residence not rented by or resided in by

Winfred Brown Sr. and the subsequent withholding of "discovery" and other exculpable

evidence was a miscarriage of justice, see **U.S. v Scott**, 625 F.2d 623 (5th Cir 1981) (A

conviction on a guilty plea that is entered solely as a result of faulty legal advice and

information is a "Miscarriage of Justice.")

Had counsel properly challenged this illegal arrest and search and seizure of 535 Nimitz

Road through the misidentification of Winfred Brown Sr., as the tenant of 535 Nimitz Road,

the misidentification of the appellant as the tenant would have been a potential affirmative

defense to the search requirements and crimes charged.  The misidentification defense would

have succeeded at the suppression of evidence hearing finding that the defective search

warrant led to an illegal arrest and conviction.

There is reasonable probability had counsel challenged the misidentification of Brown Sr

finding that it was his **son,** Brown Jr. who was the sole renter along with Jennifer Haass at

535 Nimitz Road, that an accurate and timely motion to suppress based on a defective

affidavit of probable cause and or an illegal search and seizure would have resulted in a

favorable outcome and dismissal of those charges existing from the search of the residence as

well as the Kent Budget Motel (KBM) where police also entered the appellant's room

without permission or a search warrant. These circumstances along with other stated issues

in this case rested on the intent of Brown Sr. not pleading guilty and proceeding to trial,

before defense counsel's failure to turn over "Discovery," failure to provide misidentification

defense, interview and subpoena witnesses, etc… see the sworn statement of Brown Jr.,

**appendix A, exhibit F of post-conviction relief.**

The Court must take judicial notice that appellant never had access to "discovery"

material until twenty five (25) days after coerced plea, in which appellant was not

appropriately informed to make a conscious choice of whether to take a plea…see **appendix**

**A, exhibit J;** defense counsel's letter and disclosure of "Discovery" to appellant on February

28, 2004. Appellant pleaded on February 3, 2004; see **Scott v Wainwright, 698 F.2d 427**

**(11th Cir 1983)** (Defendant must receive accurate advice from counsel before pleading

guilty), **Herring v Estelle, 491 F.2d 125 (5th Cir 1974),** and **Kennedy v Maggio, 735 F.2d**

**269 (5th Cir 1984).** Without Appellant's review and possession of "discovery" material, he

relied upon counsel's unreasonable representation which consisted of withholding

"Discovery," failing to interview and subpoena witnesses, and untimely and inaccurate

"Motion to Suppress," and misadvice on the laws governing the elements of **11 Del. C.**

**1447A, etc…**

The appellant argues that defense counsel should have investigate the material omissions

and misidentification of Winfred Brown Sr. as actually being Brown Jr. as the renter and of

the residence at 535 Nimitz Road and the owner of the two (2) Ford Explorer's as materially

defective. Police reported in the affidavit that the vehicle Winfred Brown Sr. drove to the residence on May 2, 2003, had a Virginia license plate on it. Probable cause did not exist to search a residence that the identified suspect did not live at and had no available access to. This caused a "Miscarriage of Justice" and evidence seized from the residence must be deemed as "Fruits of the Poisonous Tree," see **Wong Sun v U.S. 83 S.CT. 407 (1963)**. Also see appellant's post-conviction relief at page 38-40, arguing the failure of defense counsel to file a timely and accurate "Motion to Suppress," see page 38 but also pages 35 through 46.

The appellant had no possessory interest in the items seized or a legitimate expectation of privacy in the area to be searched because he was not the tenant or lessee of the property. A rational inference from the facts contained within the probable cause for search warrant indicated **Winfred Brown Sr., DOB 6-21-57,** was the sole tenant and lessee of the property. This was falsely reported in the affidavit of probable cause and violated the appellant's **Fourth Amendment** rights when police illegally charged and arrested him as the tenant. The state cannot have it both ways; either the appellant **did not** have a legitimate expectation of privacy or he **did** as claimed in the affidavit of probable cause. In **Junior v U.S.**, 634 A.2d 411 (D.C. App 1993) the court ruled that an evidentiary hearing was required to determine whether defendant had a protected interest in house and, thus, whether defendant received ineffective assistance of counsel from failure to seek suppression of evidence stemming from warrantless seizure. The appellant had steadfastly requested and provided counsel documentation detailing a warrantless raid that continued over a 4 hour period before a search warrant was provided.

The appellant asks how can he be charged and arrested for the search of a residential property that he was not a tenant of, was not inside the residence at the time of the raid and had no belongings in the residence. There were reasonable circumstances which competent counsel

should have impeached, including the affidavit supporting the search warrant; see **Franks v Delaware, 98 S.CT. 2674 (1978).** A criminal defendant is entitled to a **Franks Hearing** on legality of search warrant when he makes a substantial preliminary showing that the affidavit supporting search warrant included intentional and knowing misstatements made in reckless disregard for the truth, and that misstatements were necessary for finding of probable cause – **State v Hamel, 634 A.2d 1272 (Me 1993).** The defendant is not required to come forward with preponderance of evidence in his favor prior to hearing **(U.S.C.A. Const Amend 4)** but has done so in an effort to show the Court that the affidavit of probable cause was submitted to intentionally mislead the magistrate first and then later when the State prosecutor became aware of these false allegations, he furthered this "miscarriage of justice" by withholding exculpatory material from the defense. Without reviewing "discovery" material, there was no opportunity for the defendant to properly participate in his defense and specifically a **"Frank's Hearing.** As stated previously, defense counsel submitted and untimely and grossly inaccurate "motion to suppress" on January 30, 2003, one business day before trial without reviewing "discovery" with the appellant and then informed the appellant on the morning of trial that the Court would probably not hear the motion; that the motion had no merit; and that if the appellant proceeded, the State attorney would refer weapons charges to the U.S. Attorney. The Movant determined later that the U.S. Attorney had already reviewed his case in July 2003 and had declined to prosecute it. Defense counsel was in possession of exculpable information. His failure to challenge the state's case with this evidence in appellant's favor was a "miscarriage of justice" and deprived appellant of his **Sixth Amendment** right to competent counsel and the adversarial process against the prosecutions case. Had counsel reviewed the "discovery" with the appellant before the plea, the Movant would not have accepted a plea and would have insisted on going to

15

trial; see materially defective search warrant affidavits at **exhibits A, F, G, and H.** This information represents reasonable probability of a different outcome.

The appellant was prejudiced by counsel's deliberate withholding of this information in the "discovery" until after appellant had been coerced and threatened, see **U.S. v Sanchez-Barreto, 93 F.3d 17 (1st Cir 1996)** (Defense Counsel coerced defendant); **Moore v U.S., 950 F.2d 656 (10th Cir 1991)** (Coercion by counsel or prosecutor to induce a guilty plea renders the plea involuntary). Defendant being uniformed of the exculpatory evidence in counsel's possession renders appellant's plea unknowing, unintelligently and involuntarily made. But for counsel's errors, appellant would not have pled guilty. The results of the proceedings of a suppression hearing on the defective affidavit for search warrant was the sole basis of misidentification and a "miscarriage of justice" which undermines the reliability, integrity and fairness of the proceedings leading to the judgment of conviction, **see Superior Court Criminal rule 61(i)(5).**

In light of the circumstances of established misidentification of the appellant being the tenant of 535 Nimitz Road, Dover, DE, contrary to the affidavit of probable cause to search this residence makes this affidavit materially defective. A competent, skilled, and diligent counsel would have argued that similar information contained in the search warrant, police reports, other "discovery" material, along with the appellant, Brown Jr. and Haass' repudiation that the appellant did not live at the residence (see **post-conviction relief appendix A, exhibit C, at No. 30;** and from Winfred Brown Jr. to Attorney General on January 29, 2004, **post-conviction relief, exhibit F**) would have argued that this information exculpates the appellant. Any competent counsel would have affirmatively used this information of reasonable doubt to bring the prosecution's case to bare. Counsel gave the appellant the impression that because he was present at the crime scene,

he was guilty and should take the plea, denying appellant a presumption of innocence; failing to

inform the appellant that the state had the burden of proving appellant's guilt. Counsel did not

investigate the prosecution's case file. The file included a statement made by Winfred Brown Jr.

on January 29, 2004, clearly indicating that Winfred Brown Sr. was not a resident at 535 Nimitz

road and had no knowledge of drugs in the residence or the location of the unloaded handgun

found in the residence; see **post-conviction relief, exhibit F,** casting doubt on the events as

portrayed in the affidavit for a search warrant. This was essentially the same information the

appellant provided counsel prior to his coerced plea. The file also included statements from Lori

Stewart stating that, (1) she had lied about receiving drugs from the appellant at 535 Nimitz road

on May 2, 2003, and (2) that she had not informed police that she observed the Movant with the

51 grams of cocaine found in the basement ceiling at 535 Nimitz Road; a fact police used in the

affidavit of probable cause to attain a search warrant. Defense counsel's investigation fell short

of what a reasonable competent attorney would have done with the exculpatory information as

appellant maintained his innocence of owning, using, or possessing a gun to sell drugs from 535

Nimitz Road. The prejudice that resulted from counsel's failures and inaction forced the

appellant to plea to the offense "PFDCF," **11 Del. C. 1447A** which he was factually innocent of,

thus making the appellant's plea an unknowing, unintelligent and involuntary act, see **McMann**

**v Richardson, 90 S.CT. 1441 (1970); Strickland v Washington, 104 S.CT 2052 (1984), and**

**Hill v Lockhart, 731 F.2d 568, 572 (8th Cir 1984).** Defense counsel's active negotiations with

the state regardless of what the evidence indicated, misadvising the appellant, and then

threatening and coercing him to accept a plea, all amounted to ineffective assistance and severely

prejudiced the appellant. Counsel did not fulfill his responsibility as an advocate on appellant's

behalf; thereby preventing a voluntary, knowing and intelligent choice to plead guilty. But for

counsel's cumulative errors, the appellant would not have pled guilty but would have insisted on going to trial where the outcome of the proceedings would have been different.  See appellant's letter to counsel on January 25, 2004 before his plea of guilty requesting "Motion to Suppress" the illegal search which went unanswered, **exhibit N.**

**III.  THE LOWER COURT ERRED AND THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO INFORM APPELLANT OF THE STATE'S SUPPRESSION OF EXCULPABLE EVIDENCE PRIOR TO PLEA**

    As a matter of State and Federal Due Process, the State cannot suppress favorable evidence to a defendant if it is material to guilt or punishment, **Brady v Maryland, 373 U.S. 83, 87 (1963).**  As indicated by the Supreme Court, the evidence must be "material" in order to implicate a defendant's Due Process Rights.  The Brady rule requires prosecutor's to disclose evidence that is material and favorable to the defendant in order to comply with the Due Process Clause.  Further, a plea agreement cannot be deemed intelligent and voluntary if entered without knowledge of material information withheld by the prosecution, see **ABA standards for the prosecution's function 3-3.11, Disclosure of Evidence by the prosecutor.**

    A prosecutor should not intentionally fail to make timely disclosure to the defense.  The disclosure should be made at the earliest feasible opportunity of the existence of all evidence or information which tends to **negate** the **guilt** of the accused or **mitigate** the offense charged or which would tend to reduce the punishment of the accused.

    The appellant's Due Process Right of "Fundamental Fairness" to receive all exculpatory material timely and prior to a plea agreement, only then substantiates the standards of a plea as being knowingly, intelligently, and voluntarily made.  But without being informed of exculpatory statements made by two critical witnesses (Winfred Brown Jr. and Lori Stewart) establishes ineffective assistance of counsel and misconduct by the prosecution, see **Hill v Lockhart, 106 S.CT 366 (1985)**; see post-conviction relief, **appendix A, exhibits E, and F,** and untimely "Discovery" from defense counsel at **exhibit J.**

    In the analysis of a **Brady** issue, the Court must determine the existence of the following elements:  1)  the prosecution must suppress or withhold evidence; 2) the withheld evidence must be material to the defense, see **U.S. v Perdomo, 929 F.2d 967 (3rd Cir 1991); and U.S. v Koubriti, 297 F. Supp. 2 955 (E.D. Mich 2004).**

The information that the State suppressed exculpatory evidence was only discovered after defense counsel coerced and threatened appellant to plea against his better judgment without being properly informed through "Discovery" material disclosure. The State's prosecution certainly has suppressed exculpatory material favorable to the appellant prior to the guilty plea. This exculpatory material came from two critical witnesses that related favorable information to the Deputy Attorney General, Mr. Kriner, who in turn suppressed this very important evidence; that along with the alibi witnesses asked to be called, would have negated the guilt of the appellant and the charges against him, see **exhibit F and J.**

The appellant's son and alleged co-defendant; Winfred Brown Jr., DOB: 9-19-74, was the tenant who resided at 535 Nimitz Road; processed cocaine from that residence alone, and was the owner of the two vehicles alleged to be owned by the appellant in the Affidavit of Probable Cause for Search Warrant. Further, Brown Jr., informed State Attorney Kriner, that Winfred Brown Sr., did not reside at the residence; did not possess or have dominion or control over any drugs found inside the residence; did not own or know the location of the handgun found in the residence; and did not own the two vehicles noted in the affidavit of probable cause; while meeting with Mr. Kriner and Detective Mailey, the affiant on January 29, 2004, see **post-conviction relief, exhibits F and P, affidavits of Winfred Brown Jr.**

These statements made by Brown Jr., to Mr. Kriner, were exculpatory material and an affirmative defense, see **11 Del. C. 303, Credible Evidence to Support Defense.** The appellant was uniformed of this information that the prosecution suppressed this statement in order to maintain the strength of his case. This was prosecutorial misconduct that undermined the fundamental legality, integrity, reliability, and fairness prior to the proceedings leading to the judgment of conviction. Had this evidence been made available, the appellant would not have pled guilty but insisted on going to trial where the outcome most certainly would have been different.

The **Second** critical witnesses' statement suppressed by the prosecution and whom defense counsel failed to investigate or request and interview with was **Lori Stewart**, who was dropped from the State's witness list on the morning of trial, prior to appellant's plea agreement. Ms. Stewart informed the State that she had given false

information to police on the day of her arrest, May 2, 2003, regarding having received cocaine from the appellant while at 535 Nimitz Road. Mr. Kriner decided to suppress this exculpatory evidence from the defense also; see Stewart's statement's to arresting officer during interrogation, see **post-conviction relief, appendix A, exhibit C, arrest report at No. 11-15.** Ms. Stewart also informed Mr. Kriner that Detective Mailey had perjured himself at the defendant's preliminary hearing when he testified that Stewart had informed police that she saw the defendant with the 51 grams of cocaine later found in the basement ceiling at 535 Nimitz Road.

The State realized that without Stewart's testimony, the prosecution had no case and no ability to attain a guilty verdict and therefore suppressed the statements of Stewart prior to the appellant's plea. In fact, with the statements of both Brown Jr., and Stewart, there was no case against the appellant at all and no probable cause to attain a search warrant for the Movant's motel room. This violated Due Process and prejudiced appellant's affirmative defense that he never gave Stewart drugs on May 2, 2003, at 535 Nimitz Road; that he was not the person processing cocaine for sale at that residence in November 2002, that he was not involved with any sale of drugs to a CI from that residence; that he did not own or know the location of the handgun found in that residence; and that he did not know the there were drugs in the house on that day.

Had the State's attorney properly provided the defense with this potential damaging evidence, the appellant would not have pled guilty, given the other factual evidence, the constitutional violations, and untimely disclosure of "discovery" leading up to and after his plea. The suppressed exculpatory statement's of testimonial value demonstrates an affirmative defense against the prosecutions case. The prosecution was required and had a duty to provide the defense these exculpatory statements and an opportunity for the defense to effectively use this information prior to the plea of guilty. Without this exculpatory evidence, the appellant could not and did not make a knowing, intelligent, and voluntary plea, see **Leka v Portuondo, 257 F.3d 89, 100 (2d Cir 2001);** this prejudiced the appellant's substantial rights of "Fundamental Fairness."

It is unreasonable for a competent counsel to objectively fail to request and secure potential interviews with State witnesses' Stewart and Brown Jr., under the circumstances of appellant's critical defense of **innocence** as an affirmative defense. This allowed the

prosecution to suppress and withhold exculpatory evidence in favor of the defense prior to the plea agreement, as impeachment evidence against the entire State's case, see **opening brief, exhibit F and J.**

It is incumbent upon counsel to include an independent examination of facts, circumstances, pleadings and law involved and witness investigation in order to discharge his **Sixth Amendment** obligation, **Strickland v Washington, Supra, citing Rummel v Estelle, 590 F.2d 103 (5th Cir 1979).** In Strickland the Court acknowledged that: **The Sixth Amendment** imposes on counsel a duty to investigate because reasonably effective assistance must be based on professional decisions and informed legal choices must be based upon professional decisions and informed legal choices can only be made after investigation of options, Id. at **2060,** see also **Chapman v California, 87 S.CT. at 827-28 N. 8 (1967)** (Right to counsel is so fundamental to the adversarial system that its deprivation can never be deemed harmless). The United State's Supreme Court agreed that a defense attorney is required to conduct a "reasonable substantial investigation" into the line of defense since there can be no strategic choice that renders such an investigation unnecessary.

In this instant case, it is unreasonable and prejudicial to the appellant's Due Process rights and his right to competent counsel as counsel failed to interview two critical witnesses that possessed exculpatory information in the defense's favor. Both Brown Jr., and Stewart sought to speak with defense counsel on the morning of trial in the Courthouse holding area. Counsel refused to speak to either one. Their information and statements would have supported the appellant's original defense that he was innocent of all charges stemming from 535 Nimitz Road.

Defense counsel made virtually no investigation of the witnesses for the defense or for the State, denying appellant any potential and damaging evidence to be used in the adversarial testing of the State's case. Had counsel exercised his constitutional obligation entrusted to him to develop the reasonable doubt in the State's case, the defendant would not have pleaded guilty and would have insisted on going to trial where the outcome would have been different. The appellant is factually innocent of the crime of which he unwillingly pleaded to and the penalty which was imposed through defense counsel's breakdown in the adversarial process, renders the results of the plea unreliable.

Further, counsel's incompetent advice to enter a plea knowing that the state's case could not withstand proper adversarial testing was deficient performance. The failure to provide and disclose "Discovery' to appellant prior to plea was the direct consequence of counsel's incompetence and failure to investigate the Search Warrants misidentification and failure to interview witnesses, Winfred Brown Jr., and Lori Stewart, prejudiced the appellant and forced him into making an unknowing, unintelligent and involuntary plea, see **Hill v Lockhart, 106 S.CT. 366 (1985) and Sanders v Ratelle, 21 F.3d 1446 (9th Cir 1994)** (Failure to investigate that another suspect purportedly confessed to crime constituted ineffective counsel).

The circumstances as stated above as it relates to the two witnesses' statements contained in the arrest reports and co-defendant's affidavit applies to counsel's failure to actively advocate appellant's case, see **Coss v Lackawanna County District Attorney, 204 F.3d 453 (3rd Cir 2000)** (Defense counsel's failure to subpoena certain witnesses and to interview those witnesses constituted ineffective counsel); **Ellerby v U.S.** 187 F.3d warranted an evidentiary hearing to resolve claim of ineffective assistance of counsel).

Defense counsel's representation fell below an objective standard of reasonableness when failing to independently interview tow potential witnesses. This was prejudicial, and but for these errors, the prosecution would not have been able to suppress and withhold exculpatory statements made by Brown Jr., Stewart, and Haass that supported an affirmative defense in the suppression of probable cause for the search warrant as being defective and would have resulted in the charges being dismissed or the defendant would have proceeded to trial as desired by the appellant with all three witnesses' testimony becoming beneficial to the defense. In order for the defense to effectively use the exculpatory statements of Lori Stewart and Winfred Brown Jr.; defense counsel had to independently interview them. His failure to do so prejudiced appellant's right to compulsory process of the **Sixth Amendment.** It is not a defense strategy to plea without any investigation or witness interviews, unless he has divided loyalty. The appellant's plea was unknowing, involuntarily, and unintelligently made through coercion, threats, bad advice, misinformation and legal errors of counsel's failure to perform his duties guaranteed by the **Sixth Amendment's** adversarial process. Because of this, the appellant pleaded guilty to crimes he was innocent of which included

two, three year minimum mandatory sentences for a total of six (6) years.  This is a miscarriage of justice and should be reviewed by this Court in the interest of justice.

**IV.    THE LOWER COURT ERRED WHEN IT REFUSED THE APPELLANT'S REQUEST FOR CONTINUANCE TO RETAIN PRIVATE COUNSEL AFTER INEFFECTIVE COUNSEL HAD NOT NOTIFIED THE COURT FO UNTIMELY DISCOVERY.**

## ARGUMENT

It is settled state and Federal law that the appellant charged with a crime has the right to retain private counsel at anytime before the initial trial begins, pursuant to the provisions of the **Sixth Amendment of the U.S. Constitution and Delaware Constitution, ART I, 6-7; Due Process of Law, see post-conviction relief appendix "A," argument IV, at pages 75-79, opening exhibits E and J and appellant's letter to counsel on July 2, 2004 after receiving "Discovery," at exhibit K.**

On January 28, 2004, appellant was scheduled for Final Case Review after being rescheduled repeatedly during a period of nine month's and four (4) previous lawyers requesting withdrawals were granted by the Court.  During Final Case Review, appointed counsel informed the Court that he had not had time to review "Discovery" nor had he had time to review "Discovery" with the defendant, see **transcripts at exhibit X.**  Counsel further stated that he had not had time to discuss the overall case with the defendant.  The appellant requested counsel seek a continuance but counsel refused his request.  Thereafter, the appellant addressed the Court and requested a continuance in order to properly evaluate untimely "Discovery" and effectively use the exculpatory evidence in favor of the defense strategy and to retain private counsel.  The Court denied the appellant's request without substantial **Due Process** inquiry, and such denial was an abuse of discretion and a miscarriage of justice by denying the appellant "**fundamental fairness"** in the proceedings which led to the unknowing, unintelligent, and involuntary made plea (The Court's only concern was how long the case was on the Court docket), see **transcripts at exhibit X.**

The appellant contends that the Court's denial for a continuance in order to review "Discovery" and retain private competent counsel was an abuse of discretion and error of law, which violated appellant's **Sixth Amendment** right to counsel and fundamental **Due Process.**  The **Harmless Error Doctrine** does not apply here

pursuant to **Bland v California Dept. of Correction, 20 F. 3d 1469 (9th Cir 1994); Wade v Armontrout, 798 F.2d 304 (8th Cir 1986).**

The denial of the right of counsel of choice is reversible error regardless of whether prejudice is shown.  In **U.S. v Blum, 65 F.3d 1436 (8th Cir 1995),** the court stated that a defendant may request substitute counsel at virtually any time, so long as the request is not designed for purpose of delaying and disrupting trial.  Once request for substitute counsel is made, trial Court has a "duty" to inquire into factual basis of defendant's dissatisfaction.  In **U.S. v Welty, 674 F.2d 185,** the Court ruled that the Lower Court must engage in two lines of inquiry; first, the Court must decide if the defendant's reasons for request of substitute counsel constitute good cause and are thus sufficiently substantial to allow new counsel to be obtained.  The defendant argues that he had a list of thirteen (13) instances of ineffective assistance had the Court inquired, **appendix A, exhibit U** and subsequently presented this list to defense counsel on the morning of trial.  Defense counsel then promised to seek the continuance but left only to return with another plea offer along with the state's threat to forward the appellant's case to the U.S. Attorney if he did not accept the plea offer.

The lower Court Judge ignored any inquiry as to the appellant's dissatisfaction, and informed the appellant the case was going to trial in three days because it had been on the docket too long, even after appointed counsel had informed the Court by motion and in person of the untimely "Discovery" received on the same day as the Final Case Review, and his lack of preparedness, see **exhibit E.**  This interfered with appellant's **Sixth Amendment right to competent counsel, see Wilson v Mintzes, 761 F.2d 275 (6th Cir 1985)** (where trial counsel provoked defense counsel into acts inconsistent with his duties of loyalty to his client, such interference effects the fairness of the plea or trial and prejudice is presumed.  The **Strickland** standards have applicability.

The denial of continuance further impaired and forced the appellant to make an unknowing, involuntary, and unintelligent plea.  Appellant's counsel had stated to the Court that he had no opportunity to review or discuss untimely "Discovery" with the appellant, and in all fairness should have requested and been granted a continuance, see **U.S. v Garret, 149 F.3d 1019 (9th Cir 1998)** (Failure to grant a request for

continuance so counsel could adequately prepare for trial was an abuse of discretion and required reversal); **Hintz v Beto, 379 F.2d 937 (5th Cir 1967)** (Denial of continuance deprived counsel an opportunity to prepare for trial and deprived the defendant of a fair trial); **Wade v Armontrout, 798 F.2d 304 (8th Cir 1986)** (Denial of defendant's continuance contributed to the defendant receiving ineffective assistance of counsel, because counsel was not prepared for trial, thus forcing the appellant to take a plea).

The Lower Court helped to further the coercion that was perpetrated by defense counsel's failure to effectively review the untimely "Discovery" with the appellant. Defense counsel then forced the appellant by threat of the State Attorney seeking additional charges from the U.S. Attorney and further informing the appellant that "**you have no defense, they got you; you need to take this plea.**" The lack of effort and representation by counsel to challenge the State's case overwhelmed the appellant and forced him to accept a plea against his continued desire for a suppression hearing and trial, see **exhibits L, N, O, and V,** where defendant was informing counsel of his intent to go to trial and to prepare pre-trial motions, see **U.S. v Sanderson, 595 F.2d 1021 (5th Cir 1979)** ( Counsel's misrepresentation of material facts, withholding information "discovery" and exertion of pressure on defendant to induce guilty plea). The denial of a continuance severely prejudiced the appellant's substantial rights of due rights. In a letter dated January 20, 2004, the defendant expressed his intent to accept a plea **only** if the State dropped all charges stemming from 535 Nimitz Road, including the handgun charge and offered a plea to simple possession or attempted possession with the intent to deliver under the new laws under House Bill 210, see **exhibit W.** Barring this plea offer, the defendant expressed his intent to go to trial and informed counsel and the state of witnesses he had ready to testify on his behalf. At the January 28, 2004, Case Review, counsel again was unprepared to discuss the defendant's case with him.

The appellant never heard from counsel again until the morning of trial, February 3, 2004. Between the Final Case Review and trial day, the defense counsel never consulted with the appellant about the evidence of "Discovery," trial strategy or any

potential defense. Once more appellant requested counsel to motion the Court before a different Judge (Ridgeley) for a continuance to make himself familiar with the evidence of the case and to interview and subpoena witnesses (four witnesses were on-hand and readily available to be interviewed, see **exhibit U,** counsel promised to do this; left the holding area and came back only to offer the defendant another plea long with the threat to forward charges to the U.S. Attorney, see **Coss v Lackawanna County District Attorney, 204 F.3d 453 (3rd Cir 2000)** (Failure to subpoena certain witnesses and to interview those witnesses); **Hart v Gomez, 174 F.3d 1067 (9th Cir 1999)** (Same); **Lord v Wood, 184 F.3d 1083 (9th Cir 1999)** (Counsel's failure to investigate evidence which demonstrated his clients' factual innocence); **U.S. v Johnson, 995 F. Supp 1259 (D. Kan 1998)** (Counsel's failure to investigate and call witnesses).

The Lower Court's failure to inquire into the reasons why the appellant requested a continuance to obtain private counsel was an "**abuse of discretion"** that left the appellant helpless and crippled without an effective advocate which became even more evident when counsel appeared for trial with no strategy, no evidence, and no witnesses; but with the intentions of forcing the appellant to accept a plea. The appellant was deprived of the fundamental fairness, legality, integrity, and reliability of competent counsel in the proceedings leading to the plea and judgment of conviction. **Therefore, the unknowing, involuntary, and unintelligent made plea must be withdrawn to correct the miscarriage of justice.**

Defense counsel knew that he had just received "Discovery" on the morning of the final Case Review and had no opportunity to review such with the appellant or forward it to his client for review of the evidence against him as counsel himself notified the Court of the untimely "Discovery" but failed to request a continuance in order to use the exculpatory evidence and to properly and effectively inform the appellant of the evidence. Appointed counsel did not fulfill his responsibilities as an advocate on the appellant's behalf, thereby preventing appellant from a voluntary, knowing and intelligent choice to plead guilty. But for counsel's cumulative errors, the appellant would not have pled guilty and would have continued to insist upon going to trial where the outcome of the proceedings would have been different. The suppressed evidence speaks in favor of the appellant. Any reasonable counsel exercising due diligence and

28

skill would have proceeded effectively with this "Discovery" material without any notion to accept a plea in this case.

**V.    THE LOWER COURT ERRED WHEN IF FAILED TO GRANT
AN EVIDENTIARY HEARING AND DEFENSE COUNSEL WAS
INEFFECTIVE WHEN HE FAILED TO DISCOVER THAT
AFFIANT HAD PERJURED HIMSELF DURING THE
PRELIMINARY HEARING**

Defense counsel was ineffective when he failed to discover through the
interviewing of witnesses and testing the adversary process that the affiant had
perjured himself at the appellant's preliminary hearing.  Likewise it was an abuse of
discretion when the Lower Court failed to inquire into the State's use of perjured
testimony by the affiant (Detective Mailey), during the probable cause preliminary
hearing in May 2003, when he testified that Lori Stewart had informed police that she
had observed the appellant with "a mound of cocaine" in the residence at 535 Nimitz
Road, see **Strickland Id. and Hill v Lockhart Id.; a**s well as, **U.S. v McLaughlin,
89 F. Supp 2d 617 (E.D. PA 2000)** (Government use of perjured testimony).

The State's attorney knew before trial that Lori Stewart did not make such
statements to police concerning cocaine at 535 Nimitz Road and that the appellant
possessed this illegal substance.  An evidentiary hearing should be held to determine
the extent of prejudice suffered by the appellant.  Police used this fabricated
testimony to execute the warrantless raid at 535 Nimitz Road, where they searched
for over 4 hours without a search warrant and seized illegal evidence; see newly
discovered evidence **Rule 33.**  The appellant argues that he did not discover Stewart's
statements to the State that Detective Mailey had lied under oath about her seeing the
appellant with any drugs at this residence until after he had taken a plea and that this
newly discovered evidence should be reviewed under **Rule 61(i)(5)** for a miscarriage
of justice.

Likewise the appellant argues that this should be reviewed under ineffective
assistance of counsel along with the appellant's prior arguments in that had defense
counsel conducted an adversarial test of the State's prosecution file and interviewed
Stewart he would have known that Detective Mailey had perjured himself and used
that perjured testimony to gain probable cause against the appellant at his preliminary
hearing; as well as, forcing the defendant into accepting this unknowing,
unintelligent, and involuntary made plea.  Having that information available, the

appellant asserts that he would not have taken a plea and instead would have insisted on going to trial.

**VI. & VII.  THE LOWER COURT ERRED AND THE APPELLANT
WAS DEPRIVED OF EFFECTIVE ASSIATANCE WHEN COUNSEL
GAVE ERRONEOUS ADVICE AND MISINFORMATION ON THE
ELEMENTS OF 11 Del. C. 1447A (PFDCF) IN ORDER TO FORCE
AND COERCE APPELLANT TO ENTER INTO UNKNOWING
INVOLUNTARY, AND UNINTELLIGNET MADE PLEA.**

<u>ARGUMENT</u>

The appellant was dressing for trial without obtaining "discovery" from counsel.
Therefore appellant relied upon counsel's advice while in conference prior to trial as
counsel misinterpreted the elements of **Count 3** of the indictment, **Possession of a
Firearm during the Commission of a Felony, 11 Del. C. 1447A "PFDCF."** After
receiving "discovery" from counsel twenty five days after the plea of guilty and being
housed in Medium High Security, the appellant researched state law and substantiated
that counsel had misguided him and had manipulated him into illegally pleading to
charges, circumstances, and acts of suspected and tainted criminal behavior that is was in
fact not guilty of.

The circumstances were that police found two (2) ammunition clips while
illegally searching the Kent Budget Motel, Dover, DE., some miles away from the
residence of 535 Nimitz Road where the appellant was visiting and subsequently arrested
outside that residence and where drugs and a gun were found.  These circumstances did
not meet the elements of the charged statute to be convicted of <u>**11 Del. C. 1447A
"PFDCF."**</u>  Those elements being:

1. Must have a handgun physically accessible and available to the appellant
2. Must have dominion and control over the drugs
3. Must be involved in the on-going predicated felony that the handgun is a
   furtherance of

32

The appellant contends that counsel possessed exculpatory evidence prior to the plea that impeached the State's burden of proof that stated:

1. Appellant was seized outside the residence of 535 Nimitz Road where he was <u>visiting</u>

2. Appellant was not the tenant, did not possess any keys, have any property, or available access to this residence, as stated in the probable cause affidavit; as such, the weapon was not physically available or accessible to the appellant

3. Appellant was not involved in the on-going predicate felony of drug distribution at 535 Nimitz Road and had no dominion or control over any drugs found within the residence

4. After being searched outside for weapons and illegal substances, appellant was forced inside the residence

5. The handgun found in the residence was not registered to the appellant nor was the appellant's fingerprints found on the weapon

6. That defense counsel was provided the name of the gun owner and asked to call the owner as a witness

See Brown Jr's. sworn affidavits at exhibit **F and P.**

The appellant had maintained his innocence throughout this case against the advice of counsel that he was guilty, without ever seeing any part of the **Rule 16** "discovery." Counsel repeatedly informed appellant that he was guilty of "PFDCF" only because the two ammunition clips were found in a motel room registered in his name; this was erroneous advice, see **U.S. v Streater, 70 F.3d 1314 (D.C. Cir 1995)** (Guilty plea induced based on faulty legal advice); **Tollet v Henderson, 93, S.CT. 1602 (1973)** (Plea based on the advice received from counsel). Defense counsel never informed appellant of the essential elements to be convicted of this charge, see **U.S. v Bigman, 906 F.2d 395; Henderson v Morgan, 426 U.S. at 647; U.S. v Goodheim, 686 F.2d 776.** The advisement of counsel to plead guilty to this charge when he possessed information from the arrest report and statement of Jennifer Haass, stating that appellant had moved our of the residence in February 2003 after living at the residence for a month and the affidavit of Winfred Brown JR., informing

the State (Mr. Kriner) that the appellant had nothing to do with the illegal drugs found in his residence (535 Nimitz Road).  Counsel neglected to share this exculpatory information prior to the coerced plea, see **Hill v Lockhart**, **106 S.CT. 366 (1985).**

The appellant contends that he did not have physical or constructive possession of any drugs found inside the residence and did not own or have any firearms available, accessible or otherwise that would allow him to be convicted of this charge.  The appellant had informed counsel that the two ammunition clips were being "innocently" and mistakenly  maintained in the motel room with no illicit purpose and that the possession of those clips was strictly transitory, pursuant to **18 U.S.C.A. 922(q)(1).**  The appellant's argument to counsel was that the only had temporary possession of the ammunition clips without any intention of violating the law, see **Caldwell v State**, **58 GA App 408, 198 S.E. 793 (1938),** also see **U.S. v Mason**, **233 F.3d 619.**  The storage/possession of the ammunition clips over one mile from the arrest location did not represent a threat, bodily injury or death to anyone and further reasonable doubt existed that there was n o nexus between the possession of the ammunition clips in the motel and the on-going felonious drug activity at 535 Nimitz Road.

The appellant's guilty plea to **11 Del. C. 1447A (PFDCF)** was  not a knowing, intelligent or voluntary plea because counsel never reviewed "discovery" with the appellant or properly inform the appellant on the applicable elements of **11 Del. C. 1447A** required to attain a conviction.  In fact, the appellant argues that any competent counsel would have informed the appellant **"not"** to plead guilty to this charge.  Appellant would not have entered into the plea of guilty without counsel's threats, coercion, misadvice, and the withholding of "discovery" material, see **Hill v Lockhart, 106 S.CT. 366 (1985); Strickland v Washington, 104 S.CT. 2052 (1984).**  Counsel's deficient performance and errors deprived appellant of fundamental fairness and caused a miscarriage of justice.

There is no criminal act of "PFDCF" committed under **11 Del. C. 1447A** simply by the appellant "innocently maintaining" two ammunition clips in a motel room registered in his name.  The Lower Courts have established that the appellant was arrested outside the residence at 535 Nimitz Road and then taken inside the residence.

This conviction is only the result of counsel's misadvice and unwillingness to adversely test the prosecution case against the offense of "PFDCF." This amounted of a lack of fundamental fairness and a miscarriage of justice and requires an evidentiary hearing pursuant to **Nevarez-Diaz v U.S., 870 F.2d 417 (7th Cir 1989).** Furthermore, erroneous advice from defense counsel that appellant was guilty simply by his presence at 535 Nimitz Road at the time of police raid and the maintaining of the two ammunition clips did not fulfill his responsibility as an advocate on the defendant's behalf, thereby preventing a voluntary, knowing, and intelligent choice by appellant to plead guilty.

The appellant argues pursuant to **Criminal law 549 and Weapons 17(4)**; that absent some proof that the accused is something other than a visitor, the evidence is insufficient to support a conviction where appellant did not live in the residence and was not involved in the on-going felony of drug distribution. The element of constructive possession requires knowledge of the presence of weapons and drugs and the existence of dominion and control over them. In **Sober v Crist, 644 F.2d 807 (1981),** the Court ruled that because a guilty plea is an admission of all the elements of a formal charge, it cannot be voluntary unless appellant possesses an understanding of the law in relation to the facts which entails an understanding of the essential elements of the crime charged including the requirement of specific intent which was never discussed with the appellant by defense counsel. This deprived the appellant of constitutional requirements of effective assistance of counsel, and precluded the plea from being knowing, intelligent and voluntarily made. The error in counsel misadvising appellant on just the mere presence at a crime scene making him guilty was unreasonable, unreliable, and undermines the integrity of the proceeding leading to the judgment of conviction. The prejudice resulting from counsel's misadvice was the appellant pleading to offenses in which he was innocent and the state prosecution could not have proved guilt beyond a reasonable doubt.

The appellant argues for the purpose of appeal that the post-conviction relief **arguments VI and VII** intertwine as same subject matter in appellant's opening brief, **argument VI.**

the State (Mr. Kriner) that the appellant had nothing to do with the illegal drugs found in his residence (535 Nimitz Road). Counsel neglected to share this exculpatory information prior to the coerced plea, see **Hill v Lockhart, 106 S.CT. 366 (1985).**

The appellant contends that he did not have physical or constructive possession of any drugs found inside the residence and did not own or have any firearms available, accessible or otherwise that would allow him to be convicted of this charge. The appellant had informed counsel that the two ammunition clips were being "innocently" and mistakenly maintained in the motel room with no illicit purpose and that the possession of those clips was strictly transitory, pursuant to **18 U.S.C.A. 922(q)(1).** The appellant's argument to counsel was that the only had temporary possession of the ammunition clips without any intention of violating the law, see **Caldwell v State, 58 GA App 408, 198 S.E. 793 (1938),** also see **U.S. v Mason, 233 F.3d 619.** The storage/possession of the ammunition clips over one mile from the arrest location did not represent a threat, bodily injury or death to anyone and further reasonable doubt existed that there was n o nexus between the possession of the ammunition clips in the motel and the on-going felonious drug activity at 535 Nimitz Road.

The appellant's guilty plea to **11 Del. C. 1447A (PFDCF)** was not a knowing, intelligent or voluntary plea because counsel never reviewed "discovery" with the appellant or properly inform the appellant on the applicable elements of **11 Del. C. 1447A** required to attain a conviction. In fact, the appellant argues that any competent counsel would have informed the appellant **"not"** to plead guilty to this charge. Appellant would not have entered into the plea of guilty without counsel's threats, coercion, misadvice, and the withholding of "discovery" material, see **Hill v Lockhart, 106 S.CT. 366 (1985); Strickland v Washington, 104 S.CT. 2052 (1984).** Counsel's deficient performance and errors deprived appellant of fundamental fairness and caused a miscarriage of justice.

There is no criminal act of "PFDCF" committed under **11 Del. C. 1447A** simply by the appellant "innocently maintaining" two ammunition clips in a motel room registered in his name. The Lower Courts have established that the appellant was arrested outside the residence at 535 Nimitz Road and then taken inside the residence.

## VIII.   THE APPELLANT IS BEING HELD ILLEGALLY

### ARGUMENT

The appellant now argues that he has been held illegally at the Delaware Correctional Center since May 3, 2003 based on the preceding arguments.  That his constitutional rights have been violated and that he has suffered a fundamental fairness of Due Process under the Constitution; as well as, a miscarriage of justice.  The appellant alleges both factual and legal claims sufficient to overcome the threshold requirement of **Rule 61** in order to have received an evidentiary on these matters.  That he would not have pleaded guilty except for these constitutional violations and would instead have insisted on going to trial where he would have been found not guilty of these charges.

Little guidance is offered by **Del. Superior Court Criminal Rule 61(h)** regarding the grant of evidentiary hearings. In **U.S. v Giardino, 797 F.2d 30 (1st Cir 1986),** the Court held that a defendant's motion seeking to set aside guilty plea, on the ground that his attorney told him a lie, and that, in the absence of lie, he would not have pleaded guilty and would have insisted on trial, constituted ineffective assistance of counsel and vacated and remanded to the district court for an evidentiary hearing. Defense counsel lied to the appellant in this case in order to induce him to plea by informing the appellant that he was guilty of PFDCF simply by maintaining the two ammunition clips in Room 50 at the Kent Budget Motel.  Further, in **U.S. v Sanderson, 595 F.2d 1021 (5th Cir 1979),** the Court ruled that trial counsel's misrepresentation of material facts, withholding information, and exertion of pressure on defendant to induce a guilty plea, constitutes ineffective assistance and requires and evidentiary hearing to resolve claim.

The defendant argues that while he did not go to trial, he clearly has provided clear and factual evidence from medical records and affidavits (**see affidavit P**) that he was not the Winfred Brown living at and processing cocaine from 535 Nimitz Road in November 2002 or at any other time.  Further, "discovery" material and the statements of Winfred Brown Jr., and the **recantation** and newly discovered evidence provided by Lori Stewart were all withheld from the appellant in an effort to coerce and induce a plea.

1. Being in the state of Delaware in November 2002 as asserted in the affidavit of probable cause

2. Being involved in the illegal drug activities at 535 Nimitz Road

3. having delivered any drugs to a confidential informant from 535 Nimitz Road

The affidavit of LaTonya Brown clearly refutes the affidavit of probable cause for Room 50, line 13, "that Stewart had spent a couple of days with "Big Winnie" at Room 50, Kent Budget Motel." In fact, Stewart as described by LaTonya Brown, lived at Room 50. Brown's statement clearly indicates that Stewart had stayed in Room 50 while the appellant went to New York with his family. The manager of the motel would have verified that Stewart had her own key, paid the rent and the phone bill. It was the appellant's intent to use these witnesses present reasonable doubt as to whom the cocaine actually belonged to that was found in this room. During an effective cross-examination, the medical examiner would have been forced to testify that the cocaine found on Stewart was the same cocaine found in Room 50 and did not match any of the cocaine found on the appellant a the time of his arrest or found in the residence at 535 Nimitz Road, verifying Stewart's recantation that she had not received any drugs from the appellant while at 535 Nimitz Road on May 2, 2003.

The Lower Court in its response in denying the appellant's Rule 61, stated that it found defense counsel more creditable than the Movant.

If the Court had reviewed counsel's reply brief in conjunction with Court transcripts from January 28, 2003, the Court would have found counsel to be lying in his response versus what was in the court transcripts, see counsel's reply brief and transcripts at appendix **X.**

## CONCLUSION

As the petitioner received ineffective assistance of counsel during pre-trial stages and during the plea agreement process in violation of the **Sixth Amendment of the U.S. Constitution, Due Process and Delaware's Constitution ART I, 6&7,** the petitioner submits that his unknowing, involuntary and unintelligently made plea should be vacated

or remanded back to the Lower Courts for an evidentiary hearing accordingly with the facts and law by this Court.

Respectfully Submitted


Winfred O. Brown Sr.
SBI; 019174  Unit: V-B-1
DCC
1181 Paddock Road
Smyrna, DE 19977

APPELLANT'S OPENING BRIEF TO DELAWARE SUPREME COURT

IN THE SUPREME COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

WINFRED O. BROWN SR
    (ID. NO. 0305001486)
          Appellant,

      v                          No. 79 _____ , 2006

STATE OF DELAWARE
        Appellee.

ON APPEAL FROM THE SUPERIOR COURT
OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

---

APPELLANT'S OPENING BRIEF

---

Deputy Attorney General          Winfred O. Brown SR, Pro-Se
Department of Justice            SBI: 019174  Unit: V-D-13
102 West Water Street           DCC
Dover, DE 19904

Dated:_____ 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................I

NATURE AND STAGE OF THE PROCEEDINGS..............................IV

SUMMARY OF THE ARGUMENTS.........................................VI

STATEMENT OF FACTS..............................................VII

STANDARD AND SCOPE OF REVIEW.....................................IX

ARGUMENTS:

    I.  Lower Court erred and abused its discretion when it
        denied appellant's ineffective assistance of counsel
        claim as raised as cumulative error's as related to the
        miscarriage of justice standards..........................1

    II.  The lower court erred, the appellant was deprived of
        ineffective assistance of counsel, when counsel failed
        to challenge the material defects of the state's affi-
        davit of probable cause for a search warrant............6

    III.  The lower court erred, the appellant was denied effective
        assistance of counsel, when counsel failed to inform
        appellant of the state's suppression of exculpatory evi-
        dence prior to plea......................................17

    V.  The lower court erred when it failed to grand an eviden-
        tiary hearing on the claim that the affiant provided per-
        jured testimony during preliminary hearing..............31

    IV.  The lower court erred when it refused the appellant's
        request for continuance to retain private counsel after
        ineffective counsel had informed the court of untimely
        discovery...............................................25

VI&VII.  The lower court erred, the appellant was deprived of
        effective assistance of counsel guaranteed by the Sixth
        Amendment and Due Process, when counsel misadvised and
        misinformed on the elements of 11 Del. C. 1447A (PFDCF)
        in order to force and coerce appellant to enter into
        unknowing, involuntary and unintelligent plea..........32

    VII.  The appellant is entitled to an evidentiary hearing on
        the issues..............................................38

CONCLUSION......................................................40

TABLE OF AUTHORITIES

CASE                                                                    Page

Allen v State, 509 A.2d 87, 88 (1986) ........................
Atkinson v State, 788 A.2d 1058 (2001) .......................    17
Albury v State 351 A.2d 53 (1988) ...........................    22
Bass v State No. 396, 2002 ..................................    XI
Bender v U.S., 387 F.2d 628 (1st Cir 1967) ..................    40
Barnett v State, 691 A.2d 617 (1997) ........................    33
Berryman v Morton, 100 F.3d 1089 (3rd Cir 1996) .............    9
Bland v California, 20 F.3d 1469 (9th Cir 1994) .............    26
Brady v Maryland, 373 U.S. 83 (1963) ........................    17
Briscoe v State, 606 A.2d 103 ...............................    26
Caldwell v State 58 GA. App. 408, 198 S.E. 793 (1938) .......    35
Chapman v California, 87 S.CT. 827 (1967) ...................    8, 31
Chatom v White, 858 F.2d 1479 (11th Cir 1988) ..............    IX
Childress v State, 721 A.2d 929 (1989) ......................    34
Colman v Thompson, 501 U.S. 722 (1991) ......................    9
Coss v Lackawanna, 204 F.3d 453 (3rd Cir 2002) .............    23, 29
Cuyler v Sullivan, 100 S.CT. 1708 (1980) ...................    3
DeFoo v U.S., 223 F.3d 919 (8th Cir 2000) ..................    9
Demarest v Price, 950 F.Supp. 1432 (D.Col. 1995) ...........    4
Demby v State 695 A.2d 1131 (1997) ..........................    9
Downs v State 570 A.2d 1142 (1990) ..........................    X
E. I. Dupont de Nemours & Co. v Admiral Ins Co. 711 A.2d 45 ..   39
Ellerby v U.S., 187 F.3d 257 (2d Cir 1998) .................    23
Feddiman v State, 558 A.2d 278 (1989) ......................    3
Filmore v State 813 A.2d 1112 (Del. 2003) ..................    3
Franks v Delaware, 98 S.CT 2674 (1978) .....................    12
Fullman v State, No. 268, 1988 .............................    IX
Gannett Co. Inc v Kanapa 750 A.2d 1174 ......................    39
Gardiner v State, 567 A.2d 404 (1989) ......................    34
Hart v Gomez, 174 F.3d 1067 (9th Cir 1999) .................    29
Harris v State, 410 A.2d 500 (1979) ........................    IX
Harris v State 292 A.2d 291 (1972) .........................    38
Harris v Towers, 405 F.Supp 497 (Del 1974) .................    4
Harris v Wood, 64 F.3d 1432 (9th Cir 1995) .................    4
Henderson v Morgan, 426 U.S. at 647 ........................    34
Henry v Scully, 78 F.3d 51 (2d Cir 1996) ...................    4
Herring v Estelle, 491 F.2d 125 (5th Cir 1974) .............    11
Hill v Lockhart, 106 S.CT 366 (1984) .......................    4, 15, 18
                                                                 22, 34, 35
Hintz v Beto, 379 F.2d 937 (5th Cir 1967) ..................    27
James v Cain, 56 F.3d 662 (5th Cir 1995) ...................    4
Jones v U.S., 167 F.3d 1142 (7th Cir 1999) .................    9
Junior v U.S., 634 A.2d 411 (D.C. App 1993) ................    12
Kennedy v Maggio, 735 F.2d 269 (5th Cir 1984) ..............    11
Lawrence v State, 790 A.2d 476 (2002) ......................    XII
Leka v Portuondo, 257 F.3d 89 (2d Cir 2001) ................    20
Lilly v State, 649 A.2d 1055 (1994) ........................    20
Lord v Wood 184 F.3d 1083 (9th Cir 1999) ...................    29
MacAllister v State 807 A.2d 1119 (2002) ...................    IX
MacDonald v State 778, A.2d 1074 (2001) ....................    XI, 1, 9
Marchibroda v U.S., 82 S.CT. 510 (1962) ....................    X
Moore v US., 950 F.2d 656 (10th Cir 1991) ..................
Murray v Carrier, 106 S.CT. 2639 (1986) ....................    9

Naro v Blackburn, 597 F.2d 991 (5th Cir 1979)...................... IX
Nevarez-Diaz v U.S., 870 F.2d 417 (7th Cir 1984)................... 36
Rose v State 542 A.2d 1196 (1988)................................. 20
Rosenwald v U.S. 898 F.2d 585..................................... Appen R
Rummel v Estelle, 590 F.2d 103 (5th Cir 1979)..................... 21
Sanders v Ratelle, 21 F.3d 1446 (9th Cir 1994).................... 22
Shedon v State Del Supr., A.2d 273 (1972)......................... IX
Scott v Wainwright, 698 F.2d 427 (11th Cir 1988).................. 11
Sober v Crist, 644 F.2d 807 (1987)................................ 36
Shockley v State, 565 A.2d 1373, 1377 (1989)...................... 38

State v Delaware, Del. Supr., Lexis 86 (1986)..................... 38
State v Hamel, 634 A.2d 1272 (M.E. 1993).......................... 13
State v Hedley, 593 A.2d 576 (1990)............................... 33
State v Insley, 141 A.2d 619 (1958)............................... 
State v Webb, Del Supr., Lexis 474 (2000)......................... 18
Stokes v State, Del Supr., 402 A.2d 376, 378 (1979)............... 18
Strickland v Washington, 104 S.CT. 2052 (1984).................... 15,21,35
Tollett v Henderson, 93 S.CT. 1602 (1973)......................... 5,34
U.S. v Bigman, 906 F.2d 395....................................... 34
U.S. v Blum 65 F.3d 1436 (8th Cir 1995)........................... 26
U.S. v Brown, 739 F.3d 1136 (7th Cir 1984)........................ 
U.S. v Butt, 731 F.2d 80.......................................... XII
U.S. v Garrett, 149 F.3d 1019 (9th Cir 1998)...................... 27
U.S. v Giardino, 797 F.2d 30 (1st Cir 1986)....................... 38
U.S. v Goodheim, 686 F.2d 776..................................... 34
U.S. v Grieg, 967 F.2d 1018....................................... Appenx R
U.S. v Hammonds, 425 F.2d 597 (D.C. 1970)......................... 1
U.S. v Johnson, 995 F.Supp 1259 (D.Kan 1998)...................... 29
U.S. v Koubriti, 297 F.Supp 955 (E.D.Mich. 2004).................. 18
U.S. v Mason, 233 F.3d 619........................................ 35
U.S. v McLaughlin, 89 F.Supp. 617 (E.D.PA. 2000).................. 5,31
U.S. v Merritt, 528 F.2d 650 (7th Cir 1976)....................... 1
U.S. v Perdomo, 929 F.2d 967 (3rd Cir 1991)....................... 18
U.S. v Sanchez-Barreto, 93 F.3d 17 (1st Cir 1996)................. 14
U.S. v Sanderson, 595 F.2d 1021 (1979)............................ 28,38
U.S. v Scott, 625 F.2d 623 (5th Cir 1987)......................... 10
U.S. v Streater, 70 F.3d 1314 (D.C. Cir 1995)..................... 33
U.S. v Welty, 674 F.2d 185........................................ 26
Vale v Louisiana, 90 S.CT. 1969 (1970)............................ 33
Wade v Armontrout, 798 F.2d 304 (8th Cir 1986).................... 26,27
Washington v Smith, 48 F.Supp 1149 (E.D. Wis.1999)................ 1
Webster v State, 604 A.2d 1364 (1992)............................. XII
Weedon v State, 750 A.2d 521 (2000)............................... 38,40
Wilson v Mintzes, 761 F.2d 275 (6th Cir 1985)..................... 27
Wong Sun v U.S., 83 S.CT 407 (1963)............................... 11
Wood v Georgia, 101 S.CT. 1097 (1981)............................. 3
Zebroski v State 822 A.2d 1038, 1043 (Del 2003)...................

Rules, Constitutional Previsions, ETC.,

Superior CT. Crim R. 14...................................................... 2
Superior CT. Crim R. 16..................................................... 18,33
Superior CT. Crim R. 32(b)..................................................
Superior CT. Crim R. 33..................................................... 31
Superior CT. Crim R. 52(b)..................................................
Superior CT. Crim R. 61(i)(4)............................................... 39
Superior CT. Crim R. 61(i)(5)............................................... IX,14,
Supreme CT. R. 8............................................................
D.R.E. 608, 609............................................................. 2,41
11 Del C. 301(b)............................................................ 8
11 Del C. 303............................................................... 18,19
11 Del C. 1447A............................................................. 15,32,
18 USCA 922(q)(1)........................................................... 35
Delaware Rules for Code of Proffessional Responsibility 1.7........ Appenx
ABA Standards (Defense Functions, Rule 1.1 - 1.3)................... XII
ABA Standards (Prosecution Function, Rule 3-3.11(a)).............. 17
Delaware Constitution ART. I & 6-7.......................... 25,39
U.S. 4th Amendment.......................................................... 13
U.S. 6th Amendment.......................................................... 13,21
                                                                           23,25
U.S. 14th Amendment......................................................... 26
Criminal Law 549............................................................ 36
Weapons 17(4)............................................................... 36

## NATURE AND STAGE OF THE PROCEEDINGS

The appellant has been an inmate at the Delaware Correctional Center since May 2, 2003. On January 28, 2004, after Final Case Review the appellant represented by counsel Mr. David R. Anderson, SR. and before the Honorable Kent County Courthouse Judge James T. Vaughn JR., informed the court of the untimely disclosure of "discovery" from the state's attorney and that counsel had no prior opportunity to forward or review the "discovery" material to the appellant before accepting any plea agreement. The appellant's counsel fell short of requesting a continuance in order to properly examine "discovery" for defense strategy and suppression of evidence issues with the appellant. This was substandard representation which deprived appellant of his Sixth Amendment right to competent counsel. The appellant requested before Judge Vaughn a continuance and motion before the court for new representation of counsel, which was denied due to the length of time the case had been on the court docket sheet (the court failed to inquire into the conflict of interest). Defendant has filed a motion for transcripts for this colloquy in Superior Court. Also, see appellant's letter to counsel dated December 26, 2003 where he informs counsel of his displeasure at his failure to present "discovery" at the first case review, exhibit $\underline{Q}$. It was not until January 21, 2004, that defense counsel requested "discovery" from the state, see appendix A, exhibit E. This was seven weeks after being assigned the case and four weeks after the appellant filed his December 26th letter with counsel. On February 3, 2004 without knowledge of the evidence against appellant, and counsel's threats and coercive tactics in order to cover his lack of pre-trial investigation and unpreparedness for trial, the appellant was pressured to plead guilty to Tf. Coc. 5-50 grams, sentence: 20 years suspended after (3) yrs minimum mandatory, and PFDCF, sentence: 20 years suspended after

(3) yrs minimum mandatory and all remaining charges were Nolle Prosequi. On April 29, 2005 appellant filed a motion for Post Conviction Relief pursuant to Delaware Superior Court Criminal Rule 61. This motion was denied on January 31, 2006. A timely Notice of Appeal was made. This is the appellant's opening brief.

## SUMMARY OF THE ARGUMENTS

I.    Whether the lower court abused it's discretion when it denied appellant's ineffective assistance of counsel claims as raised as cumulative errors.

II.   Whether the lower court abused it's discretion when it failed to find that counsel had failed to effectively and timely challenge the material defects in the search warrant.

III.  Whether the lower court abused its discretion when it failed to find that counsel had failed to inform appellant of the state's suppression of exculpatory evidence.

IV.   Whether the lower court abused its discretion when failing to grant a continuance to retain private counsel after defense counsel admitted to not having reviewed "discovery" with the appellant.

V.    Whether the lower court abused its discretion when it failed to grant an evidentiary hearing on the perjured testimony

VI.VII Whether the lower court abused its discretion when it denied appellant's ineffective assistance of counsel claim that counsel misadvised the appellant on the law of 11 Del C. 1447(A), PFDCF.

VIII. Whether the lower court should have granted the appellant an evidentiary hearing.

## STATEMENT OF FACTS

On January 28, 2004, the appellant was brought before the Honorable Judge James T. Vaughn. At that time appellant's defense counsel, Mr. Anderson notified the court that he had just received "discovery" and had no opportunity to review the untimely "discovery" material, Rule 16 for any appropriate defense, nor had he submitted or reviewed the Rule 16 material to the appellant prior to the plea agreement. Mr. Anderson failed to request a continuance to allow time to review "discovery" with the appellant. The appellant then immediately requested a continuance and asked to be represented by new counsel. This request was denied without inquiry due to the length of time the case had been on the court docket sheet. Appointed counsel failed to investigate, prepare, interview witnesses, file for suppression of evidence based on illegal search and seizure, prepare alibi defense based on misidentification, submit an accurate and timely motion to supress a defective search warrant, forward or review "discovery" rule 16, etc... prior to the appellant's plea agreement. This renders the appellant's plea unknowingly, unintelligently and involuntarily made; amounting to manifest injustice. The appellant has a due process right to be adequately informed of the evidence against him and to be represented by competent counsel guaranteed by the Sixth Amendment. On February 3, 2004, appellant's counsel knowingly deprived appellant from Rule 16 "discovery" material then induced a plea through threat, coercion and deceit in order to cover his failure to file any pre-trial motions on behalf of the defense as requested by the appellant for trial. This court and the lower court should exercise its duty to correct the manifest injustice done in this case, and set aside the judgement of conviction and permit appellant to withdraw his plea under the standards of ineffective assistance of counsel.

These errors raised by appellant on counsel's deficient perform-ance were not merely procedural, but substantially infringes upon appellant's constitutional Right to Due Process of Law, rendering appellant's plea involuntary. It is appellant's position that the denial of appellant's Rule 61 petition was error and Abuse of Dis-cretion. This is appellant's opening brief.

VIII

## STANDARD AND SCOPE OF REVIEW

The Court will review a lower courts denial of Postconviction Relief, Rule 61, under an Abuse of Discretion Standard; Shedon v State, Del. Supr, 291 A.2d 273 (1972); Harris v State, Del. Supr., 410 A.2d 500 (1979). To the extent the errors implicate questions of Law, however, the Court will exercise de novo review; McAllister v State 807 A.2d 1119, 1123 (Del. 2002). Moreover, it has been procedurally established that if a motion for withdrawal of plea is filed anytime after the imposition of sentence, a plea might be set-aside only by motion pursuant to Rule 61. Therefore, the appellant has demonstrated "prejudice amounting to manifest injustice" under Rule 61, whereby this court should exercise its duty to correct the maniest injustice done in this case and set-aside the judgement of conviction and permit him to withdraw his plea, alleging ineffective assistance of counsel. Defendant must establish that his counsel's representation fell below an objective standard of reasonableness, and thatt there is a reasonable probability that, but for counsel's errors, he would not have pled guilty but would have insisted on going to trial where the outcome of the proceedings would have been different; Hill v Lockhart, 106 S.Ct. 366 (1985); Albury v State, 551 A.2d 53 (1988); citing Strickland v Washington, 104 S.Ct. 2052.

A defendant is bound by his signed statement on the guilty plea form absent clear and convincing evidence to the contrary, Fullman v State, Del. Supr., No 268, 1988, (Christie C.J. order February 22, 1989), where specific acts and ommissions of his defense counsel, prior to defendant's actual plea hearing, clearly signaled a constitutional deficiency, see and compare Chatom v White, 858 F.2d 1479 (11th Cir 1988); Naro v Blackburn, 597 F.2d 991 (5th Cir 1979).

The standard and scope of review is a mixed question of law and fact to the extent it is legal.  This Court must review the trial court's determinations for errors in formulating or applying legal precepts.  To the extent the court's legal decision to deny Postconviction Relief, Rule 61 is based on its own factual findings, it is reviewable to determine whether there was sufficient evidence to support the findings, and to determine whether those findings were the result of a logical and orderly deductive process, <u>Downs v State</u>, 570 A.2d 1142, 1144 (Del 1990); Superior Court Rule 52(b) and Supreme Court Rule 8, applicable review, see also <u>Marchibroda v United States</u>, 82 S.Ct. 510 (1962) (A plea of guilty, if induced by "promises" or threats, which deprive it of the character of a voluntary act "is void and open to collateral attack").  The lower court's seperate review of appellant's Postconviction Relief, Rule 61 (Argument I), ineffective assistance of counsel is the initial cause for relief against procedural bars of Rule 61, and the prejudice suffered as a result of counsel's deficient performance were also raised in nexus with the appellant's claims in grounds II-VI.  All these Postconviction claims were raised under ineffective assistance of counsel as relating to a miscarriage of justice, <u>Rule 61(i)(5)</u>.  Therefore 61(i)(3) should not have been used to bar relief to Grounds II-VI.

The lower court erred of law and facts in its analysis of the second prong of <u>Strickland</u>, that appellant <u>had to establish that the results of a trial would have to have been his acquittal</u>.  The appellant challenged the guilty plea as not being knowingly and voluntarily made and only needed to show that but counsel's errors, he would not have taken a plea, but insisted on going to trial <u>where the outcome of the proceedings would have been different</u>.  Appellant has established <u>concrete</u> allegations which clearly state his attorney misadvised on the

X

Law 1447(A) and coerced him to plea without allowing appellant to review "Discovery" first. Under the standards of Hill v Lockhart, 731 F.2d 568 (8th Cir 1989), and 106 S.Ct. 366 (1985), Brown does not have to show, had he gone to trial that he would have been acquitted.

The lower court erred of law and fact in its analysis under the standards of withdrawal of a guilty plea through ineffective assistance of counsel. It is a miscarriage of justice, Rule 61(i)(5) to substantiate a plea of guilty as knowingly and voluntarily made when counsel has informed the court of untimely "Discovery" and that he has not reviewed or discussed its findings with the appellant before a guilty plea, see transcripts from January 28, 2004. This substantiates that the appellant was not properly informed of the evidence against him or in his favor in order to make a knowing or voluntary plea. This violates the appellant's Sixth Amendment and Due Process Rights and thus questions the validity of the acceptance of his initial plea offer as to whether it was knowingly and voluntarily made. Since defendant has a right to effective assistance of counsel at every stage of the proceedings, to the extent that defendant contends that the thrust of his claims are based primarily on errors of counsel failing to provide "Discovery" materials, misadvise on the applicable elements of the offenses, and a lack of, and untimely and inaccurate Pre-trial motions while applying threats and coercion to get the appellant to plea, clearly signals constitutional deficiency. In MacDonald v State, 778 A.2d 1074, this Court held that "justice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of an agreement cannot be barred by the agreement itself-the very product of the alleged ineffectiveness, see also Bass v Delaware, No. 396, 2002.

The appellant is entitled to competent counsel, Del. Const. Art. I & 7 and the actions and legal omissions of counsel before or during the initial plea agreement was a miscarriage of justice and violated appel-

lant's Due Process of Law, see <u>U.S. v Butt</u>, 731 F.2d at 80 (state-
ments made at plea hearing are presumed truthful, <u>but presumption can
be overcome by credible reasons for departing from those earlier state-
ments,</u> see ABA Standards of Defense Functions:

Rule 1.1(d)  It is unprofessional conduct for a lawyer to misrep-
resent matters of fact or law to the court.

Rule 1.1  Competence, Representation requires the legal knowledge,
skill, thoroughness and preparation reasonably necessary for the repre-
sentation.

Rule 1.3  Diligence, A lawyer shall act with reasonable diligence
and promptness in representing a clinet.

The appellant raises all claims of constitutional violations that
undermined the fundamental legality, reliability, integrity or fair-
ness of the proceedings leading to the judgement of conviction pur-
suant to subdivision (i)(5) of Rule 61, see <u>Webster v State</u>, 604 A.2d
1364 (1992); <u>Lawrence v State</u>, 790 A.2d 476 (2002) ineffective assist-
ance of counsel establishes a colorable claim, <u>61(i)(5).</u>

XII

I.  THE LOWER COURT ERRED AND ABUSED ITS DISCRETION
WHEN IT DENIED APPELLANT'S INEFFECTIVE ASSISTANCE
OF COUNSEL CLAIMS AS RAISED AS CUMULATIVE ERRORS
AS RELATED TO THE MISCARRIAGE OF JUSTICE STANDARDS.

The appellant raised in his first argument to the lower court in
his Postconviction Relief, Rule 61, that counsel committed multiple
acts and omissions which taken as a whole amounted to ineffective
assistance.  The lower court failed to examine each error individually,
and consider their cumulative effects in light of the Totality of Cir-
cumstances; Strickland, test, see also U.S. v Merrit, 528 F.2d 650,
651 (7th Cir 1976)(per curiam), U.S. v Hammonds, 425 F.2d 597, 604
(D.C. 1970).

Furthermore, looking at the alleged errors as a whole, the appel-
lant overcame the presumption that his counsel provided reasonable
professional assistance, Strickland, 104 S.Ct 2065; and had established
that counsel was in fact incompetent.  However, looking at the Pre-
trial proceedings without "Discovery" material, no investigation, or
interview of defense or state witnesses, failing to request for con-
tinuance once he received untimely "Discovery" days before trial, mis-
advice on the law relating to 11 Del. C. 1447(A), lack of Pre-Trial
motions, etc..., and coercion so undermined the proper function of the
adversarial process that the plea of guilty cannot be relied upon as
having produced a just result; see MacDonald v State Id.  This required
an evidentiary hearing to resolve the ineffective assistance of coun-
sel claims, see Washington v Smith, 48 F. Supp. 2d 1149 (E.D. Wis 1999),
see also Bass v State Id.  (Counsel's cummulative errors and omissions
by failing to interview alibi witnesses, see appendix A, exhibit P ,
subpoenae alibi witnesses deprived the defendant of his Due Process
Rights).

Further, defense counsel refused to file a Motion For Severance

1

after it was factually established that the appellant was not the tenant nor did he reside at 535 Nimitz Road. This was prejudicial and placed the appellant at a disadvantage to defend against 14 charges rather than 7 charges existing from the Kent Budget Motel (KBM) room registered in his name. Superior Court Criminal Rule 14 provides relief from prejudicial joinder of offenses or defendants. It is extremely likely that a Motion For Severance would have been granted given the appellant's exculpatory statements provided by Jennifer Haass and Winfred Brown JR. Both stated that Winfred Brown SR did not live at the residence nor did he possess knowledge of the location of the handgun in the residence or that drugs were in the house on the day of the warrantless police raid. Further, if counsel had interviewed Lori Stewart or attained a copy of her statement in-which she recanted her allegations that she received cocaine from Winfred Brown Sr while at 535 Nimitz Road on May 2, 2003 and that the Affiant (Detective Mailey) had lied at the defendant's Preliminary Hearing when he stated that Stewart had informed police that she observed the defendant with the 51 grams of cocaine while at the residence, the court would surely have granted a Severance. Had Counsel filed a Motion For Severance the appellant would have proceeded to trial. See exhibit Q for enhanced argument.

Defense Counsel then failed to request DRE 608 and 609 Evidence Hearings on state witnesses Lori Stewart and Jennifer Haass who were not credible or of good character, having lengthy felony criminal convictions, (cummulative error by counsel).

Defense Counsel also failed to report the Conflict of Interest where he represented Lisa Moore (on a seperate unrelated criminal matter) who was a key alibi witness for the defendant. Counsel informed the appellant on the morning of trial that he had a possible conflict

of interest and when asked by the appellant to inform the court, counsel responded, "don't worry about it, you need to take the plea, they got you." Counsel failed to meet any of the rules of conflict resolution as required under the Professional Conduct of DRA; see Wood v Georgia, 101 S.Ct. 1097 (1981); Cuyler v Sullivan, 100 S.Ct. 1708 (1980) (Conflict of Interest), see also appendix A, exhibit R .

Further, appellant requested counsel to motion the Court for Jury Voire Dire on "Racial Prejudice", see opening brief at exhibit L . The appellant is African American and was intimately involved with at least five WHITE women asked to be subpoenaed as witnesses. The appellant also raised significant concerns about:

a. jury members who may have had family members addicted to or suffer a drug overdose

b. victims of violent or drug related crimes

The appellant raised valid concerns and argued to counsel case law, Feddiman v State, 558 A.2d 278, 282-83 (Del. 1989) stating that Article I & 7 Del, Const., "Essential Demands of Fairness", also Filmore v State, 813 A.2d 1112 (Del. 2003), inwhich counsel must request Voire Dire questions. On February 3, 2004 Defense Counsel filed "Motion for Special Voire Dire questions and states at the end of motion, "Respectfully request that the jury panel be asked NO special Voire Dire questions", see appendix A, exhibit M . Why would counsel submit such a request which directly contradicts the defendant's desires? This is just another example of the systematic approach counsel used to force and coerce the appellant into accepting a plea. This was not a tactical or strategic decision in support of the appellant's defense; see enhanced argument at appendix A, exhibit S .

Defense Counsel then failed to file a "Motion in Limine" to exclude a police officer's "expert" testimony on intent, see page 57, appendix A,

3

opening brief.

Next counsel failed to file a "Motion to Suppress" the police interviews of Lori Stewart and Lawrence Jeff after being informed that both had been interrogated while under the influence of crack cocaine and in the case of Stewart, she was also intoxicated, see page 47, appendix A, opening brief.

Defense counsel then failed to file (after the appellant's request) a "Motion to Suppress" for Illegal Search and Seizure after it became abundantly clear *THAT POLICE CONDUCTED A WARRANTLESS RAID AND* to counsel that the defendant was the sole in- *SEARCHED 535 NIMITZ ROAD FOR OVER 4½ HOURS WITH NO EXIGENT CIRCUMSTANCES,* dividual accused of living at and processing cocaine for sale at 535 Nimitz Road, see full argument in opening brief at appendix A, pages 38- 49 as well as the defendant's letter to counsel dated December 26, 2003 where he submitted a 15-page suppression briefing detailing the warrantless raid at 535 Nimitz Road, appendix A, exhibit "O".

The appellant moves this Court to review Argument I in his opening brief for Postconviction Relief and cites DeMarest v Price, 905 F. Supp. 1432 (D.Col. 1995) (Cummulative Errors); Henry v Scully, F.3d 51 (2nd Cir 1996) (Cummulative Errors); Harris By and Through Ramseyer,v Wood, 64 F.3d 1432 (9th Cir 1995) (Cummulative Errors and Omissions in viola- tion of the precepts of Strickland); Harris v Towers, 405 F. Supp 497 (D. Del. 1974) (Cummulative Errors and omissions deprived the defendant of Due Process).

The appellant has submitted to the lower court a preponderance of evidence that altered the outcome of a knowing and voluntarily made plea; see James v Cain, 56 F.3d 662 (5th Cir 1995) (Preponderance of Evidence). Based upon the facts known to counsel and the rules of law and procedures prior to his misadvice and withholding of exculpatory "Discovery" material, counsel failed to invoke the procedural and substantial safeguards that distinguish the state's system of justice.

4

A serious risk of injustice infects the plea agreement itself. Had counsel properly advised appellant on the elements of law 1447(A); provided "Discovery" prior to the plea for the appellant's review, interview alibi witnesses, raised Misidentification Defense, interviewed other defense witnesses, suppressed evidence seized illegally and investigated the prosecution File, etc...; the appellant would have insisted on going to trial where the outcome of the proceedings would have been different. See Hill v Lockhart, 877 F.2d 698 (8th Cir 1989) (Result of plea process would have been different), Tollet v Henderson, 93 S.Ct. 1602 (1973).

The appellant has shown that counsel's actions, inactions and omissions cummulatively fell below an objective standard of reasonableness and but for counsel's withholding exculpatory material (Discovery) and other coerced errors, appellant would have proceeded to trial based upon the elements of the offenses, Zebroski v State, 822 A.2d 1038, 1043 (Del. 2003). Based upon appellant's abundant and clear showing of cummulative errors shown in his Postconviction Relief, Rule 61 at argument I and subsequent exhibits, an evidentiary hearing should have been held to the extent that the appellant was prejudiced, see U.S. v McLaughlin, 89 F. Supp. 2d 617 (E.D. PA 2000) (Evidentiary Hearing). The lower court erred of law and misapplied the standards of Hill Supra., given the facts and evidence that substantiated the ineffective assistance of counsel claims.

II.  THE LOWER COURT ERRED AND THE APPELLANT
WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF
COUNSEL, WHEN COUNSEL FAILED TO CHALL-
ENGE THE MATERIAL DEFECT'S OF THE STATE'S
AFFIDAVIT OF PROBABLE CAUSE FOR A
SEARCH WARRANT.

The appellant contends that counsel fell below reasonable and

competent representation as required by the Sixth Amendment when

counsel failed to adversarily test the state's case based upon the

false material allegations in the search warrant of probable cause,

which states the appellant was the primary tenant and property owner

of two vehicles parked at 535 Nimitz Road, Dover, DE, see appellant's

postconviction relief, appendix A, argument II, pages 61-70, and

exhibit D, Defense Counsel's untimely and inaccurate Motion to Sup-

press evidence and hold a "Flowers Hearing", inpart was not the

meritorious issue presented to counsel by appellant during the pre-

trial stages. After filing of Defense motion to suppress evidence,

on the day of trial, defense counsel backed out of applicable issues

raised and supported the request for suppression by stating "the

defense has no case, the state got you and you should take this plea

because there are no defects in the search warrant," "that the

Motion was filed untimely and if you persist on going to trial, the

state is going to forward your case to the U.S. Attorney for charges

of weapon violations." Defense counsel admitted to the latter in his

affidavit but attempted to inform the court that the state's attorney

had personally informed the defendant of his intent. Based upon this

misadvice from counsel and because the appellant had never received

or been allowed to review any disclosure of "Discovery", nor had

counsel ever discussed such "Discovery" information with the appellant

prior to the plea agreement, the appellant was forced to accept a plea,

see postconviction relief appendix A, exhibit A.

The facts contained in the "Discovery" material were received from Defense Counsel on February 28, 2004, after appellant's coerced and UNinformed plea. Had counsel continued his obligation to test the reasonable doubt of the state's case through an affirmative defense established from the affidavit of probable cause to search and statements of witnesses that Winfred Brown SR, DOB 6-21-57, was innocent and contrary to the search warrants affidavit, was not a tenant of 535 Nimitz Road, but only visiting his son, Winfred Brown JR.

In September 2002, evidence clearly establishes that Winfred Brown SR was home in Hopewell, Virginia, under severe medical care from a car accident which left him bedridden through December 2002, exhibit I, Clinic Therapy Documentation; contrary to the police placing Brown SR in Delaware processing cocaine for sale. See affidavit's from other alibi witnesses the appellant had asked counsel to interview and subpoenae at exhibit P.

It was objectively unreasonable for counsel to fail to investigate and interview the witnesses who gave police statements during arrest; see Postconviction Relief, appendix A, exhibit C, which states:

At No. 28   "That also found inside of 535 Nimitz Road was business documents and paperwork belonging to "Winfred Brown JR."

(an affirmative defense to be used by competent counsel that substantiates the misidentification between Winfred Sr and Winfred JR., as the tenant of 535 Nimitz Road contradicts the search warrants probable cause, even reasonable counsel can ascertain that if Brown SR did not reside at this residence, how can the police search or charge him for illegal substances found therein. The record clearly reflects that Brown Sr was arrested outside the residence and that no personal belongings of his were found in the residence.)

At No. 30    Statements by Jennifer Haass who resided at the residence, "that Brown SR (father of Brown JR) resided with them for a few months (actual timeframe, January 16 - February 16 2003) then moved out and he would return occasionally to visit with them.

Haass also informed police that it was Winfred JR who had lived with her at the residence since July 2002. Even today the state remains confused in their identification and the cases of Winfred SR and JR as evidenced by their letter to the court dated 10-04-05, exhibit I.

Defense Counsel possessed this information prior to introducing appellant to a plea even though there was evidence of reasonable doubt, 11 Del. C. 301 (b). Had counsel pressed forward with this information contesting the state's case during a sufficient suppression hearing through an adverserial process it is highly probable that the case would have been dismissed, see Chapman v California, 87 S.CT. 827-28 (1967) (Right to counsel is so fundamental to the adverserial system that its depravation can never be deemed harmless), also see 11 Del. C. 303 (Credible evidence to support defense).

A further investigation by defense counsel would have revealed that Winfred Brown SR was the only suspect named as the owner of two vehicles and the sole tenant of 535 Nimitz Road, where Brown Sr possessed no keys to the residence and no other evidence connected Brown SR, as living therein. The appellant requested an affirmative defense through misidentification between father and son and defense counsel passed over this impeachable and favorable evidence. This was not a tactical or strategic decision which benefited in the best interest of the appellant. Through misadvice and the failure to inform appellant by submitting and reviewing "Discovery" prior to trial or plea inorder for appellant to properly evaluate the evidence against

him, renders the plea as unknowing and involuntarily made and consti-
tutes ineffective assistance of counsel, see Berryman v Morton, 100
F.3d 1089, 1096 (3rd Cir 1996) (Strategy Unreasonable), also see
postconviction relief, appendix A, exhibit F, affidavit from Winfred
Brown JR.

The appellant suffered an adverserial breakdown through the
deficient performance of counsel.  The direct consequence of counsel's
misadvice and withholding of "Discovery" until after the plea, preju-
diced appellant's ability to review all evidence against him, which
allowed the state prosecution to obtain a conviction on factual
defective and inadmissable evidence as the probable cause for search
relied upon misidentification, moves this court to vacate the guilty
plea; see Murray v Carrier, 106 S.CT 2639, 2649 (1986); Colman v
Thompson, 501 U.S. 722, 750 (1991).  The appellant was not given the
opportunity to examine or discuss the "Discovery" evidence against
him.  This violated Due Process of law, see Demby v State, 695 A.2d
at 1131-1133 (1997); MacDonald v State, 778 A.2d 1064 (Del. 2004)
citing DeFoo v U.S., 223 F.3d 919, 923-24 (8th Cir 2000) Quoting,
Jones v U.S., 167 F.3d 1142, 1145 (7th Cir 1999).  The legality of
the search was improper, for Winfred Brown SR had no privacy interest
in the residence and the search of 535 Nimitz Road based upon the
warrant requirements misidentifying the appellant as the tenant were
false and unsupported allegations making the search of this residence
illegal under the assumption that the individual Winfred Brown SR
resided at 535 Nimitz Road.  The appellant notified defense counsel
by letter of all the defects he had found in the affidavit of prob-
able cause in July 2004 and never heard from counsel again, see
appendix A, exhibit K.  The appellant now makes a colorable claim
that undermines the the fundamental legality, integrity, reliability,
and fairness in submitting an affidavit of probable cause that was

9

defective, the resulting warrantless search of a residence not rented by or resided in by Winfred Brown SR and the subsequent withholding of "Discovery" and other exculpable evidence, see U.S. v Scott, 625 F.2d 623 (5th Cir 1981) (A conviction on a guilty plea that is entered solely as a result of faulty legal advice and information is a miscarriage of Justice.)

Had counsel properly challenged this illegal arrest and search and seizure of 535 Nimitz Road through the misidentification of Winfred Brown SR, as the tenant of 535 Nimitz Road, the misidentification of the appellant as the tenant would have been a potential affirmative defense to the search requirements and crimes charged. The misidentification defense would have succeeded at the Suppression of evidence hearing that the defective search warrant was an illegal arrest and conviction.

There is reasonable probability had counsel challenged the misidentification of Winfred Brown SR and that it was his son, Winfred Brown JR who was the sole renter along with Jennifer Haass of 535 Nimitz Road, that an accurate and timely motion to suppress based on a defective affidavit of probable cause and or an illegal search and seizure would have resulted in a favorable outcome and dismissal of those charges existing from the search of the residence as well as the Kent Budget Motel where police also entered the appellant's room without permission or a search warrant. These circumstances and others in this case rested on the intent of Brown Sr not to plead guilty and proceed to trial, before defense counsel's failure to turn over "Discovery", failure to provide a misidentification defense, and interview and subpoenae witnesses, see the sworn affidavit of Winfred Brown JR, appendix A, exhibit F of postconviction relief.

Phillip Myers VS Frank Gillis

NO. 97-1750

US Court of Appeals, Third Circuit

142 F. 3d 664 (3rd CIR 1998)

Court of appeals held that [1] Defense Counsels' advice regarding parole eligibility constituted deficient performance, and [2] Counsels' deficient performance prejudiced defendant.

The movant argues that he has established ineffective assistance and resulting prejudice in that defense Counsel informed him he was in fact guilty of PFDCF ~~Reading~~ only because 2 ammunition clips assumed to ~~belonging to~~ ~~a gun found in~~ were found in a motel room, deputys in the defendants name three miles away from his son's residence where a handgun was found. The

Page 5

last para

The movant argues that the cumulative errors outlined in their fact represent a miscarriage of justice and that he has presented a colorable claim on his behalf

The Court must take judicial notice that appellant never had access to Rule 16 "Discovery" material until twenty five days after coerced plea of guilty, inwhich appellant was not appropriately informed to make a conscious choice of whether to take a plea....see appendix A, exhibit  J  ; defense counsel's letter and disclosure of "Discovery" to appellant on February 28, 2004. Appellant pleaded on February 3, 2004; see Scott v Wainwright, 698 F.2d 427 (11th Cir 1983) (Defendant must receive accurate advice from counsel before pleading guilty); Herring v Estelle, 491 F.2d 125 (5th Cir 1974), and Kennedy v Maggio, 735 F.2d 269 (5th Cir 1984). Without appellant's review and possession of "Discovery" material, he relied upon counsel's unreasonable representation which consisted of withholding "Discovery", failing to interview and subpoenae witnesses, an untimely and inaccurate Motion to Suppress and misadvise on the laws governing the elements of 11 Del. C. 1447(A), etc...

The appellant argues that defense counsel should have investigated the material omissions and misidentification of Winfred Brown SR as actually being Winfred Brown Brown JR as the renter of the residence at 535 Nimitz Road and the owner of the two (2) Ford Explorers as being matterailly defective. Police reported in the affidavit that the vehicle Winfred Brown Jr drove to the residence on May 2, 2003 had a Virginia license plate on it. Probable cause did not exist to search a residence not rented or inhabited by Winfred Brown SR as stated in the defective affidavit of probable cause for the search warrant. This caused a miscarriage of justice and evidence seized from the residence must be deemed as "Fruits of the Poisinous Tree", see Wong Sun v U.S., 83 S.CT 407 (1963). See appellant's postconviction relief at page 38-40 arguing the failure of defense counsel to file a timely and accurate Motion to Suppress evidence, see page 38 but also pages 35 through 46.

START HERE

11

The appellant had no possessory interest in the items seized or a legitimate expectation of privacy in the area to be searched because he was not the tenant or lessee of the property and further the police misidentification of the appellant as being his son, who has the same name; the difference being SR v JR and dates of birth, 6-21-57 v 9-19-74 respectively. A rational inference from the facts contained within the probable cause for search warrant indicated Winfred O. Brown SR was the sole tenant and lessee of the property was false material contained in the affidavit and violated the appellant's Fourth Amendment rights when police illegally charged and arrested him as the tenant. The state cannot have it both ways; either the appellant did not have a legitimate expectation of privacy or he did as claimed in the affidavit of probable cause. In Junior v U.S. 634 A.2d 411 (D.C. App 1993) the court ruled that an evidentiary hearing was required to determine whether defendant had a protected interest in house and, thus, whether defendant received ineffective assistance of counsel from failure to seek suppression of evidence stemming from warrantless seizure. The appellant had steadfastly requested and provided counsel documentation detailing a warrantless raid that continued for over 4 hours before a search warrant was provided.

The appellant asks how can he be charged and arrested for the search of a residential property that he is not a tenant thereof. There were reasonable circumstances which competent counsel should have impeached including the affidavit supporting the search warrant; see Franks v Delaware, 98 S.CT 2674 (1978). A criminal defendant is entitled to a Franks Hearing on legality of search warrant when he makes a substantial preliminary showing that affidavit supporting search warrant included intentional and knowing

misstatements made in reckless disregard for the truth, and that
misstatements were necessary for finding of probable cause - State
v Hamel, 634 A.2d 1272 (Me 1993). The defendant is not required
to come forward with preponderance of evidence in his favor prior
to hearing (U.S.C.A. Const Amend 4) but has done so in an effort
to show this court that the affidavit of probable cause was submit-
ted to intentionally mislead the magistrate first and further when
the state prosecutor became aware of these false allegations, he
furthered this miscarriage of justice by withholding exculpatory
material. Without reviewing "discovery" material, there was no
opportunity for the defendant to properly participate in a Franks
Hearing. As stated previously, defense counsel submitted an un-
timely and inaccurate motion on January 30, 2004 without review-
ing "discovery" or consulting with the appellant then informed the
appellant on the morning of trial that the court probably would
not hear the motion because it was filed untimely and was essen-
tially meritless; and further that if defendant proceeded, the
state would refer weapons charges to the U.S. Attorney. Defense
counsel was in possession of exculpable information. His failure
to challenge the state's case with this evidence in appellant's
favor was a miscarriage of justice and deprived appellant of his
Sixth Amendment right to competent counsel and the adverserial
process against the prosecutions case. Had counsel submitted the
the Rule 16 "discovery" before the plea, it would have informed of
the defective and false material in the affidavit of probable
cause for the search warrant at both 535 Nimitz Road and the Kent
Budget Motel, see postconviction relief exhibits A,F,G and H.
This information represents reasonable probability of a different
outcome as appellant would not have pled guilty but would have in-
sisted on going to trial with this information.

The appellant was prejudiced by counsel's deliberate withholding of this information in the "discovery" until after appellant had been coerced, see U.S. v Sanchez-Barreto, 93 F.3d 17 (1st Cir 1996) (Defense counsel coerced defendant); Moore v U.S. 950 F.2d 656 (10th Cir 1991) (Coercion by counsel or prosecutor to induce a guilty plea renders the plea involuntary).  Defendant being uniformed of he exculpatory evidence in counsel's possession renders appellant's plea unknowing and involuntarily made.  But for counsel's errors, appellant would not have pled guilty.  The results of the proceedings of a suppression hearing on the defective affidavit for search warrant was the sole basis of misidentification and a miscarriage of justice which undermines the reliability, integrity and fairness of the proceedings leading to the judgement of conviction, 61(i)(5).

In light of the circumstances of established misidentification between appellant and his son, Winfred Brown JR, DOB: 9-19-74 as the tenant of 535 Nimitz Road, Dover, DE, contrary to the affidavit of probable cause to search this residence makes this affidavit materially defective.  A competent, skilled and diligent counsel would have argued that similar information contained in the search warrant, police reports, other "discovery" material and upon appellant's information that he did not stay at this residence in conjunction with police statement from Jennifer Haass (see postconviction relief appendix A, exhibit C, at No. 30; and from Winfred Brown JR to Attorney General on January 29, 2004, postconviction Relief, exhibit F) would have argued that this information exculpates the appellant.  Any competent counsel would have affirmatively used this information of reasonable doubt to bring the prosecution's case to bare.  Counsel gave the appellant the impression that because he was present at he crime scene, he was guilty and should take the plea,

denying appellant a presumption of innocence, failing to inform
the appellant that the state had the burden of proving appellant's
guilt. Counsel did not consider investigating the prosecution's
case file. The file included a statement made by Winfred Brown JR
on January 29, 2004, that clearly indicated Winfred Brown SR was
not a tenant at 535 Nimitz Road and had no knowledge of drugs in
the residence or the location of the handgun found in the residence,
see postconviction relief, exhibit F, casting doubt on the events
as portrayed in the affidavit for a serach warrant. This was
essentially the same information the appellant provided counsel
prior to his coerced plea. Further the file included Lori Stewart's
statements that she had lied about receiving drugs from the appel-
lant while at 535 Nimitz Road on May 2, 2003 and that Detective
Mailey had lied when he informed the court at the appellant's pre-
liminary hearing that Stewart had informed police that she observed
the appellant with the 51 grams of cocaine found in the basement
ceiling. Defense counsel's investigation fell short of what a
reasonable competent attorney would have done with the exculpatory
information as appellant maintained his innocence of owning or
using a gun to sell drugs from 535 Nimitz Road. The prejudice
that resulted from counsel's failures and inaction forced the
appellant to plea to the offense 11 Del. C. 1447A which he was not
guilty of by law thus making the appellant's plea an unknowing and
unintelligent act, see McMann v Richardson, 90 S.CT 1441 (1970);
Strickland v Washington, 104 S.CT. 2052 (1984); Hill v Lockhart,
731 F.2d 568, 572 (8th Cir 1984). Defense counsel's cavalier
attitude that his job did not begin until trial, his active nego-
tiations with the state regardless of what the evidence indicated,
misadvising the appellant and then coercing him to take a plea all
amounted to ineffective assistance and severely prejudiced the appel-

lant. Counsel did not fulfill his responsibility as an advocate
on appellant's behalf, thereby preventing a voluntary, knowing and
intelligent choice by the appellant to plead guilty. But for
counsel's cumulative errors, the appellant woul not have pled
guilty but would have insisted on going to trial where the out-
come of the proceedings would have been different. See appellant's
letter to counsel on January 25, 2004 before his plea of guilty
requesting "Motion to Suppress" the illegal search which went un-
answered, exhibit "N".

III.    THE LOWER COURT ERRED AND THE APPELLANT
        WAS DENIED EFFECTIVE ASSISTANCE OF
        COUNSEL, WHEN COUNSEL FAILED TO INFORM
        APPELLANT OF THE STATE'S PROSECUTION'S
        SUPPRESSION OF EXCULPABLE EVIDENCE PRIOR
        TO PLEA.

## Argument

As a matter of state and federal Due Process the state cannot suppress evidence favorable evidence to a defendant if it is material to guilt or punishment, see Atkinson v State, 788 A.2d 1058, 1062 (Del 2001) (citing Brady v Maryland, 373 U.S. 83, 87 (1963). As indicated by the Supreme Court in Brady, the evidence must be "material" in order to implicate a defendant's due process rights. The Brady rule requires prosecutor's to disclose evidence that is material and favorable to the defendant inorder to comply with the Due Process Clause. Further, a plea agreement cannot be deemed intelligent and voluntary if entered without knowledge of material information withheld by the prosecution applies with equal force to plea agreements, see ABA standards for the prosecution's function, 3-3.11, Disclosure of Evidence by the Prosecutor.

A prosecutor should not intentionally fail to make timely disclosure to the defense. The disclosure should be made at the earliest feasible opportunity of he existence of all evidence or information which tends to negate the guilt of the accused or mitigate the offense charged or which would tend to reduce the punishment of the accused.

The appellant's Due Process right of "Fundamental Fairness" to receive all exculpatory material timely and prior to a plea agreement, only then substantiates the standards of a plea as being knowingly and voluntarily made. But without being informed of exculpatory statements made by two critical witnesses (Winfred Brown JR and Lori Stewart) establishes ineffective assistance of

counsel and misconduct by the prosecution, see Hill v Lockhart, 106 S.CT. 366 (1985). See Postconviction Relief, appendix A, exhibits E and F, and untimely "discovery from defense counsel at exhibit J.

In the analysis of a Brady issue, the court must determine the existence of the following elements: 1) the prosecution must suppress or withhold evidence; 2) the withheld evidence must be material to the defense, see U.S. v Perdomo,929 F.2d 967 (3rd Cir 1991); State v Webb, 2000 Del Supr Lexis 474 (Super CT 2000); Stokes v State, Del Supr. 402 A.2d 376, 378 (1979); U.S. v Koubriti, 297 F. Supp. 2 955 (E.D. Mich 2004).

The information of the state's suppression of exculpatory evidence was only discovered after defense counsel coerced and threatened appellant to plea against his better judgement without being properly informed through Discovery Rule 16, Material Disclosure. The state's prosecution certainly has suppressed exculpatory material favorable to the appellant prior to a guilty plea. This exculpatory material came from two critical witnesses that related favorable information to the Deputy Attorney General, Mr. Kriner who in turn suppressed this very important evidence that would have negated the guilt of the appellant and the charges against him,  see exhibit F and J.

The appellant's son and alleged co-defendant, Winfred Brown JR, DOB: 9-19-74, was the tenant who resided at 535 Nimitz Road and the owner of the two vehicles alleged to be owned by the appellant in the affidavit of probable cause for search warrant. Winfred Brown JR informed State Attorney Kriner that Winfred Brown SR did not reside at the residence; did not possess or have dominion or control over any drugs found inside the residence, did not own or know the loca-

tion of the handgun found in the residence; and did not own the ~~two~~ WB

two vehicles mentioned in the search warrant while in a meeting

with Mr Kriner and Detective Mailey the affiant on January 29,

2004, see postconviction relief 61 exhibits F and P, affidavits of

Winfred Brown JR.

The statement of Brown JR to state attorney Kriner was excul-

patory material and an affirmative defense, see 11 Del C. 303,

Credible Evidence to Support Defense. The appellant was uniformed

of this information that the prosecution suppressed this statement

in order to maintain the strength of his case and was prosecutorial

misconduct that undermined the fundamental legality, integrity,

reliability and fairness prior to the proceedings leading to the

judgement of conviction.   The appellant would not have pled guilty

but insisted on going to trial where the outcome most certainly

would have been different.

The second critical witnesses' statement suppressed by the pro-

secution and whom defense counsel failed to investigate or request

an interview with was Lori Stewart, who was dropped from the state's

witness list on the day of trial, February 3, 2004, prior to appel-

lant's plea agreement.   Ms Stewart informed the state prosecutor,

Mr. Kriner that she had given false information to the police on the

day of her arrest, May 2, 2003.  Mr Kriner decided to suppress this

exculpatory evidence from the defense, see Stewart's statements to

arresting officer during interrogation, see postconviction relief,

appendix a, exhibit "C", arrest report at No. 11-15.  Ms Stewart

also informed Mr. Kriner that Detective Mailey had perjured himself

at the defendant's preliminary hearing when he testified that Stewart

had informed police that she saw the defendant with the 51 grams of

cocaine subsequently found in the basement ceiling at 535 Nimitz

19

road.

The state realized that without Ms Stewart's testimony the prosecution had no probable cause and no ability to attain a guilty verdict and therefore suppressed the statements of Ms Stewart prior to the appellant's plea. In fact with the statements of both Brown JR and Stewart, there was no case against the appellant at all. This violated Due Process and prejudiced appellant's affirmative defense that he never gave Stewart drugs on May 2, 2003 at the residence of 535 Nimitz Road; that he was not involved with any sale of drugs to a CI from that residence; and that he never knew there were drugs inside the residence that day.

Had the state's attorney properly provided the defense with this potential damaging evidence, the appellant would not have pled guilty, given the other factual circumstances in this case which occured prior to the uninformed plea agreement and suppressed exculpatory evidence in the untimely disclosure of "Discovery" on February 28, 2004. The suppressed exculpatroy statements of testimonial value demonstrates an affirmative defense against the prosecutions case. The prosecution was required and had a duty to provide the defense these exculpatory statements and an opportunity for the defense to effectively use this information prior to the plea of guilty. Without this exculpatory evidence the appellant could not and did not make a knowingly, intelligent and voluntary plea, see Leka v Portuondo, 257 F.3d 89, 100 (2d Cir 2001); Lilly v State, 649 A.2d 1055 (Del. 1994); Rose v State, 542 A.2d 1196 (1998); this prejudiced the appellant's substantial rights of "Fundamental Fairness.

It was unreasonable for a competent counsel to objectively fail to request and secure potential interviews with state witnesses' Stewart and Brown JR, under the circumstances of appellant's critical defense of innocence as an affirmative defense. This allowed the prosecution to suppress and withhold exculpatory evidence in favor of the defense prior to the plea agreement, as impeachment evidence against the entire state's case, see opening brief, exhibit F and J, affidavit from Brown JR and untimely "discovery" from defense counsel.

It is incumbent upon counsel to include an independent examination of facts, circumstances, pleadings and law involved and witness investigation in order to discharge his Sixth Amendment obligation, Strickland v Washington, Supra, citing Rummel v Estelle, 590 F.2d 103 (5th Cir 1979). In Strickland the court acknowledged that: The Sixth Amendment imposes on counsel a duty to investigate because reasonably effective assistance must be based on professional decisions and informed legal choices can be made only after investigation of options, Id at 2060, see also Chapman v California, 87 S.CT. at 827-28 N. 8 (1967) (Right to counsel is so fundamental to the adversarial system that its deprivation can never be deemed harmless). The United States Supreme Court agreed that a defense attorney is required to conduct a "reasonable substantial investigation" into the line of defense since there can be no strategic choice that renders such an investigation unnecessary.

In this instant case, it was unreasonable and prejudicial to the appellant's due process rights and his right to competent counsel as counsel failed to interview two critical witnesses that possessed exculpatroy information in the defense's favor. Both Brown JR and Stewart sought to speak with defense counsel on the morning of trial

in the courthouse holding area.  Counsel refused to speak to
speak to either one.  Their information and statements would have
supported the appellan'ts original defense that he was innocent
of all charges stemming from 535 Nimitz Road; that he was not the
tenant nor did he own the vehicles parked there; that he was not
involved with the drug operation at that residence and did not own
or know the location of the handgun found there as falsely reported
in the affidavit of probable cause to obtain a search warrant.

Defense counsel made virtually no investigation of the witnesses
for the defense or for the state, denying appellant any potential
and damaging evidence to be used in the adversarial testing of the
state's case.  Had counsel exercised his constitutional obligation
entrusted to him to develop the reasonable doubt in the state's
case, the defendant would not have pleaded guilty and would have
insisted on going to trial where the outcome would have been differ-
ent.  The appellant is actually innocent of the crime of which he
unwilling pleaded and the penalty which was imposed through defense
counsel's breakdown in the adversarial process, renders the results
of the plea unreliable, and the misadvice of counsel to enter a plea
knowing that the state's case could not withstand proper adversarial
testing was deficient performance.  The failure to provide and dis-
close "discovery" to appellant prior to plea was the direct conse-
quence of counsel's misadvice, misinformation, failure to investigate
the search warrant's misidentification and failure to interview
witnesses, Winfred Brown JR and Lori Stewart prejudices the appel-
lant and forced him into making an unknowing and involuntary plea,
see Hill v Lockhart, 106, S.CT 366 (1985); Albury v State, 551 A.2d
53 (1988); Sanders v Ratelle, 21 F.3d 1446 (9th Cir 1994) (Failure
to investigate that another suspect purportedly confessed to crime

(Failure to investigate that another suspect purportedly confessed to crime constituted ineffective counsel).

The circumstance as stated above as it relates to the two witnesses' statements contained in the arrest reports and co-defendant's affidavit applys to counsel's failure to actively advocate appellant's case, see Coss v Lackawanna County District Attorney, 204 F.3d 453 (3rd Cir 2000) (Defense Counsel's failure to subpoenae certain witnesses and to interview those witnesses constituted ineffective counsel); Ellerby v U.S. 187 F.3d warranted an evidentiary hearing to resolve claim of ineffective assistance of counsel).

Defense counsel's representation fell below an objective standard of reasonableness when failing to independently interview two potential witnesses. This was prejudicial, and but for these errors, the prosecution would not have been so easily able to suppress and withhold exculpatory statements made by Brown JR, Stewart, and Haass that supported an affirmative defense in the suppression of probable cause for the search warrant as being defective and would have resulted in the charges being dismissed or the defendant would have proceeded to trial as desired by the appellant with all three witnesses testimony becoming beneficial to the defense. In order for the defense to effectively use the exculpatory statements of Lori Stewart and Winfred Brown JR, defense counsel had to independtly interview them. His failure to do so prejudiced appellant's right to a compulsory process of the Sixth Amendment. It is not a defense strategy to plea without any investigation or witness interviews, unless he has divided loyalty. The appellant's plea was unknowing and involuntarily made through coercion, threat, misadvice, misinformation and legal errors of counsel's failure to perform his duties guaranteed by the Sixth Amendment's adversarial process.

So much so, that appellant pleaded guilty to crimes he was inno-
cent of to terms of two, three (3) year minimum mandatory sen-
tences for a total of six (6) years. This is a miscarriage of justice
and should be reviewed by this Court in the interest of justice.

IV.  THE LOWER COURT ERRED WHEN IT REFUSED
THE APPELLANT'S REQUEST FOR CONTINUANCE
TO RETAIN PRIVATE COUNSEL AFTER INEFFECT-
IVE COUNSEL HAD NOTIFIED THE COURT OF
UNTIMELY DISCOVERY.

### Argument

It is settled state and federal law that the appellant charged
with a crime has the right to retain private counsel at anytime
before the initial trial begins, pursuant to the provisions of the
Sixth Amendment of the US Constitution and Delaware Constitution,
ART I, 6-7; Due Process of Law, see postconviction relief appendix
"A", argument IV, at pages 75-79, opening brief exhibits "E" and
"J" and appellant's letter to counsel on July 2, 2004 after receiving
"discovery", at exhibit "K".

On January 28, 2004, appellant was scheduled for Final Case Review
after being rescheduled over and over during a period of nine month's
and four (4) previous lawyers requesting withdrawals were granted by
the court.  During Final Case Review, appointed counsel informed the
court that he had not had time to review "discovery" nor had he had
*SEE TRANSCRIPTS AT EXHIBIT X.*
time to review "discovery" with the defendant ∧ Counsel further
stated that he had not had time to discuss the overall case with the
defendant.  The appellant requested counsel request a continuance
but counsel refused this request.  Thereafter the appellant addressed
the court and requested a continuance in order to properly evaluate
untimely "discovery" and effectively use the exculpatroy evidence in
favor of the defense strategy and to retain private counsel.  The
court denied the appellant's request without substantial Due Process
inquiry, and such denial was an abuse of discretion and a miscar-
riage of justice by denying the appellant "fundamental fairness" in
the proceedings which led to the unknowing and involuntarily made
plea (The court's only concern was how long the case was on the court

docket), *SEE COURT TRANSCRIPTS AT EXHIBIT X.*

The appellant contends that the court's denial for a continuance in order to retain competent counsel was an abuse of discretion and error of law, which violated appellant's <u>Sixth Amendment</u> <u>right</u> to counsel and <u>fundamental Due Process.</u>  The Harmless Error Doctrine does not apply here pursuant to <u>Bland v California Dept</u> <u>of Corr.,</u> 20 F.3d 1469 (9th Cir 1994); <u>Wade v Armontrout,</u> 798 F.2d 304 (8th Cir 1986).  The appellant also submits that defense counsel had another charge of ineffective assistance brought against him on the same day by defendant Ronald Matthews just minutes before the appellant appeared before the court.

The denial of the right of counsel of choice is reversible error regardless of whether prejudice is shown.  In <u>Briscoe v State,</u> 606 A.2d 103, the Supreme Court ruled that when a defendant seeks new counsel on the eve of trial, trial court <u>must</u> initially determine if reasons for request are good cause to justify continuance of trial, in order to allow new counsel to be retained.  As the court failed this inquiry, it erred of Law.

In <u>U.S. v Blum,</u> 65 F.3d 1436 (8th Cir 1995), the court stated that a defendant may request substitute counsel at virtually any time, so long as the request is not designed for purpose of delaying and disrupting trial.  Once request for substitute counsel is made, trial court has a "duty" to inquire into factual basis of defendant's dissatisfaction.  In <u>U.S. v Welty,</u> 674 F.2d 185, the court ruled that the lower court must engage in two lines of inquiry; first, the court must decide if the defendant's reasons for request of substitute counsel constitutes good cause and are thus sufficiently substantial to allow new counsel to be obtained.  The defendant argues that he had a list of thirteen (13) instances of ineffective assistance had the court

91

inquired, appendix A, exhibit U and subsequently presented this
list to defense counsel on the morning of trial. Defense counsel
then promised to seek the continuance but left only to return with
another plea offer along with the state's threat to forward the
appellant's case to the U.S. Attorney if he did not accept the plea
offer.

The lower court judge ignored any inquiry as to the appellant's
dissatisfaction, and informed appellant the case was going to trial
three days away because it had been on the docket too long, even
after appointed counsel had informed the court by motion and in per-
son of his unpreparedness, see exhibit "E", as he had just received
"discovery" _ON THE SAME DAY AS_ ~~one day before~~ the Final Case Review. This interferred
with appellant's Sixth Amendment right to competent counsel, see
Wilson v Mintzes, 761 F.2d 275 (6th Cir 1985) (where trial court
provoked defense counsel into acts inconsistent with his duties of
loyalty to his client, such interferrence effects the fairness of the
(plea) or trial and prejudice is presumed. The Strickland standards
have applicability.

The denial of a continuance further impaired and forced the appel-
lant to make an unknowing and involuntarary plea. Appellant's counsel
had stated to the court that he had no opportunity to review or dis-
cuss untimely "discovery" with the appellant, and in all fairness
should have requested and been granted a continuance, see U.S. v
Garrett, 149 F.3d 1019 (9th Cir 1998) (Failure to grant a request
for continuance so counsel could adequately prepare for trial was an
abuse of discretion and required reversal); Hintz v Beto, 379 F.2d
937 (5th Cir 1967) (Denial of continuance deprived counsel an oppor-
tunity to prepare for trial and deprived the defendant of a fair trial);
Wade v Armontrout, 798 F.2d 304 (8th Cir 1986) (denial of defendant's
continuance contributed to the defendant receiving ineffective assist-

ance of counsel, Because counsel was not prepared for trial).

The lower court helped to further the coercion that was perpetrated by defense counsel's failure to effectively review the untimely "discovery" with the appellant. Defense counsel then forced the appellant by threat of the state attorney seeking additional charges from the U.S. Attorney and further informing the appellant that he had no defense, "they got you, you need to take this plea." The lack of effort and representation by counsel to challenge the state's case overwhelmed the appellant and forced him to accept a plea against his continued desire for a suppression hearing and trial, see exhibits "L", "N", "O", and "V" were defendant was informing counsel of his intent to go to trial and to prepare pre-trial motions, see U.S. v Sanderson, 595 F.2d 1021 (5th Cir 1979)(Counsel's misrepresentation of material facts, withholding information "discovery" and exertion of pressure on defendant to induce a guilty plea). The denial of a continuance severely prejudiced the appellant's substantial rights of due process. In a letter dated January 20, 2004, the defendant expressed his intent to accept a plea only if the state dropped all charges stemming from 535 Nimitz Road including the handgun charge and offered him a plea to simple possession or attempted possession with the intent to deliver under the new laws expressed under House Bill 210, see exhibit W. Barring this plea the defendant expressed his intent to go to trial and informed counsel and the state of witnesses he had ready to testify on his behalf.  At the January 28, 2004 Case Review counsel again was unprepared to discuss the defendants case with him.

The appellant never heard from defense counsel again until the morning of trial, February 3, 2004. Between the Final Case Review and trial day the defense counsel never consulted with the appellant about the evidence of "discovery", trial strategy or any potential

defense. Once more appellant requested counsel to motion the court before a different judge (Ridgely) for a continuance to make himself familiar with the evidence of the case and to interview and subpoenae witnesses (four witnesses were on-hand and readily available to be interviewed, see exhibit "U", counsel promised to do THIS; left the holding area and came back only to offer the defendant another plea along with the threat to forward charges to the U.S. Attorney, see Coss v Lackawanna County District Attorney, 204 F.3d 453 (3rd Cir 2000) (Failure to subpoenae certain witnesses and to interview those witnesses); Hart v Gomez, 174 F.3d 1067 (9th Cir 1999) (Same); Lord v Wood, 184 F.3d 1083 (9th Cir 1999) (Counsel's failure to investigate evidence which demonstrated his clints factual innocence); U.S. v Johnson, 995 F.Supp 1259 (D. Kan 1998) (Counsel's failure to investigate and call witnesses).

The lower court's failure to inquire into the reasons why the appellant requested a continuance to obtain private counsel was an abuse of discretion that left the appellant helpless and crippled without an effective advocate which became evident when counsel appeared for trial with no strategy, no evidence, and no witnesses; but with the intentions of forcing the appellant to accept a plea. The appellant was deprived of the fundamental fairness, legality, integrity, and reliability of competent counsel in the proceedings leading to the plea and judgement of conviction. Therefore, the unknowing, involuntary and unintelligent made plea must be withdrawn to correct the miscarriage of justice. ON THE MORNING OF THE FINAL CASE REVIEW

Defense counsel knew that he had just received "discovery" and had no opportunity to review such with the appellant or forward it to his client for review of the evidence against him as counsel himself notified the court of the untimely "discovery" but failed to request

a continuance in order to use the exculpatory evidence and to properly and effectively inform the appellant of the evidence. Appointed counsel did not fulfill his responsibilities as an advocate on appellants behalf, thereby preventing appellant from a voluntary, knowing and intelligent choice to plead guilty. But for counsel's cumulative errors, the appellant would not have pled guilty and would have continued to insist upon going to trial where the outcome of the proceedings would have been different. The suppressed evidence speaks in favor of the appellant. Any reasonable counsel exercising diligence and skill would have proceeded effectively with this "discovery" material without any notion to accept a plea in this case.

V. THE LOWER COURT ERRED WHEN IT FAILED
TO GRANT AN EVIDENTIARY HEARING ON
THE AFFIANT PROVIDING PERJURED TES-
TIMONY DURING THE PRELIMINARY HEARING.

It was an abuse of discretion when the lower court failed to
inquire into the State's use of perjured testimony by the affiant
(Detective Mailey), during the probable cause preliminary hearing
in May 2003, when he testified that Lori Stewart had informed police
that she had observed the appellant with a mound of cocaine in the
residence at 535 Nimitz Road, see U.S. v McLaughlin, 89 F.Supp 2d 617
(E.D. PA 2000) (Government use of perjured testimony).

The state's attorney knew prior to the preliminary hearing and
before trial that Lori Stewart did not make such statements to police
concerning cocaine at 535 Nimitz Road and the appellant possessed this
illegal substance. An evidentiary hearing should be held to determine
the extent of prejudice suffered by appellant. Newly discovered evi-
dence Rule 33. The appellant argues that he did not discover Stewart's
statements to police that Detective Mailey had lied and that the de-
fendant had not given her drugs at 535 Nimitz Road on May 2, 2003 until
after he had taken a plea and that this newly discovered evidence
should be reviewed under Rule 61(i)(5) for a miscarriage of justice.

31

VI & VII:  THE LOWER COURT ERRED AND THE APPELLANT
WAS DEPRIVED OF EFFECTIVE ASSISTANCE
OF COUNSEL WHEN COUNSEL GAVE ERRONEOUS
ADVICE AND MISINFORMATION ON THE
ELEMENTS OF 11 Del. C. 1447A (PFDCF)
IN ORDER TO FORCE AND COERCE APPELLANT
TO ENTER INTO UNKNOWING AND INVOLUNTARY
MADE PLEA.

### Argument

The appellant was dressing for trial without obtaining "discovery" from counsel. Therefore appellant relied upon counsel's advice while in conference prior to trial as counsel misinterpreted the elements of Count (3) of the indictment, Possession of a Firearm During The Commission of a Felony, 11 Del. C. 1447A, "PFDCF." After receiving "discovery" from counsel twenty five days after the plea of guilty and being housed in Medium High Security, the appellant searched state law and substantiated that counsel had misguided him and had him plea incorrectly to charges, circumstances and acts of suspected and tainted criminal behavior in this case.

The police found two (2) ammunition clips while illegally searching the Kent Budget Motel, Dover, De., some miles away from the appellant who was visiting 535 Nimitz Road and was arrested outside that residence. This did not meet the elements of the charged statute to be convicted of 11 Del. C. 1447A (PFDCF). Those elements being:

1) Must have a handgun physically accessible and available to the appellant

2) Must have dominion and control over the drugs

3) Must be involved in the on-going predicated felony that the handgun is a furtherance of

The appellant contends that counsel possessed exculpatory evidence prior to the plea that impeached the state's burden of proof that states:

1)  Appellant was seized outside of the residence 535 Nimitz Road where he was visiting

2)  Appellant was not the tenant, nor did he own any vehicles as stated in the probable cause to search, at the residence

3)  Appellant had no key to or valuables inside this residence

4)  Appellant was not involved in the on-going predicate felony of drug distribution at 535 Nimitz Road

5)  Appellant was forced inside the residence by police after an initial search for weapons and illegal substances.

6)  The handgun was not registered to the appellant nor was the appellant's fingerprints found on the weapon

7)  Appellant did not possess or control any drugs or gun found in 535 Nimitz Road

8)  Appellant had no knowledge of the location of said weapon in the residence.  There was no ammunition found inside the gun or in the residence.

Appellant was not charged criminally for possessing two ammunition clips, see Barnett v State, 691 A.2d 614, 617 (1997) (Insufficient evidence of firearm possession during felony); State v Hedley, 593 A.2d 576 (1990) (Warrantless entry of home was not justified under protective sweep exception to warrant requirement); see also Vale v Louisiana, 90, S.CT. 1969 (1970).  See also Brown Jr's sworn affidavits at exhibit "F" and "P".

The appellant had maintained his innocence against the advice of counsel to admit guilt without ever seeing any part of the Rule 16 "discovery."  But counsel continued to inform appellant that he was guilty of "PFDCF" because of the two ammunition clips found in Room 50 at the Kent Budget Motel registered in the appellant's name; this was erroneous legal advice, see U.S. v Streater, 70 F.3d 1314 (D.C.

Cir 1995)(guilty plea induced based on faulty legal advice);
Tollet v Henderson, 93 S.CT 1602 (1973) (plea based on the advice
received from counsel). Defense counsel never informed appellant
that an essential element of "PFDCF" was the implication that
appellant was involved in the on-going predicate felony of drug
distribution at 535 Nimitz Road (a fact that appellant had stead-
fastly denied throughout the proceedings, see U.S. v Bigman, 906
F.2d at 395; Henderson v Morgan, 426 U.S. at 647; U.S. v Goodheim,
686 F.2d 776. The advisement of counsel to plead guilty to this
charge when he possessed information from the arrest report and
statement of Jennifer Haass, stating that appellant had moved out
of the residence in February 2003 after living at the residence for
a month and the affidavit of Winfred Brown JR informing the Attorn-
ey General, Mr Kriner, on January 29, 2004 during a meeting that
his father the appellant had nothing to do with the illegal drugs
found in his residence, but counsel neglected to share this exculpa-
tory information prior to the coerced plea, see Hill v Lockhart, 106
S.CT. 366 (1985)

The appellant contends that he did not have physical or con-
structive possession of any drugs found inside the residence and did
not have any firearms available or accessible to appellant that
posed a risk to arresting police officers pursuant to Cardiner v
State, Del. Supr. 567 A.2d 404 (1989). The appellant also cites
Childress v State, 721 A.2d 929 (1998), and argues that unlike Child-
ress, appellant did not live at 535 Nimitz Road.

The appellant had informed counsel before the plea that the two
ammunition clips were being "innocently" maintained and held at Room
50, Kent Budget Motel (KBM) with no illicit purpose and that the
possession of those clips was strictly transitory, pursuant to 18

U.S.C.A. 922(o)(1). The appellants argument to counsel was that he only had temporary possession of the ammunition clips without any intention of violating the law, see Caldwell v State, 58 GA Add 408, 198 S.E. 793 (1938), also U.S. v Mason, 233 F.3d 619. The storage/ possession of the ammunition clips over one mile from the arrest location did not represent a threat, bodily injury or death to anyone and further reasonable doubt existed that there was no nexus between the possession of the ammunition clips in Room 50 at the KBM and the on-going felonious drug activity at 535 Nimitz Road. There was no charge of possession of the two ammunition clips in the appellant's indictment (misadvice from counsel).

The appellant's guilty plea to 11 Del. C. 1447A (PFDCF) was not a knowing, voluntary or intelligent plea because counsel never took the time to review "discovery" material with the appellant or inform the appellant properly on the applicable elements of 11 Del. C. 1447A, required to attain a conviction or inform the appellant that he should not plead guilty to this charge. Appellant would not have entered into the plea of guilty without counsel's misadvice and the withholding of "discovery" material, see Hill v Lockhart, 106 S.CT. 366 (1985); Strickland v Washington, 104 S.CT 2052 (1984). Counsel's deficient performance and error's deprived appellant of fundamental fairness and caused a miscarriage of justice.

There is no criminal act of "PFDCF" committed under 11 Del. C. 1447(A) simply by the appellant "innocently maintaining" two (2) ammunition clips in a motel room registered in his name. The lower court records establishes that appellant was arrested outside the residence at 535 Nimitz Road and then taken inside the residence. The conviction as a result of counsel's misadvice and unwillingness to adversely test the prosecution case against the offense of

"PFDCF" 1447(A). This amounted to a lack of fundamental fairness and a miscarriage of justice and requires an evidentiary hearing pursuant to Nevarez-Diaz v U.S., 870 F.2d 417 (7th Cir 1989). Furthermore, erroneous advice from defense counsel that appellant was guilty simply by his presence at 535 Nimitz Road at the time of police raid and maintaining two ammunition clips, one mile away is a convincing showing that appellant's counsel did not fulfill his responsibility as an advocate on defendant's behalf. Thereby preventing a voluntary, knowing and intelligent choice by appellant to plead guilty.

The appellant argues pursuant to Criminal Law 549 and Weapons 17(4); that absent some proof that the accused is something other than a visitor, the evidence is insufficient to support a conviction where appellant did not live in the residence and was not involved in the on-going felony of drug distribution. The element of constructive possession requires knowledge of the presence of the weapon and drugs and the existence of dominion and control over them. In Sober v Crist, 644 F.2d 807 (1981), the Court ruled that because a guilty plea is an admission of all the elements of a formal charge, it cannot be voluntary unless appellant possesses an understanding of the law in relation to the facts which entails an understanding of the essential elements of the crime charged including the requirement of specific intent which was never discussed with appellant by defense counsel. This deprived appellant of constitutional requirements of effective assistance of counsel, and precluded the plea from being knowing, voluntaryily and intelligently made. The error in Counsel misadvising appellant on just the mere presence at a crime scene makes him guilty was unreasonable, unrelaible and undermines the integrity of the proceeding leading to the judge-

ment of conviction. The prejudice resulting from counsel's mis-
advice was the appellant pleading to offenses inwhich he was inno-
cent and the state prosecution could not have proved beyond a reason-
able doubt.

The ineffective assistance of counsel renders appellant's plea
unknowing, involuntary and unintelligently made. But for counsels
cummulative errors, appellant would not have pleaded guilty, but
insisted on going to trial. Appellant's guilty plea must be with-
drawn.

The appellant argues for the purpose of appeal that the Post
Conviction Relief arguments VI and VII intertwine as same subject
matter in appellant's opening brief, Argument VI.

VIII.   THE APPELLANT IS ENTITLED TO AN
        EVIDENTIARY HEARING ON THESE
        ISSUES

Little guidance is offered by Del. Super. CT. Crim. Rule 61(h) regarding the grant of evidentiary hearings.  However, an evidentiary hearing can be granted when the motion makes a proper showing for relief, based upon the motion, reply and existing record, Shockley v State, 565 A.2d 1373, 1377 (Del 1989); Harris v State, Del Supr., 292 A.2d 291 (1972).  Furthermore, the appellant alleges both factual and legal claims sufficient to overcome the threshold requirement of Del Super CT. Crim. Rule 61 in order to receive an evidentiary hearing, see State v Delaware, 1995 Del. Super. Lexis 86 (1986)(unpublished).

In U.S. v Giardino, 797 F.2d 30 (1st Cir 1986), the court held that a defendant's motion seeking to set aside guilty plea, on ground that his attorney told him a lie, and that, in absence of lie, he would not have pleaded guilty and would have insisted on trial, constituted ineffective assistance of counsel and vacated and remanded to the district court for an evidentiary hearing.  Defense counsel lied to the appellant in this case inorder to induce him to plea by informing the defendant that he was guilty of PFDCF simply by possessing the two ammunition clips in Room 50 at the Kent Budget Motel.  Further, in U.S. v Sanderson, 595 F.2d 1021 (5th Cir 1979), the court ruled that trial counsel's misrepresentation of material facts, withholding information, and exerted pressure on defendant to induce a guilty plea, constitutes ineffective assistance and requires an evidentiary hearing to resolve claim.

In Weedon v State, 750 A.2d 521 (2000) this court ruled that reconsideration of testimony by petitioners spouse was warranted in the interest of justice in a post conviction relief case due to subsequent factual developments involving recantation of testimony where a pre-

ruling was clearly in error or there has been an important change in circumstances or when the equitable concern of preventing injustice arises, Rule 61(i)(4).

The defendant argues that while he did not go to trial, he clearly has provided clear and factual evidence from medical records and affidavits (see exhibit P) that he was not the Winfred Brown living at and processing cocaine for sale at 535 Nimitz Road in November 2002 or any other time. Further, "discovery" material and the statements of Winfred Brown JR and the recantation of Lori Stewart were all withheld from the appellant in an effort to coerce and induce a plea. The defendant argues that both Brown JR and Stewart's statements made to the state along with the absence of "discovery" material must be treted treated as newly discovered evidence which points to his----------------
------------------------Nothing Follows on this Page------------------------

conviction as a manifest injustice, see E.I. dupont de Nemours & CO.
v Admiral INS CO., 711 A.2d 45 on reconsideration 1996 WL 769627; or
defense counsel must be found to be ineffective for having failed to
provide this evidence to the defendant before his plea.

Finally the defendant argues that the Doctrine of Case Law is
flexible unlike res judicata and will not be enforced where doing so
would produce injustice, see Gannett CO., INC v Kanaga, 750 A.2d
1174 on remand 2002 WL 143819. Similarly, the law of Case Doctrine
is not an absolute bar to reconsideration of a prior decision that
is clearly wrong wrong, produces an injustice or should be revisited
because of changed circumstances and that the equitable concern of
preventing injustice may trump the law of the Case Doctrine. The law
of Case Doctrine does not apply when the previous ruling was clearly
in error or there has been an important change in circumstances, in
particular, the factual basis for issues previously raised, see
Weedon v State, Id.

As appellant has set forth sufficient legal claims, namely the
violation of his constitutional rights, in conjunction with the
necessary factual support, the appellant submits that he is entitled
to an evidentiary hearing in this matter, in order that the record be
more fully developed and to allow for the appellant to receive sub-
stantial justice, and in order to determine whether his claims can
satisfy the Hill v Lockhart, Supra and Strickland Standard, see
Bender v U.S., 387 F.2d 628, 630 (1st Cir 1967) (Counter affidavit
from allegedly ineffective attorney "could not conclusively disprove
appellant's allegations of (attorney) extra-record misrepresentation").

In review of the appellant's "conflict of interest" claim, the
defendant argues that prejudice is automatically presumed and that
the court must hold a Garcia Hearing. The appellant then Argues that

defense counsel in his reply brief failed to address why he failed to:

Review discovery with the defendant.

Review audio tapes of alleged co-defendant's with the appellant

Determine the time the search warrant was signed

File a motion for a DRE 608 and 609 hearing on state witnesses Dorrie Stewart and Jennifer Haass

Subpoena the owner of the handgun

File a motion for severance

File a motion to suppress for illegal search and seizure

File a motion in Limine

At exhibit P, the appellant has compiled numerous affidavits from witnesses defendant had asked defense counsel to interview and subpoenae. These affidavits clearly exonerate the Movant from:

1. Being in the state of Delaware in November 2002 as asserted by the affidavit of probable cause

2. Being involved in the illegal drug activities at 535 Nimitz Road

3. Having delivered any drugs to a confidential informant from 535 Nimitz Road

4. Having dominion and control over the handgun found at 535 Nimitz Road

The affidavit of LaTonya Brown clearly refutes the affidavit of probable of cause for Room 50, line 13, "that Stewart had spent a couple of days with "Big Winnie" at Room 50, Kent Budget Motel." In fact, Stewart as described by LaTonya Brown, lived at Room 50, a room the defendant had rented for her in his name because Stewart had no identification and was wanted on a capias. LaTonya Brown's statement clearly indicates that Stewart had stayed in Room 50 while the defendant went to New York with his family. Stewart paid the rent on this room,

41

the phone bill and had her own key to the room. The manager    at the KBM would have verified this information if defense counsel had called him to testify as requested by the appellant. Six other witnesses would have verified Stewart's residency at this room also. It was the appellant's intent to use this information/testimony to present reasonable doubt that the cocaine found in room 50 could just as easily have been Lori Stewart's rather than the defendant's. In an effective cross examination, the medical examiner would have informed the court that the cocaine found on stewart was    the same cocaine found in Room 50 and that it did not match any of the cocaine in color or texture found on the defendant or at 535 Nimitz Road.

The Lower Court in its response in denying the appellant's Rule 61, stated that it found defense counsel more credible than t the Movant."

In the appellant's reargument to the court's denial, he argued that counsel had misled the court in his response to the opening brief as to when counsel received "discovery," stating that he had "reviewed all 'discovery' information and was fully prepared for trial 7 days before the appellant's trial scheduled for February 3, 2004, including scripting out questions for witnesses), see paragraph 1 of defense counsel's reply brief at exhibit Y.

Obviously the court failed to review the transcripts from January 28, 2003, where defense counsel admitted in open court that he had just received "Discovery" including the search warrants on January 28, 2003, see court transcripts at exhibit Y. Counsel's statements in open court validate the appellant's version that counsel informed him during the Final Case Review earlier that day, that he had just received "Discovery" and was not prepared to review or discuss it with the appellant. Subsequently the appellant never was allowed to see the "Discovery" until after he accepted a plea.

42

The appellant also points out that January 28, 2003, was only 6 days from the appellant's trial date of February 3, 2004, and that having received the search warrants (which were in itself exculpatory and grounds for suppression) upon arrival at the courthouse for the scheduled case review; there was no way counsel was fully prepared for trial including the preparation of scripted questions. At fact that he fully admitted to in open court later that day but then changed his story in his reply brief.

The appellant suggests that coun el has purposefully attempted to mislead the court in his attempt to deflect his ineffective assistance in the appellant's case and that an evidentiary hearing should be held to determine the extent of coun el's ineffective assistance and miscon-duct.

The appellant was denied free copies of the transcrips at exhibit X (after being found indigent) by Judge Vaughn on his initial motion and reargument. The appellant's family subsequently paid a $15 fee to attain said transcripts. The Transcripts clearly show that Judge Vaughn abused his discretion by failing to open an inquiry as to the specific reasons the appellant was requesting a continuance at his Final Case Review on January 28, 2004.

Wherefore, for any and all of the reasons advanced herein, defendant respectfully prays that this motion for withdrawal of his guilty plea be granted, and/or further relief as may be just.

## CONCLUSION

As the petitioner received ineffective assistance of counsel during pre-trial stages and during the plea agreement process in violation of the Sixth Amendment of the U.S. Constitution, Due Process and Delaware's Constitution ART I, &6-7, the petitioner/appellant submits that his un-knowing, involuntary and unintelligently made plea should be vacated or

remanded for an evidentiary hearing accordingly with the facts and law by this court. Appellant requests the lower court decision be reversed and the case remanded.

Respectfully Submitted

Winfred O. Brown SR
SBI 019174  Unit: V-B-1
DCC

44

IN THE SUPREME COURT OF THE STATE OF
DELAWARE IN AND FOR KENT COUNTY

WINFRED O. BROWN SR
    (ID 0305001486)
            Appellant

            v                          No. ___79___ , 2006

STATE OF DELAWARE
            Appellee.

ON APPEAL FROM THE SUPREME COURT
OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

---

APPELLANT'S APPENDIX "A"
AND OPENING BRIEF'S EXHIBIT'S

---

Winfred O. Brown SR, Pro-Se
SBI: 019174  Unit: V-D-13
DCC

Date:_____ , 2006

ORIGINAL COPIES UNDER HERE

APPENDIX "A" Postconviction Relief 61

CONTAINS:

Exhibit A:  Probable Cause Search Warrant for 535 Nimitz Road
Exhibit B:  Preliminary Hearing transcripts
Exhibit C:  Police Report, Probable Cause for Arrest
Exhibit D:  Defense Motion to Suppress/Flowers Hearing
Exhibit E:  Motion to Compel Discovery, dated January 21, 2004
Exhibit F:  First affidavit of Winfred Brown JR, DOB 9-19-74
Exhibit G:  Probable Cause Search Warrant for Kent Budget Motel
Exhibit H:  Search Warrant Returns with time search began

CONTINUE OPENING BRIEF EXHIBITS

Exhibit I:  Clinic/Therapy appointment dates
Exhibit J:  Documentation of Disclosure of Discovery forwarded by
            Counsel to appellant
Exhibit K:  Appellant's letter to counsel informing him of the many
            factual and constitutional errors found in Discovery
            material
Exhibit L:  Appellant's letter to counsel requesting Jury Voir Dire
Exhibit M:  Defense counsel motion informing the court he did not
            desire jury voire dire
Exhibit N:  Defendant's letter to counsel requesting suppression
            hearing based on illegal search and seizure and Franks
            and Flowers hearings
Exhibit O:  Defendant's letter to counsel requesting suppression of
            illegal search and seizure and expressing disappointment
            in counsel's performance
Exhibit P:  Affidavits
Exhibit Q:  Enhanced argument of severance
Exhibit R:  Enhanced argument on conflict of interest
Exhibit S:  Enhanced argument on Jury Voire Dire
Exhibit T:  Letter from State's attorney informing the court they
            were confused on the two Brown's cases
Exhibit U:  Defendant's list of reasonings presented to counsel
            seeking a continuance
Exhibit V:  Letter from defendant to counsel requesting he file a
            Severance of charges
Exhibit W:  Letter from defendant to counsel expressing his intent

Exhibit X:  Court Transcripts from January 28, 2004

Exhibit Y:  Defense Counsel's Reply Brief to Rule 61 Motion

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR _KENT_ COUNTY


STATE OF DELAWARE            )
              v.             )        No. _0305001486_
  _WINFRED O. BROWN SR_      )        (to be supplied by Prothonotary)
  Name of Movant on Indictment )
                             )
  _____  )
   Correct Full Name of Movant )


## MOTION FOR POSTCONVICTION RELIEF

## MOTION

1. County in which you were convicted _KENT_

2. Judge who imposed sentence _HONORABLE JUDGE VAUGHN_

3. Date sentence was imposed _FEBRUARY 3, 2004_

4. Offense(s) for which you were sentenced and length of sentence (s):
   _TRAFFICKING IN COCAINE_
   _PFDCF_

5. Do you have any sentence(s) to serve other than the sentence(s) imposed because of the judgment(s) under attack in this motion?    Yes (  )    No ( X )
   If your answer is "yes," give the following information:
   Name and location of court(s) which imposed the other sentence(s):

   Date sentence(s) imposed: _____

   Length of sentence(s) _____

6. What was the basis for the judgment(s) of conviction? (Check one)
   Plea of guilty ( X )
   Plea of guilty without admission of guilt ("Robinson plea") (  )
   Plea of nolo contendere (  )
   Verdict of jury (  )
   Finding of judge (non-jury trial) (  )

7. Judge who accepted plea or presided at trial _HONORABLE JUDGE VAUGHN_

8. Did you take the witness stand and testify? (Check one)
   No trial ( X )    Yes (  )    No (  )

9. Did you appeal from the judgment of conviction? Yes (  )    No ( X )
   If your answer is "yes," give the following information:

   Case number of appeal _____

   Date of court's final order or opinion _____

1

10.  Other than a direct appeal from the judgment(s) of conviction, have you filed any other motion(s) or petition(s) seeking relief from the judgment(s) in state or federal court? Yes ( ) No (X)    How many? ( )
If your answer is "yes," give the following information as to each:

Nature of proceeding(s) _____

Grounds raised _____

_____

_____

_____

_____

Was there an evidentiary hearing?___ _____

Case number of proceeding(s)_____

Date(s) of court's final order(s) or opinion(s) _____

Did you appeal the result(s)?_____

11.  Give the name of each attorney who represented you at the following stages of the proceedings relating to the judgment(s) under attack in this motion:

At plea of guilty or trial *DAVID ANDERSON* _____

On appeal _____

In any postconviction proceeding _____

12.  State every ground on which you claim that your rights were violated. If you fail to set forth all grounds in this motion, you may be barred from raising additional grounds at a later date. You must state facts in support of the ground(s) which you claim. For your information, the following is a list of frequently raised grounds for relief (you may also raise grounds that are not listed here): double jeopardy; illegal detention, arrest, or search and seizure; coerced confession or guilty plea; uninformed waiver of the right to counsel, to remain silent, or to speedy trial; denial of the right to confront witnesses, to subpoena witnesses, to testify, or to effective assistance of counsel; suppression of favorable evidence; unfulfilled plea agreement.

2

Ground one: _INEFFECTIVE ASSISTANCE_

Supporting facts (state the facts briefly without citing cases):

SEE MEMO OF LAW PAGE 13

Ground two: _MATERIALLY DEFECTIVE SEARCH WARRANT_

Supporting facts (state the facts briefly without citing cases):

SEE MEMO OF LAW PAGE 61

Ground three: _STATE WITHHELD EXCULPABLE EVIDENCE_

Supporting facts (state the facts briefly without citing cases):

SEE MEMO OF LAW PAGE 70

If any of the grounds listed were not previously raised, state briefly what grounds were not raised, and give your reason(s) for not doing so: _____

_____

_____

_____

_____

Wherefore, movant asks that the court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of attorney (if any)

I declare the truth of the above under penalty of perjury.

APRIL 29, 2005
Date Signed

Winfred O. Brown
Signature of Movant
(Notarization not required)

formsfminpzi.wp
Revised 9/2002

3

GROUND FOUR: PRESIDING JUDGES'S ABUSE OF DISCRETION

SEE MEMO OF LAW PAGE 75

GROUND FIVE: PERJURED TESTIMONY AT PRELIMINARY HEARING

SEE MEMO OF LAW PAGE 79

GROUND SIX: NOT GUILTY OF PFDCF

SEE MEMO OF LAW PAGE 80

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

STATE OF DELAWARE

V                                   NO. 0305001486

WINFRED O. BROWN SR

MEMORANDUM OF LAW

POST-CONVICTION RELIEF

Submitted By

Winfred O. Brown Sr
SBI 019174   Unit: V-D-13
DCC

## TABLE OF CONTENTS

Table of Citations.................................................. ii

Statement of Fact.................................................. 1

Arguments.......................................................... 8

    I.        The Movant was provided ineffective assistance of
            counsel...................................................... 13

    II.      The Affidavit of Probable Cause accompanying the Search
            Warrant for 535 Nimitz Road and Room 50 at the Kent
            Budget Motel was materially defective.................. 61

    III.     The State withheld exculpatory evidence................ 70

    IV.      Court's Abuse of Discretion........................... 75

    V.       The Affiant provided perjured testimony at the Movant's
            Preliminary Hearing..................................... 79

    VI.   T  The Movant pled guilty to a charge he was innocent of... 80

    VII.    Withdrawal of guilty plea.............................. 85

Relief Sought...................................................... 94

# TABLE OF CITATIONS

CASES                                                                    Page

Adcox v O'Brien 899 F.2d 735 (8th Cir 1990)..................    52
Agan v Singletary 12 F.3d 1012 (11th Cir 1994)...............    19

Atkins v State of DE (2001)..................................    71
U.S. v Bagley, 473 U.S. 667 105 S.CT 3375 (1985).............    74
Berry v Morton 100 F.3d 1089 (3rd Cir 1996)..................    26
    man
U.S. v Bigman 906 F.2d 395...................................    81

Bland v California Dept of Corr 20 F.3d 1469 (9th Cir 1994)...   76

U.S. v Blum 65 F.3d 1436 (8th Cir 1995)......................    77

Briscoe v State 606 A.2d 103.................................    76

Brown v Myers 137 F.3d 1154 (9th Cir 1998)...................    35

U.S. v Burnett 671, 709 (1992)...............................    86

U.S. v Burton 575 F.SUPP 1320 (E.D. Texas 1983)..............    15,16,22

Caldwell v State 58 GA APP 408, 198 SE 793 (1938)............    83

Caswell v Ryan 853 (3rd Cir 1992)............................    94

Chimel v California 89 S.CT 2034 (1969)......................    41

Childress v State 721 A.2d 929 (1998)........................    82

Clark v Blackburn 619 F.2d 431 (5th Cir 1980)................    38

Code v Montgomery 799 F.2d 1481 (11th Cir 1986)..............    35

Coleman v Thompson 111 S.CT 2546.............................    94

Colson v Smith 315 F.SUPP 179 (N.D. Georgia 1970)............    16

COMPA v Fink 791 A.2d 1235...................................    24,25

U.S. v Cook 45 F.3d 388 (10th Cir 1995)......................    31

TABLE OF CITATIONS (con't)

Cases                                                                    Page

Crandell v Brunnell 144 F.3d 1213 (9th Cir 1998)............... 15,79

U.S. v Cronic 104 S.CT 2039................................... 88

State v Crow (2003)........................................... 22

State v Cubbage (Del 2003).................................... 22

U.S. v Curzi 867 F.2d 36 (1st Cir 1989)....................... 39

Cuyler v Sullivan 100 S.CT 1708............................... 50

State v Dailey (Del 2003)..................................... 22

Dawan v A.L. Lockhart 980 F.2d 470............................ 49
U.S. v Dawson 857 F.2d 923 (3rd Cir 1988)..................... 35
Dawson v Synder 988 F.SUPP 804................................ 93
Daubert v Merrell Dow Pharmaceuticals, INC 509 U.S. 579 (1993). 57
Davis v State 91 Tex CRIM 156, 237 S.W. 925 (1922)............ 83
U.S. v Davenport 986 F.2d 1047 (7th Cir 1993)................. 47,48
U.S. v DeCoster 487 F.2d 1197 (D.C. Cir 1973)................. 18

Demarest v Price 905 F.SUPP 1432 (D.Col 1995)................. 24

U.S. EX REL Duncan v O'Leary 806 F.2d 1307 (7th Cir 1986)..... 30

Del v Washington Del SUPER CRA IN 91-01-0558-0560............. 55

Everett v Beard 290 F.3d 500 (3rd Cir 2002).................... 9

Flowers v DELSUPR 316 A.2d 564 (1973)......................... 33

Franks v Delaware 98 S.CT 2674 (1978)..................... 33,52

Gardiner v DELSUPR 567 A.2d 404 (1989)........................ 82

Gardiner v U.S. 679 F.SUPP 1143 (D.ME 1988)................... 55

State v Reginald Giles, 2002 WL1316388 (DELSUPER)............. 45

TABLE OF CONTENTS (con't)

Cases:                                                               Page

U.S. v Goodheim 686 F.2d 776...............................   81

Gray v Greer 800 F.2d 644 (7th Cir 1985)..................    9

U.S. v Gray 878 F.2d 702 (3rd Cir 1989)...................    18,24

U.S. v Grieg 967 F.2d 1018 (5th Cir 1992).................    50

Hamilton v Alabama 368 U.S. 52, 7 L.ed 114 S.CT 157 (1961)..  14

Harris v U.S. 441 A.2d 268................................     9

State v Hedley 593 A.2d 576 (1990)........................     39

Henderson v Morgan 96 S.CT 2259...........................     81

Herring v Estelle 491 F.2d 125 (5th Cir 1974).............     17, 61

Jackson v State of DE (2001)..............................     71

U.S. v Jackson 533 F.2d 314 (1976)........................     45

Johnson v State 11 ALA APP 301, 66 so 875 (1914)..........     82,83

Jones v U.S. 80 S.CT 725 (1960)...........................     42

State v Kang 2001 WL 1729126 (DELSUPERCT).................     45

Kennedy v Maggio 725 F.2d 269 (5th Cir 1984)..............     17,61,89

Kimmelman v Morrison 106 S.CT 2574 (1986).................     93

Klosieski v Florida 482 SO.2d 448 (FLADISTCTAPP 1986)......     41

U.S. v Koubriti 297 F.SUPP 2 955 (E.D. Mich 2004).........     73

Lawrence v Armontrout 900 F.2d 127 (8th Cir 1990).........     32,36

Leka v Portuondo 257 F.3d 89, 100 (2d Cir 2001)...........     75
Lewis v State 757 A.2d 709 ...............................     48,49
Lilly v State 649 A.2d 1055 (Del 1994)....................     75

TABLE OF CONTENTS (con't)

Cases:                                                                    Page

Mannhalt v Reed 847 F.2d 576 (9th Cir) ...................... 50

Martin v Maxey 98 F.3d 844 (5th Cir 1996) ................... 47

Mason v State 534 A.2d 242 (1987) .......................... 41

U.S. v Mason 235 F.3d 619................................... 83

U.S. v Matos 905 F.2d 30................................... 21,47

Matthews v State 276 A.2d 265 (1971) ....................... 58

McCarthy v U.S. 89 S. CT 1166............................... 89

U.S. v McLaughlin 89 F.SUPP 2d 617 (E.D. PA 2000)........... 11,80

Medina v Barnes 71 F.3d 363 (10th Cir 1995)................. 31

Minnesota v Dickerson 508 U.S. 366 113 S.CT 2130 (1993)...... 45
Moore v U.S. 950 F.2d 656 (10th Cir 1991)................... 49,92
Morrison v Kimmelman 650 F.SUPP 801 (D.N.J. 1980)........... 42

Murray v Carrier 106 S.CT 2639 (1986)...................... 93
U.S. v Myers 892 F.2d 642 (7th Cir 1990).................. 53
Nell v James 811 F.2d 100 (2d Cir 1987)................... 51
Nevarez-Diaz v U.S. 870 F.2d 417 (7th Cir 1989)............ 84, 91
New York v Okun 135 A.D. 2d 1064 522 N.Y.S. 2d 991 1987..... 41

Patterson v DELSUPR 684 A.2d 1234 (1996)................... 91

U.S. v Perdomo 929 F.2d 967 (3rd Cir 1991)................ 71,72,73

Pilchak v Camper 741 F.SUPP 782 (W.D. MO 1990).............. 38

Righter v State 704 A.2d 262 (1997)........................ 55

Rose v State 542 A.2d 1196 (1988).......................... 75

Rosenwald v U.S. 898 F.2d 585 (7th Cir 1990)............... 50

U.S. v Ruiz 241 F.3d 1157 (9th Cir 2001)................... 72

## TABLE OF CITATIONS

CASES                                                                          Page

U.S. v Sanchez-Baretto 93 F.3d 17 (1st Cir)................... 8, 54

Santobello v New York 92 S.CT 495 (1971)..................... 84,87

Scott v Wainwright 698 F.2d 427 (11th Cir 1983).............. 17,60,61

Shipley v California 89 S.CT 2053 (1969)..................... 41

U.S. v Shorter 54 F.3d 1248 (7th Cir 1970)................... 22

Shuh v State 58 Tex Crim 165, 124, S.W. 908 (1910)........... 83

Skinner v State 640 A.2d 655 (1994).......................... 36

Smith v Wainwright 777 F.2d 609 (11th Cir 1985).............. 47

Sober v Crist 644 F.2d 807 (1981)............................ 85

Stano v Dugger 889 F.2d 963 (11th Cir 1989)................. 78

Stokes v Payton 437 F.2d 132 (4th Cir 1970)................. 33

Strickland v Washington 104 S.CT 2052 (1984)................ 8,31,36,
                                                            48,56,94

Szewczyk v Doubert 354 A.2d 426 (1976)..................... 58

Terry v Ohio 88 S.CT (1968)................................ 46

Thomas v Lockhart 738 F.2d 132 (4th Cir 1984).............. 23

Toro v Fairman 940 F.2d 1065 (7th Cir 1991)................ 54

U.S. v Tucker 716 F.2d 576................................. 15

Turner v State 1993 Del Super Lexis 180................... 71

State v Underwood 89 WVA 548 109 S.E. 609 (1921).......... 83

Vale v Louisiana 90 S.CT 1969 (1970)...................... 39

Waddy v Herr 383 F.2d 789................................. 89

Wade v Armontrout 798 F.2d 304 (8th Cir 1986)............. 35,36

Wagner v Shanks 194 A.2d 701 (Del 1963).................. 57

Walker v Lockhart 807 F.2d 136 (8th Cir 1986)............ 35

DEL v Washington DEL SUPER CRA IN 91-01-0558-0560......... 71

iiiiii

TABLE OF CITATIONS

| Cases | Page |
|---|---|
| State v Webb 2000 Del Super LExis 474 | 71,73 |
| Webster v State 604 A.2d 1364 | 86,87 |
| Weist v DELSUPR 542 A.2d 1193 | 53 |
| U.S. v Welty 674 F.2d 185 | 77 |
| White v Godinez 143 F.3d F.3d 1049 (7th Cir 1998) | 15 |
| White v Maryland 373 U.S. 59 10 L.ed.2d 193 83 S.CT (1963) | 14 |
| Wiley v Wainwright 793 F.2d 1190 (11th Cir 1995) | 13 |
| Williams v Washington 59 F.3d 673 (7th Cir 1995) | 31,53,55 |
| Wong Sun v U.S. 371 U.S. 471 (1963) | 24,44 |
| U.S. v Yizar 956 F.2d 230 (11th Cir 1992) | 53 |
| Young v Zant F.2d 798 (11th Cir 1982) | 86,87 |
| Zebroski v State 822 A.2d 1038 (Del 2003) | 8 |

OTHER SOURCES:

| | |
|---|---|
| DRE 609 | 31 |
| 11 Del C 1904 | 44 |
| 11 Del c 1447A | 60,63,64,80 83,84,93 |
| 11 Del C 3507 | 71 |
| 11 Del C 4753 | 83 |
| HB 210 (74 Del L 106) | 21,23 |
| Superior Court Criminal RULE 11 | 84,86,87 |
| Superior Court Criminal Rule 16 | 74 |
| Superior Court CRIMINAL Rule 61 | 86,87 |
| 18 U.S.C.A. Fed Rules Crim Proc Rule 16(c) | 59,86 |
| 18 U.S.C.A. Fed Rules Crim Proc Rule 11(c)(3) | 86,87,90 |
| 18 U.S.C.A. 922 (q)(1) | 82 |

iiiiiii

TABLE OF CITATIONS (con't).

Cases:                                                                    Page:

OTHER SOURCES:

18 U.S.C.A. Fed' Rules Crim Proc 23 Rule 41(c)................... 69

Criminal Law 549................................................ 85

Weapons 17(4)................................................... 85

Criminal Law 641.13(6)..........................................

CORPUS JURIS SECUNDUM 94........................................ 82

USCA CONST AMEND 4.............................................. 12,45

USCA CONST AMEND 5.............................................. 12,72,83
                                                                  93

USCA CONST AMEND 6.........................10,13,18,22,33,38,48,50,54
                                         55,60,61,76,78,79,92,93

USCA CONST AMEND 14..........................12,38,45,54,55,70

STATEMENT OF FACTS

The Movant was arrested on May 3, 2003 while visiting the residence of his son (Winfred O. Brown Jr, DOB 9-19-74) at 535 Nimitz Road. According to the search warrant that was later produced, the Dover Police assisted by a DEA Task Force received a search warrant to search and seize "Winfred O. Brown Sr, DOB 6-21-57," a 1988 Honda, a 1992 Ford Explorer, an additional 1992 Ford Explorer and the residence at 535 Nimitz Road. The search warrant and affidavit of probable cause only identifies one individual, "Winfred O. Brown, DOB 6-21-57." No other individual is listed other than the fact that "Winfred Brown, DOB 6-21-57," lives at that residence with his girlfriend, Jennifer Haass.

In paragraph 3 of the affidavit of probable cause, the affiant states that he and Detective Lonnie Feaster (Affiant #2) met with a confidential source ⲛwho advised them that the confidential source *IN NOV 2002,* had observed a large amount of cocaine being processed for sale by Winfred Brown at 535 Nimitz Road. The confidential source went on to advise that "Winchester" provides crack cocaine to other "younger" males for sale and distribution and that "Brown lives at 535 Nimitz Road, Dover, Delaware with his girlfriend Jennifer Haass, a white female, DOB 03-28-74." (See search warrant and affidavit for probable cause for 535 Nimitz Road at exhibit A.) The affidavit goes

1

on to state that a query indicated that Brown resided at 642
Cabin Creek Dr, Hopewell, Virginia. During the week of May 3,
2003, both affiants met with CI #288 to make a controlled pur-
chase of crack cocaine at 535 Nimitz Road from "Winchester" para-
graph 8, affidavit of probable cause. The affiant stated at the
May 16, 2003, preliminary hearing that the CI was not strip
searched prior to this transaction taking place (page 61, line 23
and page 62, line 1), exhibit B. The affiants then observed CI
#288 using a telephone to call Brown to order an amount of Cocaine.
While the CI waited in the area of Towne Point Blvd and Route 13,
surveillance units observed an unknown black male leave the resi-
dence at 535 Nimitz Road and walk to the location where the CI
awaited. The unknown person then departed on foot and returned to
535 Nimitz Road, line 12 of exhibit A. That unknown male was sub-
sequently identified as Larry (Lawrence Jeff) who is the uncle of
"Winfred Brown Jr, and lived at the residence. The CI informed the
affiants that Brown had sent Larry.

At the Movant's preliminary hearing, the affiant testified that
Lori Stewart informed police on May 3, 2003 after her arrest, that
she saw Brown Sr in possession of a large amount of cocaine that was
51 grams in the basement (page 9, lines 14-17), exhibit B. The
affiant further testified that Lawrence Jeff informed police that
he had delivered cocaine for "Brown Jr" to different people on

2

different occasions and he was being allowed to stay at the house and he would serve people up if they would come to the house but normally he would be more like a courier (page 20, lines 18-22), exhibit B. The affiant goes goes on to testify that Brown Jr informed police in his post arrest interview that he had been selling six ounces a week; that he usually made deliveries and that it was he who had obtained the cocaine found in the residence on May 3, 2003, from Jason Brooks not Galen Brooks as reported in the affidavit of probable cause(page 45, lines 4-10), exhibit B. Brown Jr further informed police that the money from inside his safe was his and were drug proceeds and that he was selling drugs from 535 Nimitz Road out to other locations (page 63, lines 6-23) exhibit B. The affiant further admitted that police were unable to trace the unloaded handgun found in the residence to anybody at the residence (page 53, lines 18-19), exhibit B. The affiant also testifies that Jennifer Haass informed police that the Movant "had been in and out of the residence over the past "few months," but he didn't stay for any length of time; that was the statement of miss Haass," (page 60, lines 19-20), exhibit B. The affiant also informed the court, that he had conducted surveillance on the residence on Easter Friday but that no one was present at the residence (page 27, line 12-16), exhibit B.

3

The affiant stated further at the preliminary hearing that
he and affiant #2 and other officers started surveillance on the
residence shortly before 11:00am on May 3, 2003 (page 25, line 2),
exhibit B. The additional officers were for making traffic stops and
conducting drug interdiction (page 25, lines 9-14), exhibit B.
Shortly afterward, the affiant states in paragraph 19 of the affi-
davit of probable cause that he observed "Galen Brooks" visit 535
Nimitz Road for less than 5 minutes and then drove away and that
Brooks has had previous arrests for narcotics violations (paragraph
20 of the affidavit of probable cause), exhibit A. Immediately
after that (the individaul now known as) Winfred Brown Jr and Jenn-
ifer Haass left the residence (page 24, lines 8-9), exhibit B. On
page 43, lines 8-13 of the preliminary hearing transcripts, the
affiant states states that a Black Nissan also stopped at the res-
idence but they (police) were unable to stop any of these vehicles,
exhibit B. The affiant further states on page 49, lines 14-17,
that he also saw someone drop Patricia Brown (a juvenile) off at
the residence, but they didn't stop that vehicle either, exhibit.
B. That makes a total of 5 vehicles that have either arrived or
left the residence that the police did not stop.

The affiant states in page 24, lines 11-18 of the preliminary
hearing transcripts that the Movant arrived at 535 Nimitz Road around
1:00pm and was followed shortly by the arrival of Lori Stewart, a

4

white female, exhibit B. It was Stewart (a white female) that police were finally able to stop. Stewart was arrested several blocks from the residence during a traffic stop inwhich she attempted to flee and allegedly informed police that she had purchased crack cocaine from a black male at 535 Nimitz Road known as Big Winnie (AKA Winfred Brown), see paragraphs 22-27 of the affidavit of probable cause, exhibit A. Stewart also allegedly advised officers that the Movant, Winfred Brown had a motel room (50) at the Kent Budget Motel, where Brown had more crack cocaine and that she had spent the last several days with Brown in that room.

In paragraph 31 of the affidavit of probable cause, exhibit A, the affiant states that Jennifer Haass, the girlfriend of Winfred Brown has the two 1992 Ford Explorers registered in her name. Based on that information the affiant ordered officers to "secure" both locations pending application for a search and seizure warrant, see paragraph 17 of the charge sheet affidavit, exhibit C.

The Movant was arrested at 1330 hours when police executed a warrantless raid (although they initially stated they had a search warrant) at 535 Nimitz Road. All of the individuals at the residence Brown Sr, James Burrus and Lawrence Jeff) were arrested outside the residence, handcuffed and searched. Police officers found 4 grams of cocaine on the Movant at that time. When the Movant requested to

see a copy of the search warrant, he was informed by DEA Agent
Zahn that the search warrant was waiting to be signed in the
judges chambers. Police officer's then continued inside the
residence searching both levels of the dwelling. The three
arrested individuals including the Movant were then forced in-
side the dwelling where police were continuing their search
throughout the residence. The three individuals were searched
again inside the kitchen. The Movant was searched a third time by
police before he was placed on the living room couch with negative
results. All the while, at least 5-7 police officers continued
searching drawers, furniture, cabinets, etc...There were also police
searching downstairs that the Movant could not see. At one point
around 3:30pm, a police officer called upstairs for police to come
look at "something." The Movant was then asked for permission to
search his 1988 Honda which the Movant refused. DEA Agent Zahn then
radioed "someone" informing them to add the 1988 Honda to the search
warrant.. On page 39, lines 9-23, the affiant stated at the prelim-
inary hearing that the search warrant would have had to have been
received prior to execution of the search and seizure, exhibit B.
After having heard Agent Zahn call in a request to add the 1988
Honda to the search warrant, the Movant again asked to see the search
warrant and was told by agent Zahn not to worry about it, that every-
thing they were doing was legal." Around 4:00pm, Agent Zahn escorted

6

the Movant to the downstairs bathroom to look for his car keys.
While the Movant was in the bathroom he observed Agent Zahn
looking in pillow cases on the bed and underneath the blankets;
to which the Movant responded, "I didnt leave my carkeys under
those blankets." Agent Zahn never responded. The Movant was
transported to Dover Police Headquarters at approximately 5:00pm.
At that time the search warrant had not been presented. Jennifer
Haass was transported at 5:45pm. She informed the Movant that
the search warrant was presented to her at 5:30pm. The police had
been searching the residence for over 4 hours without a search
warrant. The Movant eventually accepted a plea offer to Trafficking
at Room 50 at the Kent Budget Motel and "PFDCF" in connection with
the 2 ammunition clips found in that room.

7

## MEMORANDUM OF LAW

The Movant Winfred O. Brown Sr now files a motion for Post-Conviction Relief seeking to withdraw his guilty plea; asserting that his guilty plea was neither knowing or voluntary. The Movant now argues that he first and foremost was denied effective assistance of counsel and that defense counsel coerced defendant's guilty plea in-order to conceal his unpreparedness for trial, see U.S. v Sanchez-Barretto 93 F.3d 17 (1st Cir 1996). Movant argues that if not for counsel's lack of preparation and being unfamiliar with his case, and his own fear of going to trial with a counselor he knew to have been incompetent, he would have insisted on going to trial where the out-come of the proceedings would have been different, see U.S.C.A. Const Amend 6. The Movant argues that an evidentiary hearing is required to determine whether petitioner was prejudiced by counsel's failure to investigate a crime to which, upon counsel's ill advised advice, the Movant pleaded guilty.

The Movant will show that based on the well established two pronged test used in Strickland v Washington 104 S.CT 2052 (1984), that defense counsel was constitutionally ineffective. In Strickland, the court identified the two components to any ineffective assistance claim as being: (1) deficient performance and (2) prejudice, ID, 466 at 687; Zebroski v State 822 A.2d 1038, 1043 (Del 2003) (Defendant must show that "counsel's actions fell below an objective standard of

8

reasonableness," and there exists a reasonable probability that but for counsel's unprofessional errors, the Movant would have opted for trial where the outcome would have been different.")  The Movant argues that a Strickland claim is based on counsel's failure to raise a particular claim and that the court must examine the merits of the ommitted issue.  See Everett v Beard, 290 F.3d, 500, 509 (3rd Cir 2002).  The Movant argues that counsel's failure to pursue the specific issues claimed by the Movant amounted to deficient performance.

In Strickland, the court examined the following factors:  (1) was the issue a "significant and obvious issue," and (2) was the decision not to pursue the issue a "strategic decision," see Gray v Greer, 800 F.2d 644 (7th Cir 1985).  The Movant argues in his case, that it is abundantly clear that all twenty (20) instances of ineffective assistance here noted were in fact "significant and obvious issues" and did not constitute any type of strategic decisions but were rather simply counsel's lack of preparation.  The Movant then argues that an essential prerequisite to defense counsel's presentation of an intelligent and knowledgeable defense is the requirement that he consults, investigates and prepares for trial; U.S.C.A. Const Amend 6, see also Harris v U.S. 441 A.2d 268.  The Movant argues that his motion will show that defense counsel was negligent in all three areas.  Finally the Movant argues that a

9

decision to enter into a plea agreement cannot be knowing and vol-
untary when the plea agreement itself is the result of advice from
counsel which is outside the range of competence; therefore, jus-
tice dictates that a claim of ineffective assistance of counsel in
connection with the negotiation of a plea agreement cannot be barred
by the agreement itself, which is the very product of the alleged
ineffectiveness; U.S.C.A. Const Amend 6.

The Movant now argues that the probable cause affidavit for the
search warrant at 535 Nimitz Road (which alleges the Movant as liv-
ing and selling drugs at that residence with his girlfriend Jennifer
Haass) was materially defective and was submitted by the affiant to
the magistrate with reckless abandon and with a total disregard for
the truth. The Movant then argues that police conducted an illegal
search and seizure of both 535 Nimitz Road and Room 50 at the Kent
Budget Motel.

The Movant now argues that Kent County Superior Court Trial
Judge erred by denying the Movant's motion for a continuance (in-
order to attain new counsel at the Movant's expense) without in-
quirey and in violation of the Movant's Sixth Amendment Due Process
right to counsel.

The Movant then argues that the Deputy Attorney General withheld
exculpatory evidence from the defense that proved the Movant was not
involved in anyway with the on-going felonious drug activities at

*10*

535 Nimitz Road; did not own or possess the unloaded handgun
found at the residence and had not sold any drugs to a con-
fidential informant during the week of May 2, 2003, and fur-
ther had never been observed at 535 Nimitz Road with any
cocaine by a confidential informant in November 2002, as re-
ported by the affiant in his affidavit of probable cause.

The Movant then argues that his conviction for Possession
of a Firearm During the Commission of a Felony "PFDCF" should
be set aside because he has pled guilty to a charge that he
was actually innocent of because the charge did not meet the
elements of the statute required for conviction under 11 DEL C
1447A and defense counsel or the court never explained the
"truth" of the elements of the charge counsel advised him to
plead guilty to.

The Movant then argues that Dover Police Detective Mailey
perjured himself at the Movant's preliminary hearing in May
2003 when he testified that Lori Stewart had informed police
that she had observed the Movant with a mound of cocaine in-
side the residence at 535 Nimitz Road on May 3, 2003. Pursuant
to U.S. v McLaughlin, 89 F. SUPP.2d 617 (E.D. PA 2000) an evi-
dentiary hearing should be held to determine the extent that
the Movant was prejudiced.

*11*

The Movant next argues that his entire guilty plea was neither knowing, intelligent or voluntary. The Movant was forced to either go to trial or take a plea immediately before trial began after never being allowed to review his "Discovery" after repeated requests to do so, and was thus deprived a substantial constitutional right.. The Movant argues that he was ready to get dressed for trial when counsel began manipulating and coercing him to take a plea.. At any time during the morning of February 3, 2004 (trial date) did the Movant initiate or request counsel to enter into any plea negotiations.. The Movant asks this court to correct a manifest injustice by setting aside the Movant's judgement of conviction and permit the Movant to withdraw his guilty plea for the reasons set forth and those reasons amount to the Movant being prejudiced.. The Movant places his faith in the very promise of our adversary system of criminal justice, that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. The Movant argues that the rights guaranteed him by the fourth, fifth and fourteenth Amendments to the U.S. Constitution were violated in the Search Warrant application and Affidavit of Probable Cause relied upon by police was materially defective in that it

12

incorrectly identifies the Movant as having committed sa-id
felonies. The Movant argues that the police failed to prop-
erly confirm any criminal activity on his part and that he .
actually was not the target of their on-going investigation,
instead it was the Movant's son, Winfred Brown Jr. The
affiant never stated in his affidavit's or at the Movant's
preliminary hearing that he had ever visually identified the
Movant at 535 Nimitz Road until the day of the arrest. In
fact he stated at the preliminary hearing that during his
first surveillance of the residence, no one was present at the
residence and that on his second surveillance, the Movant was
never seen at the residence until he arrived at approximately
1300 hours, twenty minutes before the warrantless raid. The
Movant argues that he is a victim of misidentification and that
it was in fact the Movant's son, Winfred O. Brown Jr who commit-
ed and freely admitted to police and the state that he had in
fact committed said felonies; further, that it was only coin-
cidence that the Movant was visiting the residence at the time
of the police raid. The Movant further argues that his guilty
plea does not preclude the Movant from raising a Sixth Amend-
ment claim of ineffective assistance of counsel pursuant to
Wiley v Wainwright 793 F.2d 1190 (11th Cir 1986).

   The Movant now cites the following instances of ineffective

assistance of counsel:

1. Movant was not represented by counsel at arraignment:

The U.S. Supreme Court ruled that an arraignment is a critical stage in a criminal proceeding which the accused under Federal Constitutional Law is entitled to counsel and if the accused is without counsel at the arraignment, he may obtain relief from his conviction without showing that he suffered a disadvantage from such a denial, see Hamilton v Alabama 368 U.S. 52, 7 l.ed.2d 114 82 S.CT 157 (1961) and White v Maryland 373 U.S. 59, 10 L.ed.2d 193, 83 S.CT 1050 (1963). The Movant argues that at his arraignment on August 14, 2003, was the opportunity for counsel to argue before the court that if found guilty of any charges, the Movant should be sentenced under the First Time Offender Program.

2. Failure of counsel to make himself familiar with the case or prepare for trial:

At both case reviews defense counsel informed the Movant that he was not prepared to discuss his case but continued to present and press the Movant to accept outrageous plea offers from the state. Counsel's failure to consult with the Movant which resulted in counsel's poor understanding of case and resulted in counsel's failure to call witnesses or prepare a defense was not procedurally barred and constituted ineffective

assistance of counsel pursuant to White v Godinez 143 F.3d 1049 (7th Cir 1998) and Crandell v Bunnell, 144 F.3d 1213 (9th Cir 1998). Counsel's failure to prepare for trial constitutes in-effective assistance pursuant to U.S. v Tucker 716 F.2d 576; see also U.S. v Burton 575 F.SUPP 1320 (E.D. Texas 1983). Counsel was given the Movant's case on December 5, 2003. He was the fifth attorney provided the Movant within a nine month period. At the Movant's December 23, 2003 Case Review, counsel informed the Movant that he had just been given the case file and was not prepared to discuss the case. The Movant argues that based on this fact, the defense counsel should have filed for an additional case review. The Movant received a copy furnished of a "Motion to Compel Discovery," dated January 21, 2004, that counsel filed with the court seven weeks after receiving ~~my~~ HIS case. (EXHIBIT E) At the Movant's Final Case Review on January 28, 2004, defense counsel again ad-vised the Movant that he had just received the "Discovery" that very day and again was not prepared to discuss the "Discovery" or the case as a whole. Between case reviews counsel failed to re-view and make himself familiar with the case or the Movant's ex-tensive case file which consisted of at least 30 letters from the Movant regarding his defense and requesting motions to be filed. Further, if counsel had reviewed the Movant's letters he would been aware of the twelve witnesses the Movant had submitted for

questioning and subpoenaes, and would have realized he had a con-
flict of interest with at least one of those witnesses, as well as
being aware of two sworn affidavit's in the Movant's file from two
alleged co-defendant's (who were state witnesses) stating that the
Movant was innocent of Counts 1 and 3 of the indictment (Trafficking
and "PFDCF" at 535 Nimitz Road). Additionally, counsel would have
become aware of the Movant's proposed "Alibi" defense strategy based
on misidentification, illegal search and seizure, etc..(see argu-
ments) and realized the need at that time for a "Motion to Suppress"
based on an illegal search and seizure of the Movant, the residence
at 535 Nimitz Road and Room 50 at the Kent Budget Motel. Further,
if counsel had filed for "Discovery" in a timely manner, the defense
would have known well ahead of time that the "Probable Cause Affi-
davit" for the search warrant at 535 Nimitz Road was materially
defective in that it misidentifies "Winfred Brown" as being "Winfred
Brown" with a Date of Birth of "6/21/57" exclusively throughout the
affidavit and never mentions the "Winfred Brown" with the Date of
Birth of 9/19/74, who actually had lived at the residence since
July 2002. Counsel never made himself familiar with the facts of
the case inorder to provide effective assistance, then apologized
for his lack of preparation, citing a large and overburdened case-
load, see Colson v Smith 315 F.SUPP 179 (N.D. Georgia 1970) and
U.S. v Burton 575 F.SUPP 1320 (E.D. Texas 1983. Further, counsel
failed to provide the Movant after repeated requests, the police

tapes of interviews with alleged co-defendant's conducted hours after the arrests and in the case of Lori Stewart, interviews conducted prior to the Movant's arrest. Movant argues that counsel's failure to familiarize himself with the facts and the law relevant to the case in relation to the guilty plea constitutes ineffective assistance and rendered the plea involuntarily entered. Pursuant to Scott v Wainright 698 F.2d 427, 429-30 (11th Cir 1983), a guilty plea cannot be knowing and voluntary, if a defendant does not receive reasonably effective assistance of counsel in connection with the decision to plead guilty, because the plea does not then represent an informed choice. Counsel's advice must be within the realm of competence demanded of attorneys representing criminal defendant's, see also Herring v Estelle 491 F.2d 125 (5th Cir 1974) and Kennedy v Maggio 725 F.2d 269 (5th Cir 1984). If counsel were truly aware of the Movant's case he would not have coerced and manipulated the Movant to accept a plea, see Herring v Estelle, Id. Counsel was too poorly prepared and unfamiliar with the case to advise the Movant to plead guilty. Counsel had never taken time to get the Movant's side of the story. A lawyer unfamiliar with the facts and law relevant to clients case cannot meet the required minimum level of effective assistance of counsel. This is evidenced by counsel's only argument in the untimely and inaccurately submitted "Motion to Suppress" was that there was no one at the residence known as "winchester," rather

/7

than the more obvious fact that the Movant was not living in Delaware in November 2002, did not move to Delaware until January 2003, and only lived at 535 Nimitz Road between January 16 and February 15; was completely absent from the residence between February 16 and April 24th; had never been observed at the residence by police until 20 minutes before the warrantless raid; did not have access to the residence unless someone was home; did not own the unloaded handgun; did not know the location of the handgun inside the residence and that further the Movant's finger-prints were not found on the gun. Finally defense counsel could have informed the court that there existed a defense witness that would inform the court that in fact he was the owner of the gun and the circumstances surrounding the innocent maintenance of the two ammunition clips at the Kent Budget Inn. Counsel's failure to do basic research, attain Movants side of the story and become familiar with readily available documents necessary to understanding Movant's case and preparing a defense, constituted ineffective assistance of counsel, U.S.C.A. Const Amend 6. Counsel's lack of pretrial investigation requires a remand for an evidentiary hearing on ineffective assistance claims pursuant to U.S. v DeCoster, 487 F.2d 1197 (D.C. Cir 1973). Failure to conduct any pretrial investigation generally constitutes clear instance of ineffectiveness, U.S.C.A. Const Amend 6, see also U.S. v Gray, 878 F.2d 702 (3rd Cir

/8

1989). The Movant further argues that he informed counsel on numer-
ous occasions that this was a warrantless raid and there were no
exigent circumstances present which allowed police to enter the
residence. Counsel still failed to determine when the search war-
rant was actually signed by the magistrate.

3. Failed to interview the Movant to discuss the case or pre-
pare any defense:

Counsel failed to provide the Movant after repeated requests, the
opportunity to review taped interviews of alleged co-defendant's which
counsel had in his possession. Further, counsel failed to discuss or
understand Movant's factual or legal claims or to provide performance
within the competency expected from a criminal defense counsel; thus
counsel's failure to file motions to suppress based on a materially
defective search warrant and an illegal search and seizure pursuant to
Young v Zant 677 F.2d 798 (11th Cir 1982). Further, because of coun-
sel's failure to conduct a meaningful case review, he therefore failed
to obtain the Movant's military medical and physical therapy records
pursuant to Agan v Singletary, 12 F.3d 1012 (11th Cir 1994) which
would have placed the Movant in another state at the time of the init-
ial CI observance in November 2002. The Movant realizes that counsel
owes a lesser duty to a client who pleads guilty than to one who goes
to trial. The Movant argues however, that throughout his case review
process, he was adamant of his innocence and informed counsel at his
Final Case Review (three business days before trial) that he intended
to go to trial. In the interim, the Movant's brother contacted coun-

10

sel to determine how to deliver the Movant's suit for trial.    The

Movant was preparing TO

NOTHING FOLLOWS

get dressed for trial when the defense counsel began manipulating
and coercing the Movant to accept a plea offer. The Movant argues that
defense counsel owed him the same duty expected of one going to trial
as defense counsel had no prior knowledge or inclination that the
Movant would accept a last minute plea offer. The Movant argues anew
that had counsel obtained the Movant's medical files, a "red flag" would
have been raised as to the Movant's inability to be in the State of
Delaware during the time periods described in the search warrant. The
Movant now has those records which clearly show him incapacitated and
bed ridden during this period.

4.. Readily accepted the state's version of fact:

Counsel's willingness to accept the state's version of fact, his
total reliance on those facts and his failure to conduct his own
reasonable investigation constitutes ineffective assistance of counsel
pursuant to U.S. v Matos 905 F.2d 30.

5. Failed to research new changes in the law or to investigate
similarities and differences between the Movant's case and other re-
BRING
cently sentenced inmates and then those issues before the court:

Counsel failed to negotiate with the state or bring before
the court the fact that the Movant should have been sentenced as a
First Time Offender or be sentenced under HB 210 (now 74 Del L 106)
which was enacted in July 2003. The Movant was arrested in May 2003
but not indicted until August 2003 and ultimately sentenced in

im February 2004. Counsel's failure to research the law and recog-

nize the change in law constituted ineffective assistance and re-

quires an evidentiary hearing pursuant to U.S. Burton 575 F.SUPP

1320 (E.D. Texas 1983) and U.S.C.A. Const Amend 6. Counsel's

failure to argue for downward departure from the minimum manda-

tory sentencing range deprived the Movant of an opportunity to

have Superior Court impose a lesser term of imprisonment and

warrants a new hearing pursuant to U.S. Shorter 54 F.3d 1248 (7th

Cir 1995). Defense counsel had just represented Thomas Dailey

(See State v Thomas Dailey 2003) who was charged with Trafficking

in cocaine (21 grams) and Possession with Intent To Deliver two

ounces of Maíijuana which was bagged for sale. Police found scales

and other paraphernalia in Dailey's residence. Counsel secured a

plea for Dailey consisting of "PWITD" Marijuana and two years at

level 5. Dailey's co-defendant, James Crow (see State v James

Crow 2003) was allowed to plea to a charge of "attempted Traffick-

ing" of cocaine and was sentenced to two years level 5 with no

minimum mandatory time. Crow was also found in violation of pro-

bation stemming from an Assault First Charge. Further, in the

case of Phillip Cubbage Jr (see State v Phillip Cubbage Jr 2003);

Cubbage was found to possess 9 ounces of cocaine and was allowed

to plea and was sentenced to 3 years level 5, with only two years

minimum mandatory. The Movant argues that Cubbage's intent was

22

was obviously more than personal consumption. This sentence allowed Cubbage to take advantage of the newly enacted HB 210 now 11 DEL L 706. The Movant further argues that he was charged with 5.43 grams of cocaine and was sentenced to three years minimum mandatory. State's attorney Kriner was the prosecutor of record in at least one of these cases. Counsel's failure to bring these similarities and differences to the attention of the state and before the court constitute ineffective assistance pursuant to Thomas v Lockhart 738 F.2d 304 (8th Cir 1984). The Movant argues that defense counsel never bothered to explore these similar possibilities in his case which may have led to a downward departure in his sentencing. This lack of advocacy on the part of defense counsel constitutes ineffective assistance of counsel. Defense counsel did not fulfill his responsibility as an advocate on the Movant's behalf, thereby preventing voluntary, knowing and intelligent choice by defendant to plead guilty.

6. Failed to interview, depose or subpoenae any witnesses:

Counsel failed to attempt to call, interview or subpoenae any witnesses the Movant had submitted. Several alibi witnesses as well as medical records would have confirmed that the Movant was living in Virginia at the time police claim a confidential informant had observed the Movant processing cocaine for sale at 535 Nimitz Road in November 2002. The Smyrna Police Department would

have confirmed that Lori Stewart (who acted as an informer on May 3, 2003 in violation of Wong Sun v U.S. 371 U.S. 471 (1963) where the U.S. Supreme Court ruled that information received from a person arrested who never before acted as an informer was not enough probable cause to search and seize the residence of a possible drug dealer without a search warrant) was in fact selling drugs and had b been arrested and charged with "Intent to Deliver" in April 2003. When arrested, Stewart was found with 2.2 grams of crack cocaine, two glass crack pipes and was high on cocaine and under the influence of alcohol. Counsel's failure to adequately prepare his case by not interviewing or subpoenaeing witnesses and not preparing an alibi defense severely prejudiced the Movant's defense AND constitutes ineffective assistance of counsel, pursuant to DeMarest v Price 905 F.SUPP 1432 (D.COL 1995) and U.S. v Gray 878 F.2d 702 (3rd Cir 1989). The Movant argues that he had informed counsel through repeated correspondence of his list of 14 witnesses, that they were available and prepared to testify and what their testimony consisted of, and that the testimony was necessary to avoid prejudice; counsel failed to track down the owner of the handgun to testify to ownership of the handgun. This was ineffective assistance of counsel. This alibi witness would have explained that he kept the handgun at the residence for safekeeping and that the Movant was in innocent possession of the two ammunition clips found in the Movant's motel room, see COMPA v

Fink 791 A.2d 1235. Further that the handgun was not connected to any drug related activities. Counsel's failure to make reasonable efforts to interview and utilize known witnesses having a direct bearing on Movant's substantial defense, his failure to make a minimal effort to discover available information essential to the case and the ommission of basic communications between client and counsel resulted in a lack of preparedness which

NOTHING FOLLOWS

nullified any meaningful plea negotiations, therefore, the
Movant argues that he was denied effective assistance of coun-
sel. Counsel's failure to investigate, contact and interview
potential defense witnesses was not reasonable trial strategy
pursuant to Berryman v Morton 100 F.3d 1089 (3rd Cir 1996).

7. Failed to investigate and or depose any state witnesses:

Counsel failed to investigate and or depose any of the
state's witnesses as the Movant had requested. Two of the alleged
co-defendant's along with Lori Stewart, were cocaine addicts, two
were interrogated by police while in cocaine induced states and all
four were convicted felons. Further, the Movant submitted a list
of questions to be asked each witness similar to the following:

Police:

1. Did you visually identify the the person known as
"Winfred Brown" with a DOB 6-21-57, before May 3, 2003 that your
CI was allegedly dealing with? Where and how?

2. Other than the perjured testimony of Lori Stewart, do
you have any witnesses at all that will testify that they actually
purchased drugs from Winfred Brown Sr?

3. Can you tell the court why the state decided not to
use Lori Stewart as a witness against the defendant? Isn't it
because she was deemed unreliable and not credible?

4. How is it that Winfred Brown Jr, DOB 9-19-74, who

actually lived at the residence since July 2002, is never iden-
tified in your affidavit of probable cause at 535 Nimitz Road?

5. Isn't it true that you now know it was Winfred Brown
Jr, DOB 9-19-74, that was actually living at the residence with
his girlfriend, Jennifer Haas and selling drugs from that address
and that your probable cause affidavit was materially defective?

6. What exigent circumstances allowed your police officers
to enter the residence and begin searching when all of the defend-
ant's were arrested outside the residence?

7. And you knew from expert police surveillance that these
were the only persons present at the residence at the time of the
raid, did you not?

8. In reference to the unloaded handgun, did you find the
defendant's handprints on the gun?

9. Was the gun registered to the defendant?

10. Where the drugs you found on Lori Stewart the same color
and texture as what you found at 535 Nimitz Road or on the defend-
ant?

11. You stated at the defendant's preliminary hearing in
May 2003, that you were investigating Big Winnie and Little Winnie,
later identified as Winfred Brown Sr and Jr, page 23 Lines 12-15 of
the preliminary hearing transcrips. However in your affidavit of
probable cause for 535 Nimitz Road, you only refer to "Winfred Brown

Dob 6-21-57, and refer to him as "Winchester" not Big Winnie.
Isn't it true that you didn't know who you were investigating
until you actually made the arrests and realized there were two
Winfred Brown's and that is why your affidavit never identifies
the real Brown, who is Brown Jr that was actually living and
selling drugs at 535 Nimitz Road?

12. What time did you really get that search warrant
signed?

Medical Examiner:

Were the drugs found on Lori Stewart the same color and or
texture as any of the drugs found on the defendant or inside the
residence at 535 Nimitz Road?

Alleged Co-defendant's:

1. Was Winfred Brown Sr selling drugs in a joint venture
with his son Winfred Jr at 535 Nimitz Road?

2. Was Winfred Sr living at 535 Nimitz Road in November
2002 when this investigation began?

3. Do you know where he was living?

4.. Are you familiar with any events that may have left
the defendant bedridden during that period of time?

5. Isn't it true that Brown Sr was completely absent from
535 Nimitz between the periods of February 16, 2003 and April 24,
2003?

6. Did Brown Sr have ownership or constructive possession of any drugs found inside the residence at 535 Nimitz Road?

7. Was Brown Sr and or Lori Stewart even aware that the 51 grams of crack cocaine were in the drop ceiling in the basement?

8. Did Brown Sr own the unloaded handgun or know of its location inside the residence?

9. Do you know who actually owns the handgun and why it was left at the residence?

Kent Budget Motel Manager:

1. Was Winfred Brown the only occupant in Room 50?

2. In fact, a woman stayed there full time even when the defendant was absent from the room, correct?

3. Didn't you have a conversation with the defendant in which you informed him that the woman now known as Lori Stewart was doing some kind of business out of the room in his absence?

4. Did you ever notice any business being done from the room when the defendant was present?

Counsel informed the Movant that he had spoken to the Motel Manager who refused to corroberate the Movant's allegations that the Movant had been warned by the manager that Lori Stewart was doing business out of the motel room in the Movant's absence. The Movant was adamant that counsel subpoenae the motel manager as

29

as a hostile witness, as he feared the Motel Manager responded negatively because he did not want to let it be known pubicly that he was condoning drug activity at his motel.

On the morning of trial a co-defendant (Brown Jr) testifying for the state attempted to inform defense counsel that his testimony consisted of the fact that the Movant was not involved with the drugs, drug activities or know the location or own the unloaded handgun found at his residence at 535 Nimitz Road. Defense counsel informed that co-defendant that he could not talk to him. Lori Stewart was also on hand to be deposed but counsel refused to interview her also. Two more alleged co-defendant's (Lawrence Jeff and Jennifer Haass) were in the courtroom but counsel refused to interview them also. In the case of Stewart, she was prepared to inform counsel that she had lied and had not received any drugs from the Movant while at 535 Nimitz Road as she had previously informed police. The state had informed Stewart through her attorney on the morning of trial that she had been disqualified as a state witness because she was deemed unreliable and not credible. The Movant argues that Stewart is the same person whose reliability and credibility police used to arrest the Movant, see affidavit of probable cause, exhibit A. Movant argues that pursuant to U.S. EX REL Duncan v O'Leary 806 F.2d 1307 (7th Cir 1986), that counsel's failure to move for a continuance to interview state's witnesses

30

constitutes ineffective assistance.  Movant argues that he informed
counsel that co-defendant's statements to the police on the night
of the raid were coerced, manipulated and inaccurate and that co-
defendant's were willing to tell counsel that Movant had no in-
volvement with the drugs, drug activity or the unloaded handgun
at 535 Nimitz Road where the Movant was only visiting at the time
of the raid.  Trial counsel's failure to investigate criminal his-
tory and reputation for truthfulness of state's witnesses amounted
to ineffective assistance.  Counsel clearly has a duty to make him-
self familiar with "Discoverable" material and information; see
Williams v Washington 59 F.3d 673 (7th Cir 1995) and Medina v Barnes
71 F.3d 363 (10th Cir 1995).

    Defense counsel's failure to investigate and interview the state's
key witness constitutes "cause for procedure default" and requires
an evidentiary hearing under fundamental miscarriage of justice
standard to resolve ineffective assistance claims by counsel pursu-
ant to U.S. v Cook 45 F.3d 388 (10th Cir 1995).[*]  Counsel was unpre-
pared to request a 609 hearing on any of the state's witnesses (all
of whom had prior felonies) due to his failure to investigate and
interview state witnesses.  Pursuant to Strickland v Washington Id.,
counsel's failure to investigate potential defense witnesses did not
represent a reasonable trial strategy.  His failure to interview
state witnesses left him unprepared to call into doubt inferences

[*] SMYRNA POLICE COULD HAVE CONFIRMED THAT STEWART WAS ARRESTED AND
CHARGED WITH "PWITD" MARIJUANA AND WAS FOUND WITH A SET OF SCALES IN APRIL 2003.

31.

made by the state or elicit testimony favorable to the Movant, prejudiced the Movant within the meaning of Strickland; see also Lawrence v Armontrout, 900 F.2d 127 (8th Cir 1990)

8. Refused to file for a continuance after having received "Discovery" at the Final Case Review (three business days before trial) and not having time to review or discuss it with the Movant:

Counsel informed the court in a "Motion to Compel Discovery" dated January 21, 2004, that he could not represent the Movant properly without full "Discovery" and that he was waiting to file a "motion to suppress" based on discrepancies in the probable cause, see exhibit D. It is important to note that counsel filed this motion 7 weeks after receiving the defendant's case and only two weeks before the scheduled trial. Discovery was subsequently received three business days before trial on January 28, 2003, at Final Case Review. In open court, counsel informed the court that he had just received "Discovery" and had not had the opportunity to personally review it or with the defendant, but then failed to request a continuance. The Movant was subsequently never allowed to review his "Discovery" before being coerced and manipulated into taking a plea on the morning of trial. The Movant then addressed the court personally to request a continuance inorder to seek private counsel. The court

32

denied that request without inquiry, see pertinent argument. The
Movant argues that had counsel himself requested a continuance in
order to review and discuss the Movant's "Discovery" it would have
been in all liklihood granted. He had already informed the court
that he needed the "Discovery" inorder to file motions on behalf of
the Movant in a letter dated January 21, 2004. The Movant argues
that the trial judge may not insist on such expeditiousness that
counsel for defendant lacks areasonable time to prepare for trial,
stripping away opportunity to prepare for trial is tantamount to de-
nying altogether assistance of counsel for the defense, U.S.C.A.
Const Amend 6. Without reviewing or discussing "Discovery" with the
Movant, counsel then proceeded to file an untimely "Motion to Sup-
ress" and a "Flowers " Motion on January 30, 2004, 1 business day be-
fore trial without ever fully understanding or having reviewed the
case with the Movant, see Stokes v Peyton, 437 F.2d 132 (4th Cir 1970),
If the defense counsel had consulted with the Movant he would have
known that the search warrant was materially defective, thus the need
(FRANKS V DELAWARE 98 S.CT 2674 (1978),
to file a "Franks" hearing  On the morning of trial the Movant pre-
sented counsel a list containing 13 reasons why counsel should seek
a continuance. See argument of ineffective assistance in reference
to "Failing to file a timely motion to Compel Discovery."

9. Refused to file for a continuance after finding he was unpre-
pared for trial:

33

Defense counsel's failure to obtain a continuance for the purpose of producing witnesses to verify Movant's alibi defense, failure to interview witnesses, to adequately prepare

NOTHING FOLLOWS

Movant's defense, to submit an appropriate and factual "Motion
To Suppress" and a "Flowers *AND FRANKS* Motion" in a timely manner based upon
accurate information (that could have been provided by the Movant)
and interview alibi witnesses to determine Movant's defense con-
stituted ineffective assistance of counsel pursuant to <u>Walker v
Lockhart</u> 807 F.2d 136 (8th Cir 1986).  Defense counsel's failure to
move for a continuance was both professionally deficient and preju-
dicial, considering that counsel could not have adequately prepared
defendant's alibi defense over a weekend, and counsel had neither
adequately interviewed *THE MOVANT* nor subpoenaed any witnesses pursuant to
<u>Code v Montgomery</u> 799 F.2d 1481 (11th Cir 1986).

   10.  Failed to investigate Alibi Defense:

     Defense counsel by being unfamiliar with Movant's case and
his failure to conduct a meaningful case review, failed to become
knowledgeable of, or investigate Alibi Defense, or call Alibi wit-
nesses who would put the Movant in another state at the time police
say the Movant was selling cocaine in Delaware.  This constituted
performance below an objective standard of reasonableness.  Because
the Movant had witnesses and medical documentation that would have
proven the Movant could not have been in the state during specific
times the police state a confidential informant was buying drugs
from the Movant, there existed a reasonable probability that had
counsel investigated these facts and interviewed and subpoenaed
witnesses, the results of a trial would have been different, pur-
suant to <u>Brown v Myers</u> 137 F.3d 1154 (9th Cir 1998), <u>U.S. v Dawson</u>
<u>857 F.2d 923</u> (3rd Cir 1988) and <u>Wade v Armontrout</u> 798 F.2d 304 (8th
<u>Cir 1986)</u>.※' Defense counsel's failure to file notice of Alibi De-
fense and attempt to find, interview and subpoenae alibi witnesses
fell below an objective standard of reasonableness pursuant to

※' DEFENSE COUNSEL ALSO FAILED TO EXPLORE AN "INNOCENT MAINTENANCE"
DEFENSE REGARDING THE TWO AMMUNITION CLIPS FOUND IN MOTEL ROOM.

Skinner v State 640 A.2d 655 (1994), see also Lawrence v Armon-
trout 900 F.2d 127 (8th Cir 1990). Further, counsel's failure to
properly consult with defendant and prepare for an "Identification
Defense" constituted ineffective assistance of counsel and requires
and evidentiary hearing to resolve the claim pursuant to Lawrence v
Armontrout Id. The Movant argues that he was denied ineffective
assistance of counsel due to counsel's failure to investigate and
develop mitigating evidence that would-have supported the Movant's
defense. The Movant argues that his claim must be evaluated by the
standard set forth in Strickland, Supra, where there is reasonable
probability sufficient to undermine confidence in the outcome in
the defendant's sentence, that, but for counsel's unprofessional
errors, the results of the defendant's sentence would have been
different. The U.S. Supreme Court ruled in Strickland that a defense
attorney is required to conduct a "reasonably substantial investiga-
tion" into the line of defense since "there can be no strategic
choice" that renders such an investigation unnecessary.

The absence of Alibi witnesses severely undermined confidence
in Movant going to trial thus establishing prejudice flowing from
counsel's ineffective assistance in failing to investigate the Mov-
ant's claims and an Alibi Defense or to Subpoenae any Alibi wit-
nesses.

11. Failed to file a timely "Motion To Compel Discovery":

Counsel was given the Movant's case on December 5, 2003.
On January 21, 2004, counsel filed a motion to compel Discovery,
seven weeks after having received the Movant's case but more import-
antly only two weeks before the scheduled trial, see exhibit E.
Discovery was not received by counsel until January 28, 2004; the

day of the Movant's Final Case Review, but more importantly,
three business days before scheduled trial. Because of counsel's
lack of timeliness, the Movant was never allowed to review or
discuss his "Discovery" with counsel and was thencoerced and ma-
nipulated by counsel on the morning of trial to accept a plea
offer without ever having reviewed the evidence against him. This
coercion and manipulation consisted of the Movant being told by
counsel, "they got you" and that if his son's testimony was too
favorable toward the Movant the state might reconsider the 5 year
plea offer to the Movant's son. Finally the Movant was told that
the court would not hear his motions because they were filed late
and that if the Movant proceeded to trial and won, the state would
file with the U.S. Attorney's office to have charges of possession
of ammunition by a person prohibited brought against the Movant.
The Movant later determined that he could not be charged as a per-
son prohibited. Had he been offered the opportunity to review
"Discovery", the Movant would have been able to inform counsel that:

(1) The affidavit of probable cause for 535 Nimitz Road was
materially defective

(2) That references to "Winfred Brown, DOB 6-21-57" in the
affidavit were erroneous and that the "Winfred Brown" living at
535 Nimitz Road since July 2002, living with his girlfriend, Jennifer
Haass and selling cocaine, was in fact the Movant's son, "Winfred
Brown, DOB 9-19-74

(3) The Movant was still living in Virginia in November 2002,
when the affidavit of probable cause states that a confidential
informant had observed the Movant (Winfred Brown, 6-21-57) processing
cocaine for sale. That the Movant had been bedridden and taking

37

physical therapy since September 13, 2002 at a rehabilitation
center due to a car accident where the Movant was almost killed.

(4)  The Movant never moved to Delaware until January 2003.

(5)  The Movant had in fact lived at 535 Nimitz Road from
Janauary 16 through February 15, 2003.

(6)  The Movant had been completely absent from 535 Nimitz
Road between the periods of February 16, 2003 and April 24, 2003.

The Movant had previously disclosed to counsel that he did not
own the handgun or know of its location inside the residence.  He
further informed counsel that he knew who the gun belonged to and
gave counsel that individual's name by letter in October 2002
(attorney of record at that time was Gregory Morris).  The Movant
also discussed this information with defense counsel at his last
Case Review.

(7)  The Movant did not have keys to the residence or access to
the residence

Counsel's failure to seek pretrial "Discovery" in a timely
manner, failure to file several motions (see arguments) and others
filed inaccurately or in an untimely manner warrant an evidentiary
hearing to resolve the ineffectiveness of counsel claims pursuant
to Clark v Blackburn 619 F.2d 431 (5th Cir 1980), Pilchak v Camper
741 F.SUPP 782 (W.D. MO 1990); see also U.S.C.A. Const Amends 6 and
14.

(12) Failed to file a "Motion To Suppress" based on "illegal search
and seizure at 535 Nimitz Road and Room 50 at the Kent Budget Motel:

The Movant informed counsel via correspondence on numerous
occasions that the police conducted a 4 and 1/2 hour warrantless
raid at 535 Nimitz Road and in all probability, based on the prob-
able cause worksheet, attached to the charge sheet, the police also

entered Room 50 at the Kent Budget Motel without a search warrant,
exhibit G.

The Movant argues that the police raid at 535 Nimitz Road resulted
in an illegal search and seizure because police had no search warrant
and in fact no search warrant had been signed by the magistrate at
1320 hours when the raid began even though police initially asserted
they had a search warrant in their possession when they arrived.  When
asked to produce the warrant, the Movant was told "it was in the mag-
istrates chambers waiting to be signed."  Further, after arresting
all the defendant's (Winfred Brown, DOB 6-21-57, James Burrus and
Lawrence Jeff) "outside" the residence and surveillance having con-
firmed that these were all the defendant's at the residence (see pre-
liminary hearing transcripts, page 14 lines 1-23, exhibit B), police
still executed a protective sweep of the residence in violation of
the court's ruling in State v Hedley 593 A.2d 576 (1990).  In Hedley
the court ruled that if an arrest occurs outside the residence, pro-
tective sweep would be legal only if officers have articulable facts
which taken with logical implications therefrom would lead reasonably
prudent officer to believe area to be searched harbors person or per-
sons that posed danger to those on arrest scene.  In U.S. v Curzi 867
F.2d 36 (1st Cir 1989) the court ruled that in the absence of a search
warrant even protective sweeps are constitutionally impermissible.  In
Vale v Louisiana, 90 S.CT 1969 (1970) the U.S. Supreme Court ruled

39

that the search of adefendant's residence without search warrant after the defendant was arrested outside the residence was illegal and could not be justified as incident to arrest. The inventory and affidavit of property taken under search warrant clearly indicates that the search began at 1315 hours (exhibit H); however the search warrant was not presented until 1730 hours.

The Movant argues that the surveillance officer on the scene had observed the residence for over two hours and was aware that Brown, Burrus and Jeff were the only individuals at the residence. All three were subsequently arrested outside the residence. Police after the initial arrests and searches outside the residence then forced the three individuals into the residence as a pretense to begin searching the entire house. This search continued for over four (4) hours before a search warrant was presented to Jennifer Haass at approximately 1730 hours. In fact DEA agent Zahn called someone (presumably the affiant) on his radio at 1530 hours to request they add the Movant's 1988 Honda to the search warrant. During this time police searched couches, dresser drawers, beds, and closets in the presence of the defendant's

NOTHING  FOLLOWS

40

who were seated in the living and dining room. When the Movant
again inquired about a search warrant, he was told, "don't worry
about it, everything we're doing is leagal" by DEA Agent Zahn.
The Movant argues that there were no exigent circumstances that
allowed police to enter the residence without a search warrant
after having detained and arrested all the defendant's outside the
residence:

(1)   There was no emergency that the police were responding to

(2)   There was no hot pursuit

(3)   Since the defendant's were arrested outside the residence,
there was no imminent destruction of evidence

(4)   No evidence was about to be removed from the residence with
the defendant's in custody

(5)   There was no risk to police safety

The Movant argues pursuant to Mason v State 534 A.2d 242 (1987)
that absent exigent circumstances, police must obtain search warrant
before entering home at any time, day or night. Further, that the
burden is on the state to demonstrate existence of exigent circum-
stances to justify a warrantless search of residence. The Movant
argues that his argument is upheld by the court in Shipley v Cali-
fornia 89 S.CT 2053 (1969); Chimel v California 89 S.CT 2034 (1969);
Klosieski v Florida 482 SO.2d 448 (FLA Dist CT APP 1986) and New
York v Okun 135 A.D. 2d 1064, 522 N.Y.S. 2d 991 1987.

The Movant still maintains that he did not live at the residence;
however, his name was on the search warrant and he was subsequently
charged with Possession of a Firearm During the Commission of a Felony
for an unloaded handgun found inside the residence. The Movant argues
that the state cannot "have it both ways." During pretrial the state
and defense counsel (Mr Anderson) contended that the Movant did not

41

have a reasonable right to expectation of privacy at the residence. ✱¹
However, the state still charged the Movant with everything found in
the residence. Pursuant to Jones v U.S. 80 S.CT 725 (1960) the court
ruled that defendant had standing to contend that entry and subsequent
seizure were unlawful notwithstanding he testified that property
seized was not his and that place of arrest was not his home, where to
hold that defendant's failure to acknowledge interest in Narcotics or
premises prevented his attack upon search, would be to permit the
government to have advantage of contradictory positions as basis for
conviction, since conviction flowed from defendant's possession at time
of search, yet fruits of that search, upon conviction depended, were
admitted into evidence on ground that defendant did not have posses-
sion of narcotics at that time, so that prosecution subjected defendant
to penalties meted out to one in lawless possession while refusing him
remedies designed for one in that situation, and that defendant's
testimony on "Motion to Suppress" that he was present in apartment
with permission of its owner made out a sufficient interest in the
premises to establish him as a "person aggrieved" by search. The
Movant argues that in cases of actual or constructive denial of
assistance of counsel, prejudice is completely presumed.

The Movant now argues that the affidavit supporting the charge
sheet ordered 535 Nimitz Road and Room 50 at the Kent Budget Motel
"secured" based solely on the allegations of Lori Stewart before
any police contact was made at 535 Nimitz Road, see line 17, exhibit
C. Defense counsel's failure to move to Suppress all evidence ob-
tained as a result of illegal searches at both locations constitutes
ineffective assistance and requires an evidentiary hearing to develop
on claim pursuant to Morrison v Kimmelman 650 F.SUPP 801 (D.N.J. 1986).

✱¹ NOTE: WINFRED BROWN JR DOB 9-19-74, WHO LIVED AT THE RESIDENCE IS ATTACKING
THE ILLEGAL SEARCH & SEIZURE AT 535 NIMITZ ROAD ON SEPARATE RULE 61, CASE
NUMBER #0305001518.                                    42

Further, when police contact was made, the Movant was <u>outside</u> the residence at 535 Nimitz Road where he was visiting his son's residence." Although in paragraph 3 of the affidavit for Room 50, at the Kent Budget Motel states the Movant was being detained at 535 Nimitz Road (exhibit G), in fact the Movant had been arrested at the time of the police contact. The Movant was immediately surrounded by police with drawn guns, thrown to the ground and handcuffed. Police then went immediately into the Movants pockets and retrieved approximately 5 grams of cocaine. To justify arresting and searching the Movant, the police must have had a "reasonable and articulable suspicion that the "Movant" was conducting criminal activity. A reasonable and articulable suspicion means the ability to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant intrusion. The reasonable articulable suspicion must support the belief that, "a crime had just been, was being, or was about to be committed. The Movant was standing outside his son's residence when the police arrived. The police as noted in the Movant's argument on a materially defective search warrant were mistaken in identifying the Movant as living at or involved in the on-going drug distribution at 535 Nimitz Road. Further, they had relied on a person (Lori Stewart) they had just arrested who informed them she had purchased drugs from Brown Sr while at the residence. These were lies fabricated by Stewart to conceal her own criminal activity. The Movant argues that he did not have keys or access to the residence and it should not be inferred that he knew of the presence of the drugs or had control over them unless there are other incriminating statements or circumstances to butress such inference. The Movant has stated that he has two sworn

affidavit's on file stating that he was not aware that there were any drugs in the residence and that he had no✗ control or dominion over those drugs, *SEE ONE AFFIDAVIT AT EXHIBIT F.*

The police had no reasonable grounds or probable cause to believe that "Winfred Brown Sr" (other than the misidentification with Brown Jr, which the affidavit indicates as being the case) had committed any felonies and that their only belief arose from the allegations of Lori Stewart, who at the time of her arrest was in a crack cocaine induced state (in violation of Wong Sun v U.S. Id.), was a convicted felon to include three convictions for criminal impersonation and was wanted on several drug related capiases and assault charges. Stewart was not a confidential informant nor was she reliable or credible and was subsequently dropped as a state witness because of her past record and activities. The Movant argues that his arrest violated 11 Del C 1904 because police had misidentified the Movant and had never "properly directed" any surveillance on the Movant based upon his true identity until the false allegations of Lori Stewart. Instead the police had focused their surveillance on the residence at 535 Nimitz Road where the Movant did not live. The police had no reason or articulable suspicions that the Movant was personally involved in any drug dealing other than their misidentification and the perjured allegations of Lori Stewart. It is important to note also that in the Affiant's affidavit accompanying the charge sheet, exhibit C, the affiant observed several other vehicles visiting the residence that police failed to stop. The Movant argues that the affiant readily identified those vehicles as being legitimately at the residence but then attempts to have the magistrate believe they may or were involved in illegal

drug activities specifically in the misidentification of "Galen Brooks." The affiant realized that if they stopped those other vehicles, he would lose his probable cause since those vehicles would not have been found with any drugs. However, he chose to have the "two white women" stopped because they looked to be out of place. The affiant now argues that the police contact/detention quickly became more invasive when a police officer stated while the Movant was sprawled on the ground face first, "if you move I'm going to shoot you in the head." Another police officer then went immediately into the Movant's pockets and retrieved 3.7 grams of cocaine out of the Movant's pockets (the Movant must remind the court at this point that the police did not have a warrant when this was done). Of important note here is there was no Miranda Warning given. In State v Reginald Giles, 2002 WL 1316388 (DEL SUPER) it was the court's view that the intrusion rose to the level of arrest when the defendant was handcuffed. Then, the "police procedures qualitatively and quantitatively became so intrusive with respect to the subject's freedom of movement and privacy issues as to trigger the full protection of the Fourth and Fourteenth Amendment." See also State v Kang 2001 WL 1729126 (DEL SUPER CT) and U.S. Jackson 533 F.2d 314 (1976). The Movant argues that the police were in clear violation of the "Plain Touch Doctrine" espoused in Minnesota v Dickerson, 508 U.S. 366 113 S.CT 2130 (1993), where the court ruled that

45

search of defendant's jacket exceeded lawful bounds marked by Terry. No PAT Down was conducted. Police went immediately into the Movant's pockets. The search went beyond what was necessary to determine if the Movant had a weapon. See also Terry v Ohio 88 S.CT (1968). In Giles, the court determined that the defendant was in custody at the time he was handcuffed. The Movant argues that in his case as in "Giles" the search of his person is not admissable, nor can they be the basis of the search. This is because they were the result of custodial interrogation without the administration of Miranda Warnings. These warnings protect a defendant from interrogation in a "police dominated atmosphere," containing "inherently compelling pressures which work to undermine the individual's will to resist and compel him to speak where he would not otherwise do so freely." The Miranda Warnings are required if the court determines (1) the defendant was in police custody when they (2) interrogated him. The Movant argues that he never gave any such consent to search his person or enter his motel room without a search warrant. The Movant then argues that police used his possession of the 3.7 grams of cocaine along with information received from Lori Stewart to get a search warrant to search Room 50, Kent Budget Motel (KBM). See paragraphs 3 and 4 of the affidavit of probable cause accompanying the search warrant for Room 50, KBM, exhibit G. The Movant argues that the evidence attained as a result of his personal search and Room 50, KBM are "Fruits of the

Poisinous Tree," and that counsel's failure to file for a Motion to Suppress constitutes ineffective assistance of Counsel. Therefore, an evidentiary hearing should be held to determine if this evidence would have been suppressed.

The Movant has steadfastly denied any involvement with the drugs or drug activity within his son's residence. In fact, Winfred Brown Jr, informed Deputy Attorney General (DAG) Kriner on Janaury 29, 2004, that "Winfred Sr, DOB, 6-21-57" was not involved in any way with the drugs or drug activity at 535 Nimitz Road. Further that the Movant did not own or know the location of the handgun found in the residence, see sworn affidavit at exhibit F. The original affidavit is in defense counsel's files. The Movant argues that there is a reasonable probability that the evidence at both locations would have been suppressed if counsel had filed a timely and accurate Motion to Suppress pursuant to U.S. v Matos 905 F.2d 30 (2d Cir 1990).

13. Counsel failed to file a "Motion to Suppress" police taped interviews of alleged co-defendant's.

Counsel failed to file a motion to suppress the taped interviews of Jennifer Haass, Lawrence Jeff and Lori Stewart pursuant to Martin v Maxey 98 F.3d 844 (5th Cir 1996), Smith v Wainwright 777 F.2d 609 (11th Cir 1985) and U.S. v Davenport 986 F.2d 1047 (7th Cir 1993). Haass, Jeff and Stewart were severe crack addicts with $100 - #300 a day habits. Jeff and Stewart had been smoking cocaine prior to

their arrests and had not been to sleep for two days prior to their arrests and interrogation. Both were suffering from sleep depri-vation. The Movant argues that he was severely prejudiced by coun-sel's failure to move to suppress these statements and has estab-lished cause for a procedural default. The Movant argues pursuant to U.S. v Davenport that the defendant must move before trial to exclude evidence of a confession, and failure to make the motion produces forfeiture unless defendant can establish "cause" for ommission. The Movant argues that in this case this ommission was due to ineffective assistance of counsel.

14. Failed to notify the court that he had a potential conflict of interest:

The Sixth Amendment right to effective assistance of counsel pro-vides for representation that is free from conflicts of interest or divided loyalties pursuant to Lewis v State 757 A.2d 709.

Counsel was burdened by an actual conflict of interest where he also represented a key alibi witness for the Movant that may have been called upon to incriminate herself. This is presumed prejudice. This breach of loyalty is perhaps the most basic of counsel's duties pursuant to Strickland v Washington 104 S.CT 2052. On the day of trial the Movant ask counsel had his witnesses been subpoenaed? Counsel advised the Movant that he had not subpoenaed any witnesses and that he had a possible conflict of interest with one of the

1 Movant's alibi witnesses as he was <u>her</u> defense counsel in a separate

2 criminal matter. Movant suggested counsel should either withdraw or

3 present this issue to the court, but counsel failed to do so in vio-

4 lation of the court's ruling in <u>Lewis v State 757 A.2d 709</u> and in

5 <u>Muhammed Dawan v A.L. Lockhart 980 F.2d 470.</u> The Movant argues that

6 he is not procedurally barred due to his own failure to raise this

7 claim at sentencing. Instead counsel continued to coerce and manip-

8 ulate the Movant to accept a guilty plea. After the Movant accepted

9 his plea offer, counsel advised the Movant that he should "cease his

10 <u>relationship with the alibi witness in question so that she might</u>

11 <u>pursue a more meaningful relationship with someone else.</u>" The Movant

argues that the right to conflict free representation extends to plea

proceedings, including investigation and negotiation pursuant to <u>Moore</u>

<u>v U.S. 950 F.2d 656 (10th Cir 1991).</u> The Movant argues that he is en-

titled to a presumption of prejudice on ineffective assistance of

counsel claim if he can prove that his lawyer actively represented

conflicting interests and that actual conflict of interest adversely

affected his lawyers performance. The Movant argues that defense

counsel did not want the alibi witness to get involved with his case

because it might prejudice "her" in her own case which defense counsel

was actively involved in representing the alibi witness. This con-

flict of interest caused defense counsel to be unable to give the

Movant the undivided and undiluted fidelity to which the Movant was

entitled. Defense counsel was duty bound to inform the court that
he had a conflict of interest.

To find a <u>Sixth Amendment</u> violation based on a conflict of int-
erest, the reviewing court must find (1) that counsel actively rep-
resented conflicting interests; and (2) that an actual conflict of
interest adversely affected counsel's performance, pursuant to <u>Cuy-
ler v Sullivan 446 U.S. 335 100 S.CT 1708</u>. Although Cuyler involved
a conflict of interest between clients, the presumption of prejudice
extends to a "conflict between a client and his lawyers personal and
professional interests," see <u>Mannhalt v Reed 847 F.2d 576 (9th Cir)</u>.
In <u>Rosenwald v U.S. 898 F.2d 585 (7th Cir 1990)</u>, the court ruled
that where an attorney represents conflicting interests <u>prejudice is</u>
<u>presumed for showing ineffective assistance of counsel</u>. Finally in
<u>U.S. v Grieg 967 F.2d F2d 1018 (5th Cir 1992)</u>, the court ruled that
trial court must conduct a <u>Garcia</u> hearing once it has been alerted
of the existence of an actual conflict of interest. The Movant argues
that this conflict constituted reversible error in that it resulted
in the denial of the Movant's right to the effective assistance of
conflict-free counsel.

15. Failed to file pretrial motions timely or accurately:

Counsel filed a "Motion to Suppress" and a "Flowers Motion"
on January 30, 2004 based on an illegal search and seizure caused by
the CI's information that Brown was known as "Winchester." The filing

of this motion was one business day before the Movant's trial.  On
February 3, 2004, counsel advised the Movant that the court would
not hear the motions because they were filed "untimely."  Further
counsel advised the Movant that he proceeded to trial and won, the
state would ask the U.S. Attorney to charge the Movant with weapons
violations in the Federal Court.  The Movant then argues that even
though counsel filed these motions late, they still did not accurately
reflect or present to the court the true and clear facts that the
Movant would have presented to counsel if he had been afforded the
opportunity to review his "Discovery" and afforded a productive case
review.  These oversights occured because defense counsel was not
aware of the pertinent issues pertaining to the case, failed to ob-
tain "Discovery" in a timely manner, failed to review "Discovery"
with the Movant and had never discussed the case with the Movant or
reviewed the Movant's case file.  Counsel's failure to obtain "Discovery"
in a timely manner, investigate, and to consult with the Movant about
facts of moving for "Suppression" hearing constitute ineffective assist-
ance and require an evidentiary HEARING pursuant to Nell v James 811 F.2d 100
(2d Cir 1987).  The Movant argues that counsel had a duty to consult
with him on important issues and decisions.  Had he done so, counsel
would have been aware that the biggest issue in this case was a
materially defective search warrant; that the Movant was not living in
Delaware in November 2002; that the movant had not been present at

535 Nimitz Road for over 10 weeks (February 16-April 24, 2003) before
the week leading up to the raid on May 2, 2003, and that it was the
Movant's son, "Winfred Brown Jr, DOB 9-19-74, that the CI had ob-
served in November 2002 and made arrangements with for a controlled
buy in late April/early May that Lawrence Jeff participated in.   In-
stead all counsel could focus on was "that there was no one living
at 535 Nimitz Road known as "Winchester," see affidavit of probable
cause at paragraphs 3 and 8 and counsel's motion to suppress at ex-
hibits A and D respectively.

    The Movant then argues that defense counsel failed altogether to
file a "Motion to Suppress" based on a materially defective search
warrant.   PURSUANT TO FRANKS v DELAWARE 98 S.CT 2674 (1978)
The trial court must determine whether the Movant's "Motion
to Suppress" would have been successful if pursued by defense counsel
in order to resolve ineffective assistance of counsel claim for fail-
ure to pursue "Motion to Suppress" pursuant to ADCOX v O'Brien 899 F.2d
735 (8th Cir 1990).   The Movant argues that he has shown counsel's
representation fell below an objective standard of reasonableness and
that but for counsel's errors, he would have insisted on going to trial
rather than pleading guilty.

    16.  Failed to file a "MOtion to Sever" the charges between the
residence at 535 Nimitz Road and the Kent Budget Motel:

        The Movant requested by letter to counsel on Janaury 19, 2003
that he file a "motion to sever" the charges at 535 Nimitz Road and

Room 50 at the KBM due to the possibility of testimony at one resi-
dence being prejudicial to the outcome of testimony at the other
residence. This request was pursuant to Weist v DELSUPR 542 A.2d
1193. The Movant argues that he was not involved nor did he have
constructive possession or dominion and control over any drugs, drug
activities or gun found in the residence at 535 Nimitz Road. That
he was only present visiting the residence of his son and was outside
the residence and not in the house when the drugs were found and that
the state can offer no testimony at trial to differ from the Movant's
comments here.

Counsel's failure to file a "Motion to Sever" the charges at two
different residences (one where the Movant did not live) warrants an
evidentiary hearing to resolve the ineffective assistance of counsel
claim pursuant to U.S. v Myers 892 F.2d 642 (7th Cir 1990), U.S. v
Yizar 956 F.2d 230 (11th Cir 1992) and Williams v Washington 59 F.3d
673 (7th Cir 1995). Defense counsel had two sworn affidavit's on file
from alleged co-defendant's stating that Movant did not live at 535
Nimitz Road, was not involved in illegal drug activities at that resi-
dence and was not the owner of the unloaded handgun found in the resi-
dence nor did the Movant know of the location of the handgun inside
the residence and in fact had been absent from visiting the residence
for over 10 weeks leading up to the week of the warrantless raid at
535 Nimitz Road. Counsel failed to familiarize himself with the affi-

*53*

davit's or even realize thy were in his possession.  This rendered

counsel unable to make any strategic decisions regarding the affi-

davit's or using them to corroborate the Movant's defense or im-

peach the state's credibility, U.S.C.A. Const Amend 6 and 14.

17.  Failed to investigate discrepancies in Police reports:

Counsel's failure to investigate the discrepancies in the

probable cause affidavit's for 535 Nimitz Road and Room 50 at the

Kent Budget Motel and the affidavit accompanying the Movant's charge

sheet constitute ineffective assistance of counsel pursuant to Toro

v Fairman 940 F.2d 1065 (7th Cir 1991).  The Movant argues that he has

a right to effective assistance of counsel in deciding whether to

accept or reject a proposed plea.  This was not the case.  See the

Movant's argument on the materially defective search warrants.

18.  Defense Counsel coerced and manipulated the Movant into

accepting the guilty plea:

Defense counsel coerced the Movant's guilty plea in order to

conceal his unpreparedness for trial, which constitutes ineffective

assistance of counsel at entrance plea, pursuant to U.S. v Sanchez-

Barretto 93 F.3d 17 (1st Cir 1996).  On the morning of trial, counsel

repeatedly told the Movant, "they got you, you need to take the plea;"

see other comments used to manipulate the Movant in Argument 11.  The

Movant continued to insist that he had never been allowed to see the

evidence or review the police tapes of interviews of alleged co-defend-

ant's.  Counsel fully realized that the Movant was accepting this plea

reluctantly and on blind faith that counsel was telling him the truth.

The Movant argues that counsel has a duty to familiarize himself with

the "Discovery Materials" provided by the State pursuant to the Sixth

and Fourteenth amendments, see also Williams v Washington 59 F.3d 673,

(7th Cir 1995).  Counsel's lack of preparation severely deprived the

Movant of effective assistance of counsel.  The Movant realized that

counsel does not have to spend any specific number of hours preparing

for trial but is "expected to do something," or articulate a strategic

reason for lack of efforts, 6th and 14th amendment.

19.  Failed to speak or aid the Movant at sentencing:

At the Movant's sentencing, counsel failed to speak or aid the

Movant in any manner.  This was partially true because counsel had

never taken the opportunity to become familiar with the Movant or his

background (23 years in the U.S. Army) or his educational background

(bachelor's degree; an MA and and MBA) or his participation in youth

groups and programs throughout the United States.  This failure also

represents ineffective assistance pursuant to Gardiner v U.S. 679

F.SUPP 1143 (D.ME 1988).  It was at sentencing where defense counsel

could have argued for a downward departure from the minimum mandatory

laws.

In Righter v State 704 A.2d 262 (1997), the Delaware Supreme Court

held that "prejudice" required to establish ineffective assistance of

counsel is defined as reasonable probability that for counsel's unprofessional errors, the result of the proceedings would have been different. In this case the Movant believes he has shown that counsel's actions fell below an objective standard of reasonableness and prejudice in his case and the material standards of Strickland have been met.

In U.S. v Cronic 104 S.CT 2039, the inference that respondents constitutional right to effective assistance of counsel had been violated was based on 5 criteria:

1) Time afforded for investigation and preparation

2) The experience of counsel

3) The gravity of the charge

4) The complexity of possible defenses

5) The accessibility of witnesses to counsel

If no actual assistance for the accused's defense is provided then his constitutional guarantees have been violated. To hold otherwise could convert the appointment of counsel into a sham and nothing more than a formal compliance to the constitutions requirement that the accused be given the assistance of counsel.

The Movant argues that he has made a showing that counsel was negligent in his duties and responsibilities to the Movant. Even when counsel knew it was the Movant's intent throughout the pretrial process to go to trial, he failed in the last six days between the

Final Case Review and trial date to consult or confer with the Movant on any possible defense or course of action.  He failed to file a "Motion in Limine" to exclude police officer "expert" testimony that deals with the jury issue of whether the defendant possessed cocaine.

The issue for the jury would have been whether defendant Brown "possessed" the whole of the narcotics seized or merely that part which was found on his person.  The state had advised counsel that it intended to call a police officer at trial to testify that "the circumstances of this case indicate that the defendant possessed all of the alleged drugs with the intent to deliver them."

Counsel failed to file amotion in Limine to object to having a police officer instruct the jury from the witness stand that the defendant possessed all of the drugs where the physical evidence indicates that he had on his person 3.7 grams of cocaine.  Such an opinion would not have been based on reliable data and would have unfairly prejudiced the defendant pursuant to Daubert v Merrell Dow Pharmaceuticals, INC 509 U.S. 579 (1993).  Further such an opinion would have gone to the ultimate issue of whether the defendant possessed the whole of the drugs, see Wagner v Shanks 194 A.2d 701 (Del 1963) where the court ruled, "where facts are in evidence from which the jury may draw its own conclusions, it is appropriate to present evidence from experts on such issues.  This is a sound rule.  It is designed to pre-

vent litigants from invading the province of the jury by presenting experts who state conclusions of fact which the jury alone should determine." See also Matthews v State, 276 A.2d 265 (1971); Cf D.U. R.E. 704; Szewczyk v Doubert, 354 A.2d 426 (1976). The admission of a detective's opinion that this defendant possessed the whole of the drugs found in another's home would be improper. Here again counsel shows a clear indication that he was not ready or prepared to go to trial in an effective and efficient manner.

He refused on the morning of trial to interview readily available witnesses and instead continued to focus on pleas that he knew the Movant was not inclined to take because he was adamant that he was not guilty of the charges at 535 Nimitz Road. Further, the Movant was never allowed to see the evidence against him to know that police had used a materially defective search warrant to prefer charges against him. Counsel also failed to investigate an alibi defense based on the Movant living in another state during the time a CI informed police he was dealing with "Winfred Brown, DOB 6-21-57." He failed to interview any witnesses, state or defense or to subpoenae defense witnesses.

Defense counsel should be guided by American Bar Standards, should inter alia, confer with client without delay and as often as necessary to elicit matters of defense or ascertain potential defenses, discuss potential strategies and tactical choices with client,

promptly advise him of his rights and take actions necessary to pre-
serve them, conduct investigations to determine matters of defense
that can be developed, interview government witnesses if accessible,
attempt to secure information in possession of prosecution and do a
adequate research, 18 U.S.C.A. Federal Rules Criminal Procedures,
Rule 16(c). Defense counsel never bothered to consider or discuss

NOTHING FOLLOWS

any defense with the Movant.

[ If accused shows a substantial violation of any of the duties owed him by counsel, accused has been denied effective representation of counsel unless government can establish a lack of prejudice U.S.C.A. Const Amend 6. ]

The Movant argues that he never had a meaningful case review because counsel did not have "Discovery" information. According to counsel, this prohibited him discussing the Movant's case with the Movant at his case reviews. In fact counsel waited seven weeks after receiving the Movant's case to seek discovery. Counsel finally received "Discovery" on January 28, 2004, 6 days (three business days) before trial and still never allowed to Movant to review or discuss it before trial. In fact the Movant was never allowed to review his "Discovery" until 3 weeks after he took an ill advised plea based on counsel's assurances that the state "had him;" counsel further coerced the Movant by telling him, "you don't want to go before Judge Vaughn." The Movant later found out that Judge Vaughn was already presiding over another trial and was not available to preside over the Movant's trial. Finally, after numerous requests to do so, the Movant was never allowed to review the tapes of police interviews with his alleged co-defendant's that counsel did have in his possession.

[ The courts ruled in Scott v Wainwright 698 F.2d 427 (11th Cir

1983), Herring v Estelle 491 F.2d 125 (5th Cir 1974) and Kennedy v
Maggio 725 F.2d 269 (5th Cir 1984) that inorder for the defendant
to make an informed and conscious choice of whether to plead guilty,
he must have received accurate advice from counsel.

The Movant argues that counsel's errors were so serious that
counsel was not functioning as counsel guararanteed by the Sixth
Amendment and that counsel's errors significantly prejudiced his
defense, specifically the errors were so serious that the Movant
feared to go to trial for fear of being deprived a fair trial.

The Movant now centers his argument on the fact that the affi-
davit of probable cause for the search warrants at 535 Nimitz Road
and Room 50 at the KBM were materially defective, lacked probable
cause and was submitted by the affiant to the magistrate with reck-
lessness and a total disregard for the truth.

The probable cause affidavit for 535 Nimitz Road is materially
defective for the following reasons:

1) The first page identifies "Winfred Brown, DOB 6-21-57" as
living at 535 Nimitz Road and owning (1) 1988 Honda and (2) 1992
Ford Explorers.

Argument: The affidavit mistakingly identifies "Winfred
Brown, DOB 6-21-57" when in fact it was the Movant's son, "Winfred
Brown Jr, DOB 9-19-74, who had lived at 535 Nimitz Road since June
2002 and Brown Jr that owned the two (2) 1992 Ford Explorers. The

Movant argues that the only vehicle he owned was a 1988 Honda that he arrived in at the residence on May 2, 2003.

2) Paragraph 3 again identifies "Winfred Brown, DOB 6-21-57" as living at 535 Nimitz Road with his girlfriend Jennifer Haass, DOB 3-28-74, and having a nickname of "Winchester" and processing cocaine for sale during November 2003 (sic 2002).

Argument:  Again the Movant is misidentified.  Here again it was "Winfred Brown Jr, DOB 9-19-74," who lived with his girl-friend Jennifer Haass.  Haass informed police of this error in identification during her post arrest interview.  "Winfred Brown Sr, DOB 6-21-57" never moved to Delaware until January 2003, lived with his son between January 16th and February 15, 2003, and was completely absent from the residence from February 16 through April 24, 2003. The Movant visited the residence from April 25th up until the time of the police raid on May 2, 2003, but had no keys or access to the resi-dence.  Further no one at the residence had a nickname of "Winchester." At the preliminary hearing, the affiant changes his story and testifies he was investigating Big and Little Winnie.  What ever happened to "Winchester"  that the affiant states is selling drugs in the affidavit of probable cause?  It is obvious that the affiant failed in his re-sponsibility to properly identify "Winfred Brown."  It is also impor-tant to note that "Brown Jr" who actually lived in the residence is never identified at all in the affidavit of probable cause.  The Mov-

/ 2

ant argues, that in fact, in November 2002, he was confined to bed

and or a wheelchair (and unable to walk) and living in Hopewell,

Virginia as stated in paragraph 4 of the affidavit, after being in-

volved in a head on car collision in September 2002. Further, the

Movant was taking physical therapy 3 days a week to learn how to

walk again. The Movant has medical records to substantiate his in-

juries and surgery and well as physical therapy records.

3) Paragraph 4 correctly states that "Brown" resided at 642

Cabin Creek Dr, Hopewell, Virginia. This is further indication that

the affidavit was *WB* intended to describe Winfred Brown Sr, DOB 6-21-57,
*RATHER THAN BROWN JR, DOB 9-19-74.*

Argument: Paragraph 4 is correct. The Movant argues that

this fact alone should have raised a "Red Flag" indicating to the

affiant that he needed to conduct a visual identification of Winfred

Brown.

4) Paragraph 5 states that police used CI 288 to make a controlled

purchase from "Winfred Brown" at 535 Nimitz Road.

Argument: This controlled purchase was made from "Winfred

Brown, DOB 9-19-74. Brown Jr admitted this to police on May 2, 2003

and again in an interview with Deputy Attorney General (DAG) Kriner

and Detective Mailey (the affiant) on January 29, 2004 when he was

interviewed as a state witness to prepare for his testimony, that

the controlled purchase was made with him as he was the only person

actively selling drugs from 535 Nimitz Road.

5) Paragraph 8 again refers to Brown having a nickname of "Winchester." Not once does the affidavit at this point refer to either Brown as Big or Little Winnie."

Argument: There was never anyone living at the residence known as "Winchester."

6) Paragraph 9 states that CI 288 was observed utilizing a telephone in which he called Brown an ordered an amount of cocaine from Brown.

Argument: The Movant argues for an evidentiary hearing to determine what telephone was used and what telephone number CI 288 called to set up the controlled purchase with "Winfred Brown." The Movant further argues that he never sold any drugs out of 535 Nimitz Road and that his son, "Brown Jr" ran his own drug enterprise strictly by himself.

7) In paragraphs 19 and 20, the affiant states that he observed "Galen Brooks" visit 535 Nimitz Road and that Brooks had previous arrests for narcotics violations.

Argument: Here again the affiant has mistakingly identified "Galen Brooks" (who had a previous arrests for narcotics violations) visiting the residence. In fact it was Jason Brooks who visited the residence that day. At the time Brooks did not have any arrests for narcotics violations. "Winfred Brown Jr, DOB 9-19-74, informed police

of their identification error during his post arrest interview and the affiant corrected his identification of "Brooks" at the Preliminary hearing. This identification error at the time did not allow probable cause to be introduced at that time, *TO ATTAIN A SEARCH WARRANT* since it was not on record that Jason Brooks had been convicted of any narcotics violations.

8) In paragraph 27, the affiant states that Lori Stewart after attempting to escape and subsequently being found in possession of cocaine, informed police that she had "purchased" cocaine from a black male named "Big Winnie" (AKA Winfred Brown) while at 535 Nimitz Road.

Argument: The affiant states that Stewart informed police that "Stewart" purchased cocaine from Big Winnie (paragraph 27, affidavit of probable cause, exhibit A) but at the preliminary hearing changed his story to "Stewart" had just received the crack cocaine from Brown at 535 Nimitz Road and that she was told to take it to the hotel room, see page 11, lines 16-23, exhibit B. The Movant asks this court first, which version is the truth and then why would he ask Stewart to take 2.2 grams of cocaine to an empty motel room registered in the Movant's name, see argument 12, "motion to suppress." Stewart was caught with cocaine, was wanted on several capiases and had been convicted three times for criminal impersonation. How could the police believe her to be reliable or credible? In fact, on the

morning of trial, the state informed Stewart through her lawyer,
Benjamin Schwartz, that she would not be called as a state witness
because she was not reliable or credible. Stewarts original story
was coerced by threats and manipulation as well as her own attempts
to establish her own defense. The Movant presented his fourth de-
fense counsel (Gregory Morris) two sworn affidavit's from a scheduled
state witnesses testifying that one of them had observed the meeting
between Stewart and Brown and that no drugs were exchanged between
Brown and Stewart at their meeting at 535 Nimitz Road on May 2, 2003.
The affidavit went on to say that Stewart was already high on cocaine
and had been drinking when she arrived. Further the Movant had been
in a 5 year old relationship with Stewart and that Stewart actually
lived with Brown up until the morning of May 2, 2003. Stewart's only
purpose for coming to 535 Nimitz Road on May 2, 2003, was to ask the
Movant to give their relationship another chance. Stewart later re-
canted her original allegations to police that Brown had given her
drugs while at 535 Nimitz Road (see argument on Brady disclosure).

9) In paragraph 29, the affiant correctly states that he observed
"Winfred Brown, DOB 6-21-57" arrive at 535 Nimitz Road. This was
approximately 1300 hours.

Argument: Correct

10) In paragraph 30, the affiant informs the magistrate that
Brown had been arrested previously for numerous crimes.

Argument: The affiant fails to inform the court that all the charges he listed against "Winfred Brown, DOB 6-21-57" had either been dropped or Nolle Prosequi.

11) In paragraph 31, the affiant again identifies Jennifer Haass as the girlfriend of "Winfred Brown, DOB 6-21-57" and has the two (2) Ford Explorers registered in her name. Haass informed police that it was "Winfred Brown Jr, DOB 9-19-74" that was in fact her boyfriend and that she in fact had been living with him at 535 Nimitz Road since June 2002, see pages 15 and 16, lines 10-23 and 1-10 respectively in the preliminary transcripts, exhibit B.

Argument: Once again the affiant is mistaken in his identity of "Winfred Brown Sr, DOB 6-21-57. The two (2) Ford Explorers were in fact owned by "Winfred Brown Jr, DOB 9-19-74" and registered in Haass' name.

In the affidavit of probable cause for Room 50 at the Kent Budget Motel, in paragraph 13 and 14, exhibit G, the affiant states that Stewart informed police that she had been with "Big Winnie" at the KBM for the past several days and knew he had more cocaine in Room 50.

Argument: The Movant argues that Stewart had actually lived with the Movant twice at the KBM as well as other local motels and that she and the Movant had been in a 5 year relationship. The Movant had ended that relationship on May 1, 2003 and Stewart was in the process of

67

moving out on May 2, 2003. Stewart had her own key, paid the rent and phone bill on the rooms and stayed there whether the Movant was there or not. Once again the Movant asserts that the affiant should have been able to deduct that "Winfred Brown Sr, DOB 6-21-57" could not have been living at 535 Nimitz Road with Jennifer Haass and staying at the KBM with Lori Stewart and then inviting Stewart to 535 Nimitz Road to meet with him on May 2, 2003, where he supposedly lived with Haass.

In paragraph 17, accompanying the charge sheet, exhibit C, the affiant ordered both residences "secured" pending a search warrant. The Movant was physically outside the residence at 535 Nimitz when police arrived. At the time he was detained/arrested" along with James Burrus and Lawrence Jeff. Brown along with Burrus and Jeff were then forced inside the residence where police then conducted a four (4) hour search of the residence "without" a search warrant. The Movant believes that Room 50 at the KBM was also searched without a warrant. Defense counsel never investigated this as part of a "Motion to Suppress" see argument 12.

In paragraph 3 the movant states that the Movant was detained pursuant to search warrant for illegal substances. However no search warrant was ever presented to the Movant, see argument 12. Also see exhibit H where the affiant states that the searches began at 1:15 pm on the 2d of May 2003. The Movant asserts again that the police did not have a search warrant at that time.

68

Once again the Movant asserts that the affidavits were submitted to the magistrate with blatant recklessness and a total disregard for the truth see Davis and Franks Id.

The Movant argues that the police allowed "material unreported facts" (once they were determined) to go unreported (ommissions) to the issuing magistrate, ie... that there were two "Winfred Brown's," and the fact that they had misidentified "Winfred Brown Sr, DOB 6-21-57 as actually being Winfred Brown Jr, DOB 9-19-74," and that Brown Jr was the person actually living at 535 Nimitz Road with his girlfriend, Jennifer Haass and engaged in the reported drug activities. The Movant argues that police failed to do this because the entire affidavit would have been found materially defective and all evidence seized from both properties would have been declared "Fruits of the Poisinous Tree." The Movant argues that based on these material immissions and mistakes, probable cause did not exist, FED Rules CR PROC 23 Rule 41(c) 18 U.S.C.A. That when a definite material change has occurred in the facts underlying the magistrates determination of probable cause for issuing search warrant, it is the magistrate, not the executing officers who must determine whether probable cause still exists. The Movant argues that the affiant first became aware of Brown Jr when he followed him from 535 Nimitz Road to the US Gas station around 1130 hours and by chance saw Brown Sr and Brown Jr talking. The affiant informed Brown Jr of this on

January 29, 2004 when Brown Jr was being interviewed as a state witness at Brown Sr's trial. The affiant observed Brown Jr leave the residence in his 1973 Chevy Nova followed by Haass in one of the 1992 Ford Explorers. The Movant argues that the affiant knew at that time that they had misidentified Winfred Brown Sr, DOB 6-21-57 as living at the residence of 535 Nimitz Road. The Movant's argument is furthered by the fact that he had been detained two (2) weeks earlier by the same DEA Task Force who stopped and detained him for over 30 minutes. At that time, the Movant fully identified himself as "Winfred Brown Sr, DOB 6-21-57. The Movant argues that he was stopped because it was the belief of police that he lived at 535 Nimitz Road. The Movant further argues that this stop was intended as a visual identification and drug interdiction in an effort to find drugs on the Movant and then get a search warrant for 535 Nimitz Road, however no drugs were found on the Movant and he was released.

The Movant now argues that the DAG violated the Movant's due process rights under the 14th Amendment when he withheld exculpatory evidence that the state's supposed key witness (Brown Jr) had informed the state that his testimony would consist of the fact that the Movant did not live at 535 Nimitz Road; did not have physical or constructive possession of any drugs found in the residence; was not involved in the on-going drug activities at that residence; did

not own or know the location of the handgun found in the residence.

In this case the Movant argues that DAG Kriner was provided information by a cooperating co-defendant which was inconsistent with the police reports. Thus the defense was entitled to this information. See Roger Atkins v State of Delaware (2001) and Jackson v State of Delaware (2001). Reference 11 Del C 3507, the state must make available to the defense, all out of court statements that can be used as evidence, if the witness is subject to cross examination. See also DEL v Washington DEL SUPER CRA IN91-01-0558-0560; Turner v State 1993 DEL SUPER, LEXIS 180 and State v Webb 2000 DEL SUPER LEXIS 474. Pursuant to U.S. v Perdomo 929 F.2d 967, 970 (3rd Cir 1991), impeachment evidence is favorable and mutual to the defense when if disclosed to the defense and utilized effectively it could have made a difference between conviction and acquittal. However, a defendant need not demonstrate that the evidence, in possession of the state if disclosed would have resulted in acquittal. In this case the state failed to disclose to the defense the existence of the interviews between co-defendant Brown Jr and DAG Kriner. AND AGAIN BETWEEN LORI STEWART AND DAG KRUER That information would have validated the Movant's argument that he was not living in the State of Delaware at the time a confidential informant informed police he had observed "Winfred Brown, DOB 6-21-57" processing cocaine for sale at 535 Nimitz Road in November 2002, as well as, strengthen the Movant's argument that he was not involved in the on-going felony

71

*and that he had not delivered Cocaine to Lois Stewart on May 2, 2003. The movant asks this Court*

distribution of drugs from that address.

The Movant then argues that the Brady rule requires prosecutors to disclose evidence that is material and favorable to the defendant inorder to comply with due process clause, U.S.C.A. Const Amend 5. Further, that plea agreements cannot be deemed intelligent and voluntary if entered without knowledge of material information withheld by the prosecution. That the rule that a guilty plea cannot be deemed intelligent and voluntary if entered without knowledge of material information withheld by the prosecution applies with equal force to plea agreements. Plea agreements, like guilty pleas, must be entered voluntarily and intelligently to satisfy due process requirements; see U.S.C.A. Amend 5, see also U.S. v Ruiz 241 F.3d 1157 (9th Cir 2001).

The Movant argues that Lori (STEWART) also informed the state that she had lied about receiving drugs from "Winfred Brown Sr, DOB 6-21-57" while at 535 Nimitz Road on May 2, 2003, and that the state withheld this exculpatory evidence also. The Movant argues that his due process rights to receive undisclosed Brady material cannot be waived through a plea agreement and any such waiver in a plea agreement is invalid, U.S.C.A. Const Amend 5.

In the analysis of a Brady issue, the court must determine the existence of the following elements: 1) The prosecution must suppress or withhold evidence; 2) the withheld evidence must be material to the defense; U.S. v Perdomo 929 F.2d 967 (3rd Cir 1991). See

72

also State v Webb, 2000 Del SUPER LEXIS 474 (SUPER CT 2000) Stokes v State Del SUPR402 A.2d 376, 378 (1979), and U.S. v Koubriti 297 F.SUPP.2, 955 (E.D. Mich 2004).

The Movant argues that given the allegations for a Brady violation the Perdomo test is the more applicable, not withstanding the fact that the Brady information was in fact "Newly discovered." In this case the defendant did not become aware of the interview with his alleged co-defendant until after he had taken a plea.

The second element of Perdomo test for Brady violations concerns whether the suppressed evidence is favorable to the defense. The suppressed information that Winfred Brown Jr gave Assistant Deputy Attorney General Kriner most certainly was favorable to the Movant.

The final element of the Perdomo test for Brady violations considers whether the withheld evidence was material to the defense. The key concern is whether the suppressed evidence may have affected the outcome of a trial. The Movant has argued that in fact he would have been innocent of any involvement in the illegal drug activities at 535 Nimitz Road. See alleged co-defendant's sworn affidavit at exhibit F. It was recognized in Perdomo that "reasonable probability" is defined as a "probability sufficient to determine confidence in the trials outcome," Id, at 971. Furthermore, it was recognized that the "reasonable probability" inquiry necessitates a review of the totality of circumstances concerning the suppressed evidence including

the potential effects of non disclosure on the trial preparations of the defense.

Impeachment evidence is considered exculpatory under Brady. Impeachment evidence is favorable and material to the defense when if disclosed to the defense and utilized effectively it could have made a difference between conviction and acquittal. However a defendant need not demonstrate that the evidence; in possession of the state if disclosed would have resulted in acquittal, Id at 972 citing Bagley at 680. This is the case in point with the exculpable evidence the state failed to disclose to the defense the existence of the interview between co-defendant Brown Jr and State Deputy Attorney General Kriner.

The Movant argues that the state failed to comply with Superior Court Rule 16 as well as Brady by not providing counsel or defendant with otherwise, relevant, competent and potentially damaging evidense to the state's case and as such deprived him of due process and the possibility of being acquitted at a trial.

As indicated by the Supreme Court in Brady, the evidence must be "material" in order to implicate a defendant's due process rights. In U.S. v Bagley, 473 U.S. 667 105 S.CT 3375 (1985), the court held that disclosure evidence is "material" in the sense that its suppression undermines confidence in the outcome of the trial.

74

Along with the requirement by the state to disclose exculpatory evidence is the requirement that such disclosure be made in a timely manner.  The longer the prosecution withholds information, or (more particularly) the close to trial the disclosure is made, the less opportunity there is for use, Leka v Portuondo 257 F.3d 89, 100 (2d Cir 2001).  If a defendant is confronted with delayed disclosure of Brady material, reversal will be granted only if the defendant was denied the opportunity to use the material effectively; Lilly v State 649 A.2d 1055 (Del 1994) and Rose v State 542 A.2d 1196 (1988).  The Movant argues that he was getting ready to dress for trial and the state still had not provided the exculpable evidence.  The Movant also argues that the state never provided the search warrant until 5 days prior to trial and he was never given the opportunity to review it.  Further, the state never provided the defense the exculpatory evidence that alleged co-defendant Brown Jr provided stating that the Movant had no involvement with the illegal drug activities at his (Brown Jr's) residence and that Brown Sr did not own or know the location of the handgun found in the residence.  The Movant finally argues that his case had been pending for nine months at the time he went to court, prepared to go to trial.

The Movant now argues that Superior Court Judge erred when he failed to grant the Movant a continuance to hire a private attorney on January 28, 2004, without inquiry after defense counsel informed the court that he had just received the Movant's "Dis

covery" at the Final Case Review, see Briscoe v State 606 A.2d 103.
Further, counsel informed the court that he had not reviewed the
"Discovery" with the Movant and had not been able to discuss the
overall case with the Movant. Because of these circumstances and
the fact that counsel had never reviewed the case with the Movant,
the Movant had earlier asked defense counsel to request a continuance,
which counsel refused to do. After counsel had spoken to the court
but stopped short of requesting a continuance, the Movant came forward
and requested a continuance from the court inorder to hire private
counsel. The court denied the Movant's request without inquiry. The
Movant argues that the court made no effort to determine if the Mov-
ant's request was substantial enough to justify continuance inorder
to obtain new counsel. The court's only concern was how long the case
had been on the court docket.

The Movant argues that the denial violated his Sixth Amendment
right to counsel and harmless error doctrine did not apply pursuant to
Bland v California Dept of Corr 20 F.3d 1469 (9th Cir 1994); see also
Wade v Armontrout 798 F.2d 304 (8th Cir 1986). The Movant argues
that denial of right of counsel of choice is reversible error regard-
less of whether prejudice is shown. Pursuant to Briscoe Id., the
Supreme Court ruled that when a defendant seeks new counsel, on eve
of trial, trial court must initially determine if reasons for request
are good cause to justify continuance of trial, inorder to allow new

76

counsel to be obtained. The Movant argues that it was not his fault that the court allowed four previous lawyers to withdraw from his case, thus prolonging his trial date and further, he was prepared to discuss all the instances of ineffective of assistance presented in his memorandum if the court had allowed him to present his reasons for his request for a continuance. In U.S. v Blum 65 F.3d 1436 (8th Cir 1995), the court stated that a defendant may request substitute counsel at virtually any time, so long as the request is not designed for purpose of delaying and disrupting trial. Once request for substitute counsel is made, trial court has a "duty" to inquire into factual basis of defendant's dissatisfaction. See also U.S. v Welty 674 F.2d 185; where the court ruled that the lower court must engage in two lines of inquiry; first, the court must decide if defendant's reason for request of substitute counsel constitutes good cause and are thus sufficiently substantial to allow new counsel to be obtained. Superior Court Judge never inquired as to the dissatisfaction and informed the Movant his case was going to trial because it had been on the docket too long. Thus Superior Court helped to further the coercion that was being perpetrated by defense counsel to force the Movant to accept a plea and be convicted of charges he was actually innocent of. The Movant argues that a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.

Upon Inquiry the court would have determined that the Movant's request was due to ineffective assistance of counsel.

77

The Movant argues that at both case reviews, defense counsel informed the Movant that he was unprepared to discuss his case. The Movant finally decided he needed a private attorney after he had lost confidence in defense counsel and sought help from family members and friends to hire private counsel. However, the court denied his request for the continuance and severely prejudiced the Movant. It is important to note that after his motion was denied for substitute counsel, the Movant informed counsel of his intent to go to trial. The Movant never heard from counsel again until the morning of trial. In the interim, defense counsel never bothered to consult with the Movant on any type of trial stategy or defense. On the morning of trial, the Movant again requested defense to request a continuance and listed various reasons why counsel should do so, inorder to make himself familiar with the case and interview and subpoenae witnesses (Four state witnesses were on-hand and readyily available to be interviewed). Defense counsel refused to address with a different Superior Court Judge (Ridgely) that he was the Movant's fifth attorney over a nine month period, and had just received "Discovery" on January 28, 2004; three (3) business days before trial and had not had the opportunity to discuss or review it with the Movant. Instead, the court accepted the Movant's coerced guilty plea which again violated the Movant's Sixth Amendment right to counsel, see Stano v Dugger 889 F.2d 963 (11th Cir 1989). Defense counsel had not established

any defense, had not subpoenaed or interviewed any witnesses and had filed all pretrial motions either incorrectly or out of time. [The PREJUDICE

Movant argues that pursuant to Crandell v Brunnell 144 F.3d 1213 (9th Cir 1998) that counsel's failure to confer with defendant, to seek discovery in a timely manner, to review discovery with the defendant, to investigate the crime charged, to interview witnesses or to develop a working relationship with defendant amounted to incompetent representation and required appointment of substitute counsel. However, the court never sought to inquire as to the Movant's reasons. Finally the Movant argues that had he been granted a continuance, private counsel would have been careful to review and note the numerous and obvious mistakes in the Movant's case. The Movant argues that implicit in right to counsel is the notion of adequate time for counsel to prepare a defense, U.S.C.A. Const Amend 6. [The Movant further argues that the denial of his continuance motion was reversible error and constituted an abuse of discretion which resulted in specific substantial prejudice to the Movant as the Movant was left helpless and crippled in his defense efforts which became evident when counsel appeared for trial with no witnesses, no defense and no strategy.

and he was severely handicapped and Prejudiced as a result of it.

The Movant next argues that Detective Mailey (the affiant) in his effort to establish probable cause, perjured himself at the Movant's preliminary hearing in May 2003, when he testified that Lori Stewart had informed police that she had observed the Movant with a mound of

cocaine in the residence at 535 Nimitz Road. Neither Lori Stewart

or the Movant were aware that the 51 grams of cocaine were in the

basement ceiling. Pursuant to U.S. v McLaughin 89 F.SUPP.2d (E.D.

PA 2000) an evidentiary hearing should be held to determine the ex-

tent of prejudice against the Movant.

The Movant now argues that he was charged, incorrectly sentenced

and punished for a charge (Count Three (3) of the indictment, Posses-

sion of a Firearm During the Commission of a Felony "PFDCF") that for

his part, he was innocent of and the law did not criminalize. The

Movant argues that his possession of two (2) ammunition clips found

in Room 50, KBM did not meet the elements of the charged statute to

be convicted under 11 Del C 1447A (PFDCF). Those elements being:

1)  Must have a handgun physically accessible and available to

the the defendant

2)  Must have dominion and control over the drugs

3)  Must be involved in the on-going predicate felony that the

handgun is a furtherance of

The Movant argues conversely that:

1)  He did not live at the residence 535 Nimitz Road where the gun

was found

2)  He did not have a key or access to the home

3)  He was not involved in the on-going predicate felony of drug

distribution at 535 Nimitz Road

4) He did not own or know the location of said handgun found in the residence

5) He did not have dominion or control over the drugs or gun found in the residence

6) The handgun was not registered to the Movant and the Movant's fingerprints were not found on the weapon

7) There was no ammunition found inside the gun or the residence (ammunition was found in an outide utility building)

8) The Movant was in temporary possession of the ammunition clips ]

The Movant argues that he was adamant that he would not accept any charges stemming from 535 Nimitz Road and that counsel informed him he was guilty of "PFDCF" because he possessed the two ammunition clips found in Room 50 at the KBM. Counsel further advised the Movant to admit guilt even though the Movant had maintained his innocence throughout this case without ever seeing "Discovery." [ HERE Counsel never informed the Movant that an essential element of PFDCF was the implication that the Movant was involved in the on-going predicate felony of drug distribution at 535 Nimitz Road; see U.S. v Bigman 906 F.2d at 395; Henderson v Morgan 426 U.S. at 647 96 S.CT at 2259 and U.S. v Goodheim 686 F.2d 776. The Movant argues that counsel's advisement to plead guilty to this charge represented ineffective assistance. See attached affidavit from the Movant's son, "Winfred Brown Jr, DOB 9-19 -74, swearing to these facts and the fact that he informed the state

Thus the Movant argues that he has established the fact that ...

of these circumstances on January 29, 2004, when the state was preparing him as a state witness, exhibit F.

The Movant then argues that he was detained/arrested while outside and visiting the residence of his son, Winfred Brown Jr. At the time, the Movant was physically searched and found to possess 3.7 grams of cocaine. The Movant along with James Burrus and Lawrence Jeff were then forced inside the residence and searched again in the kitchen with negative results. The Movant was then taken into the living room and searched again with negative results. Throughout this time the Movant was handcuffed behind his back. The Movant argues that he did not have physical or constructive possession of any drugs found inside the residence and did not have any Firearms available or accessible to him that posed a risk to arresting police officers pursuant to Gardiner v DELSUPR 567 A.2d 404 (1989). The Movant cites Childress v State 721 A.2d 929 (1998) and argues that unlike Childress, he did not live at the residence.

The Movant argues that the two ammunition clips were being "innocently maintained and held" at Room 50, KBM, with no illicit purpose and that the possession of those clips was strictly transitory, pursuant to 18 U.S.C.A. 922 (q)(1). Reference Corpus Juris Secundum 94, page 584, "momentary possession of a weapon;" a harmless temporary possession may also occur when a person picks up a weapon or hands it to another to examine, see Johnson v State 11 ALA, APP 301, 66 SO 875

(1914). The Movant argues that he only had temporary possession of the ammunition clips without any intention of violating the law (see Davis v State 91 TEX. Crim 156, 237 S.W. 925 (1922) or controlling the use of a weapon (State v Underwood 89 WVA 548, 109 S.E. 609 (1921)). The reason for this rule is that the dominion of the real owner is not lost, Schuh v State 58 TEX Crim 165, 124 S.W. 908 (1910). The Movant argues that he only had temporary possession of the ammunition clips, see Caldwell v State, 58 GA APP 408, 198 S.E. 793 (1938). See also U.S. v Mason 233 F.3d 619. The storage/possession of the ammunition *HERE* clips in Room 50, KBM did not represent a threat, bodily injury or death to anyone. The Movant further argues that there WAS no nexus between the possession of the ammunition clips in Room 50 at the KBM and the on-going felonious drug activity at 535 Nimitz Road.

The Movant argues that his guilty plea to PFDCF could not have been knowing or voluntary because he failed to understand or be made aware of the elements of the law by defense counsel or the court in relation to facts, U.S.C.A. Const Amend 5; 11 Del C 1447A and 16 Del C 4753; and that he is actually innocent of a crime he pled guilty to (due to incompetent advice from defense counsel) to a charge the law does not criminalize. Further defense counsel failed to inform the Movant that the charge of "PFDCF" did not meet the elements of 11 Del C 1447A required to attain a conviction. The Movant argues that no jury would have found him guilty of this charge. There is no criminal act of PURSUANT TO HILL V LOCKHART the movant would have not pleaded guilty to this charge had he been aware of the elements

83

"PFDCF" committed under 11 Del C 1447A simply by the Movant "inno-
cently maintaining" two (2) ammunition clips in a motel room regis-
tered in his name.

The Movant argues that had the sentencing judge developed on the
record, the factual basis for the guilty plea, as for example having
the Movant describe conduct that gave rise to the charge, then the
judge himself would have known the Movant was not guilty of "PFDCF."
See Superior Court Criminal Rule 11, also see Santobello v New York
92 S.CT 495 (1971). Instead, the only thing developed on the record
was the fact that THE MOVANT was outside the residence when police arrived and
that the Movant was an addict. The Movant argues that his conviction
of this charge amounted to a fundamental miscarriage of justice and
requires an evidentiary hearing pursuant to Nevarez-Diaz v U.S. 870
F.2d 417 (7th Cir 1989). It should be noted that all the charges in-
cluding Trafficking and PWITD against the Movant in connection with
535 Nimitz Road against the Movant were Nolle Processed by the state.
It should also be noted that the state realizing that defense counsel
was unprepared for trial refused to offer the Movant any plea that did
not include the "PFDCF" even though the Movant was adamant that he did
not live at the residence, did not own the handgun and was not involved
with the drug activities at 535 Nimitz Road. The Movant was further
erroneously advised by defense counsel that he was guilty simply by
his presence at 535 Nimitz Road at the time of the police raid and the

maintaining of two ammunition clips.

The Movant argues pursuant to Criminal Law 549 and Weapons 17(4);
that absent some proof that the accused is something other than a
visitor, the evidence is insufficient to support a conviction where
the Movant did not live in the residence and was not involved in the
on-going felony of drug distribution. The Movant further argues
that constructive possession requires knowledge of the presence of
the weapon and drugs and the existence of dominion and control over
them.

The Movant now makes his final argument that his guilty plea was
not knowing, intelligent or voluntary. The Movant was a victim of
numerous due process violations under the U.S. and Delaware Consti-
tutions and has cited 19 instances of ineffective assistance along with
repeated attempts at coercion and manipulation by both state and de-
fense counsels. The Court itself, violated the Movant's constitutional
rights by refusing the Movant's request for a continuance and its fail-
ure to inquire of the Movant why he was requesting new counsel five (5)
days before trial.

The Movant now seeks an evidentiary hearing to withdraw this guilty plea. In Sober v Crist
644 F.2d 807 (1981), the court ruled that because a guilty plea is an
admission of all the elements of a formal charge, it cannot be volun-
tary unless the defendant possesses an understanding of the law in re-
lation to the facts which entails an understanding of the essential

85

elements of the crime charged including the requirement of specific intent. *In this regard Defense Counsel failed the movant.*

The Movant then argues that his guilty plea did not meet the requirements of Superior Court Criminal Rule ~~11(c)~~ or 61(i)(5), Del C. Ann. ~~Pursuant~~ to Webster v State 604, A.2d 1364, the Movant argues ~~an improper plea colloquy and argues~~ that he has raised a "colorable claim" of constitutional violations sufficient to require further inquiry as to whether his plea was knowing and voluntary. See also Younger v State DELSUPR 580 A.2d 552 (1990), where the court stated that the fundamental fairness exception of Rule 61(i)(5) applies where a petitioner shows he was deprived of a substantial constitutional right. Further that the Movant's guilty plea does not preclude defendant from raising a Sixth Amendment claim of ineffective assistance of counsel.

The Movant then argues that the guilty plea did not meet the requirements of Superior Court Criminal Rule 11(c) or Rule 11(c)(3) of the Federal Rules of Criminal Procedures. The Movant contends that the plea proceeding was deficient in that the sentencing judge failed to establish that there existed a factual basis for the plea as argued in U.S. v Burnett 671 709 (1992). The Court has ruled in numerous cases that the trial judge inorder to comply with the rule relating to acceptance of guilty plea must not only inquire into the defendant's understanding of the nature of the charges and the consequences of the plea but must also develop on the record the factual basis for the plea.

See also Webster v State 604 A.2d 1364. The U.S. Supreme Court ruled in Santobello v New York 92 S.CT 495 that the sentencing judge "must" develop on the record the factual basis for the guilty plea, as for example having the accused describe conduct that gave rise to the charge, see Superior Court Criminal Rule 11 and Federal Criminal Procedure, Rule 11, 18 U.S.C.A. The Movant now argues that the court did not ascertain whether the Movant actually committed the crime, only the fact that the defendant was pleading guilty.

Before entering a judgement of guilty the court through colloquy should develop a factual basis for the plea to protect the defendant from over zealous public servants, the adverserial system from corruption and to provide the court a tool to determine if indeed a crime had been committed and most importantly if the defendant committed it.

The Movant was adamant of his innocence throughout the pretrial process and only pleaded guilty on the morning of trial based on the incompetent and ill advised advice of counsel (who informed the Movant, "they got you, you need to take this plea"). This is just one example of the manipulative and coercive efforts counsel used against the Movant that morning. Further the Movant feared going to trial with defense counsel who obviously was unprepared to go to trial (see 19 instances of ineffective assistance of counsel.

The Movant asserts that he has shown that he was never informed

87

of the elements of the charge to be convicted and there was no factual basis for his plea developed on the record. The Deputy Attorney General informed the court that the Movant was arrested at 535 Nimitz Road where less than three (3) ounces of cocaine was seized and that five (5) grams of cocaine was seized from the Movant's motel room. When the Movant addressed the court, he informed the court "that because of a midlife crisis he had begun smoking crack cocaine and became helplessly addicted." While the Movant admitted guilt to the charges as being voluntarily entered, the Movant in fact never developed any factual basis for his plea. In fact the Movant's notice of affirmation to the presiding judge's colloquy questioning of adequacy of counsel and guilt was based on his belief that there was nothing to further his defense. The court had previously denied his request for a continuance (inorder to seek new counsel) five (5) days earlier on January 28, 2004 at his Final Case Review without inquiry as to his reasons why. In U.S. v Cronic 104 S.CT 2039, the court ruled that no weight would be attached either to defendant's initial expression of satisfaction with counsel's performance at the time of sentencing or to later dissatisfaction. Defense counsel had informed the court that the Movant had not been allowed to review the evidence against him. Finally the Movant could not allow himself to be represented at trial by counsel that had already proven himself ineffective in all areas of his pretrial responsibilities given that the Movant

Was facing in excess of a 60 year sentence if found guilty; see Kennedy v Maggio, Id.  The Movant further argues that had counsel filed appropriate and timely motions for a Suppression Hearing, there would not have been any trial.

The court established in McCarthy v U.S. 89 S.CT 1166, methods of determining if a factual basis exists for a guilty plea.

1) inquiry of the defendant

2) inquiry of the prosecutor

3) examine the pre-sentence report

The Movant maintains his argument above that he did not make a factual basis of guilt; that the Deputy Attorney General only stated the Movant was present when the residence was raided (this was the extent of any factual basis established on the record).  However he failed to inform the court that the Movant had never been seen at this residence until 45 minutes before the raid and was physically outside the residence when the raid began, and that three subsequent searches of the Movant only netted 3.7 grams of cocaine.  Finally that a subsequent search of the Movant's motel room netted 5 (5) grams of cocaine and two (2) ammunition clips.  Pursuant to Waddy v Herr 383 F.2d 789, the judge accepting the plea must determine "that the conduct which the defendant admits constitutes the offense charged."  The Movant in this case only admitted to "being an addict."

In McCarthy the court ruled that the plea was accepted in viola-

tion of Rule 11 Federal Rules of Criminal Procedures and that:

1. The court accepted his plea without first addressing him personally to determine that the plea was made voluntarily without understanding the nature of the charge and

2. That the court had entered judgement without determining that there was a factual basis for the plea.

The Movant argues that he understood the charge against him and (that cocaine had been found in his motel room and that he possessed two ammunition clips in that room that might fit the handgun found at 535 Nimitz Road) was informed by counsel "that he was guilty of possessing the handgun during the commission of a felony simply/be-cause the two ammunition clips were found in the motel room. Counsel never informed the Movant that the prerequisite for being found guilty of this charge was that he was admitting that he was involved in the on-going felony distribution of cocaine at 535 Nimitz Road. The Mov-ant had been adamant that he would not accept any charges surrounding that residence. Further, counsel never informed the Movant of a possible defense of "innocent maintenance" of the ammunition clips. Finally the Movant argues that if he had been allowed to review his "Discovery" he could have informed counsel that the search warrant was materially defective in that he was not present in the state of Dela-ware during the dates indicated in the affidavit of probable cause.

The Movant now argues that the denial of a defendant's motion to

withdraw his guilty plea is reversible error in light of cumulative

affect that defendant was never advised of the elements of the charge

needed to convict him pursuant to Patterson v DELSUPR 684 A.2d 1234

(1996). Factors to be considered include: whether there was a proced-

ural default in taking the plea agreement and whether defendant had

a basis to assert legal innocence. The Movant argues that the plea

was entered into haste without sufficient opportunity for deliberation

and was not supported by sufficient inquiry concerning the elements

of the offense which were the subject of the plea. The Movant argues

that the cumulative effect of these errors precluded adetermination

that the plea was knowingly and voluntarily entered. The Movant

argues that ineffective assistance of counsel constitutes "cause" and

the court's failure along with defense and state attorney's failure

to adequately inform the Movant that his mere visit to the residence

at 535 Nimitz Road and presence at the time of police raid; and the

"innocent maintenance" of two (2) ammunition clips in a motel room

did not constitute the elements of the offense charged, amounted to

a fundamental miscarriage of justice and requires an evidentiary

hearing, pursuant to Nevarez-Diaz v U.S. 870 F.2d 417 (7th Cir 1989).

The Movant has shown that he would not have pleaded guilty to any

charges and would have insisted on going to trial had it not been for

the constitutional violations, and the ineffective assistance of coun-

and that he is not required to show that he would be acquitted.

sel where the Movant believes the outcome of a trial would have vindi-

cated him, pursuant to Moore v. U.S. 950 F.2d 656 (10th Cir. 1991)

The Movant has repeatedly documented the fact that he was "prejudiced" throughout his pretrial deliberations, that his guilty plea was not a knowing or voluntary choice among alternatives, U.S.C.A. Const Amend 6.

The Movant then argues that instead of reviewing his case and intended defense, counsel repeatedly presented the Movant outrageous "plea offers" from the state and continually coerced and manipulated him up until the time the Movant was prepared to get dressed for trial, because counsel realized he was not prepared for trial. Defense counsel refused to request a continuance even though he had never presented the Movant his "Discovery" evidence for review, discussed a defense strategy with the Movant or subpoenaed any witnesses. This was further compounded by the court's denial of the Movant's request for substitute of private counsel without inquiry. Pursuant to Moore v. U.S. Id., coercion by trial counsel or the prosecutor to induce a guilty plea renders the plea involuntary. The Movant has proved this throughout this memorandum. Defense counsel knew he was unprepared to properly represent the Movant for trial and later apologized to the Movant citing a "heavy caseload."

The Movant seeks to have his plea withdrawn, asserting that his plea was neither knowing or voluntary and that in the case of IK0305 0705 (PFDCF) he has actually pled guilty to a charge he is innocent

of and that the conviction and punishment are for conduct which the law does not criminalize. The charge does not meet the criminal e elements of 11 Del 1447A and that the Movant failed to understand or be informed of the elements of the law in relation to facts U.S.C.A. Const Amend 5.

The Movant argues that he has established and is entitled to a presumption of innocence throughout his argument. The errors presented in the Movant's argument to the court worked to his actual and substantial disadvantage, infecting his entire proceeding with errors of constitutional dimensions which also created "cause" for procedural default pursuant to Murray v Carrier, 106 S.CT 2639 (1986) and Dawson v Snyder 988 F.SUPP at 804.

The Movant then argues that ineffective assistance is a cause for procedural default where the court held that the constitution constrains our ability to allocate as we see fit, the cost of ineffective assistance. The Sixth Amendment mandates that the state bears the risk of constitutional deficient assistance of counsel, pursuant to Kimmelman v Morrison 477 U.S. 365 91 L.ed.2d 305, 106 S.CT 2574 (1986).

The Movant further argues that he has proven that his counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyers performance. The Movant has also shown a claer and concise case of ineffective assist-

ance of counsel and has satisfied the two-prong test in Strickland.

If not for counsel's pretrial lack of effective assistance, coercion

and manipulation, the Movant would have insisted on going to trial

to prove his innocence as he was in the process of getting dressed

for trial when counsel began to coerce and manipulate him. The Mov-

ant has shown a clear pattern of errors that swept away any confidence

in defense counsel.

In order to correct a "manifest injustice" the court after sen-

tencing may set aside the judgement of conviction and permit the de-

fendant to withdraw his plea.

The Movant finally argues that a miscarriage of justice will re-

sult if the court refuses to hear his claim; see Coleman v Thompson,

111 S.CT 2546 and Caswell v Ryan 953 F.2d 853 (3rd Cir 1992).

## RELIEF SOUGHT

The Movant why this honorable court to consider this case for an evidentiary hearing to withdraw his guilty

plea based upon counsel's ineffective assistance as well as the other

arguments the Movant has presented. The Movant seeks to have his

son (Winfred brown Jr and Lori Stewart) called as witnesses. Finally,

the Movant requests this honorable court to allow him to request a

court appointed counsel of his own choosing due to the numerous (5)

counselors that were previously assigned to his case.

at state eppense

EACL
EXHIBITS AS STATED

Respectfully Submitted

Winfred O. Brown
Winfred O. Brown Sr
SBF: 019174  Unit: V-D-13
DCC

EXHIBIT A

IN THE JUSTICE OF THE PEACE COURT #7
STATE OF DELAWARE
KENT COUNTY
SEARCH WARRANT

IN THE MATTER OF: **Winfred O. Brown , black male, Date of Birth 06-21-57 and 1988 Honda Accord bearing Virginia registration JAU1563, VIN # 1HGCA5644JA145413, 1992 Ford Explorer Delaware registration PC207250, VIN# 1FMDU34X2NUB76204, 1992 Ford Explorer bearing Delaware registration PC206586, VIN# 1FMDU34X1NUB18844 and the residence of 535 Nimitz Road being a single family one story home that is made of brick with a grey roof, with an attached garage, that is white in color. The residence of 535 Nimitz Road is located on the eastside of the Nimitz Road, Dover, Delaware. Any and all storage areas, outbuildings, sheds, doghouses, and any and all persons present, being in the City of Dover, County of Kent, State of Delaware.**

THE STATE OF DELAWARE TO: **Detective Marvin Mailey and Detective Jeffrey Matthews of the Dover Police Department.**
with the assistance of any police officer or constable or any other necessary or proper person or persons or assistance

**GREETINGS:** Upon the annexed affidavit and application or complaint for a search warrant, as I am satisfied that there is probable cause to believe that certain property, namely:
See Exhibit A

is being concealed **Winfred O. Brown , black male, Date of Birth 06-21-57 and 1988 Honda Accord bearing Virginia registration JAU1563, VIN # 1HGCA5644JA145413, 1992 Ford Explorer Delaware registration PC207250, VIN# 1FMDU34X2NUB76204, 1992 Ford Explorer bearing Delaware registration PC206586, VIN# 1FMDU34X1NUB18844 and the residence of 535 Nimitz Road being a single family one story home that is made of brick with a grey roof, with an attached garage, that is white in color. The residence of 535 Nimitz Road is located on the eastside of the Nimitz Road, Dover, Delaware. Any and all storage areas, outbuildings, sheds, doghouses, and any and all persons present, being in the City of Dover, County of Kent, State of Delaware.**

described in the annexed affidavit and application or complaint;

NOW THEREFORE, YOU ARE HEREBY COMMANDED within ten (10) days of the date hereof to search the above named person, persons, house, conveyance or place for the property specified in the annexed affidavit and application, and to search any occupant or occupants found in the house, place, or conveyance above named for such property, serving this warrant and making the search in the daytime, and, if the property, papers, articles or things, or any part thereof, be found there, to seize it, prepare a written inventory of the property seized and to return the property and this warrant to me forthwith with the written inventory and the person or persons in whose custody or possession the property was found to be dealt with according to law.

DATED the 2nd day of _May_ , A.D. 2003.

IN THE JUSTICE OF THE PEACE COURT #7
STATE OF DELAWARE
KENT COUNTY

## PROBABLE CAUSE

And that the facts tending to establish probable cause for believing that the foregoing grounds for the application exist are as follows:

1. That your Affiant #1 is Detective Marvin Mailey of the Dover Police Department who has been employed by the Dover Police Department since July 1993. Detective Mailey is currently assigned to the Drug/Vice/Organized Crime Unit. Detective Mailey is a graduate of the Dover Police Academy. Detective Mailey has attended several courses sponsored by the Delaware State Police and the Drug Enforcement Administration. The courses included, Handling Confidential Informants, Drug Identification, Highway and Criminal Interdiction, Crime Scene Investigation I, Collection of Crime Scene Evidence, Club Drugs, and the two week Drug Investigators School sponsored by the Drug Enforcement Administration. Detective Mailey is currently assigned to the Drugs, Vice and Organized Crime Unit and the DEA Task Force. Detective Mailey has participated in numerous illegal drug investigations within the United States of America.

2. That your Affiant #2 is Detective Jeffrey Matthews of the Dover Police Department who has been employed by the Dover Police Department since July, 1995. Detective Matthews is currently assigned to the Drug/Vice/Organized Crime Unit. Detective Matthews is a graduate of the Delaware State Police Academy. Detective Matthews has attended several courses sponsored by the Delaware State Police. The courses included, Handling Confidential Informants, Background Investigations, Interview and Interrogation, Felony Case Investigation, Crime Scene Preservation and Investigation and a two week Drug Investigators school sponsored by the Drug Enforcement Administration. Detective Matthews has participated in numerous illegal drug investigations within the State of Delaware.

3. That during November 2003 Affiant #1 and Detective Lonnie Feaster met with a confidential source. The confidential source advised officers that he/she had observed a large amount of crack cocaine at 535 Nimitz Road, Dover Delaware that was being processed for sale by Winfred Brown. The confidential source also advised officers that Winchester provides crack cocaine to other younger males for sale and distribution. That the confidential source also stated that Brown lives at 535 Nimitz Road, Dover, Delaware with his girlfriend Jennifer Haass, White Female, Date of Birth 03-28-1974.

4. That affiant #1 made a State of Delaware drivers license query and discovered that Jennifer Hass does show an address of 535 Nimitz Road, Dover, Delaware. That a State of Maryland drivers license query of Winfred Brown . The query indicated that Brown resided at 642 Cabin Creek Drive, Hopewell, Virginia.

5. That during the week of May 3rd, 2003 Affiant #1 and Affiant # 2 met with CI #288 for the purpose of making a controlled purchase of crack cocaine from Winfred O. Brown at 535 Nimitz Road, Dover, Delaware.

6. That CI# 288 has is past proven and known reliable. CI# 288 has provided information and assistance in the past that has lead to several arrests and several successfully state level investigations.

7. That Affiant #1 searched CI #288 for drugs and money and prior to the controlled buy with negative results.

8.     That CI #288 was given an amount of money and directed to contact Winchester and order and amount of crack cocaine for delivery.

9.     That CI #288 was observed utilizing a telephone with which he/she called Brown and ordered an amount of crack cocaine from Brown.

10.     That CI #288 then waited in the area of Towne Point Blvd and Route 13 northbound for the delivery of crack cocaine.

11.     That surveillance units observed an unknown black male leave the residence at 535 Nimitz Road and walk to the location were CI #288 was waiting, and the unknown black male contacted CI# 288.

12.     That CI #288 received an amount of crack cocaine from the unknown black male. CI #288 then gave the unknown black male an amount of money. The unknown black male then departed the area on foot and returned to 535 Nimitz Road, Dover, Delaware.

13.     That CI #288 then returned to Affiant #1.

14.     Affiant #1 then collected the suspected crack cocaine from CI#288.

15.     Affiant #1 searched CI# 288 for any other drugs and money with negative results.

16.     That Affiant #1 tested that the substance with a cocaine field test kit, the test result was positive.

17.     CI #288 stated that the black male named Larry (last name unknown) sold the crack cocaine to CI#288. CI #288 stated that Brown sent Larry to meet with CI #288.

18.     That on May 2nd, 2003 Affiants #1 and #2 and other officers initiated surveillance in the area of 525 Nimitz Road, Dover, DE.

19.     That during the surveillance Affiant #1 observed Galen Brooks visiting the residence of 535 Nimitz Road, Dover, DE. Brooks stayed at the residence for less that five minutes and drove away in a blue Chevy Lumina bearing Delaware registration 908002.

20.     Brooks has had previous arrests for narcotics violations.

21.     That Affiant #1 also observed a white female enter the residence at 535 Nimitz Road, Dover, Delaware.

22.     That the white female exited the residence within 5 minutes and returned to 1994 Jeep bearing Delaware registration 158022. The short duration of the females visit indicated that she might be at the residence to purchase illegal drugs.

23.     That the vehicle was observed by surveillance departing the area and the vehicle was observed committing a traffic violation in the area of White Oak Road in Dover, Delaware.

24. The vehicle was stopped by officers and officers contacted Cheryl Eckart, W/F, DOB 01-30-1961 and Lori Stewart W/F 11-27-1965. A wants and warrants check was run on both subjects.

25. Both Stewart and Eckart were found to be wanted for capiases from various courts.

26. Stewart attempted to flee on foot from officers, but she was caught and detained.

27. After being advised of her Miranda rights, Stewart stated that she had purchased crack cocaine from a black male named Big Winnie at 535 Nimitz Road, Dover, Delaware.

28. Officer located the crack cocaine in the center console of the vehicle.

29. That Big Winnie also known as Winifred Brown arrived prior to the females arriving at the residence. Brown was observed by surveillance driving a 1988 Honda Accord bearing Virginia registration JAU-1563.

30. A criminal history check indicated that Brown has been arrested previously for Possession of Cocaine, Maintaining a Dwelling, Offensive Touching, Terroristic Threatening, Delivery of Cocaine, and Possession of Drug Paraphernalia.

31. That Jennifer Suzanne Haas the girlfriend of Winfred Brown has two vehicle registered to her located at 535 Nimitz Road, Dover, Delaware. The vehicles are described as a 1992 Ford Explorer bearing Delaware registration PC207250 and a 1992 Ford Explorer bearing Delaware Registration PC206586.

31. Based upon your affiant training, experience and participation in other illegal drug investigation particularly cocaine and or other illegal drugs affiant knows that:

a. that drug traffickers very often keep large amounts of United States Currency on hand in order to maintain and finance their ongoing narcotics business.

b. that drug traffickers maintain books, records receipts, notes, ledgers, airline tickets, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That drug traffickers commonly "front" (provide narcotics on consignment) to their clients; that the aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug dealers have ready access to them.

c. that it is common for drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure location within their residences for their ready access and to conceal them from law enforcement authorities.

d. that drug traffickers often conceal in their residences caches of drugs, amounts of currency, precious metals, jewelry, and other items of value and or proceeds of drug transactions.

e. that drug dealers commonly maintain addresses and or telephone numbers in books or papers which reflect names, addresses and or telephone numbers of their associates in the drug dealing business.

f. that drug dealers take or cause to be taken photographs of them, their associates, their property, and their product (illegal drugs). That these photographs are usually maintained in their residence.

g. that the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

h. that drug dealers at their residence have firearms including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine-guns and other weapons. Said firearms are used to protect and secure a drug dealers property. Such property may include, but is not limited to narcotics, jewelry, paraphernalia, books, records, United States Currency, etc.

i.       that drug traffickers often keep in their residence many items of drug paraphernalia such as mirrors, razors, spoons, baggies, capsules, scales, grinders and other items used to package and distribute illegal drugs.

Wherefore, these affiant pray that a search warrant may be issued authorizing a search of the Winfred O. Brown , black male, Date of Birth 06-21-57 and 1988 Honda Accord bearing Virginia registration JAU1563, VIN # 1HGCA5644JA145413, 1992 Ford Explorer Delaware registration PC207250, VIN# 1FMDU34X2NUB76204, 1992 Ford Explorer bearing Delaware registration PC206586, VIN# 1FMDU34X1NUB18844 and the residence of 535 Nimitz Road being a single family one story home that is made of brick with a grey roof, with an attached garage, that is white in color. The residence of 535 Nimitz Road is located on the eastside of the Nimitz Road, Dover, Delaware. Any and all storage areas, outbuildings, sheds, doghouses, and any and all persons present, being in the City of Dover, County of Kent, State of Delaware.

in the manner provided by law.

Affiant

Affiant

SWORN to and subscribed before me this $2n$ day of _May_

IN THE JUSTICE OF THE PEACE COURT #7
STATE OF DELAWARE
KENT COUNTY

EXHIBIT    B

IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | Case Numbers |
| | ) | 0305001518 |
| vs. | ) | |
| | ) | |
| WINFRED O. BROWN, JR., | ) | |
| | ) | |
| | ) | |
| STATE OF DELAWARE | ) | 0305001486 |
| | ) | |
| vs. | ) | |
| | ) | |
| WINFRED O. BROWN, SR., | ) | |
| | ) | |
| | ) | |
| STATE OF DELAWARE, | ) | 0305001519 |
| | ) | |
| vs. | ) | |
| | ) | |
| JENNIFER S. HAASS, | ) | |
| | ) | |
| Defendants, | ) | May 16, 2003 |

- - - - -

BEFORE:

COMMISSIONER JOSEPH W. MAYBEE

- - - - -

APPEARANCES:

KENNETH M. HALTOM, Esquire
Deputy Attorney General,
on behalf of the State,

PAUL S. SWIERZBINSKI, Esquire
Assistant Public Defender,
on behalf of Defendant Brown, Jr.,

KEVIN HOWARD, Esquire
on behalf of the Defendant Brown, Sr.,

BETH SAVITZ, Esquire
on behalf of Defendant Haass.

TRANSCRIPT OF PRELIMINARY HEARING

LINDA A. LAVENDER
Official Court Reporter

3

INDEX

| STATE'S EVIDENCE | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Marvin C. Mailey.............. | 3 | — | — | — |
| By Mr. Howard......... | — | 23 | — | — |
| By Mr. Swierbinski..... | — | 43 | — | — |
| By Ms. Savitz........... | — | 53 | — | — |

1    the defendants had stated to you that Mr. Jeff had access to the house when

2    they weren't there?

3                            THE WITNESS: Yes.

4                            THE COURT: All right. Next question.

5                            MS. SAVITZ: Thank you.

6    BY MR. SAVITZ:

7                            Q.    Was the confidential informant stripped

8    searched before he or she or it entered the residence at 535 Nimitz Road for the

9    controlled buy?

10                           MR. HALTOM: Objection, Your Honor, are we talking

11   about the current charges or something before? I don't think you ever made a

12   ruling on it.

13                           THE COURT: Are you talking about the current

14   charges?

15                           MS. SAVITZ: Yes.

16                           THE COURT: Then I'll make a ruling.

17                           MS. SAVITZ: Yes.

18                           THE COURT: All right.

19                           MS. SAVITZ: I'm trying to figure out they...

20                           THE COURT: Overruled, answer the question the

21   question, please, if you can.

22                           MS. SAVITZ: Thank you.

23                           THE WITNESS: The informant was not strip

1    searched, the informant was searched.

2    BY MS. SAVITZ:

3                              Q.    By whom?

4                              A.    By myself and Special Agent Zahn from the

5    DEA.

6                              Q.    Does Special Agent Zahn have a first

7    name?

8                              A.    David Zahn.

9                              Q.    Thank you.   I'd like to return to the safe for

10   just one question, was the safe open if you know, and you got there after it was

11   opened.  Was it opened by force or was it opened by someone with the

12   combination or was a locksmith called in?

13                             A.    It appeared, I was not there when it was

14   opened, there did not appear to be any forcible entry to it. I believe, the

15   combination was given to them, officers, by either Mr. Brown, Jr. or Miss Haas.

16                             THE COURT:  That question has been asked and

17   answered consistently both times.

18                             MS. SAVITZ:  I'm moving on, Your Honor.

19   BY MS. SAVITZ:

20                             Q.    How much money was seized from my

21   client?

22                             A.    Removed from her person that day?

23                             Q.    Uh-huh (affirmative response).

LINDA A. LAVENDER
Official Court Reporter

9

1             A.        As far as I know he's unemployed at the

2    time.

3             Q.        Did he tell you that he was employed?

4             A.        No, he did not.

5             Q.        Okay. Now, there is an additional

6    possession with intent to deliver cocaine charge, and that Mr. Brown, Sr., is

7    charged with, how did that charge come about?

8             A.        One would stem from the traffic stop with

9    Miss Stewart, and one would stem from the hotel room, because the crack

10   cocaine was packaged for sale, and along with packaging material and digital

11   scale.

12            Q.        Well, in the affidavit in the charge listing,

13   there is an amount alleging 73.3 grams?

14            A.        There's also a connection with the crack

15   cocaine found in the basement ceiling at 535 Nimitz Road. Miss Steward also

16   said she saw Mr. Brown, Sr., in possession of that in the basement, that was 51

17   grams found in the ceiling inside of a clear plastic bag.

18            THE COURT: Was that found in the son's house?

19            THE WITNESS: Yes, in the basement ceiling, the

20   drop ceiling also in the basement.

21   BY MR. HALTOM:

22            Q.        How close in proximity was that alleged

23   cocaine with the handgun found, how close were they together?

1    immediately out of the back of the residence. Like I said, you can step over the

2    fence and then you'd be in the park represented on the City of Dover map that

3    we have in possession.

4                    Q.    The conspiracy second degree charge?

5                    A.    It's going to stem from the trafficking

6    weight, the maintaining the dwelling, and the weapon that's found in the .

7    residence.

8                    Q.    And, conspiracy with who, Haas?

9                    A.    Yeah, conspiracy between Brown, Sr.,

10   Brown, Jr., Haas and Lawrence Jeff.

11                   Q.    And, who is Lawrence Jeff?

12                   A.    Lawrence Jeff is, I believe, the uncle of

13   Brown, Jr. He stayed in the residence, he was allowed to stay there by Brown,

14   Jr. and he was well aware of narcotics transactions going on and participated.

15                   Q.    Did he make a statement to you?

16                   A.    Yes, he did.

17                   Q.    What did he tell you?

18                   A.    He said that in the past he had been sent to

19   deliver crack cocaine by Brown, Jr. to different people on different occasions and

20   he was being allowed to stay in the house and he would serve people up if they

21   would come to the house, but not normally. Normally he would be more like a

22   currier.

23                   MR. HALTOM: Okay. One moment please.

1               A.      Yes.

2               Q.      All right. And, can you tell us what, if

3   anything, he said on that tape which incriminated him?

4               A.      Yes. He stated that he has been selling

5   drugs for an amount of time, I can't be specific on the time. He said he's selling

6   six ounces a week. He said that he doesn't usually sell out of the house, he

7   would have deliveries made to various people. He also gave me a few sources

8   of supply that I won't mention at this time. He also told me who he had obtained

9   the crack cocaine found in the residence, from on that occasion. He was

10  forthcoming, he told officers just about everything.

11              Q.      Did he make statements, which

12  incriminated any of his various other co-defendants?

13              A.      I would have to review his statement again,

14  I watched it a few days ago, I'd have to watch it again.

15              Q.      Was it just of a statement, sir, that basically

16  that he was taking the blame for everything and he was mitigating what

17  everybody else was doing?

18              A.      Well, he took the blame for the large

19  amount of crack cocaine and he said he was a distributor of crack cocaine, and

20  he didn't make statements. He said Miss Haas was not involved as far as the

21  distribution, he said she was a user, an addict, but as far as the distribution she

22  was not involved, but she was aware of what was going on, and with respect to

23  the firearm he claimed no knowledge of the firearm.

1                          A.      I'm not sure of any amount.  I do know that

2    in excess of $5,000.00 was taken from the safe and your client stated later that

3    night that about $2,000.00 of it was a state tax return that she had received, and

4    I advised her she needed to do some documentation so that she might get it

5    back from the Attorney General's Office.

6                          Q.      Okay.  Did anybody else tell you where the

7    other approximately $3,000.00 came from?

8                          A.      Results of drug proceeds.

9                          Q.      And, that was told to you by Mr. Brown, Jr.,

10   is that correct, and did he say that that was his money from his selling of drugs?

11                         A.      He said that the money was received from

12   drug proceeds.

13                         Q.      Received by him?

14                         A.      Yes.

15                         Q.      Okay.

16                         THE COURT:  Who said that?

17                         THE WITNESS:  Brown, Jr., sir.

18                         THE COURT:  Thank you.

19   BY MS. SAVITZ:

20                         Q.      Did he tell you where he was selling the

21   drugs from?

22                         A.      Well, it was coming from the 535 Nimitz

23   Road out to various locations.

1         A.      No, I don't believe so.

2         Q.      Okay. Did any of the various co-

3    defendants make statements that he was the owner of the weapon?

4         A.      No, I don't believe anyone said that.

5              MR. SWIERZBINSKI: All right. Your Honor, nothing

6    further at this time. I just request to have a few more moments before we

7    conclude to confer with my client, and perhaps ask a few more questions after

8    that.

9              THE COURT: Ms. Savitz?

10             MS. SAVITZ: Thank you, Your Honor.

11                  CROSS-EXAMINATION

12   BY MS. SAVITZ:

13        Q.      Detective, who owns the handgun that was

14   found?

15        A.      We still don't know.

16        Q.      Let me ask you this, you said it was

17   a Ruger?

18        A.      Yes, we wanted to trace, we weren't able to

19   trace it back to anybody at the residence.

20        Q.      Did you trace it back to anybody?

21        A.      Well, we traced it to see if it was wanted or

22   used in any crimes. It came back negative, as far as wants and warrants. As far

23   as, the owner I'm not aware of the owner's name.

1                        MS. SAVITZ:  So, I'm trying to find out perhaps where

2      it came from?

3                        MR. HALTOM:  I would object to that characterization.

4                        THE COURT:  Well, nonetheless, I'm not going to

5      make any determination on the characterization.  I'm going to let you continue

6      for a couple of questions on that line then I'll ask you to move on.

7                        MS. SAVITZ:  Okay.  Thank you.

8                        THE COURT:  Okay.

9      BY MS. SAVITZ:

10                       Q.      Do you know, from your CI or any other

11     source, whether Mr. Jeff had access to the residence at 535 Nimitz Road, City of

12     Dover, County of Kent, State of Delaware, when no one else was in the house?

13                       A.      Yes, he was being allowed to live there by

14     Mr. Brown and Miss Haas.

15                       Q.      When?

16                       A.      For the past few months according to her

17     statement.

18                       Q.      This is Mr. Jeff and not Mr. Brown, Sr.?

19                       A.      Mr. Brown, Sr. had been in and out of the

20     residence over the past few months, but he didn't stay for any length; that was

21     the statement of Miss Haas.

22                       THE COURT:  It's your testimony though that one of

1    the location?

2                        A.    Shortly before 11:00.

3                        Q.    Were you accompanied by any other

4    officers?

5                        A.    I had support officers in the area, so they

6    might do a traffic stop, if needed, on suspected drug activity.

7                        Q.    Okay.  Well, you had planned to make a

8    traffic stop, I'm not sure I understand?

9                        A.    Well, I knew there was drug activity going

10   on at the house from my prior investigation.  If we had a vehicle, if we had

11   activity, which is indicative of a drug house, where cars were coming, making

12   five minute stops, and leaving shortly after, then I wanted to have officers there

13   to assist me in performing a traffic stop, so we could do drug interdiction, and

14   correlate it back to the residence.

15                       I had officers available to me, and I contacted them

16   via radio and kept them up to speed on what was going on as far as the house.

17                       Q.    Okay.  All right.  My client is Mr. Brown, Sr.,

18   so I'm sort of focused on him for right now.

19                       A.    Yes.

20                       Q.    You saw him arrive and go into the

21   residence?

22                       A.    Yes.

23                       Q.    All right.  Was he carrying anything?

1    already in the residence?

2                            A.        Yes, he was already, he was walking into

3    the residence, and then Miss Stewart arrives.

4                            Q.        Did you witness Miss Stewart or Mr. Brown,

5    Sr. having any conversations or exchanging anything?

6                            A.        No, not when they entered the residence.

7    No, I did not.

8                            Q.        Okay. All right. Was this the only day that

9    you watched the residence?

10                           A.        I had watched it on another occasion, and

11   no one was at home, didn't see much activity.

12                           Q.        All right. On that other occasion you did

13   not see Mr. Brown, Sr. in or about the residence?

14                           A.        No, I had intelligence he was in Virginia.

15                           Q.        All right. Were they the only two occasions

16   when a member of the Dover City Police Department or the DEA took up a

17   position to observe this residence?

18                           A.        One time when we did a controlled buy, we

19   were monitoring the residence. As I stated, it was a few months back, and like I

20   said, we had received numerous reports from the people in the neighborhood

21   complaining about the vehicle traffic and the suspected activity.

22                           Q.        Okay. The controlled buy that took place a

23   couple of months ago, I take it you used a confidential informant?

1    were no controlled substances or any indicia of criminality in that vehicle, am I

2    correct?

3                         A.    No, there was nothing in the vehicle.

4                         Q.    Okay.  Now, you indicated that my client

5    gave a videotaped statement and you spoke to various of the other co-

6    defendants, correct, sir?

7                         A.    Yes.

8                         Q.    Any statements, which they have given, are

9    they also videotaped?

10                        A.    They were also videotaped, yes.

11                        Q.    Okay.  Now, it indicates in the PC sheet,

12   that there are various other individuals at the property including a James Burris,

13   et cetera, Patricia Brown?

14                        A.    Yes, Patricia Brown was a juvenile at the

15   residence, she was dropped off by, I don't know, I saw someone drop her off and

16   she went inside of the house, like they were watching her for somebody, maybe

17   been babysitting her.

18                        Q.    All right.  But, the Burris individual, he is

19   certainly an adult.  According to the PC sheet he's approximately forty-seven,

20   forty-eight years of age, correct?

21                        A.    Yes.

22                        Q.    All right.  He was there when Lawrence Jeff

23   was basically at the house?

1                                    A.       No, he was not.  Like I said, he left within a

2      few minutes, less than five minutes, a quick stop.

3                                    Q.       Okay.

4                                    A.       Later that morning, Mr. Brown, Jr. and

5      Jennifer Haas left; Mr. Brown, Jr. was driving a red Nova, Miss Haas was driving

6      a red Explorer, I believe.

7                                    Q.       What time did they leave?

8                                    A.       Approximate time, well, I'm going to say it

9      was shortly after 11:00, right around 11:00, 11:30.

10                                   Q.       All right.

11                                   A.       At that time the residence was still open,

12     Mr. Lawrence Jeff was there.  A short time after that, right around 1:00 p.m.,

13     maybe, 1:30, Mr. Brown, Jr. arrives driving a white Honda Accord; he goes into

14     the residence, followed shortly after by Miss Lori Stewart.

15                                   Q.       All right.  You just said Mr. Brown, Jr., but

16     you meant Mr. Brown, Sr.?

17                                   A.       Brown, Sr., I'm sorry, Mr. Brown, Sr. arrives

18     in the white Honda Accord.

19                                   Q.       All right.  So, I take it you were in a position

20     somewhere near the residence to make direct observations of the goings and

21     comings?

22                                   A.       Yes.

23                                   Q.       What time did you take up your position at

LINDA A. LAVENDER
Official Court Reporter

1                    Q.        Right.  You took Mr. Brown into custody at

2    1:30, cuffed him, searched him, brought him into the residence?

3                    A.        Yes.

4                    Q.        Searched the couch that he was seated

5    on?

6                    A.        That he was seated on.

7                    Q.        That happened right around 1:30?

8                    A.        Yes.

9                    Q.        And, then the search warrant that you

10   obtained you got somewhere between 1:00 and 3:00 p.m.?

11                   A.        Well, the search warrant had to be

12   completed, it needed to be signed by a judge, as you know, and we're not

13   allowed to start searching until the warrant is signed and is good, so he was

14   detained until pending the search warrant.

15                   Q.        All right.  So, he was taken into custody

16   and what did you all do, just sit around the living room waiting until you heard

17   that the warrant was signed?

18                   A.        Basically.  I was at the court, other officers

19   were at the house, yes.

20                   Q.        Did you record the time you received the

21   search warrant?

22                   A.        No, I didn't, It would have been shortly prior

23   to the execution.

1                    THE COURT:  Cross-examine.

2                    MR. HOWARD:  It's a tight fit over here today, Your

3    Honor.

4                    THE COURT:  Yeah, but we'll get to it though.

5                        CROSS-EXAMINATION

6    BY MR. HOWARD:

7                    Q.      Good morning, Detective.

8                    A.      Good morning.

9                    Q.      I want to start with your activities prior to

10   obtaining the search warrant, okay.  I've read something in the affidavit of

11   probable cause that you had had this house under surveillance?

12                   A.      Yes, like I said, we've been investigating

13   Big Winnie and Little Winnie, later identified as Winfred Brown, Jr., and Sr., the

14   last couple of months.  We have numerous calls from the neighborhood about

15   the drug activity going on, several cars in and out all times of night.

16                       Also, had a controlled purchase from the house a few

17   months back with the use of a confidential informant, and on that date I was in

18   position to watch and record what went on at the house.

19                       As I stated, I saw earlier that morning prior to Mr.

20   Brown, Jr. leaving, I observed Jason Brooks arrive at the residence who through

21   my investigation is tied in to the illegal sale of narcotics, he stayed at the

22   residence and left within a few minutes.

23                   Q.      Was he detained?

1    house, the 76 grams total found in the house, and the other one would be with

2    the conspiracy with Miss Stewart for the delivery to her.

3                            Q.    Okay. Now, let's turn to Junior, is Winfred

4    O. Brown, Jr. in the courtroom today?

5                            A.    Yes.

6                            Q.    Please point him out.

7                            A.    He's seated to the extreme left by himself

8    on the end.

9                            Q.    And, how is he related to Senior?

10                           A.    He's the son of Winfred O. Brown, Sr.

11                           Q.    Where does Junior live?

12                           A.    At 535 Nimitz Road.

13                           Q.    Does he own that residence or rent it?

14                           A.    His girlfriend, Jennifer Haas, rents the

15   Residence. He stays...

16                           Q.    Do you have a signed rental agreement

17   with her name on it?

18                           A.    No.

19                           Q.    How do you know she rents it?

20                           A.    She admitted that to us in a post-Miranda

21   statement.

22                           Q.    Okay. And, who did she say live there?

23                           A.    She said that she resides there with a few

1    children and Winfred O. Brown, Jr., and that Winfred O. Brown, Sr. did reside

2    there up until a few months ago, but he goes back and forth between Virginia

3    and Delaware.

4                          THE COURT:  Who goes back and forth?

5                          THE WITNESS:  Winfred O. Brown, Sr., the father.

6                          THE COURT:  Thank you.

7    BY MR. HALTOM:

8                          Q.    And, what did she tell you, what kind of

9    relationship does Haas have with Junior?

10                         A.    They're boyfriend and girlfriend.

11                         Q.    And, she told you that?

12                         A.    Yes.

13                         Q.    Okay.  What is Brown, Jr.'s job?

14                         A.    I'm not sure that he has a job, I didn't ask

15   him to be honest with you.

16                         Q.    Okay.  Did she tell you anything, did Miss

17   Haas tell you anything about that?

18                         A.    No, I don't remember her saying anything

19   about that.

20                         Q.    Okay.  Does she work?

21                         A.    I believe she does work.  I'm not sure.  I

EXHIBIT C

State of Delaware vs. WINFRED O. BROWN SENIOR        Case: 03 05 001486

## Exhibit B

SBI Number: 00019174                    Also Known As:
Date of Birth/Age: **Jun 21, 1957 (45)**    Sex: **Male**                    Race: **Black**
Eye Color: **Brown**        Hair Color: **Bald**            Height: **5'11"**   Weight: **225 lbs**
Driver's License:                            Social Security Number: **222442285**
Address: **642 Cabin Creek DR**
    **HOPEWELL, VA 23860**

Phone: **(804) 536-3055**  541-2605/2650
Employer: **U.S.ARMY**
    **(703) 681-9476**

Date and Times of Offense: **5/2/2003 at 1320**
Location of Offense: **535 Nimitz RD - Dover, 19901**

Your affiant CPL MARVIN C MAILEY can truly state that:
1. THAT YOUR AFFIANT IS A SWORN OFFICER WITH THE CITY OF DOVER POLICE DEPARTMENT AND IS CURRENTLY ASSIGNED TO THE DRUG, VICE AND ORGANIZED CRIME UNIT.
2. THAT ON MAY 2, 2003 THE AFFIANT WAS CONDUCTING SURVEILLANCE AT 535 NIMITZ ROAD, DOVER, DELAWARE. THE AFFIANT HAD BEEN CONDUCTING AN INVESTIGATION IN REFERENCE TO THE DRUG ACTIVITIES OF WINFRED O. BROWN SR AND WINFRED O BROWN .JR.   THEN WHY WASN'T JR NAME ON WARRANT
3. THAT DURING THE SURVEILLANCE THE AFFIANT OBSERVED SEVERAL PEOPLE MAKE BRIEF STOPS AT THE RESIDENCE AT 535 NIMITZ ROAD.   OBSERVED 2 VEHICLES STOP, ONE WAS MY N
4. THAT THE AFFIANT OBSERVED A WHITE FEMALE ENTER THE RESIDENCE AT 535 NIMITZ   ON ROAD, DOVER, DELAWARE. THE WHITE FEMALE LEFT THE RESIDENCE WITHIN FIVE   WAS MINUTES.   WHEN
5. THAT THE WHITE FEMALE RETURNED TO A 1994 JEEP BEARING DELAWARE 158022 AND   CAR GOT INTO THE PASSENGER SIDE SEAT AND LEFT THE AREA.   DN
6. THE AFFIANT GAVE A VEHICLE DESCRIPTION TO OTHER OFFICERS VIA THE RADIO AND PFC SEALUND AND P.O. MCCLEARY OBSERVED THE VEHICLE IN THE AREA OF NIMITZ ROAD AND TOWNSEND BLVD.
7. THAT WHEN THE VEHICLE WAS TRAVELLING ON WHITE OAK ROAD, DOVER, DELAWARE, PFC SEALUND OBSERVED A TRAFFIC VIOLATION AND CONDUCTED A TRAFFIC STOP ON THE JEEP THAT WAS MENTIONED EARLIER.
8. THAT WHEN THE VEHICLE WAS STOPPED CHERYL ECKART, W/ F, 01/30/1961 (DRIVER) AND LORI STEWART W/F, 11/27/1965 (PASSENGER) WERE CONTACTED.
9. THAT BOTH SUBJECTS WERE FOUND TO BE WANTED FOR CAPIAS.

Affiant

Sworn and subscribed before me this 3rd day of May AD, 2003

Judge/Master/Commissioner/Court Official

State of Delaware vs. **WINFRED O. BROWN SENIOR**          Case: 03 05 001486

25. BROWN. SR WAS THEN TRANSPORTED TO DOVER POLICE DEPARTMENT BY OTHER OFFICERS.

26. AFTER BROWN. SR WAS REMOVED FROM THE COUCH S/A FERNANDEZ SEARCHED THE COUCH AGAIN AND FOUND 4.4 GRAMS OF COCAINE PACKAGED INSIDE OF A PLASTIC BAG AND 2.3 GRAMS OF COCAINE PACKAGED INSIDE OF A PLASTIC BAG ALSO IN THE COUCH CUSHIONS WERE BROWN. SR HAD BEEN SITTING.

27. THAT JENNIFER HAASS W/F DOB 03-28-78 AND WINFRED O BROWN. JR RETURNED TO THE RESIDENCE AND BOTH WERE DETAINED.

28. THAT ALSO FOUND INSIDE OF 535 NIMITZ ROAD WAS BUSINESS DOCUMENTS AND PAPER WORK BELONGING TO WINFRED BROWN. JR.

29. THAT HAASS WAS ADVISED OF MIRANDA AND SHE STATED THAT BROWN. JR HAS BEEN LIVING WITH HER AT 535 NIMITZ ROAD SINCE AUGUST OF 2002.

30. HAASS ALSO STATED THAT BROWN. SR RESIDED WITH THEM FOR A FEW MONTHS THEN HE MOVED OUT AND HE WOULD RETURN OCCASSIONALLY TO VISIT WITH THEM.

31. HAASS ALSO STATED THAT SHE WAS AWARE OF DRUG ACTIVITY CONDUCTED BY BROWN. JR AND BROWN .SR AT 535 NIMITZ ROAD.

32. THAT 535 NIMITZ ROAD IS LOCATED WITHIN 300 FT OF A PARK, THE PARK IS KNOWN AS WILLIAMS PARK WHICH IS LOCATED BEHIND THE RESIDENCE.

33. THAT ROOM 50 KENT BUDGET HOTEL IS LOCATED LESS THAT 300 FT FROM ST. ANDREWS CHURCH IS LOCATED ON ROUTE 13 NORTHBOUND IN DOVER, DELAWARE.

34. THAT THE CRACK COCAINE THAT WAS SEIZED BY THE AFFIANT AND OTHER OFFICER WAS WEIGHED AND TESTED BY DETECTIVE MATTHEWS. ALL DRUG EVIDENCE THAT WAS COLLECTED RETURNED A POSITIVE READING FOR COCAINE OR MARIJUANA.

Affiant: CPL MARVIN C MAILEY (54424) of DOVER PD

| Victims: | Date of Birth | Relationship Victim to Defendant |
|---|---|---|
| SOCIETY/PUBLIC | | Victimless Crime |
| PATRICIA BROWN | 05/13/1994 | Other Family Member |
| SOCIETY/PUBLIC | | Victimless Crime |
| Victimless Crime | | |
| STATE OF DELAWARE | | Victimless Crime |
| STATE OF DELAWARE | | Victimless Crime |

Affiant

Sworn and subscribed before me this 3rd day of May AD, 2003

Judge/Master/Commissioner/Court Official

EXHIBIT D

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

STATE OF DELAWARE                    )
                                     )
        v.                           )        Criminal Action Number
                                     )            0305001486
                                     )
WINFRED O. BROWN SR.                 )
                                     )
        Defendant.                   )

## **NOTICE OF MOTION**

TO:    James Kriner, Esquire
       Deputy Attorney General
       Department of Justice
       102 West Water Street
       Dover, DE 19904

       PLEASE TAKE NOTICE that the within **MOTION TO SUPPRESS
EVIDENCE AND HOLD A "FLOWERS HEARING"** will be presented to this Honorable
Court as soon as counsel may be heard.

                                     Respectfully submitted,


                                     _David R. Anderson Sr._, Esquire
                                     P.O. Box 547
                                     Townsend, DE 19734
                                     302-376-3511
                                     Attorney for the Defendant

RECEIVED
AND
FILED

04 JAN 30 AM 10: 23

KENT COUNTY
PROTHONOTARY

Date: January 30, 2004

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

STATE OF DELAWARE            )
                             )
        v.                   )      Criminal Action Number
                             )          0305001486
                             )
WINFRED O. BROWN SR.         )
                             )
        Defendant.           )

## MOTION TO SUPPRESS EVIDENCE AND HOLD A "FLOWERS HEARING"

MAY IT PLEASE THE COURT Winfred O. Brown Sr., by and through his attorney David R. Anderson Sr., respectfully requests the Court schedule a Motion Hearing to Suppress Evidence and hold a "Flowers Hearing". The defendant prays the Court allow these hearing to be scheduled at this late date because of the following factors:

1]      Winfred O. Brown Sr. was arrested on May 2, 2003, on charges arising from the States execution of two search warrants. One Search Warrant was for 535 Nimitz Road, Dover, Delaware. The second was for Room 50 of the Kent Budget Inn Motel.

2]      This attorney was appointed to represent Mr. Brown on December 5, 2003. This attorney is the fifth attorney appointed to represent Mr. Brown in this case.

3]      The record reflects that Discovery Motions were filed on the State by Kevin Howard, Esquire, in June 2003, and also by Gregory Morris, Esquire, on August 19, 2003.

4]      After being appointed to this case, David R. Anderson Sr., Esquire, filed a Discovery Motion on December 14, 2003.

5]      The State complied with these earlier requests by providing Mr. Brown's criminal history, a copy of the police reports, and a copy of the Indictment.

6]      Deputy Attorney General James Kriner, complied with the December request by providing this attorney with copies of the video taped statements of the defendants and a video tape of the surveillance of 535 Nimitz Road.

7]      Deputy Attorney General James Kriner stated for the record on January 27, 2004, that he had sent the Search Warrants and Returns to Gregory Morris, Esquire, when he represented the defendant in August 2003. However, these warrants and returns were not in the folder

information received by this attorney. The State provided this defense attorney copies of the two search warrants and their returns on January 27, 2004.

8]       None of Mr. Brown's four previous attorneys had filed any Motion to Suppress Evidence.

9]       In the Search Warrant for 535 Nimitz Road, the State listed Winfred O. Brown, DOB 6/21/57 as living at this address with his girlfriend Jennifer Haas, in reality this is Winfred O. Brown Jr. that lives at this address with his girlfriend Jennifer Haas.

10]      In paragraph 3 of the probable cause, a confidential informant advised the police that "Winchester" provides crack cocaine from this address. The Defendant has no idea who "Winchester" is.

11]      Paragraph 4 of the probable cause correctly states that Winfred O. Brown Sr. resides in Hopewell Virginia.

12]      In paragraphs 5 through 17, the State refers to a controlled buy made by CI#288. The State says that CI#288 called the residence to order crack cocaine from Winchester. No one named Winchester is involved in this case and no one with this name or nickname resides at 535 Nimitz Road. The probable cause states the informant talked to Brown. It is an important question of fact as to whether the informant talked to Winfred O. Brown Sr. or the resident of the dwelling Winfred O. Brown Jr. This listed controlled buy was completed by someone named Larry delivering the drugs to the informant. In paragraph 17 the CI states that Brown sent Larry with the drugs. This statement raises the questions of how the informant knows this fact and which Brown sent Larry. Under State v. Flowers, 316 A.2d, 564 (1973), the Defendant has the right to question the informant about the above information or have this controlled buy removed from the probable cause.

13]      In paragraph 30 the State listed as probable cause that Winfred O. Brown had been arrested for three prior drug charges. The State does not inform the signing Justice of the Peace that these charges were all dismissed by the State.

       WHEREFORE the defendant, through his attorney, based on the above discrepancies in the probable cause prays the Court issue an order that CI#288 must testify.

       WHEREFORE the defendant, through his attorney, based on the above discrepancies in the probable cause prays the Court issue an order to suppress all evidence seized at 535 Nimitz Road, Dover, Delaware, because of the lack of probable cause for the issuance of a search warrant for that address.

       ALSO WHEREFORE, the Search Warrant for Room 50 of the Kent Budget Inn contains probable cause that arises entirely from the execution of the Search Warrant for 535 Nimitz Road. As such this probable cause is fruit of the poisonous tree and therefore all evidence from the search of Room 50 of the Kent Budget Inn must also be suppressed.

THEREFORE THE DEFENDANT PRAYS that the Honorable Court hold a hearing to determine if CI#288 must testify and that the Court suppress all evidence arising from the searches of 535 Nimitz Road and Room 50 of the Kent Budget Inn.

Respectfully submitted this 30th day of January 2004,

by David R. Anderson Sr., Esquire
Attorney for Winford O. Brown Sr.

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

STATE OF DELAWARE        )
                               )
        v.                )     Criminal Action Number
                               )           0305001486
                               )
WINFRED O. BROWN SR.      )
                               )
      Defendant.       )

## ORDER

AND NOW, to wit this _____ day of _____, 2004 the defendant having presented a Motion to Suppress Evidence and hold a "Flowers" Hearing in the above case:

IT IS HEREBY ORDERED that

_____

_____

_____

_____

_____

_____

IT IS SO ORDERED this _____ day of _____, 2004, by

_____
JUDGE

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 0305001486 |
| | ) | |
| WINFRED O. BROWN SR. | ) | |
| | ) | |
| Defendant. | ) | |

## **CERTIFICATE OF SERVICE**

I, David R. Anderson Sr., Esquire, do affirm that the attached Motion was served on the State by hand delivery to the Department of Justice on January 30, 2004, and addressed to:

James Kriner, Esquire
Deputy Attorney General
Department of Justice
102 West Water Street
Dover, DE 19904

David R. Anderson Sr., Esquire
P.O. Box 547
Townsend, DE 19734
302-376-3511
Attorney for the Defendant

Date: January 30, 2004

EXHIBIT E

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

STATE OF DELAWARE            )
                             )
v.                           )        Criminal Action Number
                             )            0305001486
                             )
WINFRED O. BROWN SR.         )
                             )
    Defendant.               )

## NOTICE OF MOTION

TO:    James Kriner, Esquire
       Deputy Attorney General
       Department of Justice
       102 West Water Street
       Dover, DE 19904

       PLEASE TAKE NOTICE that the within Motion To Compel Discovery will be
presented to this Honorable Court as soon as counsel may be heard.

                              Respectfully submitted,


                              David R. Anderson Sr., Esquire
                              P.O. Box 547
                              Townsend, DE 19734
                              302-376-3511
                              Attorney for the Defendant

Date: January 21, 2004

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

STATE OF DELAWARE                )
                                 )
        v.                       )        Criminal Action Number
                                 )           0305001486
                                 )
WINFRED O. BROWN SR.             )
                                 )
        Defendant.               )

## **MOTION TO COMPEL DISCOVERY**

MAY IT PLEASE THE COURT Winfred O. Brown Sr., by and through his attorney David R. Anderson Sr., respectfully requests the Court order the Attorney General's Office to comply with the demand for Discovery information. This request is based on the following information:

1]      Winfred O. Brown Sr. was arrested on May 2, 2003, on charges arising from the States execution of two search warrants. One Search Warrant was for 535 Nimitz Road, Dover, Delaware. The second was for Room 50 of the Kent Budget Inn Motel.

2]      This attorney was appointed to represent Mr. Brown on December 5, 2003. This attorney is the fifth attorney to represent Mr. Brown in this case.

3]      The record reflects that Discovery Motions were filed on the State by Kevin Howard, Esquire, in June 2003, and also by Gregory Morris, Esquire, on August 19, 2003.

4]      After being appointed to this case, David R. Anderson Sr., Esquire, filed a Discovery Motion on December 14, 2003.

5]      The State complied with these earlier requests by providing Mr. Brown's criminal history, a copy of the police reports, and a copy of the Indictment.

6]      Deputy Attorney General James Kriner, complied with the December request by providing this attorney with copies of the video taped statements of the defendants and a video tape of the surveillance of 535 Nimitz Road.

7]      The State has not provided the defense any copies of the two search warrants and their returns.

8]    None of Mr. Brown's five attorneys has filed any Motion to Suppress Evidence, probably because none of the defense attorneys have seen the search warrants involved in this case.

9]    Mr. Brown has informed this attorney that he believes the search warrants were based entirely on the statements of an unreliable informant. This attorney can not verify my client's claims because I have not seen the search warrants in question.

WHEREFORE the defendant, through his attorney, prays the Court issue an order to the Attorney General's Office that they comply with the Discovery requests and deliver copies of the Search Warrants and Returns involved in this case.

FURTHERMORE the defendant prays, that his attorney, even at this late date, be allowed to file a Motion To Suppress Evidence, after these warrants are reviewed if there is cause for such a motion.

Respectfully submitted this 21st
day of January 2004,

by David R. Anderson Sr., Esquire
Attorney for Winford O. Brown Sr.

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR KENT COUNTY

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) |
| v. | ) Criminal Action Number |
| | ) 0305001486 |
| | ) |
| WINFRED O. BROWN SR. | ) |
| | ) |
| Defendant. | ) |

## **ORDER**

AND NOW, to wit this _____ day of _____, 2004 the defendant having presented a Motion to Compel Discovery in the above case:

IT IS HEREBY ORDERED that the Deputy Attorney General's office is ordered to provide the defense in this case with copies of the Search Warrants and Returns involved in this case.

IT IS FURTHER ORDERED that the defendant's attorney be allowed to make a Motion To Suppress Evidence, if said motion is necessary after reviewing these Search Warrants and Returns.

IT IS SO ORDERED this _____ day of _____, 2004, by

_____

JUDGE

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | : |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 0305001486 |
| | ) | |
| WINFRED O. BROWN SR. | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I, David R. Anderson Sr., Esquire, do affirm that the attached Motion was served on the State by mailing one copy with proper postage affixed to the Department of Justice on January 21, 2004, and addressed to:

James Kriner, Esquire
Deputy Attorney General
Department of Justice
102 West Water Street
Dover, DE 19904

David R. Anderson Sr., Esquire
P.O. Box 547
Townsend, DE 19734
302-376-3511
Attorney for the Defendant

Date: January 21, 2004

EXHIBIT F

State of Delaware )
County of ~~New Castle~~ KENT ) SS.

Affidavit of: WINFRED BROWN JR.
Dated: 27 APRIL 2004

### AFFIDAVIT

I, _WINFRED O. BROWN JR._, being first duly sworn deposes and says that the foregoing statement is a true and correct observation of what occurred on the above date herein at/in _N/A_ located in the Delaware Correctional Center, Smyrna, Delaware, in that I was a part of or witnessed the incident described herein. I would clearly state under penalty of perjury of the laws of the State of Delaware.

WINFRED O. BROWN SR. DID NOT LIVE AT 535 NIMITZ ROAD.

) WINFRED O. BROWN SR. DID NOT HAVE OWNERSHIP OR CONSTRUCTIVE POSSESSION OF ANY OF THE DRUGS FOUND IN MY RESIDENCE AT 535 NIMITZ ROAD ON MAY 2, 2003.

) HE WAS NOT INVOLVED IN MY DRUG BUSINESS OR ANY DRUG RELATED ACTIVITIES AT MY RESIDENCE.

) HE WAS NOT THE OWNER AND DID NOT KNOW THE LOCATION OF THE UNLOADED HAND GUN FOUND IN MY RESIDENCE.

) I INFORMED STATE ATTORNEY KRINER OF THESE CIRCUMSTANCES AT A MEETING WITH HIM ON JANUARY 29, 2004.

) MY FATHER DID NOT VISIT MY RESIDENCE AT ALL BETWEEN FEBRUARY 16, 2003 AND APRIL 24, 2003.

Affiant

Signature _Winfred O Brown Jr._

Print Name WINFRED O. BROWN JR. 307556
Delaware Correctional Center
Smyrna, Delaware 19977

SWORN TO AND SUBSCRIBED before me this _27_ day of _April_, 200 _4_

My Commission Expires:

Notary Public

EXHIBIT   G

IN THE JUSTICE OF THE PEACE COURT #7
STATE OF DELAWARE
KENT COUNTY

AFFIDAVIT AND APPLICATION
FOR SEARCH WARRANT

IN THE MATTER :   Winfred O. Brown , black male, Date of Birth 06-21-57 and 1988 Honda Accord bearing Virginia registration JAU1563, VIN # 1HGCA5644JA145413, 1992 Ford Explorer Delaware registration PC207250, VIN# 1FMDU34X2NUB76204, 1992 Ford Explorer bearing Delaware registration PC206586, VIN# 1FMDU34X1NUB18844 and the residence of 535 Nimitz Road being a single family one story home that is made of brick with a grey roof, with an attached garage, that is white in color. The residence of 535 Nimitz Road is located on the eastside of the Nimitz Road, Dover, Delaware. Any and all storage areas, outbuildings, sheds, doghouses, and any and all persons present, being in the City of Dover, County of Kent, State of Delaware.

STATE OF DELAWARE
KENT COUNTY         SS.

Be it remembered that on this _2nd_ day of _May_, A.D. 2003, before me _Bob Wallir  J.P._, personally appeared Detective Marvin Mailey and Detective Jeffrey Matthews of the Dover Police Department, who being by me duly sworn depose and say:

That they have reason to believe and do believe that in the property of ;  Winfred O. Brown , black male, Date of Birth 06-21-57 and 1988 Honda Accord bearing Virginia registration JAU1563, VIN # 1HGCA5644JA145413, 1992 Ford Explorer Delaware registration PC207250, VIN# 1FMDU34X2NUB76204, 1992 Ford Explorer bearing Delaware registration PC206586, VIN# 1FMDU34X1NUB18844 and the residence of 535 Nimitz Road being a single family one story home that is made of brick with a grey roof, with an attached garage, that is white in color. The residence of 535 Nimitz Road is located on the eastside of the Nimitz Road, Dover, Delaware. Any and all storage areas, outbuildings, sheds, doghouses, and any and all persons present, being in the City of Dover, County of Kent, State of Delaware.

there has been and/or there is now located and/or concealed certain property in said house, place, conveyance and/or on the person or persons of the occupants thereof, consisting of property, papers, articles or things which are the instruments of a criminal offense, and/or obtained in the commission of a crime, and/or designated to be used in the commission of a crime, and not reasonably calculated to be used for any other purpose and/or the possession of which is unlawful and, in particular.

See Exhibit A
which said property, papers, articles or things were, are, or will be possessed and/or used in violation of Title 16, Chapter 47, Section 4751 Delaware Code, in that (See Attached Probable Cause Sheet).

ROOM 50, KENT BUDGET MOTEL    #2

## PROBABLE CAUSE

And that the facts tending to establish probable cause for believing that the foregoing grounds for the application exist are as follows:

1.      That your Affiant #1 is Detective Jeffrey Matthews of the Dover Police Department who has been employed by the Dover Police Department since July, 1995. Detective Matthews is currently assigned to the Drug/Vice/Organized Crime Unit. Detective Matthews is also a member of the United States Department of Justice Drug Enforcement Administration Task Force and is authorized to enforce Federal, State, and local laws, and to execute arrest and search warrants.  Detective Matthews is a graduate of the Delaware State Police Academy.  Detective Matthews has attended several courses sponsored by the Delaware State Police. The courses included, Handling Confidential Informants, Interview and Interrogation, Felony Case Investigation, Search Warrants as an Investigative Tool, Crime Scene Preservation and Investigation and a two-week Drug Investigators school sponsored by the Drug Enforcement Administration. Detective Matthews has also completed courses in Clandestine Laboratory Investigation and Club Drug Awareness, which was sponsored by the Drug Enforcement Administration. Detective Matthews has participated in several state arrests and search warrants and several federal search warrants for illegal drugs. Detective Matthews has participated in numerous illegal drug investigations within the State of Delaware.

2.      That your Affiant #2 is Detective Marvin Mailey of the Dover Police Department who has been employed by the Dover Police Department since July, 1993. Detective Mailey is currently assigned to the Drug/Vice/Organized Crime Unit.  Detective Mailey is a graduate of the Dover Police Academy.  Detective Mailey has attended several courses sponsored by the Delaware State Police. The courses included, Handling Confidential Informants, Background Investigations, Interview and Interrogation, Felony Case Investigation, Crime Scene Investigation and a two week Drug Investigators school sponsored by the Drug Enforcement Administration.  Detective Mailey is also a member of the DEA Task Force and has participated in several illegal drug investigations within the State of Delaware.

3.      That on may 2, 2003 affiant at 535 Nimitz Rd Dover ,Delaware detained Winfred O. Brown Sr, black male date of birth 06/21/57 pursuant to a search warrant for illegal substances.

4.      That members of the Dover Police Department and The DEA contact Winfred O. Brown Sr at the residence of 535 Nimitz Road and found him to have on his person an amount of suspected crack cocaine.

5.      That it was learned from Lorie Stewart, white female, date of birth 11/27/65 that she had recently purchased crack cocaine from Winfred O. Brown Sr at the residence of 535 Nimitz Road Dover, Delaware.

6.      That Lorie Stewart was observed going to the residence of 535 Nimitz Road Dover, Delaware and contacting a black male at that residence and then depart from same.

7.      That Lorie Stewart was observed leaving the residence as a passenger in a 1994 Jeep bearing Delaware registration 158022.

8.      That Officer Sealund of the Dover Police Department then conducted a vehicle stop of the Jeep in the area of White Oak Road Dover, Delaware for failing to stop at a stop sign.

9.      That the vehicle mentioned in paragraph #7 was operated by Cheryl Eckart, white female date of birth 01/30/61.

10.     That both Cherl Eckart and Lorie Stewart were found to be wanted on court issued capias'.

11.    That police then located and amount of suspected crack cocaine within the center console of the vehicle operated by Cheryl Eckart.

12.    That Lorie Stewart after being mirandized advised that she had purchased the crack cocaine from Winfred O. Brown Sr at the residence of 535 Nimitz Road Dover, Delaware.

13.    That Lorie Stewart then advised officers that Winfred O. Brown Sr has a motel room located and the Kent Budget Motel which is located at 383 North Dupont Highway Dover, Delaware and the room number is 50.

14.    That Lorie Stewart advised affiant #1 that Winfred O. Brown Sr had more crack cocaine in room #50 at the Kent Budget Motel and that she had spent the last several days with Winfred O. Brown Sr in that room.

15.    That Cpl Digirolomo then contacted management at the Kent Budget Motel and found that room #50 is registered to Winfred O. Brown.

16.    That Winfred O. Brown Sr has previous arrest for Possession of Cocaine, Maintaining a Dwelling, Delivery of Cocaine, Conspiracy 2nd, Terroristic Threatening, and Offensive Touching.

17.    Based upon your affiant training, experience and participation in other illegal drug investigation particularly cocaine and or other illegal drugs affiant knows that:

   a. that drug traffickers very often keep large amounts of United States Currency on hand in order to maintain and finance their ongoing narcotics business.

   b. that drug traffickers maintain books, records receipts, notes, ledgers, airline tickets, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That drug traffickers commonly "front" (provide narcotics on consignment) to their clients; that the aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug dealers have ready access to them.

   c. that it is common for drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure location within their residences for their ready access and to conceal them from law enforcement authorities.

   d. that drug traffickers often conceal in their residences caches of drugs, amounts of currency, precious metals, jewelry, and other items of value and or proceeds of drug transactions.

   e. that drug dealers commonly maintain addresses and or telephone numbers in books or papers which reflect names, addresses and or telephone numbers of their associates in the drug dealing business.

   f. that drug dealers take or cause to be taken photographs of them, their associates, their property, and their product (illegal drugs). That these photographs are usually maintained in their residence.

   g. that the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

h. that drug dealers at their residence have firearms including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine-guns and other weapons. Said firearms are used to protect and secure a drug dealers property. Such property may include, but is not limited to narcotics, jewelry, paraphernalia, books, records, United States Currency, etc.

I. that drug traffickers often keep in their residence many items of drug paraphernalia such as mirrors, razors, spoons, baggies, capsules, scales, grinders and other items used to package and distribute illegal drugs.

Wherefore, these affiants pray that a search warrant may be issued authorizing a search of the aforesaid Winfred O Brown Sr, black male, date of birth 06/21/57 and the motel room #50 located at the Kent Budget Motel located at 383 North Dupont Highway Dover, Delaware. 383 North Dupont Highway Dover, Delaware being located on the east side of Rt 13 , room #50 being located on the west side of the business four doors north of the management office with a brown door having the number 50 displayed on the room door. Any and all storage areas, outbuildings, sheds, doghouses, and any and all persons present, being in the City of Dover, County of Kent, State of Delaware.

in the manner provided by law.

Affiant _____

Affiant _____

SWORN to and subscribed before me this 2 day of May , A.D. 2003

IN THE JUSTICE OF THE PEACE COURT
STATE OF DELAWARE
KENT COUNTY

EXHIBIT   H

**THE JUSTICE OF THE PEACE COURT #7**
**STATE OF DELAWARE**

CR #50-03-10685

**IN THE MATTER OF: Winfred O. Brown , black male, Date of Birth 06-21-57 and 1988 Honda Accord bearing Virginia registration JAU1563, VIN # 1HGCA5644JA145413, 1992 Ford Explorer Delaware registration PC207250, VIN# 1FMDU34X2NUB76204, 1992 Ford Explorer bearing Delaware registration PC206586, VIN# 1FMDU34X1NUB18844 and the residence of 535 Nimitz Road being a single family one story home that is made of brick with a grey roof, with an attached garage, that is white in color. The residence of 535 Nimitz Road is located on the eastside of the Nimitz Road, Dover, Delaware. Any and all storage areas, outbuildings, sheds, doghouses, and any and all persons present, being in the City of Dover, County of Kent, State of Delaware.**

**INVENTORY AND AFFIDAVIT OF PROPERTY**
**TAKEN UNDER SEARCH WARRANT**

I received the attached search warrant on _____5/2/2003_____ [Date] and have executed it as follows:

On _5-2-2003_ [Date] at _1:15_ [a.m. (p.m.) (circle one)], I searched the premises described in the warrants and left a copy of the warrant and a receipt for the items seized with the person from whom or from whose premises the property was taken, if present; or, if not present, at the premises.

The inventory was made and signed in the presence of (check one or both, as applicable):

☒ Jennifer Haas _____ , the person from whom or from whose premises the property was taken [Fill in name, if known]; AND/OR

☐ Another witness _____ [Fill in name (and title, if applicable)]

The following is an inventory of the property taken pursuant to the warrant:

**SEE ATTACHED**

The search warrant was executed in the manner described above and this inventory is a true and detailed account of all the property taken by me on the warrant.

_____          _5-2-2003_
Officer's Signature                                              (Date)
Detective Marvin Mailey #54424
Name/Title (Print)

Witness: _____          _5-2-2003_
(Optional) Name (Print)                                      (Date)

Title (if applicable) _____

Address: _____

THE JUSTICE OF THE PEACE COURT #7
STATE OF DELAWARE
KENT COUNTY
COMPLAINT NUMBER

## SEARCH WARRANT RETURN

IN THE MATTER:   Winfred O. Brown , black male, Date of Birth 06-21-57 and 1988 Honda Accord bearing Virginia registration JAU1563, VIN # 1HGCA5644JA145413, 1992 Ford Explorer Delaware registration PC207250, VIN# 1FMDU34X2NUB76204, 1992 Ford Explorer bearing Delaware registration PC206586, VIN# 1FMDU34X1NUB18844 and the residence of 535 Nimitz Road being a single family one story home that is made of brick with a grey roof, with an attached garage, that is white in color. The residence of 535 Nimitz Road is located on the eastside of the Nimitz Road, Dover, Delaware.  Any and all storage areas, outbuildings, sheds, doghouses, and any and all persons present, being in the City of Dover, County of Kent, State of Delaware.

STATE OF DELAWARE            )
                    ) SS:
COUNTY OF KENT              )

Pursuant to the attached search warrant, which was executed on        at      HRS, the following items were seized and viewed by Judge_____ on

| Item Seized | Location Seized | Seizing Officer |

EXHIBIT "I"

```
NN    NN    EEEEEEE   XX    XX    TTTTTTTT
NN    NN    EE         XX  XX        TT
NNN   NN    EE          XXXX         TT
NN NN NN    EEEEE        XX          TT
NN   NNN    EE          XXXX         TT
NN    NN    EE         XX  XX        TT
NN    NN    EEEEEEE    XX    XX      TT
```

***** PATIENT: BROWN,WINFRED O SR *****

6 DEC 04

These labs from computer files are the only records we
have on you; no x-rays done at Kenna. Any record of
treatment should have been placed in your health record.
Physical Therapy maintains of file of copies when a
patient is undergoing treatment, but since these are only
copies they are destroyed 6 months after treatment
ends.

Craig Eccard
(804) 734-9508

High Blood Pressure
enlarged Prostate
Titanium Rod (FEMA Bone)
Right ankle      .

```
NMC PORTSMOUTH
                    Personal Data - Privacy Act of 1974 (PL 93-579)
                              PATIENT CUMULATIVE REPORT
                          For: 01 Jan 2000 - 06 Dec 2004
--------------------------------------------------------------------------------
BROWN,WINFRED O SR              20/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  M/47        ph# 804 931 6420
--------------------------------------------------------------------------------


Site/Spec: URINE                  --URINALYSIS--

Date                                              27Dec02
Coll                                              @0710       Units      Normal Range

URINE COLOR                                       Yellow
UA APPEARANCE                                     Clear
URINE GLUCOSE                                     Negative    mg/dL
URINE BILIRUBIN                                   Negative
URINE KETONES                                     Negative    mg/dL
URINE BLOOD                                       Negative
URINE SPEC GRAV                                   1.022
URINE pH                                          5.0
URINE PROTEIN                                     Negative    mg/dL
UA UROBILINOGEN                                   0.2 E.U./dL E.U.
URINE NITRITE                                     Negative
UA LEUK ESTERAS                                   Negative
Req.
HCP:          MANCIL,HANNELORE B.
Lab Loc:                            A



Site/Spec: SERUM          --GENERAL CHEMISTRY--

Date         27Dec02
Coll         @0709      Units      Normal Range

GLUCOSE, RANDOM   155. H  MG/DL    70-120
BUN                22. H  MG/DL    8-21
CREATININE         1.3    MG/DL    0.7-1.3
SODIUM             143.   MMOL/L   136-145
POTASSIUM          3.6    MMOL/L   3.5-5.1
CHLORIDE           100.   MMOL/L   98-107
CARBON DIOXIDE     32.    MMOL/L   22-29
ANION GAP          11.
CALCIUM            9.8    MG/DL    8.4-10.2
TOTAL PROTEIN      7.7    G/DL     6.3-8.2
ALBUMIN            4.6    G/DL     3.4-5.0
ALK PHOS           123    IU/L     38-126
AST                26.    IU/L     15-46
TOTAL BILI         0.4    MG/DL    0.0-1.3
DIRECT BILI        0.2    MG/DL    0.0-0.4
ALT                47     IU/L     14-66
                         Continued on next page
A=FT LEE PATHOLOGY LABORATORY
--------------------------------------------------------------------------------
L=low H=high *=critical /A=amended R=resistant S=susceptible MS=mod. susceptible
================================================================================
20/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  BROWN,WINFRED O SR  M/47
O/P Rec Loc: KENNER OUTPATI
Mil.Unit: US ARMY TEST AND EVAL CMD
Rank: MAJOR                                         PATIENT
```

NMC PORTSMOUTH

Personal Data - Privacy Act of 1974 (PL 93-579)
PATIENT CUMULATIVE REPORT
For: 01 Jan 2000 - 06 Dec 2004

--------------------------------------------------------------------------------
BROWN,WINFRED O SR              20/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  M/47          ph# 804 931 6420
--------------------------------------------------------------------------------


Site/Spec: SERUM          --GENERAL CHEMISTRY--

Date            27Dec02
Coll            @0709        Units      Normal Range

CHOLESTEROL       200 H     MG/DL      100-199
TRIGLYCERIDES     154       MG/DL      30-180
HDL                44       MG/DL      29-67
LDL               125       mg/dL      130
VLDL               31       mg/dL      7-50
RISK FACTOR       4.5 H                3.3-4.4
Req.
HCP:           MANCIL,HAN
Lab Loc:          A

27 Dec 2002@0709
Order Comment:
  BASIC METABOLIC Comment:
  for f/u with maj Grady
  HEPATIC FUNCTN Comment:
  for f/u with maj Grady
  LIPID PANEL Comment:
  for f/u with maj Grady

Interpretations: HDL/CHOLESTEROL
 DESIRABLE HDL >35
 HDL may not be performed when triglycerides are >400 mg/dl. Please contact
 performing laboratory for further information if necessary.

Interpretations: CHOLESTEROL
 DESIRABLE <200 MG/DL;  BORDERLINE 200-240 MG/DL;  HIGH >240 MG/DL

Interpretations: LDL
 CALCULATED LDL CHOLESTEROL REFERENCE RANGE:
       Desirable result: <130 MG/DL

 LDL CHOLESTEROL RESULTS WILL NOT BE CALCULTED WHEN TRIGLYCERIDES ARE
     >400mg/dL




Site/Spec: PLASMA        --GENERAL CHEMISTRY - PLASMA--

Date            27Jan03
Coll            @1404        Units      Normal Range

                        Continued on next page
A=FT LEE PATHOLOGY LABORATORY
--------------------------------------------------------------------------------
L=low H=high *=critical /A=amended R=resistant S=susceptible MS=mod. susceptible
================================================================================
20/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  BROWN,WINFRED O SR  M/47
O/P Rec Loc: KENNER OUTPATI
Mil.Unit: US ARMY TEST AND EVAL CMD
Rank: MAJOR                                              PATIENT

NMC PORTSMOUTH

Personal Data - Privacy Act of 1974 (PL 93-579)
PATIENT CUMULATIVE REPORT
For: 01 Jan 2000 - 06 Dec 2004

--------------------------------------------------------------------------------
BROWN,WINFRED O SR              20/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  M/47        ph# 804 931 6420
--------------------------------------------------------------------------------

Site/Spec: PLASMA      --GENERAL CHEMISTRY - PLASMA--

| Date<br>Coll | 27Jan03<br>@1404 | Units | Normal Range |
|---|---|---|---|
| GLUCOSE,FASTING | 101 | MG/DL | 70-105 |

Req.
HCP:            MANCIL,
Lab Loc:        A

27 Jan 2003@1404
Order Comment:
  GLU FAST Comment:
   541 2650

A=FT LEE PATHOLOGY LABORATORY
--------------------------------------------------------------------------------
L=low H=high *=critical /A=amended R=resistant S=susceptible MS=mod. susceptible
================================================================================
20/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  BROWN,WINFRED O SR  M/47
O/P Rec Loc: KENNER OUTPATI
Mil.Unit: US ARMY TEST AND EVAL CMD
Rank: MAJOR                                          PATIENT

                    *** End of Report ***

Personal Data - Privacy Act of 1974 (PL 93-579)
History of Appts for BROWN,WINFRED O SR from: 01 Jan 2002

| CLINIC/DIV | PROVIDER | DATE/TIME | TYPE/DUR DTL CODES | STATUS |
|---|---|---|---|---|
| SWORD CLINIC FL/KACH | COLINA,JOSE | 06Sep2002@1200 | ROUT/20 BPAP 18-65 | KEPT APPT |
| SWORD CLINIC FL/KACH | MONKE,JAMIE | 25Sep2002@1300 | ROUT/20 BPAP 18-65 | KEPT APPT |
| NETWORK SPECIALTY/MCP | CIVILIAN,PR | 25Sep2002@1530 | N-MTF/ | BOOKED |
| CO-JENNICK DR/MCP | SRIVASTAVA, | 27Sep2002@0830 | N-MTF/ | BOOKED |
| PHYSICAL THERAPY CLI/KACH | PETERSEN,EV | 01Oct2002@1500 | ACUT$/30 | KEPT APPT |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 02Oct2002@1330 | PROC$/30 | KEPT APPT |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 03Oct2002@1430 | PROC$/30 REHAB | NO-SHOW |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 07Oct2002@1430 | PROC$/30 REHAB | KEPT APPT |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 09Oct2002@1500 | PROC$/30 | KEPT APPT |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 16Oct2002@1500 | PROC$/30 REHAB | KEPT APPT |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 18Oct2002@1500 | PROC$/30 REHAB | KEPT APPT |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 21Oct2002@1500 | PROC$/30 REHAB | KEPT APPT |
| PHYSICAL THERAPY CLI/KACH | PETERSEN,EV | 22Oct2002@1430 | SPEC$/30 | CANCEL(P) |
| PHYSICAL THERAPY CLI/KACH | PETERSEN,EV | 23Oct2002@0729 | EST$/30 | WALK-IN |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 23Oct2002@0830 | PROC$/30 REHAB | KEPT APPT |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 28Oct2002@0800 | PROC$/30 | KEPT APPT |
| PHYSICAL THERAPY CLI/KACH | PETERSEN,EV | 29Oct2002@1430 | SPEC$/30 | CANCEL(P) |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 30Oct2002@0830 | PROC$/30 | KEPT APPT |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 31Oct2002@1230 | PROC$/30 REHAB | NO-SHOW |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 01Nov2002@1517 | PROC$/30 | WALK-IN |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 04Nov2002@1551 | PROC$/30 | WALK-IN |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 06Nov2002@0900 | PROC$/30 | KEPT APPT |
| PHYSICAL THERAPY CLI/KACH | BROWN,JAMES | 13Nov2002@1000 | PROC$/30 REHAB | KEPT APPT |
| PHYSICAL THERAPY CLI/KACH | BROWN,JAMES | 14Nov2002@1500 | PROC$/30 REHAB | CANCEL(P) |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 15Nov2002@0730 | PROC$/30 REHAB | KEPT APPT |
| PHYSICAL THERAPY CLI/KACH | PETERSEN,EV | 15Nov2002@0800 | EST$/30 | CANCEL(P) |
| PHYSICAL THERAPY CLI/KACH | CASTNER,SHI | 18Nov2002@1000 | PROC$/30 | KEPT APPT |

```
                    Personal Data - Privacy Act of 1974 (PL 93-579)
             History of Appts for BROWN,WINFRED O SR from: 01 Jan 2002
                                                            TYPE/DUR
CLINIC/DIV                         PROVIDER     DATE/TIME    DTL CODES    STATUS
==============================================================================
PHYSICAL THERAPY CLI/KACH       PETERSEN,EV 20Nov2002@0800  EST$/30      KEPT APPT
                                                            BPAP
PHYSICAL THERAPY CLI/KACH       CASTNER,SHI 02Dec2002@1400  PROC$/30     NO-SHOW
                                                            REHAB
PHYSICAL THERAPY CLI/KACH       CASTNER,SHI 04Dec2002@0800  PROC$/30     CANCEL(P)
                                                            REHAB
PHYSICAL THERAPY CLI/KACH       CASTNER,SHI 06Dec2002@0800  PROC$/30     CANCEL(F)
                                                            REHAB
PHYSICAL THERAPY CLI/KACH       PETERSEN,EV 09Dec2002@0800  EST$/30      NO-SHOW


             WAIT LIST REQUESTS FOR BROWN,WINFRED O SR  20/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
CLINIC/DIV                   TYPE   PRI  DATE IN      TARGET DATE  PROVIDER
==============================================================================


                              NO WAIT LIST REQUESTS!
```

EXHIBIT "J"

# DAVID R. ANDERSON, SR.
### ATTORNEY AT LAW

Winfred O. Brown Sr.
SBI#00019174
MHV 22/ B-L-10
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

February 23, 2004

### RE: RULE 16 INFORMATION

Dear Mr. Brown,

Enclosed is all of the Rule 16 Discovery information I have in you file. What is missing here are the video taped statements of your co-defendants. I spent about six hours viewing those tapes and the had to return same to the State.

I have contacted the Dover Police Department and am still attempting to set up for your brother to pick up your personal property.

I believe that based on the facts and evidence, we worked out a very good resolution of your case. Especially in light of the Federal Weapons charge hanging over your head.

I certainly understand your desire to file for post conviction relief and to do everything possible to help yourself. However, I do not believe I could help you in this area because the only grounds you have after taking the plea is that you received ineffective assistance of counsel in taking the plea. I obviously can not make a post conviction motion on the grounds that I was ineffective.

On a personal level, I was happy representing you, but I would understand a claim of ineffective assistance and such claim would not upset me. However, be careful and consider the ramifications before making this claim. If you were successful, the remedy would be to withdrawal your plea and start over again. The State would definitely not offer you such a good deal the next time.

Sincerely,

*David R. Anderson Sr.*

David R. Anderson Sr.

OPENINING BRIEF

EXHIBIT K

JULY 2, 2004

MR. DAVID ANDERSON
588 RAILROAD AVENUE
TOWNSEND, DE 19734

RE: STATE V WINFRED O. BROWN SR
    CASE # 030-5001486

MR ANDERSON:

I HAVE BEEN NOTIFIED BY THE COURT THAT YOU ARE STILL
MY ATTORNEY OF RECORD. AS SUCH, I WOULD LIKE TO INFORM
YOU WHAT I HAVE BEEN ABLE TO DETERMINE AS A RESULT
OF REVIEWING THE "DISCOVERY" INFORMATION YOU FORWARDED ME
IN FEBRUARY 2004.

FIRST THE AFFIDAVIT OF PROBABLE CAUSE FOR THE SEARCH WARRANT
AT 535 NIMITZ ROAD WAS MATERIALLY DEFECTIVE AND SUBMITTED
BY THE AFFIANT WITH RECKLESS ABANDON AND A TOTAL DISREGARD
FOR THE TRUTH. IT ALSO HAD SEVERAL INSTANCES OF BLATANT
OMMISSIONS. I HAVE LISTED EACH MISREPRESENTATION BY
PARAGRAPH AT ATTACHMENT. THE BOTTOM LINE IS THE
ENTIRE AFFIDAVIT IS BASED UPON ME (WINFRED BROWN
6/21/57) LIVING AND SELLING DRUGS AT 535 NIMITZ ROAD AND
LIVING WITH "MY GIRLFRIEND" JENNIFER HAASS. IN FACT IT
WAS MY SON (WINFRED BROWN JR 9/19/74) THAT SHOULD

SHOULD HAVE BEEN THE FOCUS OF THIS AFFIDAVIT. HE AND
HAAS HAD LIVED TOGETHER AT THE RESIDENCE SINCE JULY 2002.
IT WAS MY SON THE CI OBSERVED WITH A MOUND OF COCAINE
IN NOVEMBER 2002; BEING PROCESSED FOR SALE. IT WAS MY
SON THE CI MADE ARRANGEMENTS WITH TO MAKE A CONTROLLED
BUY DURING THE WEEK OF MAY 2, 2003. MY SON INFORMED
MR. KRUER OF THESE CIRCUMSTANCES WHEN THEY PREPED HIM
FOR TRIAL ON JANUARY 29, 2004. HE ALSO TRIED TO EXPLAIN
THESE CIRCUMSTANCES ON THE MORNING OF MY TRIAL WHILE WE
WERE IN THE BULL PEN AREA.

AS YOU REVIEW THE ATTACHMENTS, KEEP IN MIND THAT THIS
WAS A WARRANTLESS RAID CONDUCTED ON MAY 2, 2003.
I INSISTED TO YOU ALL ALONG THAT I HAD NOTHING TO DO
WITH THE DRUG ACTIVITIES AT "535 NIMITZ ROAD." IN FACT
IN NOVEMBER 2002, I WAS CONFINED TO BED AT MY RESIDENCE
IN HOPEWELL, VIRGINIA AFTER HAVING BEEN IN A HEAD-ON CAR
ACCIDENT IN SEPTEMBER 2002. I AM REQUESTING YOUR HELP
TO SECURE MY MEDICAL AND PHYSICAL THERAPY RECORDS
FROM KENNER ARMY MEDICAL CLINIC, FT LEE, VIRGINIA;
WHERE I WAS TAKING PHYSICAL THERAPY 3 DAYS A WEEK UNTIL
MID DECEMBER 2002. MY WIFE, DARLENE BROWN (804)
541-2605/2650 CAN HELP YOU WITH THE COMPLETE ADDRESS
AND OR PHONE NUMBER TO FT LEE. IF I HAD BEEN ALLOWED
TO REVIEW MY DISCOVERY BEFORE TRIAL, I COULD HAVE NOTED
ALL THESE DISCREPANCIES FOR YOU.

(2)

MR. ANDERSON, I AM HOPING TO USE THIS INFORMATION AND THE FACT THAT (1) THE STATE WITHELD UNDER "BRADY", EXCULPATORY INFORMATION THAT THE STATE'S KEY WITNESS (MY SON) WAS GOING TO TESTIFY THAT I DID NOT PHYSICALLY POSSESS OR HAVE CONSTRUCTIVE POSSESSION OVER ANY DRUGS FOUND IN 535 NIMITZ ROAD; THAT I WAS NOT INVOLVED IN HIS DRUG ACTIVITIES (WHICH ARE THE FOCUS OF THE STATE'S CASE); THAT I DID NOT OWN OWN OR KNOW THE LOCATION OF THE HANDGUN FOUND IN HIS RESIDENCE; THAT (2) THE COURT VIOLATED MY DUE PROCESS RIGHT'S UNDER THE SIXTH AMENDMENT BY "NOT INQUIRING" AS TO THE REASONS I WANTED A CHANGE OF ATTORNEY'S ON JANUARY 28, 2004 AT MY FINAL CASE REVIEW; TO WITHDRAW MY PLEA VIA RULE 61 AND AT SUCH TIME OPT FOR AN APPROPRIATE SUPPRESSION HEARING.

I CONTINUE TO FEEL THAT I WAS FORCED TO PLEAD GUILTY TO CHARGES THAT I ULTIMATELY WAS IN ONE CASE (THE GUN) INNOCENT OF AND IN THE SECOND CASE COULD OF HAD THE ENTIRE CASE DISMISSED ON SUPPRESSION.

THANKING YOU IN ADVANCE, I AM

RESPECTFULLY

WINFRED C BROWN SR
SBI C9174    UNIT: V-D-13
DCC

OPENING BRIEF

EXHIBIT "L"

November 17, 2003

Mr Morris                              Redo

Please be informed that I will personally participate in and select my own jury members with your professional assistance for my upcoming trial. I would also like you to secure the sequestration of all potential witnesses. As you might expect, I would favor as many African Americans in my jury as possible. I wrote to you in the early stages of my case about my perceived state biases when it comes to black men and white women in drug cases. I think we have to assume that both Jennifer Haas and Lois Stewart's cases have been continued while the state waits to determine if my son or I go to trial. Both Stewart and Haas were major contributors to my son's drug business. In fact Haas was a willing accomplice and had title to four vehicles, a 4 bedroom house and every luxury she ever wanted. Haas was arrested again in late September for Breaking and Entering. I am developing a series of questions for you to assist you in the cross examination of both Stewart and Haas.

I would also like to add one witness and two potential witness respectively to my list. My brother (Arthur Brown Jr. 239 MAPLEHURST DR, SMYRNA, DE 19977, 653-9273) has been on his job at Johnson Controls for 33 years. He has no criminal record. He can testify that he and I made three (3) weekend trips to PA, two (2) weekend trips to NJ and one (1) weekday trip to NJ to pick up

EXHIBIT "M"

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) |
| v. | )    Criminal Action Number |
| | )        0305001486 |
| | ) |
| WINFRED O. BROWN SR. | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S REQUEST FOR SPECIAL VOIR DIRE QUESTIONS

The defendant in this action, Winfred O. Brown Sr., by and through his attorney, David R. Anderson Sr., Esquire, respectfully requests that the jury panel be asked no special voir dire questions.

Respectfully submitted this 3rd day of February 2004, by

David R. Anderson Sr., Esquire
Attorney for the Defendant

ATTACHMENT 1

EXHIBIT "N"

JANUARY 25, 2004

MR. DAVID ANDERSON
588 RAIL ROAD AVE
P.O. BOX 547
TOWNSEND, DE. 19734

RE: STATE V WINFRED O. BROWN SR
    CASE # 0305001486

MR. ANDERSON:

HOPEFULLY BY NOW YOU ARE PREPARING FOR A SUPPRESSION HEARING AND
SUBSEQUENT TRIAL. AS YOU KNOW, I ALSO DESIRE A "FRANKS AND FLOWERS
HEARING." I WOULD LIKE THE ATTACHED LIST OF QUESTIONS INCORPORATED
WITH THOSE OF YOUR OWN. I HAVE DESIGNED THE QUESTIONS TO GIVE
YOU SOME INSIGHT INTO THE ACTIVITIES AS WELL AS BACKGROUND
INFORMATION IN PARTICULAR ON LORI STEWART. I HOPE YOU AGREE IT IS MY
RIGHT TO CONFRONT HER AS MY ACCUSER.

I WOULD EXPECT THE STATE TO OFFER UP THE AFFIANT (DET MAILEY) AND
DEA AGENT ZON FOR QUESTIONING AT THE SUPPRESSION HEARING. PLEASE
PAY PARTICULAR ATTENTION TO QUESTIONS #30 AND #31 WHERE THE
AFFIANT IS ASKED IF HE HAD ANY CORROBERATING AND SUPPORTING EVIDENCE
TO SUPPORT THE ALLEGATIONS OF LORI STEWART.

AS I STATED IN EARLIER CORRESPONDENCE, IT WAS AT THIS POINT DURING THE PRELIMINARY HEARING THAT THE AFFIANT ALLEGED A CONTROLLED BUY/ DELIVERY PERPETRATED BY DEFENDANT JEFF TWO MONTHS PRIOR TO MAY 2, 2003. HE REFUSED TO GIVE SPECIFIC DETAILS BECAUSE AS HE STATED "THE BROWN'S WOULD KNOW WHO THE INFORMANT WAS." I WOULD EXPECT YOU TO OBJECT TO THE INTRODUCTION OF THIS EVIDENCE AS ESTABLISHING PROBABLE CAUSE. PURSUANT TO GARNER V DELSUPR 314 A.2d 908 WHERE THE COURT RULED THAT AN INFORMANTS INFORMATION (NOT HIS IDENTIFICATION) WHICH IS USED TO ESTABLISH PROBABLE CAUSE FOR ARREST MUST BE DIVULGED IN THE ESTABLISHMENT OF PROBABLE CAUSE. IN GARNER THE POLICE OFFICER REFUSED TO GIVE SPECIFIC DETAILS BECAUSE HE BELIEVED THE INFORMATION MIGHT VIOLATE HIS OBLIGATION TO CONCEAL THE IDENTITY OF HIS INFORMANT. THIS CASE WAS REVERSED ON APPEAL. ALSO, PURSUANT TO RENZI V DELSUPR. 320 A.2d 710, THE COURT RULED WHERE A POLICE OFFICER DID NOT WITNESS THE ALLEGED TRANSACTION AND NO CHARGES OR ARREST WERE EVER EFFECTUATED, THE INFORMATION WAS RULED INADMISSABLE. IN MICHIGAN V DAVID 119 MICH APP 289, 326 N.W. 2d 485 (1982) THE COURT RULED THAT THE DRUGS MAY JUST AS WELL HAVE BEEN THE INFORMANTS. LAWRENCE JEFF DENIES THE ALLEGATIONS. HE WAS NEVER CHARGED FOR IT EVEN AFTER WE WERE ARRESTED. IN ANY EVENT, TO MY KNOWLEDGE I HAVE NOT BEEN IMPLICATED BY ANY CI. AS WE HAVE DISCUSSED, IN HIS AFFIDAVIT THE AFFIANT RELIED SOLELY ON THE ALLEGATIONS OF LORI STEWART TO CONDUCT A WARRANTLESS RAID WHERE CLEARLY NO EXIGENCY EXISTED. ANY EXIGENCY THE POLICE MAY CLAIM EXISTED, CEASED AT THE TIME THE DEFENDANTS WERE ARRESTED OUTSIDE 535 NIMITZ RD, ON THE CAR PORT. THERE ARE SEVERAL ISSUES OF POLICE IMPROPRIETY IN THIS CASE; THE FIRST BEING LACK OF PROBABLE CAUSE AND THE SECOND BEING THE ILLEGAL SEARCH AND SEIZURE.

(2)

WHAT STANDS OUT THE MOST IS THE FACT THAT THE POLICE SEARCHED 535 NIMITZ RD FOR OVER ~~FIVE~~ FOUR (4) HOURS WITHOUT A WARRANT, AND DOING THIS AFTER ALL THE DEFENDANTS WERE ARRESTED OUTSIDE THE RESIDENCE. MR. ~~MORRIS~~ ANDERSON, YOU WILL HAVE TO ~~DECIDE~~ DETERMINE IN WHAT MANNER THE POLICE ENTERED ROOM 50. TITLE 11 OF THE DELAWARE CODE SECTION 2301 SPECIFICALLY STATES THAT ABSENT EXIGENT CIRCUMSTANCES, POLICE MUST OBTAIN SEARCH WARRANT BEFORE ENTERING HOME AT ANY TIME. IN STATE V HEDLEY DELSUPR 593 A.2d 576 (1990) THE COURT RULED WHEN A POLICE OFFICER ENTERS A HOME WITHOUT A SEARCH WARRANT UNDER CLAIM OF EMERGENCY OR EXIGENT CIRCUMSTANCES, THE BURDEN IS ON THE STATE TO DEMONSTRATE THE EXISTENCE OF SUCH CIRCUMSTANCES, BECAUSE IT IS A BASIC PRINCIPLE OF FOURTH AMENDMENT LAW THAT SEARCHES AND SEIZURES INSIDE A HOME WITHOUT A WARRANT ARE PRESUMPTIVELY UNREASONABLE.

PLEASE BE ~~ALREADY~~ PREPARED TO ARGUE THE FACT THAT THE POLICE WERE NOT AWARE OF BROWN JR AND HAASS BY NAME OR THE FACT THAT THEY WERE ON PROBATION UNTIL THEY (BROWN JR AND HAASS) ARRIVED AT THE RESIDENCE AT 1500 HOURS (1½ HOURS AFTER THE RAID COMMENCED). BECAUSE OF THIS, THE PROBATION OFFICER ON THE SCENE COULD NOT HAVE INITIATED A CASE REVIEW, CONDUCTED A PRE-SEARCH CHECKLIST OR RECEIVED PERMISSION FROM HIS SUPERVISOR TO CONDUCT AN ADMINISTRATIVE SEARCH OF THE RESIDENCE AS REQUIRED UNDER DELAWARE DEPARTMENT OF CORRECTIONS PROCEDURES 7.18 AND 7.19 AND AFFIRMED BY THE DELAWARE SUPREME COURT IN MCALLISTER V DELSUPR 807 A.2d 1119 (2002).

(3)

THIS CASE SPELLED OUT GENERAL GUIDELINES PROBATION OFFICERS MUST ACT UNDER WHEN CONDUCTING ADMINISTRATIVE SEARCHES. ALTHOUGH PROBATIONERS AUTHORIZE PROBATION AND PAROLE TO CONDUCT SEARCHES OF THEIR RESIDENCES, THOSE SEARCHES MUST BE IAW DEPARTMENT PROCEDURES.

ALSO AT THE PRELIMINARY, THE AFFIANT STATED THAT HE ARRIVED AT 535 NIMITZ ROAD WITH THE WARRANT AROUND 1500 HOURS (1½ HOURS AFTER THE RAID COMMENCED), HOWEVER AGAIN WE ASSERT THAT DEA AGENT ZON WAS STILL ADDING HAASS' NAME AND MY 1988 HONDA TO THE AFFIDAVIT BETWEEN 1500-1530 HOURS. ACCORDING TO HAASS, THE SEARCH WARRANT WAS PRESENTED TO HER AROUND 1730 HOURS JUST BEFORE SHE WAS TRANSPORTED TO POLICE HQ'S. I WAS TRANSPORTED AT 1635 HOURS AND THE WARRANT HAD NOT ARRIVED.

IN REGARDS TO MY QUESTIONNAIRES, THERE ARE SEVERAL QUESTIONS (#9-#13) ASKED OF LAWRENCE JEFF PERTAINING TO OUR ARREST IN MAY 1999. HE JUST HAPPENED TO BE WITH ME WHEN I WAS ARRESTED.

IN REGARD TO WITNESSES, I HAVE DELETED ALL WITNESSES I ASK YOU TO CALL TO DISCREDIT JENNIFER HAASS. I NOW BELIEVE HER TESTIMONY WILL BE BENEFICIAL TO ME. PLEASE REVIEW QUESTION #43 REGARDING HER POLICE INTERVIEW ON MAY 2, 2003, SEE DELETED NAMES AT ATTACHMENT, WB

I WOULD HOPE BY NOW THAT YOU HAVE REVIEWED MY FIFTEEN (15)
PAGE SUPPRESSION BRIEF. IN TOTAL I USED EIGHTEEN (18) CASES
TO SUPPORT MY ARGUMENT THAT MY CONSTITUTIONAL RIGHTS WERE
VIOLATED.

THANKING YOU FOR YOUR TIME AND EFFORTS, I AM

                              RESPECTFULLY

                              Winfred O. Brown Sr
                              WINFRED O. BROWN SR

* THE MOTIONS TO SUP's I SUBMITTED TO YOU ALONG WITH THE
CHRONOLOGICAL SEQUENCE EVENTS WILL HOPEFULLY BE BASIS ENOUGH FOR
YOU TO FILE MY MOTION

OPENING BRIEF

EXHIBIT "O"

December 26, 2003

Mr David Anderson

Re

Mr Anderson:

I would like to use this letter as a foundation for my defense. I K 10# As you review my file you already have on hand you will find the same information contained therein.

The Cornerstone of my defense is a Fifteen (15) Page suppression brief detailing the warantless raid the police conducted at 535 Nimity Road and my belief as to what happened at when the times Police arrived at Room 50 at the Kent Budget Motel also without a warrant.

*Your desire states you are a retired Police Det. I would expect that background to be beneficial on your effort to mount a vigorous defense in my behalf,*

ATTCH #2

You made mention of taped interviews to be reviewed. I have no idea what my Co-defendants have said. I to know what they are willing to testify to at this time; that being, I was not involved with the drugs or gun found at 535 Nimitz Rd. You have sworn affidavits to that affect in my file. ~~I appreciate this~~ ~~at this point~~ I would like to address "16 DEC 475³ "Constructive Possession." I did not have dominion or control over any drugs or handgun found at 535 Nimitz Rd. I did not have the ability to guide or influence the destiny of either. #¹

I understand the theory of Accomplice liability also, but my son has stated in his affadavit this was not ~~and were not Accomplices~~. the case, I am expecting a similar affadavit from HASS very soon.

I provided you a list of taskes in my letter dated December 14, 2003. I would also suggest you interview ~~my Co-defendants~~ as well as Lori Stewart who I believe has now been sentenced. I believe Stewart will recant her lie that I sold her drugs at 535 Nimitz Road on, May 2, 2003.
allegations

_Last page_

Mr Anderson I would appreciate your immediate and urgent attention to my case. If you are unable to provide me a full and vigorous defensive effort, I would appreciate you withdrawing now rather than later.

As you might expect I have become very skeptical ~~suspect~~ of lawyers with you being my third ~~one~~ ~~lawyer~~ in Eight months.

I would expect you to forward me a copy of my discovery as well as filing my motions to dismiss within the next two weeks or informing me as to why of a better defense strategy be filed. Also please inform me on your thoughts of suppressing you the motions to dismiss in Counts 1, 3-6, 8, and 10-14. I will provide motions to suppress by JAN 9, 2004.

OPENING BRIEF

EXHIBIT P

"AFFIDAVITS"

State of Virginia                          Affidavit of: Nicole D Brown
                                           Dated: 4/14/06

## AFFIDAVIT

I, Nicole D. Brown, being duly sworn deposes and says that the foregoing statement is a true occurrence/observation and I would state under perjury of the laws of the State of Delaware.

1.  That I was ready, willing and capable of testifying for my father Winfred O. Brown SR (DOB: 6-21-57) at his trial to the following facts:

    a.  that he was bedridden after a head-on car collission in September 2002, living in Hopewell, Virginia and remained living there until mid January 2003.

    b.  that I personally drove him to physical therapy 2 or 3 times a week from September through the end of November 2002.

    c.  that he never moved to Delaware until mid January 2003.

    d.  that he spent the entire week of every holiday in Virginia; as well as the week of March 12, 2003 for my brother's birthday.

    e.  that he was home at least every other weekend.

    f.  that he accompanied the family to New York one weekend in April to visit my grandmother.

2.  That defense counsel, David Anderson never contacted or subpoenaed me to testify on my father's behalf.

_____
Signature

Nicole D. Brown
Print Name


SWORN TO AND SUBSRIBED before me this 19th day of April _____, 2006.

My Commission Expires: _____
                       Notary Public
                       Notary Expires: Nov 30, 2009

State of Virginia                              Affidavit of: _____
                                               Dated: _8 MAY 06_____

## AFFIDAVIT

I, Darlene A. Brown, being first duly sworn deposes and says that the foregoing statement is a true occurrence/observation and I would state under perjury of the laws of the State of Delaware.

1. That I was ready, willing and capable of testifying for my husband Winfred O. Brown Sr (DOB: 6-21-57) at his trial and to the following facts:

a. that Winfred SR was bedridden and living in Hopewell, Virginia from September 21, 2002 through January 2003 after having been involved in a head-on car collision.

b. that he underwent physical therapy three days a week at Fort Lee (Kenner Army Hospital), Virginia through November 2002, as he was still in the U.S. Army.

c. that he moved to Delaware in mid January 2003 to start up an internet based Used Car Business.

d. that he was in Virginia with his family (myself and two children) for the "week" of every holiday to include Martin Luther King, Valentine's Day, President's Day and Easter. That he was also in Virginia the week of March 12, 2003 for his son Joshua's birthday.

e. that Winfred SR was in Virginia every other weekend with his family and that I came to Delaware on the off weekend to be with him.

f. that Winfred SR accompanied me and the children to New York for a weekend in April 2003 to visit my family.

2. That defense counsel, David Anderson never contacted or subpoenaed me to testify on my husband's behalf.

_Darlene A Brown_
Signature

_DArlene A.Brown_
Print Name

SWORN TO AND SUBSCRIBED before me this _8th_ day of _May_ _____, 2006.

My Commission Expires:                    _Kimberly D. Hinkle_
    My Commission Expires March 31, 2007              Notary Public

State of Delaware                          Affidavit of:_____
                                           Dated: 4-12-06 _____

## AFFIDAVIT

I, Arthur J. Brown JR, being duly sworn deposes and says that the foregoing statement is a true occurrence/observation/account and I would state under perjury of the laws of the State of Delaware.

1. That I was ready, willing and capable of testifying for my brother Winfred O. Brown SR, DOB: 6-21-57 at his trial to the following facts:

   a. that he was bedridden and living in Hopewell, Virginia from September 2002 through January 2003.

   b. That he never moved to Delaware until January 2003 and lived with his son, Winfred Brown JR for about a month.

   c. to the best of my knowledge when he moved out in February 2003 he never returned to the residence until after Easter weekend.

   d. that he was engaged in operating a Used Car Business utilizing the internet and that I personally accompanied him on three weekend trips to Pennsylvania and New Jersey to pick-up vehicles. That he was on the verge of a very successful business.

   e. that he frequently returned to Virginia to spend time with his family.

2. That I called defense counsel, David Anderson on several occassions to question him on my brother's behalf. At no time did Mr. Anderson seek to question me in regard to my brother's activities to help establish a defense, nor did he subpoenae me to testify on his behalf as was my intent to do so.

421025

_Arthur James Brown Jr_
Signature

_Arthur James Brown Jr._
Print Name

SWORN TO AND SUBSCRIBED before me this 12 day of April, 2006.

My Commission Expires: _____

_Marjorie Wothers_
Notary Public

MARJORIE A. WOTHERS
Notary Public - State of Delaware
My Comm. Expires Sept. 16, 2007.

State of Delaware                    Affidavit of: _Winifred O. Brown Jr._
                                     Dated: _June 27, 2006_

## AFFIDAVIT

I, Winfred O. Brown JR, being duly sworn deposes and says that the foregoing statement is a true account and I would state under perjury of the laws of the State of Delaware.

1. I informed my father's (Winfred Brown SR, DOB 6-21-57) defense counsel, David Anderson on the morning of my father's scheduled trial (February 3, 2004) that my attorney, Ms Deborah Carey had come down to the holding cell area and informed me to provide counsel the extent of my testimony I planned to give as a state witness at my father's trial.

2. Mr. Anderson informed me that he could not talk to me.

3. I was prepared to inform counsel that my testimony would include:

   a. that my father was living in Hopewell, Virginia until mid January 2003.

   b. that he moved to Delaware around January 16, 2003 and stayed at my residence until mid February 2003 and when he left he never returned to my residence until after Easter weekend 2003 and then only for visits.

   c. that he was not involved in my illegal drug activities at 535 Nimitz Road nor had he ever sold drugs from my residence.

   d. that his only involvement with the handgun found in my residence was when he and the owner of the gun (who also did not live at my residence) went to Maryland for target practice, although I never actually saw my father with the gun.

   e. that he did not own or know the location of the handgun inside my the residence.

   f. that he was operating a Used Car Business through the internet.

   g. that he made numerous trips home to Virginia to be with my step-mother and siblings.

Affidavit of Brown JR (con't)

h.  that he took numerous trips out of town to purchase vehicles with either my uncle Arthur Brown JR or his friend Cheryl Morris.

i.  that he spend every Monday night in Newark from Janaury through April at the home of Cheryl Morris and spent the rest of the week with Lisa Moore at her residence.

j.  That Lori Stewart maintained Room 50 at the Kent Budget Motel on a full time basis even though it was in my father's name.

k.  that Lori Stewart was in fact selling cocaine and marijuana.

4.  That I never saw the search warrant for 535 Nimitz Road until March 2004 but after reviewing it, I would have testified that:

a.  my father Winfred Brown SR, DOB 6-21-57 was never present at 535 Nimitz Road in November 2002.

b.  That he did not sell any drugs from my residence to a confidential informant.

c.  that he did not own any of the vehicles at 535 Nimitz Road. They were my vehicles and registered in the name of Jennifer Haass.

d.  that Jennifer Haass was in fact my girlfriend whom I had lived with at 535 Nimitz Road since July 2002.

5.  I also observed Lori Stewart attempt to talk to Mr. Anderson in the holding cell area and he refused to talk to her also.

6.  I informed Detective Mailey and Mr. Kriner (DAC) on these circumstances in paragraph 3 on Janaury 29, 2004 when they interviewed me as a potential state witness against Winfred Brown SR.

_Winfred O. Brown Jr_
Signature

_Wilfred O. Brown Jr_
Print Name
SBI 307556     DCC

SWORN TO AND SUBSCRIBED before me this 27 day of JUNE , 2006.

My Commission Expires:

_Edward J. Green_
Notary Public

State of Delaware                              Affidavit of:
                                               Dated: _____4/12/06_____

## AFFIDAVIT

I, Tanya Brown, being first duly sworn deposes and says that the foregoing statement is a true account and I would state under perjury of the laws of the State of Delaware.

1. That I was ready, willing and capable of testifying for my uncle, Winfred Brown SR, DOB 6-21-57 at his trial to the following facts:

   a. that on a weekend in April 2003, my uncle went to New York with his wife and kids for the weekend.

   b. that because his family was continuing on to Virginia upon their return via I-95, my uncle called and asked me to pick him up at the Newark McDonald's to bring him back to Dover.

   c. when I arrived at McDonald's he and his family were eating.

   d. thereafter, he and I departed for Dover. Upon droping him off at the Kent Budget Motel, I personally observed Lori Stewart in bed upon our arrival.

2. That defense counsel, David Anderson never contacted or subpoenaed me to testify on my uncle's behalf.

_Katanya Brown_  1269739
Signature

_LaTanya Brown_
Printed Name

SWORN TO AND SUBSCRIBED before me this ___ day of _April_, 2006.
My Commission Expires:

_Marjorie Wothers_
Notary Public

MARJORIE A. WOTHERS
Notary Public - State of Delaware
My Comm. Expires Sept. 16, 2007

State of Delaware

Affidavit of: *Joyce J. Luff*
Dated: 4-14-06

## AFFIDAVIT

I, Joyce Luff, being first duly sworn deposes and says that the foregoing statement is a true occurrence/observation and I would state under perjury of the laws of the State of Delaware.

1. That I was ready, willing and capable of testifying for Winfred O. Brown SR, DOB: 6-21-57 at his trial and to the following facts:

a. that I am the mother of Jennifer Haass who lived at 535 Nimitz Road from July 2002 through August 2003.

b. that it was not Winfred Brown SR but instead Winfred Brown JR, DOB: 9-19-74 that lived ~~with~~ at 535 Nimitz Road with my daughter.

c. that I visited the residence on a daily basis and stayed overnight on ocassion to visit my grandchildren.

d. that I never saw and met Winfred Brown SR at their residence until mid January 2003.

e. that he stayed at the residence until mid February and upon leaving never returned to the residence until after Easter weekend, 2003.

f. that during my visits to 535 Nimitz Road, I never observed Winfred Brown SR selling drugs or discussing any type of illegal activities.

g. that in fact he was rarely at the residence.

h. that he made a lot of trips to Virginia to visit his family as well as trips out of town to purchase automobiles he had bought off the internet.

2.   That his attorney, David Anderson never contacted or subpoenaed me
to testify on his behalf.

_____
Signature

_____
Print Name

SWORN TO AND SUBSCRIBED before me this 14th day of APRIL , 2006.

My Commission Expires:

_____
Notary Public

MUDDESSER SAFDAR
**NOTARY**, DELAWARE, KENT COUNTY
**COMMISSION** EXPIRES OCT. 08, 2006

OPENING BRIEF

EXHIBIT Q

"ENHANCED ARGUMENT ON SEVERANCE"

5. Failed to file a motion to sever the charges at the two different residences.

The Movant argues that a motion for severance must be made before trial. Superior Court Criminal Rule 14 provides for relief from prejudicial joinder of offenses "if it appears that a defendant is prejudiced by a joinder of offenses. The Movant argues that he was severely prejudiced by the joinder of charges at both residences; one where three (3) ounces of cocaine and a handgun were found (535 Nimitz Road) and Room 50 at the KBM where five (5) grams of cocaine were found. The Movant was only visiting the residence of his son (535 Nimitz Road) when he was arrested outside the residence and was not involved in the on-going felony drug distribution at that address (see previous briefs). The Movant argues that it is extremely likely that a motion for severance would have been granted given the sheer mass of charges in the case which would have rendered it extremely unlikely that a jury would have been able to resist the cumulative effect of evidence linking the defendant to separate charges. In its opinion, the court states that "Brown was facing trial on several serious charges and risked being sentenced to substantial incarceration if found guilty." The Movant argues this is only the case because of a misidentification (with his son Winfred JR) where police after receiving a tip, wrongfully began an investigation on the wrong Winfred Brown; and that the Movant should never have been the target

of an investigation that began in November 2002 when the Movant was still living in Virginia and was bedridden from September 2002 until January 2003; lived at 535 Nimitz Road from January 16 2003 until February 2003 and was completely absent from that address from February 16, 2003 until April 24, 2003, and was never in Delaware for more than two weeks at a time between January 2003 and May 2003. Further, Lori Stewart had recanted her claims to police that she received drugs from the Movant on May 2, 2003 at 535 Nimitz Road and informed the state that Detective Mailey had lied at the Preliminary Hearing about her seeing the Movant with the 51 grams of cocaine found at that residence. Had counsel filed a motion to sever, there is no doubt the Movant would have been acquitted of all charges at 535 Nimitz Road including the unloaded handgun which Brown Jr had informed police the Movant did not own and was unaware of its location within the residence. A motion to sever would have left the Movant facing a Trafficking charge (5.3 grams) and PWITD at Room 50, KBM where police clearly admitted at the Preliminary Hearing that the 5.3 grams was found in one bag not broken down in individual bags for sale. Counsel's failure to motion for a severance clearly left the Movant at an unfair disadvantage to defend against 30 charges rather than five and would have allowed the Movant to defend himself against the handgun charge at 535 Nimitz Road. This plea bargain clearly was not advantageous to the Movant as the court states. The Movant then argues that counsel's actions clearly prejudiced his ability to attain

an acquittal on the charges at 535 Nimitz Road because the jury would have accumulated the evidence of various alleged crimes charged and find guilt from the influence of a criminal disposition but if considered separately, the Movant would have been found not guilty of the charges at 535 Nimitz Road. The Movant further argues that he would have been substantially prejudiced by facing charges along with his son of the same name. Even the state remains confused on this case as evidenced in the state's letter to the court requesting an extension to file its affidavit response to Brown JR's Rule 61 because they were confused as to which Brown it was; see ~~attachment~~ EXHIBIT "J". The Movant then argues that Brown JR had informed the state that it was him not the Movant that was living at and processing cocaine at 535 Nimitz Road all along and had been since July 2002 and that the Movant was in no way involved. Now adding in Lori Stewart's recantations, it is clear that counsel denied the Movant the opportunity to defend these charges separately and without prejudice when he failed to file a motion to sever.

The Movant argues that the state could not provide a single witness to testify that he had sold drugs at 535 Nimitz Road or Room 50, KBM; therefore there was no common modus operandi to associate the Movant with both residences.

OPENING BRIEF

EXHIBIT "R"

"CONFLICT OF INTEREST"

Counsel did attempt to respond to the Movant's claim that counsel failed to interview and subpoenae witnesses, stating that he analyzed the Movant's defense and witnesses and determined they were irrelevant. The Movant asks this court how could the Movant present a defense to counsel when he was never allowed to review "discovery" in order to ascertain the nature of the charges which remained hidden from the Movant until 3 weeks after he accepted a plea. The Movant's alibi witnesses, military records along with the testimony of state witnesses Brown JR and Lori Stewart would have acquitted the Movant of all charges.

Counsel further responded to the Movant's claim of a "conflict of interest" by incorrectly stating that the conflict existed with Thomas Dailey. The Movant has argued throughout, that conflict existed with Lisa Moore, an intended alibi witness that counsel was also representing in a separate unrelated criminal matter. The Movant argues that pursuant to Rosenwald v US 898 F.2d 585 that when an attorney represents conflicting interests, "prejudice is presumed" for showing of ineffective assistance of counsel and that trial court must conduct a Garcia hearing once it has been alerted to the existence of an actual conflict of interest, see also US v Grieg 967 F.2d 1018. The Movant argues that the lower court has failed to meet this obligation and responsibility.

Rule 1.7 of the Delaware Rules for the Code of Professional

STATES

Responsibility, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest:

1.   the representation of one client will be directly adverse to another client (or)

2.   there is a significant risk that the representation of one or more clients will be materially limited by the lawyers responsibilities to another client.

The Movant argues that counsel's representation of both he and Moore was directly adverse to counsel's representation of the Movant as Moore's (a white female) testimony may have required her to admit that she was a crack addict and would have limited her ability to attain the plea bargain she eventually received; 30 days level 5 for burglary 2d.  By withholding Moore as a witness, defense counsel ensured Moore's generous plea offer while severely prejudicing the Movant's ability to establish his own defense thus forcing the Movant to accept a plea rather than opt for trial where an effective defense would have acquitted the Movant.  Counsel informed the Movant on the Morning of trial that he had a possible conflict of interest and when asked by the Movant to inform the court; counsel responded, "don't worry about it, you need to take the plea, they got you."  Counsel failed to meet any of the rules of conflict resolution as required under the Professional Conduct Rules of DRA.  Under Professional Conduct Rules, if a conflict arises before representation is undertaken, representation must be declined unless the lawyer obtains the informed

consent from each client. Counsel accepted Lisa Moore as a client in August 2003 and the Movant in December 2003. The Movant had identified Lisa Moore as an alibi witness to his first attorney, Kevin Howard in June 2003 and again to Mr. Anderson in December 2003. Lisa Moore identified herself to counsel as the Movant's girlfriend in January 2004. The Movant argues that counsel had a duty to recuse himself from the Movant's case as soon as he realized that he represented both the Movant and Moore, an alibi witness. The Movant argues anew that a Garcia Hearing is required once the court becomes aware of these circumstances. After the Movant accepted his plea, defense counsel informed the Movant he should cease his relationship with Moore to allow her to pursue a more meaningful relationship with a white man more suitable. The Movant argues that there was a conflict of interest in counsel's representation of both he and Moore as there was significant risks that counsel's ability to consider, recommend or carry out an appropriate course of action for the Movant was materially limited as a result of counsel's representation and responsibilities to Moore.

OPENING BRIEF

EXHIBIT "S"

"JURY VOIR DIRE" ENHANCED ARGUMENT

9. Why counsel informed the court by motion that the Movant did not desire Jury Voire Dire even after the Movant had informed counsel in writing that he desired Voire Dire, see attachment ___. EXHIBITS L&M.

The Movant argues that he informed Counsel in writing that he feared a racially biased jury considering that he was an African American and was intimately involved in relationships with at least five WHITE women he had asked to be called as witnesses. In his letter to counsel the Movant expressed his concerns about:

a. Jury members who may have had family members addicted to or suffer a drug overdose

b. Victims of violent or drug related crimes

c. Racial biases about black men involved with white women and drugs

The Movant argues that these were valid concerns and argues that these concerns were upheld by the Delaware Supreme Court in Feddiman v State 558 A.2d 278, 282-83 (Del 1989) stating that Article I Section 7 of the Delaware Constitution calls for the "essential demands of fairness." Counsel denied the Movant that fairness and prejudiced same when he informed the court that the Movant did not desire Voire Dire. In Filmore v State 813 A.2d 1112 (Del 2003) the court ruled that had counsel requested Voire Dire, the court would have been required to ask potential jurors about racial prejudice. This is just another example of the systematic

approach counsel used to force the Movant into accepting a plea and where counsel was not acting as counsel required under the Sixth Amendment. The Movant argues that had counsel not taken away this constitutional right he would have insisted on going to trial.

The Movant argues that counsel's actions negated and deprived him the opportunity to examine prospective jurors in specific areas of bias, interest and prejudice to insure to the extent humanly feasible that the Movant would be tried before a group of his fellow citizens capable and able of deciding his guilt or innocence solely on evidence presented under appropriate legal instructions and a Voir Dire calculated to achieve that end sufficiently protects a defendant's right to a fair trial.

OPENING BRIEF

EXHIBIT "T"

"LETTER FROM STATE ATTORNEY
        TO THE COURT"



M. JANE BRADY
ATTORNEY GENERAL

## STATE OF DELAWARE
### DEPARTMENT OF JUSTICE

**NEW CASTLE COUNTY**
Carvel State Building
820 N. French Street
Wilmington, DE 19801
Criminal Division (302) 577-8500
Fax: (302) 577-2496
Civil Division (302) 577-8400
Fax: (302) 577-6630
TTY: (302) 577-5783

**KENT COUNTY**
102 West Water Street
Dover, DE 19901
Criminal Division (302) 739-4211
Fax: (302) 739-6727
Civil Division (302) 739-7641
Fax: (302) 739-7652
TTY: (302) 739-1545

**SUSSEX COUNTY**
114 E. Market Street
Georgetown, DE 19947
(302) 856-5352
Fax: (302) 856-5369
TTY: (302) 856-4698

PLEASE REPLY TO :

KENT COUNTY

October 4, 2005

The Honorable Andrea Freud
Commissioner
Kent County Superior Court
38 The Green
Dover, Delaware 19901

Re:  Winfred Brown, Jr.

Dear Commissioner Freud:

The State's response to the above defendant's Motion for Post-Conviction Relief was due August 22.  I believe there was some confusion between this defendant and Winfred Brown, Sr., who's Motion for Post-Conviction Relief was due at about the same time. The State is requesting an additional month to respond to the defendant's Motion.  I apologize for not responding in a more timely manner.

Respectfully,

DENNIS KELLEHER
Deputy Attorney General

DK:md

cc:  Winfred Brown, Jr.
     Prothonotary

**OC: PROTHONOTARY**
**XC: COUNSEL**

Approved.
Please draft a
revised brief schedule
10-5-05

OPENING BRIEF

EXHIBIT "U"

"REASONS FOR A CONTINUANCE"

Mr Andleson

Listed below are my reasons as to why you should file for a Continuance in this case.

① You have not had the opportunity to properly review the volumes of material in this case or prepare for a defense.

② So far you have reviewed the video tapes of the police interviews

③ You were finally provided full discovery on Jan 28, 2004

④ I have not reviewed any or examined of the evidence / discovery that I have requested from you since December 10 th 2003.

⑤ How Can I make an informed decision without reviewing the evidence

ATTACHMENT 3

EXHIT "V"

January 19, 2004

Mr David Anderson
Attorney at Law
588 Railroad Ave
P.O. Box 547
Townsend, DE 19734

Re State V Winfred O. Brown h
    Case # 0305001486

Mr Anderson

This is my final letter to you before my January
28, 2003

In the event we g proceed to trial I want you
to file a motion to sever the charges at
535 Nimitz Rd and Room 50 at the Kent Budget
Motel due to the possibility of testimony

EXHIBIT "W"

# DAVID R. ANDERSON, SR.

ATTORNEY AT LAW

James Kriner, Esquire
Deputy Attorney General
Department of Justice
102 West Water Street
Dover, DE 19904

January 21, 2004

RE:  State of Delaware v. Winfred O. Brown Sr.
     Case Number 0305001486

Dear Jim,

Attached is a copy of a Motion to Compel Discovery.  You may want to get this information to me so that when the Court addresses this motion you can state the information has now been provided.

Also, among the numerous pages that Mr. Brown has written his five attorneys, is the attached letter.  This is Mr. Brown's request for a plea offer in this case.  I felt it more expediant to just show you a copy of the letter since Mr. Brown addressed same to you.  Please let me know your feelings in regard to this plea offer.

Sincerely,

David R. Anderson Sr.

JANUARY 20, 2004

MR JAMES KRINER
DEPARTMENT OF JUSTICE
102 W. WATER ST
DOVER, DE 19901

RE: STATE V WINFRED O. BROWN SR
     Case # 0305001486

MR KRINER:

I WOULD LIKE TO TAKE THIS OPPORTUNITY TO DISCUSS MY
CLIENT'S CASE WITH YOU AHEAD OF OUR SCHEDULED JANUARY 28,
2004 CASE REVIEW.

AS YOU ARE AWARE, MY CLIENT WAS ARRESTED DURING A
WARRANTLESS RAID OUTSIDE HIS SON'S RESIDENCE AT 535
NIMITZ ROAD AND WAS FOUND TO POSSESS 5 GRAMS OF
COCAINE (BEFORE LAB TESTS). MY CLIENT ASSURES ME THAT
THE COCAINE WAS FOR PERSONAL CONSUMPTION. THE ARRESTING
POLICE THEN ENTERED ROOM 50 AT THE KENT BUDGET MOTEL
ALSO WITHOUT A WARRANT. IN ALL THE POLICE WERE IN
THESE TWO RESIDENCES FOR OVER FOUR (4) HOURS BEFORE
THE SEARCH WARRANT ARRIVED.

I BELIEVE MY CLIENT'S SON WINFRED JR. AND HIS FUTURE DAUGHTER, JENNIFER HAASS HAVE ALREADY ACCEPTED RESPONSIBILITY ALONG WITH TAKING PLEAS TO ALL THE DRUGS AND DRUG ACTIVITY AT 535 NIMITZ ROAD. WINFRED JR. WAS ONLY INDICTED ON THE 52 GRAMS (BEFORE LAB TESTS) FOUND IN THE CEILING; WHILE MY CLIENT FOR SOME REASON WAS INDICTED ON THE ENTIRE 73 GRAMS (BEFORE LAB TESTS) FOUND IN THE RESIDENCE. AFTER LAB TESTS THE COCAINE WEIGHED 44 AND 59 GRAMS RESPECTIVELY. THROUGHOUT THIS ENTIRE CASE WINFRED JR. HAS ACCEPTED RESPONSIBILITY FOR ALL THE DRUGS FOUND IN HIS RESIDENCE. HE HAS ALSO STATED THAT HIS FATHER WAS NOT INVOLVED IN HIS DRUG ACTIVITIES. WINFRED JR. WAS ASSURED BY COUNSEL (DEBORAH CAREY) THAT HIS PLEA TO THE ENTIRE 59 GRAMS; AS WELL AS INFORMING THE STATE AS TO OWNERSHIP OF THE UNLOADED HANDGUN FOUND IN THE CEILING WOULD RESULT IN THE CHARGES AGAINST HIS FATHER (STEMMING FROM HIS ADDRESS) BEING REDUCED TO SIMPLE POSSESSION. AT OUR JANUARY 28, 2004 CASE REVIEW, WE ANTICIPATE A PLEA BASED ON THOSE ASSURANCES. I WOULD HOPE YOU REALIZE BY NOW THAT THE DRUGS AND THE HANDGUN ARE NOT CONNECTED AND MY CLIENT HAD NO OWNERSHIP OR KNOWLEDGE OF THE DRUGS OR THE WHEREABOUTS OF THE HANDGUN IN THE RESIDENCE.

I HAVE SWORN AFFIDAVITS FROM MY CLIENTS CO-DEFENDANTS STATING THAT MY CLIENT DID NOT LIVE AT THE RESIDENCE AND WAS NOT INVOLVED WITH THE DRUG ACTIVITIES AT THAT RESIDENCE. TRIAL TESTIMONY WOULD INDICATE MY CLIENT HAD JUST RECENTLY STARTED VISITING THE RESIDENCE AGAIN TWO (2) WEEKS PRIOR TO THE RAID. BEFORE THAT HE HAD NOT BEEN TO THE RESIDENCE IN OVER TWO (2) MONTHS. I BELIEVE JENNIFER HAASS WILL ADMIT AT TRIAL THAT SHE EMBELLISHED SOME OF HER REMARKS TO POLICE AFTER THE MAY 2, 2003 ARREST INORDER TO BE RELEASED FROM POLICE CUSTODY THAT SAME NIGHT.

AS FOR LORI STEWART, SHE IS A PERSON OF VERY LITTLE CREDIBILITY. HER ENTIRE STORY TO THE POLICE WAS FABRICATED IN AN EFFORT TO ESTABLISH HER OWN DEFENSE AS WELL AS SEEK REVENGE AGAINST MY CLIENT FOR ENDING THEIR FIVE (5) YEAR RELATIONSHIP. I AM SURE YOU ARE AWARE OF ALL THE LEGAL PROBLEMS STEWART WAS FACING.

I HAVE VERY CREDIBLE, NEUTRAL AND DETACHED WITNESSES FROM OUTSIDE THE CIRCLE OF DEFENDANTS THAT WILL TESTIFY AND SHED A NEW PERSPECTIVE ON THIS CASE. THERE WAS NO DELIVERY OR EXCHANGE OF DRUGS BETWEEN STEWART AND MY CLIENT AT 535 NIMITZ ROAD. I HAVE A SWORN AFFIDAVIT AND WILL PRODUCE A WITNESS THAT STEWART HAD THOSE DRUGS ON HER PRIOR TO ARRIVING AT THE RESIDENCE

FURTHER, STEWART NEVER SAW ANY DRUGS IN THE RESIDENCE WHILE SHE WAS THERE. I BELIEVE THE MEDICAL EXAMINER WILL VERIFY THAT THE DRUGS STEWART HAD IN HER POSSESSION WERE NOT THE SAME COLOR OR TEXTURE OF ANY OF THE DRUGS FOUND IN 535 NIMITZ ROAD.

AS YOU KNOW, STEWART WAS SELLING DRUGS IN THE SMYRNA AREA. SMYRNA POLICE WILL TESTIFY THAT THEY ARRESTED AND CHARGED HER WITH POSSESSION OF COCAINE AND "PWID" MARIJUANA IN MARCH/APRIL AND AGAIN IN JULY ON UNRELATED CHARGES. STEWART'S ONLY REASON FOR BEING AT 535 NIMITZ ROAD ON MAY 2, 2003 WAS TO ASK MY CLIENT FOR ANOTHER CHANCE IN THEIR RELATIONSHIP; WHICH HE DENIED.

MY CLIENT IS RELUCTANT TO ACCEPT RESPONSIBILITY FOR THE DRUGS FOUND IN ROOM 50 AT THE KENT BUDGET MOTEL WHERE HE REGISTERED THE ROOM IN HIS NAME AND STORED HIS CLOTHES. THERE IS NO PROOF OF A SALE OR AN INTENT TO SELL ON MY CLIENTS PART, THE AMOUNT OF COCAINE FOUND IS CONSISTENT WITH PERSONAL CONSUMPTION. HE IS WILLING TO PLEAD THIS CASE OUT IF YOU OFFER HIM "PWID" UNDER THE NEW LAW EFFECTIVE JUNE 3, 2003; TITLE 16 DELC 4751 WITH A PRESUMPTIVE SENTENCE OF 0-30 MONTHS. THROUGH NO FAULT OF HIS OWN, MY CLIENT WAS NOT INDICTED UNTIL AUGUST 4, 2003.

Class C Felony   4751  UP TO 30 MONTHS  LEVEL 5          Pg 25
DELAWARE SENTENCING ACCOUNTABILITY COMMISSION
(4)

IT IS MY CLIENT'S INTENT AND DESIRE TO ACCEPT HIS RESPONSIBILITY IN THIS CASE; BUT ONLY HIS RESPONSIBILITY. THERE IS NO ACCOMPLICE LIABILITY OR CONSPIRACY HERE. UNDER NO CIRCUMSTANCES WILL HE TAKE ANY PLEA INVOLVING THE HANDGUN OR ANY DRUG RELATED ACTIVITIES AT 535 NIMITZ ROAD.

WE WOULD LIKE TO GET A DEAL COMPLETED AT OUR JANUARY 28, 2004 CASE REVIEW. THANKING YOU FOR YOUR CONSIDERATION;

16    4763    EFFECTIVE JUNE 2003
5 YR 2d OFFENSE MINIMUM FOR DEL/PWID W/DRUG PRIORS REDUCED TO 3 YRS FOR ALL DRUGS EXCEPT HEROIN

EXHIBIT X

(TRANSCRIPTS)

1    IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

2              IN AND FOR KENT COUNTY

3

4    STATE OF DELAWARE,

5              Plaintiff,

6         v.

7    WINFRED BROWN, SR.,
     ID No. 0305001486

8
              Defendant.

9

10   BEFORE:   HONORABLE JAMES T. VAUGHN, JR., J.

11

12

13   APPEARANCES:

14              JASON COHEE, ESQ.
                JAMES KRINER, ESQ.
                Deputy Attorneys General

15                 for the State

16              DAVID R. ANDERSON, SR., ESQ.
                   for the Defendant

17

18
                   HEARING TRANSCRIPT

19                  JANUARY 28, 2004

20
                JEANNE CAHILL, RMR, CRR

21        SUPERIOR COURT OFFICIAL REPORTERS
          38 The Green - Dover, Delaware 19901

22                  (302) 739-5311

23                      COPY

1                                     January 28, 2004
                                   Courtroom No. 1
2                                  2:50 p.m.

3        PRESENT:

4              As noted.

5                          - - - - -

6

7              MR. COHEE:  Your Honor, if we can address

8        Nos. 4 and 5, Walter Brown, Mr. Anderson's case.

9        I'm sorry, Winfred Brown, not Walter Brown, No. 6.

10             MR. ANDERSON:  Good afternoon, Your Honor.

11       I've got a number of cases, but the first one,

12       Winfred Brown, is in custody.  I have several

13       things to bring up in regard to this case.  It is

14       scheduled for trial to begin next Tuesday.  I have

15       several cases scheduled for Monday.

16             And I also filed a motion to compel

17       discovery on it, because in the file, I did not

18       find the search warrants.  Mr. Kriner apparently

19       gave the search warrants -- I am the fifth

20       appointed attorney in this case.

21             THE COURT:  Fifth appointed attorney?

22             MR. ANDERSON:  Yes.  There have been four

23       others appointed to me.  As the fifth attorney, I

1    didn't find -- Mr. Kriner apparently gave the

2    search warrants to number three, and I didn't have

3    them in the file, so I did a motion to compel.  And

4    he supplied those to me this morning, so I have

5    everything, all the discovery at this point.

6        THE COURT:  All right.

7        MR. ANDERSON:  Mr. Brown would like to ask

8    the Court, he is requesting a continuance at this

9    point so that he can retain private counsel.  And I

10   believe he certainly has the means to do so.

11       THE COURT:  All right.  You want to address

12   the Court, Mr. Brown?

13       THE DEFENDANT:  Yes, Your Honor.

14       Just as counsel was saying, Your Honor, I'd

15   like to request a continuance today in order to

16   hire a private attorney to represent me.

17       THE COURT:  All right.  You were arrested on

18   May 2, 2003.

19       THE DEFENDANT:  Yes, sir.

20       THE COURT:  Indicted 8/4.  I think you've

21   had ample time to hire a private lawyer.  Your

22   request is denied.

23       That's all.

```
1              MR. KRINER:  Your Honor, may I just address

2       the discovery matter for the record?

3              THE COURT:  All right.

4              MR. KRINER:  I did provide the discovery to

5       Mr. Morris, which included the search warrant.  The

6       first time I was aware that Mr. Anderson did not

7       have the search warrant was the end of last week.

8       I believed that he had everything up to that point

9       because he inherited the file from the other

10      attorney.  So as soon as I was able to do so, I

11      provided him a copy of all the discovery so that he

12      could have everything.

13             THE COURT:  All right.  Well, he agrees he

14      has it now.

15             MR. ANDERSON:  Yes, that's correct,

16      Your Honor.

17             THE COURT:  All right.

18             (Hearing concluded at 2:53 p.m.)

19

20

21

22

23
```

1    STATE OF DELAWARE:

2    KENT COUNTY:

3

4         I, Jeanne Cahill, Official Court Reporter of
     the Superior Court, State of Delaware, do hereby
5    certify that the foregoing was transcribed under my
     direction from a digital recording that was made
6    using FTR software in the Superior Court of the
     State of Delaware, in and for Kent County, in the
7    case therein stated, as the same remains of record
     in the Office of the Prothonotary at Dover,
8    Delaware, and that I am neither counsel nor kin to
     any party or participant in said action nor
9    interested in the outcome thereof.

10        WITNESS my hand this 5th day of June, 2006.

11

12                          COPY

13    _____
                 Jeanne Cahill, RMR, CRR
14               Delaware CSR # 160-PS

15

16

17

18

19

20

21

22

23

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 0305001486 |
| | ) | |
| WINFRED O. BROWN SR. | ) | |
| | ) | |
| Defendant. | ) | |

## RULE 61 RESPONSE BRIEF BY DEFENDANT'S ATTORNEY

MAY IT PLEASE THE COURT the following is the defense attorney's response to Winfred O. Brown's Rule 61 motion.

Mr. Brown states that he received ineffective assistance of counsel throughout this case. This attorney can only address his assistance of counsel since I was appointed to handle this case on December 9, 2003. Mr. Brown is correct that I was the fifth attorney to handle his case. At my appointment I began reviewing the copious amount of information in the file. This information mostly consisted of letters written by the defendant. I very quickly realized that I did not have all of the Discovery information. I then made an informal request for Discovery. On December 14, 2003, I made a formal request for Discovery. On January 21, 2004, this attorney filed a Motion to Compel Discovery. I believe the problem was that Mr. Kriner had previously supplied this Discovery information to the defendant's earlier attorneys, but it was not in the file I received. This attorney had received the full Discovery by January 27, 2004. At the first case review on December 23, 2003, I did advise the defendant that I was not fully prepared on his case because I had not received all of the Discovery information. By the final case review on January 28, 2004, this attorney had reviewed all Discovery information and had fully prepared for trial, including scripting out questions for witnesses. This attorney was prepared for trial seven full days before Mr. Brown entered his plea.

Mr. Brown states that this attorney did not discuss the case with my client. I had met with Mr. Brown four times prior to his plea. By Mr. Brown's own admission I had received thirty letters from him stating his position on the facts and his defenses. I reviewed each of these letters and discussed same with Mr. Brown when I met with him next.

3    Mr. Brown states that this attorney did not depose the State's witnesses. I am not aware of any Rule that allows the defense to depose the State's witnesses prior to trial. Mr. Brown did provide this attorney with a list of witnesses that he wanted at trial. Except for the two witnesses that were on the witness list I submitted to the Court, all of these witnesses were either already being called by the State or were irrelevant.

4    Mr. Brown raises several questions about the search warrant. These were the same questions that this attorney raised in the Motion to Suppress. He also questions my not filing a Flowers Motion. Mr. Brown later states that these motion were filed, but too late. This attorney filed a Motion to Suppress and a Flowers Motion. These motions were still pending when Mr. Brown took his plea.

5    Mr. Brown states this attorney had a conflict of interest because I had previously represented Thomas Dailey on drug charges. This attorney has represented a number of people on drug charges. Thomas Dailey had no relation to this case. There was no conflict of interest.

6    Mr. Brown states that I did not properly refer to other similar case in the plea negotiations. How could he know this if he was not present for the plea negotiations? This attorney did negotiate properly and got the best possible plea for Mr. Brown.

7    Mr. Brown sates that this attorney did not research changes in the law and did not argue for a "downward departure" in his sentence. This attorney was well aware of HB210 and the effect it had on this case. As far as arguing for a "downward departure" Mr. Brown is confusing State and Federal Court. Downward departure exists in the Federal Sentencing Guidelines. There is no downward departure from a State of Delaware minimum mandatory sentence.

8    Mr. Brown states that the defense should have filed for a continuance because I was not prepared. Since I was already prepared for trial there were no grounds for a continuance request. Mr. Brown only wanted to delay the trial. In regard to his supposed Alibi Defense, this attorney examined this defense and realized it was irrelevant to the case.

9    Mr. Brown states that he was advised by his defense counsel that the State would not notify the U. S. Attorney of his violation of **18 USCA & 2K2.1** if he accepted the plea. I believe it was the Prosecutor that told him that. He said this was bad information. I believe he can still be charged under **18 USCA & 2K2.1**.

The bottom line is that this attorney came into this case late. However, I did interview the pertinent witnesses that I was allowed to interview. I even went to the scene of the crime to view same. I interviewed the manager of the Kent Budget Motel, who told me a completely different story than Mr. Brown did. I communicated with my client as well as possible given the fact the Mr. Brown was uncooperative and would not take my advice. I negotiated the best possible plea offer for my client.

I did not coerce Mr. Brown into taking the offered plea. I was already prepared for trial, so the only reason I encouraged him to take the plea was that it was clearly in his best interest. On the Truth In Sentencing form and during the plea colloquy, Mr. Brown answered that he was satisfied with my representation and felt we had had sufficient time to prepare a defense. I believe that Mr. Brown made a knowing, intelligent, and voluntary plea. Given the facts of the case, Mr. Brown received a good plea offer and he voluntarily took same.

The facts of this representation on this case shows extremely effective assistance of counsel and that his attorney was professional and had his client's best interest at heart.

Respectfully submitted this 20th day of June, 2005, by

David R. Anderson Sr.
Attorney for Winfred O. Brown Sr.

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

STATE OF DELAWARE          )
                           )
        v.                 )          Criminal Action Number
                           )               0305001486
                           )
WINFRED O. BROWN SR.       )
                           )
        Defendant.         )

## CERTIFICATE OF SERVICE

The attached Response for the Defendant's Motion for Post Conviction Relief was served on the State by U.S. Mail with proper postage affixed to Deputy Attorney General James J. Kriner at Carvel State Office Building, 820 North French Street, Wilmington, DE 19801 on the 20th day of June 2005.

This response was served on the Movant by U.S. Mail, with proper postage affixed, mailed this 20th day of June 2005, and addressed to Winfred O. Brown Sr. at SBI#- 00019174, Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977.

David R. Anderson Sr., Esquire
588 Railroad Avenue
P.O. Box 547
Townsend, DE 19734

Dated: June 20, 2005

## SUPREME COURT OF DELAWARE

#2

CATHY L. HOWARD
*Clerk*

SUPREME COURT BUILDING
55 THE GREEN
DOVER, DE 19901

AUDREY F. BACINO
*Assistant Clerk*
DEBORAH L. WEBB
*Chief Deputy Clerk*
LISA A. SEMANS
*Senior Court Clerk*
DEBRA J. ZATLOKOVICZ
*Senior Court Clerk*

February 15, 2006

P.O. BOX 476
DOVER, DE 19903

(302) 739-4155
(302) 739-4156
(302) 739-8091

Mr. Winfred Brown
SBI #00307556
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

RE:  ***Winfred O. Brown, Sr. v. State***, No. 79, 2006
     (Cr.ID No. 0305001486)

Dear Mr. Brown:

The Supreme Court is in receipt of your notice of appeal in the above matter. Your notice of appeal with designation of transcript does not show service upon the court reporter. Please serve the court reporter and file a certificate of service upon the court reporter of the notice of appeal no later than **March 1, 2006**. If you intend to request the Superior Court to provide you with the transcript at State expense, you must, by **March 1, 2006**, submit an application making that request to the Honorable James T. Vaughn, Jr. at the Superior Court, Kent County Courthouse, 38 The Green, Dover, DE 19901 and file a copy with this Court indicating that you have done so no later than **March 1, 2006**. If you intend to make arrangements for payment of the transcript to the court reporter's office, you must do so no later than **March 1, 2006**.

Very truly yours,

/eas

cc:    The Honorable James T. Vaughn, Jr.
       John R. Williams, Esquire
       Prothonotary, Kent County
       Jennie Washington, Chief Court Reporter

IN THE SUPREME COURT OF THE STATE OF DELAWARE

_WINFRED O. BROWN SR_

_____ Below,

Appellant,

No. _IK03-05-0704-705-RI_

V.

_STATE OF DELAWARE_

_____ Below,

Appellee.

## NOTICE OF APPEAL

To:    _DEPUTY ATTORNEY GENERAL_

PLEASE TAKE NOTICE that _WINFRED O. BROWN SR_,

_____, below appellant, does hereby appeal to the Supreme Court

of the State of Delaware, from the order _IK03-05-0704-705-RI_

of the _SUPERIOR_ Court, in and for _KENT_, County, by

_HONORABLE JUDGE VAUGHN_, dated _JANUARY 31, 2006_, in Case Number

_IK03-05-0704-705-RI_ in that court. A copy of the decision sought to be reviewed

is attached hereto.

Form Rev. 4/1/98

_ATTCH 2_

The name and address of the attorney below for appellee is

_DENNIS KELLEHER, ESQ_____, the party against whom the

appeal is taken is _____.

The name and address of the attorney below for the party against

whom the appeal is not taken is _____. The party

against whom the appeal is not taken is _____.

PLEASE TAKE FURTHER NOTICE that appellant hereby designates

the transcript in accordance with Rules 7(c)(6) and 9(e)(ii) in the following

manner:

_COURT TRANSCRIPTS FROM 1-28-04 (APROX 1530-1600HRS) DEPICTING
DEFENSE COUNSEL AND APPELLANT'S COLLOQUY BEFORE THE COURT_
[or] _REGARDING "DISCOVERY NOT HAVING BEEN REVIEWED, AND REQUEST FOR
CONTINUANCE,"_

Dated: _2-11-06_____              _Winfred O. Brown Jr_
                                      _WINFRED O. BROWN SR_

                              Attorney for _PRO-SE_____

                              _____ Below-Appellant

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

STATE OF DELAWARE     )
                        )
   v.                    )     IK03-05-0704 - 705-R1
                        )
WINFRED O. BROWN, Sr.    )
(ID. No. 0305001486)      )
                        )
        Defendant.    )

*Submitted: October 26, 2005*
*Decided: January 31, 2006*

Dennis Kelleher, Esq., Department of Justice, Dover, Delaware. Attorney for the State.

Mr. Winfred O. Brown, Sr., *pro se.*

*Upon Defendant's Motion for Postconviction Relief*
*Pursuant to Superior Court Criminal Rule 61*
**DENIED**

**VAUGHN, President Judge**

*State v. Winfred O. Brown, Sr.*
ID. No. 03605001486
January 31, 2006

to 10 *Del. C.* § 512(b)(1)(b) and Superior Court Criminal Rule 61(a)(5).

4. The Commissioner recommended that the defendant's motion be denied as procedurally barred under Rule 61(i)(3). Also, the defendant failed to raise any of his grounds for relief at the plea, sentencing, or on direct appeal and are therefore barred by Rule 61(i)(3) absent a showing of cause for the failure to have raised them earlier or prejudice suffered.   Under ground one, the Commissioner found counsel's presentation to be competent and within the required range.   The defendant also failed to state any concrete allegations of prejudice suffered as a result of counsel's representation.   Furthermore, the record reflects that the defendant's plea was voluntarily entered into.  Grounds two through six were not raised by the defendant on appeal and therefore are barred by Rule 61(i)(3). With respect to ground two, by entering a plea of guilty, the defendant knowingly waived his right to challenge the search warrant. Ground three was also waived when the defendant entered his plea. In addition, the defendant does not show how the outcome of his plea or trial, had he gone to trial, would have been any different if certain evidence had not been withheld. The defendant's request for a continuance, ground four, came only days prior to the scheduled trial date and was found to be meritless by the Commissioner.  As in grounds two and three, the defendant waived his right to challenge the officer's testimony by accepting a plea agreement. With regard to the final ground for relief, the record clearly contradicts the defendant's allegation and was  found to be meritless by the Commissioner.

5. A copy of the Commissioner's report dated October 5, 2005 is attached hereto.  The defendant filed an appeal from the Commissioner's Report and Recommendation and the State filed an answer to the appeal.  In the defendant's

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

STATE OF DELAWARE          )
                           )
v.                         )          IK03-05-0704-R1
                           )          IK03-05-0705-R1
**WINFRED O. BROWN, Sr.**   )
                           )
    Defendant.             )
    ID. No.  0305001486    )


Dennis Kelleher, Esq., Deputy Attorney General, Department of Justice, for the State of Delaware.

Mr. Winfred O. Brown, Sr., *pro se.*

## COMMISSIONER'S REPORT AND RECOMMENDATION

### Upon Defendant's Motion for Postconviction Relief
### Pursuant to Superior Court Criminal Rule 61


FREUD, Commissioner
October 5, 2005

## FACTS

The Defendant, Winfred O. Brown, Jr., ("Brown"), pled guilty on February 3, 2004, to one count of Trafficking in Cocaine, 16 *Del. C.* § 4753A and one count of Possession of a Firearm During the Commission of a Felony, 11 *Del.C.* § 1447. Brown was also facing the following charges:  one count of Trafficking in Cocaine,

*State v. Brown*
ID No.0305001486
October 5, 2005

of his motions.[3]  On November 8, 2004, President Judge Vaughn denied another Motion for Modification of Sentence which Brown had filed while his appeal was pending.[4]

## BROWN'S CONTENTIONS

Next, Brown filed the instant Motion for Postconviction Relief pursuant to Superior Court Rule 61.  In his motion, he raises the following six grounds for relief:[5]

> Ground One: Ineffective Assistance.

> Ground Two: Materially Defective Search Warrant.

> Ground Three: State Withheld Exculpable [*sic*] Evidence.

> Ground Four:  Presiding Judge's Abuse of Discretion.

> Ground Five:  Perjured Testimony at Preliminary Hearing.

> Ground Six:  Not Guilty of PFDCF.

---

[3]    *Brown v. State*, Del. Supr., No. 178, 2004, Jacobs, J. (Sept. 13, 2004) (ORDER).

[4]    *State v. Brown*, Del. Super., ID No. 0305001486, Vaughn, P.J. (Nov. 8, 2004) (ORDER).

[5]    For explanation of each ground, Brown refers to his lengthy Memorandum of Law in Support For Post-Conviction [*sic*] Relief.  Brown's references are too long to set forth herein therefore the details of each ground will not be repeated.

*State v. Brown*
ID No.0305001486
October 5, 2005

(1) counsel's representation fell below an objective standard of reasonableness; and (2) counsel's actions were prejudicial to him in that there is a reasonable probability that, but for counsel's error, he would not have pled guilty and would have insisted on going to trial, and that the result of a trial would have been his acquittal.[8]  The failure to establish that a defendant would not have pled guilty and would have proceeded to trial is sufficient cause for denial of relief.[9]  In addition, Delaware courts have consistently held that in setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.[10]  When examining the representation of counsel pursuant to the first prong of the *Strickland* test, there is a strong presumption that counsel's conduct was professionally reasonable.[11]  This standard is highly demanding.[12]   *Strickland* mandates that when viewing counsel's representation, this Court must endeavor to "eliminate the distorting effects of

---

[8]      *See Hill v. Lockhart*, 474 U.S. 52, 57, 59 (1985);  *Strickland*, 466 U.S. at 688, 694; *accord Larson*, 1995 Del. LEXIS 238; *Blanchfield v. State*, 1994 Del. LEXIS 314; *Skinner*, 607 A.2d at 1172; *Albury*, 551 A.2d at 58.

[9]      *See Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).

[10]     *Younger*, 580 A.2d at 556; *Skinner v. State*, 1994 Del. LEXIS 84, at *4-5.

[11]     *Albury*, 551 A.2d at 59 (*citing Strickland*, 466 U.S. at 689); *see also Larson*, 1995 Del. LEXIS 238, at *4; *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).

[12]     *Flamer*, 585 A.2d at 754.

5

*State v. Brown*
ID No.0305001486
October 5, 2005

counsel's representation was ineffective under the *Strickland* test.

Even assuming, *arguendo*, that counsel's representation of Brown was somehow deficient, Brown must satisfy the second prong of the *Strickland* test, prejudice. In setting forth a claim of ineffective assistance of counsel, a defendant "must make concrete allegations of actual prejudice and substantiate them or risk dismissal."[17]    In an attempt to show prejudice, Brown simply asserts that his counsel pressured him and "did not adequately investigate." Brown does not show that had he gone to trial that he would have been acquitted. This statement is insufficient to establish prejudice.

To the extent that Brown alleges his plea was involuntary, the record clearly contradicts such an allegation. When addressing the question of whether a plea was constitutionally knowing and voluntary, the Court looks to the plea colloquy to determine if the waiver of constitutional rights was knowing and voluntary.[18] At the Guilty Plea hearing, the Court asked Brown whether he understood the nature of the charges, the consequences of his pleading guilty, and whether he was voluntarily pleading guilty. The Court asked Brown if he understood he would waive his constitutional rights if he pled guilty, if he understood each of the constitutional

---

[16](...continued)
298 (Del. 2003); see also *Blanchfield*, 1994 Del. LEXIS 314, at *2-3; *Sullivan v. State*, 636 A.2d 931, 937-938 (Del. 1994).

[17]    *Larson*, 1995 Del. LEXIS 238, at *5; *Younger*, 580 A.2d at 556 (Del. 1990).

[18]    *See Godinez v. Moran*, 509 U.S. 389, 400 (1993).

7

*State v. Brown*
ID No.0305001486
October 5, 2005

completely meritless.

Turning briefly to Grounds for Relief Two through Six in which he does *not* allege ineffective assistance of counsel, I find that these claims are barred by Rule 61(i)(3) for Brown's failure to have raised them on appeal. Brown makes no attempt to explain to this Court why he failed to raise these claims earlier nor has Brown alleged any clear prejudice resulting from the alleged inaction. Therefore he has clearly failed to cross the procedural bar of Rule 61(i)(3) by not demonstrating cause and prejudice. As such, these claims should be denied by the Court.

Notwithstanding the procedural bar, I will briefly discuss Brown's Grounds for Relief Two through Six. In Ground Two, Brown alleges a deficiency in the Affidavit supporting the Search Warrant. As Brown's former counsel noted in his Affidavit, he had prepared a Motion to Suppress and was prepared to argue the motion to the Court at the time Brown decided to enter his Guilty Plea. By entering his plea, Brown knowingly waived his right to attack the Search Warrant. This ground is meritless.

Similarly, Brown's Ground Three for relief alleges that the State withheld evidence was waived by Brown's Guilty Plea.[21] Furthermore, Brown has not given any concrete evidence that any of the alleged withheld evidence would have changed

---

[21]    *Downes v. State*, 1999 Del. Super. LEXIS 328; *Davis v. State*, 783 A.2d 124 (Del 2001).

9

*State v. Brown*
ID No.0305001486
October 5, 2005

## CONCLUSION

I find that Brown's counsel represented him in a competent and effective manner and that Brown has failed to demonstrate any prejudice stemming from the representation. I also find that Brown's guilty plea was entered knowingly and voluntarily. Finally, I find that Brown has failed to overcome the bars of Rule 61(i). Consequently, I recommend that the Court *deny* Brown's Motion for Postconviction Relief as procedurally-barred by Rule 61(i)(3).



Commissioner Andrea M. Freud

oc:   Prothonotary
cc:   Hon. James T. Vaughn, Jr.
      David R. Anderson, Sr., Esq.
      File

11